IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
(Jackson Division)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| and the STATE OF MISSISSIPPI, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 3:12-cv-790  TSL-MTP |
| | ) | |
| v. | ) | |
| | ) | JOINT STATUS REPORT |
| | ) | |
| THE CITY OF JACKSON, MISSISSIPPI, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiffs, the United States of America, on behalf of the U.S. Environmental Protection Agency ("EPA"), and the State of Mississippi, by and through the Mississippi Commission of Environment Quality, acting through the Mississippi Department of Environmental Quality (collectively, "MDEQ"), and Defendant the City of Jackson, Mississippi (the "City", and together with Plaintiffs, the "Parties") submit this Joint Status Report to advise the Court of the implementation of the Consent Decree in this action, the existence of negotiations among the Parties to propose certain modifications to the Consent Decree, and other circumstances that the City contends have created and/or exacerbated financial challenges and impacted its ability to comply with certain obligations under environmental and public health protection statutes administered by the EPA and/or the State of Mississippi.

1

**2012 Clean Water Act Consent Decree**

Plaintiffs originally initiated this action as part of the EPA's "Keeping Raw Sewage and Contaminated Stormwater Out of Our Nation's Waters" National Enforcement Initiative targeting Clean Water Act violations related to aging sewer infrastructure. After several inspections, the EPA and the MDEQ documented numerous violations of the Clean Water Act, 33 U.S.C. § 1251 *et seq.* ("CWA"), the Mississippi Air and Water Pollution Control Law, Miss. Code Ann. § 49-17-1 *et seq.* ("MAWPCL"), and the City's National Pollutant Discharge Elimination System ("NPDES") permits for the City's Wastewater Collection and Transmission System ("WCTS") and Wastewater Treatment Plants ("WWTPs"). In the five years before the Parties filed the Consent Decree in November 2012, the City had over 2,300 unauthorized Sanitary Sewer Overflows ("SSOs") and the City's Savanna Street WWTP experienced numerous Prohibited Bypasses resulting in wastewater discharged into the Pearl River without the required treatment.

The Consent Decree, which was entered by the Court on March 1, 2013 [Docket No. 10], has "the objective of causing the City to achieve and maintain full compliance with the CWA, the MAWPCL, and the NPDES Permits, including the elimination of all Sanitary Sewer Overflows." To achieve this objective, the Consent Decree consists, among other things, of: (1) the evaluation and rehabilitation of the City's WCTS, the Savanna Street WWTP, and the main transmission pipe to the Savanna Street WWTP, known as the West Bank Interceptor; (2) the development and implementation of numerous programs to ensure proper Capacity, Management, Operations and

Maintenance ("CMOM") of the Sewer System; and (3) the implementation of certain work required by two prior Agreed Orders with the MDEQ. The Consent Decree requires that all required rehabilitative needs and corrective actions must be completed no later than June 1, 2030.

**City's Limited Progress Under the Consent Decree**

Since entry of the Consent Decree, the City has achieved only limited progress under the Consent Decree. The Consent Decree incorporates two MDEQ Agreed Orders. The City has completed the August 23, 2011 MDEQ Agreed Order and has partially implemented the work required by the September 10, 2011 MDEQ Agreed Order, as amended. In addition, the City has made timely progress rehabilitating the West Bank Interceptor (a major sewer line which runs along the west bank of the Pearl River) and is in the final stages of constructing Type II improvements at the Savanna WWTP. Nevertheless, the City has not yet begun crucial elements of the Consent Decree and others remain significantly delayed. Most importantly, the City has not initiated the evaluation of its WCTS – more than two years after the deadline for doing so – nor has it started the necessary rehabilitation of its WCTS.

Additionally, the City has implemented only a limited number of CMOM programs required under the Consent Decree. The City has implemented the Inter-Jurisdictional Program, the Training Program and, at times, the FOG Program. The City recently restarted the implementation of its Fats, Oils, and Grease ("FOG") Control

Program after a three-month pause related to Force Majeure COVID-19 impacts.[1] The FOG Control Program is intended to reduce the amount of harmful FOG entering the City's WCTS and eliminate one of the primary causes of SSOs.

Notably, the City has not fully implemented the other CMOM programs required under the Consent Decree. The City has not fully implemented the Capacity Assurance Program, the Sewer Overflow Response Plan ("SORP"), the Private Lateral Program, the Water Quality Monitoring Program, the Pump Station Operations Program, the Pump Station Preventive Maintenance Program, the Gravity Line Preventive Maintenance Program, the WWTP Operations and Maintenance Program, and the Financing and Cost Analysis Program. With respect to the SORP, the City's noncompliance has resulted in the City's failure to take important steps to consistently safeguard public health after SSOs, such as notifying the public of, and appropriately responding to, SSOs into streams, residential areas, schools, parks, and other high traffic areas, and of any other SSOs that create public health hazards. The EPA and the MDEQ have ongoing concerns about these deficiencies and are actively working with the City to ensure they are swiftly addressed.

In addition to noncompliance with the Consent Decree, the City continues to violate the CWA, the MAWPCL, and the City's NPDES permits. In 2020, the City reported 376 SSOs (which spilled over 523,023,705 gallons of untreated wastewater) and

---

[1] The FOG program was fully implemented by the Consent Decree deadline of August 9, 2017; however, the City ceased implementation on January 25, 2019 due to financial resource constraints. The FOG program was restarted on November 25, 2019. Due to the COVID-19 outbreak, the City requested, and EPA and MDEQ agreed to, a March 19, 2020 temporary suspension under the *force majeure* provisions of Section XI of the Consent Decree of inspections of Food Service Establishments required by the City's FOG Control Program. The City resumed its inspections on June 1, 2020.

11 Prohibited Bypasses (which allowed 6,037,042,000 gallons of wastewater to discharge into the Pearl River without the required treatment). Further, the City is currently aware of 116 known emergency SSO locations in the City's WCTS requiring immediate repair or cleaning, yet the City has been unable to quickly respond to or rehabilitate the vast majority of these.[2]

**City's Contention that its Financial Situation is a Hurdle to its ability to Come into Compliance with CD and Relevant Statutes**

The City has expressed its commitment to come into compliance with the Consent Decree, the CWA, the MAWPCL, and its NPDES Permits. However, the City has represented that severe financial difficulties – including a long period of significantly reduced water and wastewater billing collections attributed to a failed investment to replace the City's customer water meters and water billing system, the downgrading in 2018 of the City's bond rating, a global COVID-19 pandemic, and a continuing declining income level of the City's ratepayers – have affected this commitment and the City's ability to comply with the Consent Decree.

In addition, the City represents that the West Rankin Utility Authority ("WRUA"), a long term customer of the City, was issued an NPDES permit by the State of Mississippi to operate its own wastewater treatment plant, which is expected to be operating during the final quarter of the 2021 calendar year. The City states that this will result in a reduction of annual revenues collected by Jackson to support its water and

---

[2] The City represents that these 116 emergency sewer repair locations have been reduced from an original 283 locations and that the City has spent approximately $17,643,000 to repair and/or clean these 167 locations.

5

wastewater system and the Consent Decree.

In March 2020, the City received an approximately $89 million settlement from Siemens Corporation for claims regarding the City's failed investment to improve its water meters and billing system. After payment of attorneys' fees, $59.8 million was available to address some of the City's obligations under the Consent Decree. The City maintains that it was necessary to commit the majority of these funds to re-establish compliance with bond covenants, repay the City's general fund, and repair the meter and billing system. The use of the funds in this manner contributed to an improvement in the City's bond rating in April 2020, which Standard & Poor's Global Ratings rated at A+ (the highest rating is AAA). Also, the City has already completed 11 wastewater utility projects with $3.5 million of the funds.

On May 10, 2021, the United States Department of Treasury announced the allocation of funds to state and local governments pursuant to the American Rescue Plan Act of 2021.[3] The City will receive approximately $42 million in funding over the next two years. The State of Mississippi will receive approximately $1.8 billion, also over the next two years. The American Rescue Plan Act limits the use of funds by the State of Mississippi and the City of Jackson to specific purposes: (1) respond to the public health emergency or negative economic impacts associated with the emergency; (2) support essential work; (3) backfill a reduction in revenue that has occurred since 2018-19; or (4) for water, sewer, or broadband infrastructure. In addition, the funding allocated to the

---

3 *See* Coronavirus State and Local Fiscal Recovery Funds | U.S. Department of the Treasury. https://home.treasury.gov/policy-issues/coronavirus/assistance-for-state-local-and-tribal-governments/state-and-local-fiscal-recovery-funds

State includes a separate tranche specifically for capital improvements. The City states that it is evaluating the allocation of funds to the multitude of needs arising from the COVID-19 pandemic, including critical water and wastewater funding needs. It is the City's understanding that the State of Mississippi also has not determined the allocation of its separate funding from the American Rescue Plan. Regardless of the ultimate amount of American Rescue Plan funding directed to water and wastewater improvements by the City or the State, the City maintains it will have financial difficulties complying with the Consent Decree as it is currently structured.

In 2011, the City projected that it would require approximately $855 million to achieve Consent Decree compliance. In 2017, the City's updated cost projection to comply with the original Consent Decree was approximately $840 million. The City represents that it has spent a total of $136 million on capital expenses from 2013 to June 2021 to fulfill its Consent Decree obligations. The City has proposed revisions to the Consent Decree and estimates that it will cost at least an additional $822 million, consisting of approximately $662 million in capital costs and $160 million in O&M costs to complete the work under the proposed revisions.[4] The City currently projects the total cost of Consent Decree compliance to be at least $958 million, or $1.28 billion when accounting for inflation, upon completion of the City's proposed Consent Decree modification. Due to the projected cost for compliance and the scope of the injunctive relief required, additional time will be needed to complete the City's proposed revisions to the Consent Decree's injunctive relief.

[4] See September 2, 2020 City of Jackson Long Term Financial Model.

At the City's request, the Mississippi Legislature passed a statute that will allow Jackson to provide relief to certain of its customers on overdue water and wastewater bills and allow the City to deem a portion of these past due balances as uncollectible and move them to a special account. The City anticipates that reducing accounts receivable through this process will result in an increase in the number of customers paying their current balance each month and thus increase revenues needed for Consent Decree implementation. However, any increase in revenues will be gradual and will not compensate for immediate decrease in revenues caused by the departure of WRUA from the City's wastewater treatment system. In addition, the City believes that the ability to reduce the large receivables balance along with the anticipated increased collections is expected to result in improvement to the City's bond rating, which will also support funding of work under the Consent Decree. The City represents that additional legislation it had sought to support the City's ability to fund certain Consent Decree obligations did not pass the State Legislature during the most recent legislative session.

**EPA and State Oversight of CD Compliance**

Given the City's limited compliance with the Consent Decree and continued violations of the CWA, the MAWPCL, and the City's NPDES permits, the EPA and the MDEQ significantly increased their oversight of the City's compliance activities under the Consent Decree in 2017. This oversight has included in-person meetings (before the pandemic began), at least monthly telephonic status conferences, and Jackson's weekly submission to the EPA and the MDEQ of a statistical analysis of the City's compliance and the performance of its WCTS and WWTPs. The City has cooperated with the EPA

and the MDEQ regarding this increased oversight and responded to requests for additional information. During this period of increased oversight, the City has made some operational improvements and reported limited improvements to its financial condition (both prior to and after the announcement of the settlement with the Siemen's Corporation discussed above) but has remained unable to come into full compliance with the terms of the Consent Decree.

**Safe Drinking Water Act Compliance Issues**

Additionally, the EPA and the State of Mississippi, by and through its State Department of Health ("MSDH") have been engaged with the City regarding ongoing compliance issues relating to the City's regulated Public Water System ("PWS"), specifically, compliance with the Safe Drinking Water Act ("SDWA"), 42 U.S.C. § 300f *et seq*. While SDWA compliance is not within the scope of the Consent Decree or before the Court, the Parties inform the Court of the issue because the City represents that the condition of the PWS is relevant to its financial condition. In February 2020, the EPA conducted a SDWA compliance inspection of the PWS and identified numerous areas of concerns. The EPA's evaluation of the City's PWS is part of the Agency's efforts under its new National Compliance Initiative Reducing Noncompliance with Drinking Water Standards at Community Water Systems. Following the EPA's inspection, MSDH raised additional concerns about the PWS's long-term viability and requested that the EPA take lead on enforcement matters with the City pursuant to the federal SDWA.

On March 27, 2020, the EPA issued the City an Emergency Administrative Order

("Emergency SDWA Order"), Docket No. SDWA-04-2020-2300,[5] pursuant to Section 1431 of the SDWA, 42 U.S.C. § 300i, due to the EPA's finding that "conditions exist at the System that may present an imminent and substantial endangerment to the persons served by the System." The Emergency SDWA Order required the City, among other things, to repair its dosing processes for pH and disinfection; develop a comprehensive equipment repair plan for its System; develop an alternative water source plan to be activated by the City in the event that the City's water exceeds certain parameters; and review and update, if necessary, its Sampling Site Plan under the Revised Total Coliform Rule ("RTCR").

On May 11, 2020, and on April 26, 2021, the EPA issued the City SDWA Section 1414 notices of noncompliance identifying violations of the National Primary Drinking Water Regulations and the Mississippi Primary Drinking Water Regulations. The EPA and the City subsequently entered into an Administrative Compliance Order on Consent (AOC), Docket No. SDWA-04-2020-2301, effective July 1, 2021, to address the outstanding concerns identified by the EPA. The EPA and MSDH are committed to supporting the City in meeting its compliance obligations under the SDWA and providing consistently safe, clean, and reliable drinking water service to all people served by the System. The City projects that at least $828 million (inflated cost[6]) in additional capital and O&M is needed to address the regulatory needs of the drinking water system,

---

[5] As amended by First Amendment to Emergency Administrative Order (May 28, 2020).

[6] "Inflated costs" are the estimated costs of the work through the year 2040 in today's dollars, using a 3% interest rate.

bringing the total needed anticipated investment for both water and wastewater compliance to approximately $2.0 billion (inflated cost).[7]

Recently, in mid-February 2021, the City experienced a winter storm that severely impacted its drinking water infrastructure, freezing pipes and treatment facilities and resulting in numerous water line breaks throughout the PWS. As a result, the City reported that a portion of Jackson's residents were without potable water for several weeks due to lack of adequate pressure in the PWS, and those that had running water were subject to boil water notices because of the high turbidity levels. The City subsequently requested $47 million in emergency funding from the State of Mississippi due to the critical damage to its aging PWS. However, the City reports that to date the State of Mississippi has allocated $3 million to Jackson in response to this request.

On May 4, 2021, President Joseph R. Biden Jr. granted a Major Disaster Declaration for the State of Mississippi triggering the release of Federal funds to help communities recover from Severe Winter Storms that occurred February 11-19, 2021.[8] The City will pursue FEMA funding pursuant to this Major Disaster Declaration.

**Discussions Regarding Possible Modification to CD**

The City has proposed certain modifications to the Consent Decree in recognition of the current state of the City's WCTS and WWTPs, the City's limited progress to date under the Consent Decree, and the longstanding and unanticipated financial difficulties represented by the City, which it claims are further exacerbated by the poor condition of

---

[7] See September 2, 2020 City of Jackson Long Term Financial Model. This estimate does not include additional costs associated with the AOC.

[8] Declaration No. FEMA-4598-DR.

the PWS, the COVID-19 pandemic, and the compounding impacts from the February 2021 winter storm. The EPA and the MDEQ are assessing the City's financial condition and then will evaluate these proposed modifications, and the Parties are endeavoring in good faith to reach agreement on them. The Parties are expecting more information on the City's financial condition in the next few months and therefore, respectfully propose that they provide the Court with another Joint Status Report by October 29, 2021. The Plaintiffs also reserve the right to request a Status Conference with the Court within three months of this filing.

Respectfully submitted this 7th day of August 2021.


**ATTORNEYS FOR UNITED STATES OF AMERICA:**

DARREN J. LAMARCA
Acting United States Attorney for the
Southern District of Mississippi

ANGELA GIVENS WILLIAMS
Assistant United States Attorney
MS Bar No. 102469
United States Attorney's Office
501 East Court Street, Suite 4.430
Jackson, MS  39201
Tel: (601) 973-2820
Fax: (601) 965-4409
Email: angela.williams3@usdoj.gov

TODD KIM
Assistant Attorney General
Environment and Natural Resources
Division

/S/ Karl J. Fingerhood
KARL FINGERHOOD (PA Bar No. 63260)
ANGELA MO (CA Bar No. 262113)
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources
Division
United States Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Telephone: (202) 514-7519
                (202) 514-1707
E-mail: Karl.Fingerhood@usdoj.gov
            Angela.mo@usdoj.gov

Of Counsel:
MICHELE WETHERINGTON
Associate Regional Counsel
U.S. EPA Region 4
61 Forsyth St. SW
Atlanta, GA 30303

SUZANNE ARMOR
Associate Regional Counsel
U.S. EPA Region 4
61 Forsyth St. SW
Atlanta, GA 30303

**ATTORNEYS FOR STATE OF MISSISSIPPI:**

/s/ Gretchen Zmitrovich (with permission by KJF)
_____
GRETCHEN ZMITROVICH
(MS Bar No. 101470)
Senior Attorney
Mississippi Department of Environmental
Quality
Post Office Box 2261
Jackson, Mississippi  39225-2261
Telephone: (601) 961-5050
Facsimile: (601) 961-5349
gzmitrovich@mdeq.ms.gov

**ATTORNEYS FOR CITY OF JACKSON, MISSISSIPPI:**

MONICA D. ALLEN (MB#102154)
City Attorney
mdallen@jacksonms.gov

TERRELL S. WILLIAMSON (MB# 8639)
Legal Counsel
twilliamson@jacksonms.gov

OF COUNSEL:
OFFICE OF THE CITY ATTORNEY
455 East Capitol Street
Post Office Box 2779
Jackson, Mississippi 39207-2779
601.960.1799 (office)
601.960.1756 (facsimile)