IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
(Northern Division)

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> and the STATE OF MISSISSIPPI, <br><br> Plaintiffs, <br><br> v. <br><br> THE CITY OF JACKSON, MISSISSIPPI, <br><br> Defendant. | Case No. 3:12-cv-790 HTW-LGI <br><br> <u>JOINT STATUS REPORT UPDATE</u> |

Plaintiffs the United States of America and the State of Mississippi, by and through the Mississippi Commission on Environmental Quality, acting through the Mississippi Department of Environmental Quality ("MDEQ") and Defendant the City of Jackson, Mississippi (the "City") and together with Plaintiffs, the "Parties") submit this Joint Status Report to the Court to advise the Court of the City's failure to achieve multiple compliance deadlines in the Consent Decree (Dkt. No. 10) in this action and the negotiations among the Parties to address violations of the Consent Decree, Clean Water Act, and Mississippi Air and Water Control Law.   Because this matter has recently been transferred from Judge Lee [Docket No. 27], we have included some background information for the Court.

1

## BACKGROUND

Plaintiffs initiated this action due to the City's persistent violations of the Clean Water Act, 33 U.S.C. § 1251 *et seq.* ("CWA"), the Mississippi Air and Water Pollution Control Law, Miss. Code Ann. § 49-17-1 *et seq.* ("MAWPCL"), and the City's National Pollutant Discharge Elimination System ("NPDES") permits arising from the City's rapidly deteriorating Wastewater Collection and Transmission System ("WCTS") and Wastewater Treatment Plants ("WWTPs"). In the five (5) years before the Parties filed the Consent Decree in November 2012, the City experienced the discharge of sewage from its WCTS (such discharges are known as Sanitary Sewer Overflows ("SSOs")) on over 2,300 occasions and the City's Savanna Street WWTP experienced numerous Prohibited Bypasses resulting in wastewater discharged into the Pearl River without the required treatment.

The Consent Decree, which was entered by the Court on March 1, 2013 [Dkt No. 10], has "the objective of causing the City to achieve and maintain full compliance with the CWA, the MAWPCL, and the NPDES Permits, including the elimination of all Sanitary Sewer Overflows." To achieve this objective, the Consent Decree mandates, among other things:  (1) the evaluation and rehabilitation of the City's WCTS, the Savanna Street WWTP, and the main transmission pipe to the Savanna Street WWTP, known as the West Bank Interceptor;  (2) the development and implementation of numerous programs to ensure proper Capacity, Management, Operations and Maintenance ("CMOM") of the WCTS; and (3) the implementation of certain work

required by two (2) prior agreed orders with the MDEQ. The Consent Decree requires that all required rehabilitative needs and corrective actions must be completed no later than June 1, 2030.

Since entry of the Consent Decree, the City has achieved only limited progress under the Consent Decree. The Consent Decree incorporates two MDEQ Agreed Orders. The City has completed the August 23, 2011 MDEQ Agreed Order and has partially implemented the work required by the September 10, 2011 MDEQ Agreed Order, as amended. In addition, the City has made timely progress rehabilitating the West Bank Interceptor (a major sewer line which runs along the west bank of the Pearl River) and has completed nearly all Type II improvements at the Savanna WWTP. Nevertheless, the City has not yet begun crucial elements of the Consent Decree and others remain significantly delayed. Most importantly, the City has not initiated the evaluation of its WCTS – more than two years after the deadline for doing so – nor has it started the necessary rehabilitation of its WCTS.

Additionally, the City has not fully implemented all CMOM programs required under the Consent Decree. The City has implemented the Inter-Jurisdictional Program, the Training Program the Fats, Oils, and Grease Control Program, the WWTP Operations & Maintenance Program, has substantially implemented the Pump Station Operations Program and the Pump Station Preventive Maintenance Program, has made significant efforts at implementing the Sewer Overflow Response Plan, and worked with EPA to implement a modified Financing and Cost Analysis Program, but has either not

implemented or substantially not implemented the following CMOM programs required under the Consent Decree:

- the Capacity Assurance Program, which is a program designed to ensure that new sewer connections are made to the WCTS or existing connections are expanded only when the WCTS has sufficient capacity to accept increased sewage. *See* Consent Decree [Dkt. 10 at ¶ 33]; and

- the Sewer Overflow Response Plan, which is a detailed written plan for how the City is to respond to SSOs, as well as how they will notify the public of the overflows and take measures to prevent human contact with sewage. While the City has a written document, in many instances it has failed to timely and effectively respond to and correctly report SSOs. *See* Consent Decree [Dkt. 10 at ¶ 34, and Appendix E]; and

- the Private Lateral Program, which is a program to require customers to replace or repair private lateral sewer lines that may contain conditions or defects that may cause or contribute to SSOs or other violations of the NPDES permits through allowing inflow and infiltration. *See* Consent Decree [Dkt. 10 at ¶ 36]. The City maintains that implementation of this program should not be required at this time because SSOs in the City's system are overwhelmingly caused by physical blockages in the sewer lines rather than insufficient capacity caused by infiltration and inflow; and

- the Water Quality Monitoring Program, which is a program requiring scheduled routine and investigative monitoring of and sampling of SSOs located adjacent to or in proximity to waterways. *See* Consent Decree [Dkt. 10 at ¶ 37]; and

- the Gravity Line Preventive Maintenance Program, which is a program requiring preventive hydraulic and mechanical cleaning of Gravity Sewer lines, including root control and manhole preventive maintenance. The first area to be addressed was to be the West Bank Interceptor. The City has made significant progress on the West Bank Interceptor, although work on that area is not yet complete. *See* Consent Decree [Dkt. 10 at ¶ 41].

As a result, the City continues to violate the CWA, the MAWPCL, and the City's NPDES permits. From March 1, 2020 to February 28, 2022 alone, the City reported 460 SSOs, which released over 111,081,920 gallons of untreated wastewater, 13 SSOs at the West Bank Interceptor low point (408 S. Jefferson St.), known as the "Entergy Manhole," which released over 95,219,768 gallons and 27 Prohibited Bypasses, which allowed 4,465,590,000 gallons of wastewater to discharge into the Pearl River without the required treatment. Currently, there are approximately 256 known SSO locations in the City's WCTS requiring immediate emergency repair, yet the City has been unable to quickly respond to or rehabilitate the vast majority of them. Accordingly, many millions of dollars of stipulated penalties against the City have accrued pursuant to the Consent Decree.

The City has expressed its commitment to come into compliance with the Consent Decree, the CWA, the MAWPCL, and its NPDES Permits. However, the City has

represented that severe financial difficulties – including a long period of significantly reduced water and wastewater billing collections attributed to a failed investment to replace the City's customer water meters and water billing system, the downgrading in 2018 of the City's bond rating, a global COVID-19 pandemic, and a continuing declining income level of the City's ratepayers – have affected this commitment and the City's ability to comply with the Consent Decree.

In 2011, the City projected that it would require approximately $855 million to achieve Consent Decree compliance. In 2017, the City's updated cost projection to comply with the original Consent Decree was approximately $840 million. The City represents that it has spent a total of $136 million on capital expenses from 2013 to June 2021 to fulfill its Consent Decree obligations. In 2022, the City completed the Savanna Street WWTP Phase 1A Improvements Project, which resolved a substantial number of the Type II repairs/improvements required at a cost of $30.5 million.

As noted in previous Status Reports, the Parties had begun negotiations regarding a mutually agreeable proposed modification of the Consent Decree in recognition of the current state of the City's WCTS and WWTPs, longstanding and unanticipated financial difficulties represented by the City, and the resulting practical realities created by over ten (10) years of limited progress under the Consent Decree by the City.

However, beginning in August of 2022, the focus of the parties was on addressing the emergency regarding the City's drinking water system. On November 29, 2022, the United States filed a complaint against the City under the Safe Drinking Water Act ("SDWA"). *United States v. City of Jackson*, Case No. 3:22-cv-00686-HTW-LGI,

Docket No. 1 (S.D. Miss. Nov. 29, 2022). Along with the Complaint, the United States sought entry of an Interim Stipulated Order ("ISO"), agreed to by both the City and MSDH, to provide for the appointment of an Interim Third Party Manager, who under the supervision of the Court, will implement certain priority projects agreed to by the parties to the ISO. The Court approved the ISO and stayed proceedings in the case for a period of 6 months. *Id.* at Docket Nos. 5 and 6.

Since entry of the ISO in the SDWA matter, the Parties have renewed their efforts to address the City's noncompliance with the CWA, including negotiations focused on prioritizing short-term work on the WCTS and WWTPs, including work aimed at stabilizing the system and reducing the number of SSOs and bypasses in the near term. *See* Consent Decree, Docket No. 10. In November 2021, the City previously provided certain documents, including a proposed amendment to the Consent Decree and an updated Long Term Financial Model, to the United States and MDEQ to further negotiations, subject to a Confidentiality Order entered in this matter [Docket No. 19].[1]

Since entry of the ISO in the SDWA matter, the Parties have engaged in several discussions, including with technical staff and consultants, on an appropriate path forward to address the City's non-compliance with the Consent Decree and the deteriorating condition of the wastewater system, and plan on accelerating these discussions in the next few months.

---

[1] On March 17, 2023, the Parties submitted a Stipulation [Docket No. 26], along with a proposed Order sent to Judge Lee's Chambers, extending the Confidentiality Order in this matter to the ITPM and the Mississippi State Department of Health, as there may be some overlap in the discussions between the ITPM and governmental units between the SDWA and CWA matters. In light of this matter being re-assigned we will be submitting the proposed Order to Judge Wingate's Chambers.

The Parties are available for a Status Conference with respect to this matter during the weeks beginning May 22nd and May 29th, with the exception of the 29th (Memorial Day) or the afternoons of May 23rd or 30th. The Parties will file a Status Report Update on or before August 4, 2023.

Respectfully submitted this 5th day of May, 2023.

**ATTORNEYS FOR UNITED STATES OF AMERICA:**

          DARREN J. LAMARCA
          United States Attorney for the Southern District of Mississippi

          /s/ Angela Williams  (with permission by KF)
          ANGELA WILLIAMS
          Assistant United States Attorney
          MS Bar No. 102469
          United States Attorney's Office
          501 East Court Street, Suite 4.430 Jackson, Mississippi 39201
          Tel: (601) 973-2820
          E-Mail: angela.williams3@usdoj.gov

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division

*Karl J. Fingerhood*
KARL FINGERHOOD (PA Bar No. 63260)
ANGELA MO (CA Bar No. 262113)
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Telephone: (202) 514-7519
         (202) 514-1707
E-mail:  Karl.Fingerhood@usdoj.gov
         Angela.mo@usdoj.gov

Of Counsel:
MICHELE WETHERINGTON
Associate Regional Counsel
U.S. EPA Region 4
61 Forsyth St. SW
Atlanta, Georgia  30303

SUZANNE ARMOR
Associate Regional Counsel
U.S. EPA Region 4
61 Forsyth St. SW
Atlanta, Georgia  30303

**ATTORNEYS FOR STATE OF MISSISSIPPI:**

/s/ Gretchen Zmitrovich (with permission by KF)
GRETCHEN ZMITROVICH (MS Bar No. 101470)
DONNA J. HODGES (MS Bar No.  9561)
Senior Attorneys
Mississippi Department of Environmental Quality
Post Office Box 2261
Jackson, Mississippi  39225-2261
Telephone: (601) 961-5050
Facsimile: (601) 961-5349
E-mail: gzmitrovich@mdeq.ms.gov
dhodges@mdeq.ms.gov

**ATTORNEYS FOR CITY OF JACKSON, MISSISSIPPI:**

<u>/s/ Terrell S. Williamson (with permission</u> by KF)
TERRELL S. WILLIAMSON (MB# 8639)
Legal Counsel
twilliamson@jacksonms.gov


<u>  /s/ Catoria Martin (with permission by KF)</u>
CATORIA MARTIN (MB# 103938)
City Attorney
cmartin@jacksonms.gov


OF COUNSEL:
OFFICE OF THE CITY ATTORNEY
455 East Capitol Street
Post Office Box 2779
Jackson, Mississippi 39207-2779
601.960.1799 (office)
601.960.1756 (facsimile)