# Attachment A
Declaration of Mark Nuhfer

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
(Northern Division)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> and the STATE OF MISSISSIPPI ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ) <br> THE CITY OF JACKSON, MISSISSIPPI, ) <br> ) <br> Defendant. ) <br> ) | Case No. 3:12-cv-790-HTW-LGI <br><br> **DECLARATION OF MARK NUHFER IN SUPPORT OF PLAINTIFFS' REPORT REGARDING STATUS CONFERENCE AND ORDER IN DRINKING WATER CASE** |

I, Mark Nuhfer, pursuant to 28 U.S.C. § 1746, declare as follows:

**I. PROFESSIONAL BACKGROUND**

1. I am currently serving a temporary assignment as Acting Chief of the Grants, Infrastructure, and Nonpoint Source Branch in the Water Division in the Environmental Protection Agency (EPA) Region 4 office. In this capacity I am responsible for administering State Revolving Loan Fund programs, administration of water grants, the Clean Water Act (CWA) section 319 nonpoint source program, and Congressionally Directed Spending and Community Project Funding grants. I have been in this role since February 12, 2023, not to exceed June 11, 2023.

2. I have been employed in a variety of roles by EPA since 1993, primarily in CWA and Safe Drinking Water Act (SDWA) programs, as an environmental engineer, program management officer, and supervisory environmental engineer. I have been a first line supervisor for a variety of CWA programs since 2004. I earned a Bachelor of Civil Engineering in 1990

1

from Case Western Reserve University and a Master of Public Administration in 1996 from Georgia State University. Prior to joining EPA in 1993, I served as a volunteer drinking water engineer in the United States Peace Corps from 1990-1993.

3.     As the Acting Chief of the Grants, Infrastructure, and Nonpoint Source Branch, I supervise staff involved in conversations and negotiations about supplemental appropriations to assist the City of Jackson, Mississippi (City) under, among other authorities, Sections 1442 and 1452 of SDWA.

## II.     OVERVIEW OF THE DRINKING WATER STATE REVOLVING FUND PROGRAM, SECTION 1452 OF THE SDWA, 42 U.S.C. § 300j-12

4.     The Drinking Water State Revolving Loan Fund (DWSRF) was established by the 1996 amendments to the SDWA. The DWSRF is a financial assistance program to help water systems and states to achieve the health protection objectives of the SDWA. (See 42 U.S.C. §300j-12.)

5.     In Mississippi, the Mississippi State Department of Health (MSDH) administers the Drinking Water State Revolving Fund, called the Drinking Water Systems Improvements Revolving Loan Fund (DWSIRLF) Program.

6.     DWSRF financial assistance may be used by an eligible public water system only for expenditures of a type or category which the EPA Administrator has determined will facilitate compliance with national primary drinking water regulations or otherwise significantly further the health protection objectives of the Act. Eligible activities, projects, and expenditures of the DWSRF program are identified in EPA's implementing regulation of the SDWA Section

1452 at 40 C.F.R. §§ 35.3520 and 35.3525, and further described in the EPA's "Drinking Water State Revolving Fund Eligibility Handbook, 2017."[1]

7. Ineligible project-related costs are expenditures that do not facilitate compliance with the national primary drinking water regulations or do not otherwise significantly further the public health protection objectives of the SDWA. Additionally, the state cannot use the DWSRF to prepay anticipated costs of future activity or the costs of trucked-in water or purchasing bottled water.[2] Moreover, water system operation and maintenance activities are not capital expenditures and are thus not eligible for loan funds under the DWSRF. See 42 U.S.C. § 300j-12(a)(2)(B); 40 C.F.R. § 35.3520(f).

8. In December 2022, Congress passed the Disaster Relief Supplement Appropriations Act, 2023, Division N (Disaster Relief Act) of the Consolidated Appropriations Act, 2023.[3]

9. In Division N, Congress authorized $450 million dollars for capitalization grants to the DWSRF under SDWA section 1452, to address the City's drinking water crisis.

10. These funds are subject to the same general eligibility requirements as other DWSRF capitalization grant funds, as summarized above.

---

[1] Available at https://www.epa.gov/sites/default/files/2019-10/documents/dwsrf_eligibility_handbook_june_13_2017_updated_508_versioni.pdf
[2] See id. at Section 3.7, p.17.
[3] Legislation text available at https://www.congress.gov/117/bills/hr2617/BILLS-117hr2617enr.pdf, with portions relevant to this matter beginning on p. 1895.

11. The ITPM submitted its Financial Management Plan (FMP), as required under paragraph 6.p of the Interim Stipulated Order in this matter, to DOJ, EPA, MSDH, and the City, on January 27, 2023.[4]

12. The FMP identified total outstanding debt impacting the City's public water system and wastewater system in the amount of $283,326,485.90, as of December 31, 2022. See FMP at 9-10. This includes $168,895,000 in outstanding General Bond Resolution (GBR) debt associated with Water and Sewer Revenue bonds through FY 2041; $81,979,591.17 in outstanding CWSRF loan principal; and $32,451,894.69 in outstanding DWSRF loan principal.

13. The outstanding CWSRF loan principal of $81,979,591.17 is ineligible for retirement using the $450M from Consolidated Appropriations Act, for reasons set forth above.

14. Based upon information currently available to EPA, EPA cannot determine if any of the $168,895,000 in outstanding GBR debt would be eligible for DWSRF reimbursement because the City and the ITPM have not produced any records to support what this GBR debt originally funded to substantiate that it is DWSRF eligible.

15. In a May 2, 2023, telephone conference, the ITPM explained to the EPA that this GBR debt has been refinanced and no documentation has been found that can clarify the eligibility of the debt.

16. In a May 2, 2023, telephone conference, the EPA communicated to the ITPM that the only portion of the City's existing debt that may be eligible for DWSRF reimbursement is the $32,451,894.69 in outstanding DWSRF loan principal. However, the EPA caveated that the

---

[4] Available at https://jxnwtr.com/wp-content/uploads/2023/01/JXN-Water-Financial-Management-Plan-01272022.pdf.

eligibility determination is subject to review by MSDH and EPA, pending receipt of supporting records.

17. On May 18, 2023, the ITPM informed EPA that he believes he has identified approximately $90 million in debt associated with the metering system, and the ITPM believes that debt may be eligible for DWSRF reimbursement.

18. I have personal knowledge of the facts set forth above, or have knowledge of the facts set forth above through my role at EPA as the Acting Chief of the Grants, Infrastructure, and Nonpoint Source Branch, and would be competent to testify thereto.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of May, 2023, in Atlanta, Georgia.

MARK NUHFER
Digitally signed by MARK NUHFER
Date: 2023.05.18 13:18:46 -04'00'

Mark Nuhfer