# N THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| and the STATE OF MISSISSIPPI, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 3:12-cv-790-HTW-LGI |
| ) | (Clean Water Act Case) |
| v. ) | |
| ) | |
| ) | |
| THE CITY OF JACKSON, MISSISSIPPI, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:22-cv-00686-HTW-LGI |
| ) | (Safe Drinking Water Act Case) |
| v. ) | |
| ) | |
| ) | |
| ) | |
| THE CITY OF JACKSON, MISSISSIPPI, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## JXN WATER, INC.'S RESPONSE IN OPPOSITION TO
## MOTION FOR LEAVE TO FILE SUIT
## (SAFE DRINKING WATER ACT CASE & CLEAN WATER ACT CASE)

JXN Water, Inc., through counsel for the Interim Third-Party Manager Ted Henifin ("Mr. Henifin" or the "ITPM"), responds to Lakeland Seniors, LLC's ("Lakeland Seniors") Motion for Leave to File Suit and requests this Court (1) hold that the protections of the Interim Stipulated Order apply to JXN Water, Inc. ("JXN Water") and (2) deny Lakeland Seniors' Motion for failure to demonstrate a *prima facie* case against JXN Water.

On September 11, 2023, Lakeland Seniors filed a Motion for Leave to File Suit against JXN Water. [*See* Doc. 50].[1] Lakeland Seniors contends JXN Water is not an ITPM Agent as defined by the Interim Stipulated Order ("ISO") and, thus, not afforded the protections of the ISO. Further, Lakeland Seniors alleges harm from water and other aqueous substances discharged from infrastructure for which JXN Water is now responsible, *i.e.*, a water meter and fire hydrant, or "likely will soon be responsible," *i.e.*, a sewer line. Accordingly, Lakeland Seniors seeks leave to sue JXN Water for harms that originated as early as June 2020. [*See* Doc. 50, Exh. 1].

Although not mentioned in its Motion for Leave, JXN Water provides a procedural history for Lakeland Seniors' claim for the benefit of the Court and as discussed in relevant part below. Lakeland Seniors previously filed its Complaint against JXN Water, without prior notice or leave from this Court. The original Complaint was filed on June 12, 2023. *See Lakeland Seniors, LLC v. The University of Mississippi Medical Center, et al.*, Case No. 25CI1:23-cv-331, Doc. 2. Summons were issued for UMMC and the City of Jackson but not for JXN Water. *See id.*, Docs. 3 & 4. Following a Motion to Dismiss filed by UMMC, on August 3, 2023, the suit was voluntarily dismissed without prejudice, first against UMMC, then against the City of Jackson and JXN Water. *See id.*, Docs. 7 & 9.[2] The following week, by letter from counsel and for the first time, Lakeland Seniors provided JXN Water notice of its claim and more details on the basis for the claim. That letter was submitted as Exhibit 1 to the Motion for Leave.

---

[1] Unless otherwise noted, pursuant to this Court's Order consolidating the Clean Water Act [Doc. 45] and Safe Drinking Water Act Cases, all docket references will relate to Case No. 3:12-cv-790. The Motion for Leave was initially filed on the docket for the Safe Drinking Water Act Case, Case No. 3:22-cv-686; however, the Motion was refiled on the consolidated docket following this Court's instruction.

[2] Because that Complaint has been voluntarily dismissed, JXN Water has not attached it as an exhibit to this Response in Opposition. A copy can be provided at the Court's request.

2

**I.     JXN Water is an ITPM Agent under the Stipulated Order.**

Under the ISO, "[n]o suit shall be filed against the ITPM *or ITPM Agents* without leave of this Court except as provided in 28 U.S.C. § 959(a)." [Case 3:22-cv-686, Doc. 6, at ¶ 9(b) (emphasis added)].

The only legal argument presented by Lakeland Seniors in its Motion for Leave is that "the immunity described in the Order" does not apply to JXN Water. Instead, Lakeland Seniors contends "Jxn Water is Mr. Henifin's principal, not his agent." [Doc. 50, at 2]. In short, Lakeland Seniors' entire argument appears to rest on the old axiom, "A corporation can only act through its agents." *W.G. Yates & Sons Constr. Co. v. Occ'l Safety and Health Review Comm'n*, 459 F.3d 604, 607 (5th Cir. 2006); *see also Franklin Collection Serv., Inc. v. BancorpSouth Bank*, 275 So. 3d 1048, 1055 (Miss. 2019) ("A corporation only acts through its officers and agents."). Lakeland Seniors' argument proceeds that (1) JXN Water is a corporation and (2) Mr. Henifin is JXN Water's director. Therefore, JXN Water is the principal, and Mr. Henifin is the agent.

Unfortunately, that argument ignores the clear language of the ISO, as amended, the statements of the parties (the City of Jackson and the United States), and the practical reality of how the ISO is (and was intended to be) implemented. For starters, the law presumes that, "a principal acts *through* its agent." *E.g.*, *St. Louis & S.F.R. Co. v. Williams*, 55 Okla. 682, 251 (Okla. 1916) (emphasis added) (stating a legal principle so obvious that finding the phrase repeated is a challenge); *see also New Orleans J. & G.N.R. Co. v. Bailey*, 40 Miss. 395, 452 (Miss. Err. & App. 1866) (stating inversely that "the act of the agent is the act of the principal").

Here, as the ISO makes clear, "for the purpose of implementing this Stipulated Order, **the ITPM may operate *through* JXN Water, Inc.**" [Case No. 3:22-cv-686, Doc. 23 at 2, ¶ 4 (emphasis added)]. In addition, under amended paragraph 4, all documents submitted by JXN Water to the City, MSDH, or the EPA "shall be signed by the ITPM." *Id.* In other words, the

3

ITPM (principal) acts through JXN Water (agent), and in order to ensure the ITPM's involvement in implementing the ISO, the agent (JXN Water) cannot submit documents without the principal's (the ITPM's) signature.

This intended construction is also clarified by the Joint Motion of the City and the United States ("the Parties") that resulted in the amendment to the ISO. The Parties explained that JXN Water was an "entity created by the ITPM solely to implement the ITPM's obligations under the [ISO]." [Case No. 3:22-cv-686, Doc. 22, at 1 & 2 ¶ 2]. The Parties went on to explain, "For legal, financial, and practical reasons, Mr. Henifin performs many ITPM obligations *through* JXN Water." [*Id.* at 2 ¶ 3 (emphasis added)]. Those obligations executed by the ITPM through JXN Water include hiring employees, entering contracts for operation and maintenance of treatment facilities or repair of the distribution system, and receiving federal grants (including the money apportioned to the Jackson water system by Congress). [*Id.* at 2 ¶¶ 3–4]. The proposed amendment, ordered by the Court, was meant to "facilitate the ITPM's ability to fulfill" his responsibilities under the ISO "through JXN Water." [*Id.* at ¶ 5].

In addition to the clear language of the ISO and the Parties' joint statements, the practical realities of implementing the ISO demonstrate that Mr. Henifin works through JXN Water as an agency to discharge his responsibilities under the ISO. Neither the Court, the ITPM, nor the Parties intended Mr. Henifin to enter into contracts under his own name, to hire contractors under his own name, to open the requisite bank accounts under his own name for receipt of hundreds of millions of dollars from the City of Jackson, the State of Mississippi, and the United States. Instead, he established JXN Water as the agency through which "for legal, financial, and practical reasons" the ITPM would perform those responsibilities.

Indeed, Lakeland Seniors' claims in themselves illustrate the fact that JXN Water is an agent of the ITPM. Lakeland Seniors alleges JXN Water is "responsible" for water meters and fire hydrants; however, it is the ITPM who is assigned that responsibility under the ISO. JXN Water's responsibility for that infrastructure is purely derived from the fact that the ITPM acts through JXN Water. Put another way, but for the authority granted the ITPM, JXN Water would have no part in operating, maintaining, or repairing the City of Jackson's water system.

Plainly, JXN Water is, and has always been, an ITPM Agent. The ITPM and JXN Water respectfully request this Court to clarify that fact and to hold that the protection from suit provided in Paragraph 9(b) of the ISO applies to JXN Water.

## II. Lakeland Seniors has failed to provide evidence to demonstrate a prima facie case against JXN Water.

Paragraph 9(b) of the ISO (quoted above) and the *Barton* doctrine require permission of the appointing court before suit may be brought against a receiver or trustee. *See, e.g.*, *Clanton v. N. Pacific Group, Inc.*, 2010 WL 2944562, at *3 (S.D. Miss. July 22, 2010) ("In *Barton*, the Supreme Court ruled that the common law barred suits against receivers in courts other than the court charged with administration of the estate.") (*citing Barton v. Barbour*, 104 U.S. 126, 127 (1881)); *Howell v. Adler (In re Grodsky)*, 2019 WL 2006020, at *4 (Bankr. E.D. La. April 11, 2019) ("the *Barton* doctrine requires the permission of the bankruptcy court before suit may be brought against a bankruptcy trustee") *aff'd* 799 F. App'x 271 (5th Cir. 2020); *S.E.C. v. Nutmeg Group, LLC*, 2011 WL 5042092, at *2 (Bankr. N.D. Ill. Oct. 19, 2011) ("The *Barton* doctrine bars suits against court-appointed receivers . . . in the course of their receivership in courts other than the court charged with administration of the estate."). The requirement to seek leave of the appointing court prior to suit against a receiver in another court is based on common law protections recognized by the Supreme Court and circuit courts across the country for over a

5

century. *See Muratore v. Darr*, 375 F.3d 140, 143 (1st Cir. 2004) ("In *Barton* . . . , the Supreme Court ruled that the common law barred suits against receivers . . . ."); *see also In re Linton*, 136 F.3d 544, 545 (7th Cir. 1998) (Posner, J.) ("An unbroken line of cases . . . has imposed the requirement as a matter of federal common law.") (collecting cases).

The *Barton* doctrine has also been applied to protect receiver or trustee agents or other court-appointed officers. *See, e.g.*, *Lawrence v. Goldberg*, 573 F.3d 1265, 1269 (11th Cir. 2009) (explaining *Barton* doctrine "applies to actions against officers approved by the [] court when those officers function 'as the equivalent of court appointed officers'"); *Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 321 (6th Cir. 2006) (holding *Barton* doctrine "applies to trustees' counsel as well as to trustees themselves"). Here, JXN Water, operating as an ITPM Agent, should be afforded the same protection under both the ISO and common law.

Courts applying the *Barton* doctrine have discussed the rationales for the protection. An initial reason is that "a suit against the receiver has the effect to take money from the trust or estate without regard to the interests of other parties." *Nutmeg Group*, 2011 WL 5042092, at *2 (*citing Barton*, 104 U.S. at 129); *see also Davis v. Gray*, 83 U.S. 203, 218 (1872) (holding court appointing receiver "will not allow him to be sued touching the property in his charge, nor for any malfeasance as to the parties or others, without [the court's] consent") (superseded by statute). In other words, damages paid by JXN Water would be paid necessarily from the coffers of the Jackson water system, which is under the authority and management of this Court and its appointed ITPM and funded by Federal, State, and local dollars. As such, filing suit against JXN Water in another court without leave would be a "usurpation of the powers and duties which belong[] exclusively" to this Court. *Barton*, 104 U.S. at 136. "In invalidating the suit, the Supreme Court focused almost entirely on the effect of the suit on the receivership and the power

6

of the court overseeing that receivership to manage the same." *In re World Mktg. Chicago, LLC*, 584 B.R. 737, 742 (Bankr. N.D. Ill. 2018).

In a Seventh Circuit opinion, Judge Posner explained another central concern safeguarded by the *Barton* doctrine:

> If [a receiver] is burdened with having to defend against suits by litigants disappointed by his actions on the court's behalf, his work for the court will be impeded. This concern is most acute when suit is brought against the [receiver] while the [receivership] is still going on. The threat of his being distracted or intimidated is then very great.

*In re Linton*, 136 F.3d at 545.

This Court also has recognized this risk and provided additional protection to shield against the danger of distraction. Paragraph 9(d) of the ISO orders,

> In light of the need for the ITPM and ITPM Agents to focus their attention on the obligations of this Stipulated Order, unless granted leave of this Court, the ITPM and ITPM Agents may not testify in any litigation or proceeding, other than this case, with regard to acts or omissions of the City, the ITPM, or ITPM Agents related to the System and WSBA.

[Case No. 3:22-cv-686, Doc. 6, at 14 ¶ 9(d)]. As Judge Posner summarizes, if a receiver must face distracting litigation while also implementing the court's orders, receivership "will become a more irksome duty, and so it will be harder for courts to find competent people to appoint." *In re Linton*, 136 F.3d at 545. These matters are already rife with distractions without permitting specious litigation against JXN Water, and the ITPM by extension.

Lastly, "requiring that leave to sue be sought enables [the appointing court] to monitor the work of the [receiver] more effectively." *Id.* The *Barton* doctrines purposes are summarized as: (1) protecting the assets under the authority of the appointing court; (2) maintaining the integrity of the appointing court's jurisdiction; (3) controlling burdensome litigation that could impede the receiver's work; and (4) allowing the appointing court to monitor complaints against the receiver more effectively. *In re World Mktg. Chicago*, 584 B.R. at 743.

7

### A. Lakeland Seniors must demonstrate a prima facie case against JXN Water, which requires more than simple notice pleading.

Each of the concerns discussed above are presented by Lakeland Seniors' Motion for Leave and its proposed suit against JXN Water. The next question, then, is what standard this Court applies to evaluate the Motion for Leave to File Suit.

As explained in courts across the country, "in order to obtain leave from an appointing court to sue a trustee or receiver, . . . [a] claimant must *demonstrate* that it has a *prima facie* case against the prospective defendant." *Nutmeg Group*, 2011 WL 5042092, at *3 (emphasis in original); *see also In re VistaCare Group, LLC*, 678 F.3d 218, 232 (3rd Cir. 2012) ("A party seeking leave of court to sue a trustee must make a prima facie case against the trustee, showing that its claim is not without foundation."); *Anderson v. United States*, 520 F.2d 1027, 1029 (5th Cir. 1975) ("Before such permission is granted, the prospective plaintiffs must make out a prima facie case against the trustee."); *In re Highland Capital Mgmt., LP*, 2023 WL 5523949, at *40 (Bankr. N.D. Tex. Aug. 25, 2023) (applying *Barton* analysis in different context and quoting *VistaCare*); *In re World Mktg. Chicago*, 584 B.R. at 743 ("if the [] court determines that the movant has failed to propound a *prima facie* case . . . permission should be denied").

This prima facie case or "not without foundation" standard may be *similar* to the standard applied to evaluate a Rule 12(b)(6) motion to dismiss; however, the prima facie case standard "involves a greater degree of flexibility." *In re VistaCare Group*, 678 F.3d at 232–33. That flexibility permits the reviewing court "to determine whether a claim against the trustee has merit" and "to determine the potential effect of a judgment against the [receiver] on the [receivership]." *In re Highland Capital Mgmt.*, 2023 WL 5523949, at *40; *see also In re Grodsky*, 2019 WL 2006020, at *4 (finding "the claims against the [trustee] and his attorneys do not have merit" and denying motion for leave to file suit) *aff'd* 799 F. App'x 271 (5th Cir. 2020);

8

*Richardson v. Monaco (In re Summit Metals, Inc.)*, 477 B.R. 484 (Bankr. D. Del. 2012) (stating moving party "must establish a *prima facie* case against the trustee on the merits" and reviewing court "has discretion to decide whether to hold a hearing on a party's motion [for] leave").

In short, **"To satisfy the '*prima facie* case standard,' 'the movant must do more than meet the liberal notice-pleading requirements under Rule 8.'"** *In re Highland Capital Mgmt.*, 2023 WL 5523949, at *40 (quoting *In re World Mktg. Chicago*, 584 B.R. at 743 (collecting cases)); *In re VistaCare Group*, 678 F.3d at 233 (stating appellate courts should defer to reviewing court's determinations on underlying facts and effect on estate).

"Even if a *prima facie* case is propounded, however, the express holdings of *Barton* and *Linton* appear to require more." *In re World Mktg. Chicago*, 584 B.R. at 743 (citing *CIT Comms. Fin. Corp. v. Maxwell (In re marchFIRST, Inc.)*, 2008 WL 4287634, at *2 (Bankr. N.D. Ill. Sept. 12, 2008)). The reviewing court "must also determine the degree to which it must control the litigation to prevent it from becoming burdensome to and impeding the trustee's work." *Id.* For that analysis, the Ninth Circuit outlined non-exhaustive factors a reviewing court should consider, including whether (1) claims pertain to actions of the receiver while administering the receivership; or (2) claims involve the receiver or agent acting within the scope of his authority so that the receiver or agent is entitled to derivative judicial immunity. *See Beck v. Fort James Corp. (In re Crown Vantage, Inc.)*, 421 F.3d 963, 976 (9th Cir. 2005). The prima facie case standard is "a broader standard than the 'plausibility' standard" and places a burden on the moving party to show the "proposed claims are *not with foundation* [and] are *not without merit*." *In re Highland Capital Mgmt.*, 2023 WL 5523949, at *41 (emphasis in original). In addition, the reviewing court should also consider its knowledge of the facts, the parties, and any additional

9

evidence presented. *Id.* This Court's decision on the motion for leave "may [also] involve a balancing of the interests of all parties involved." *Id.* at *40.

**B. Lakeland Seniors' claims against JXN Water are without merit or foundation.**

Under that prima facie case standard, the proposed claims against JXN Water are plainly without foundation. As an initial point, Lakeland Seniors appears to assert a claim against JXN Water for discharge from a sewer line based on the presumption that the ITPM and, therefore, JXN Water "likely will soon be responsible" for that infrastructure. [Doc. 50, at 2]. Needless to say, the possibility or even likelihood that JXN Water will *become* responsible for infrastructure owned and maintained by the City of Jackson does not give rise to a claim against JXN Water for any alleged sewer discharge. The same would be true even *if* an Interim Stipulated Order is entered with regard to the sewer system because the harms alleged are two years in the making, and those alleged liabilities of the City are not transferred to the ITPM or JXN Water. Likewise, JXN Water has no responsibility for "groundwater" migrating onto Lakeland Seniors' property. [*See* Doc. 50-1, Exh. 1 at 2]. From the ITPM's appointment until the filing of the Motion for Leave, the ITPM's and JXN Water's sole responsibilities are over Jackson's drinking water system and the WSBA.

Next, the August 7 letter makes clear that the complained-of issue predates the ITPM's appointment or JXN Water's existence and that notice was not provided to JXN Water. Lakeland Seniors explains that, as early as June 2020, it was encountering continually "water and/or other aqueous substances" that slowed the Project and increased costs. Further, Lakeland Seniors claims that, in November 2022, it "notified the City of Jackson, Mississippi, JXN Water Inc., and UMMC" of a faulty water meter and leaking fire hydrant. However, the ITPM was not appointed until November 29, 2022. [*See* Case No. 3:22-cv-686, Doc. 6, entered 11/29/22]. Moreover, JXN Water was not incorporated by the ITPM until December 7, 2022 (*see* ITPM Exhibit 1) and was

10

not utilized as an ITPM Agent until sometime later than month. In other words, the delays and damages were incurred for two and a half years before JXN Water was formed. Worse still, Lakeland Seniors did *not* provide any evidence that notice was provided to the ITPM or JXN Water in November 2022, nor could it provide such evidence. In truth, Lakeland Seniors communicated solely with the City of Jackson and UMMC. This fact explains why JXN Water "undertook no further action with respect to Lakeland's complaint." [Doc. 50-1, Exh. 1 at 2]. No such complaint was made to the ITPM or JXN Water.

The lack of communication continued. As Lakeland Seniors admits, on June 2, 2023, after taking samples from various locations on their property, dye tracing and scoping the sewer lines, and determining that "sewage, groundwater, and other contaminated materials were migrating . . . onto and beneath the Lakeland Property," Lakeland "informed **[MDEQ], [MSDH], and the City of Jackson**, Mississippi of . . . [the] still-broken water meter and the sewage contamination of the groundwater." [*Id.* (emphasis added)]. Lakeland Seniors does not even allege that, in June 2023, it communicated its concerns to JXN Water.

It was not until mid-June, after Lakeland Seniors filed its initial Complaint on June 12, that JXN Water was made aware of Lakeland Seniors' concerns. At that time, the ITPM visited the site and observed that both the water meter and the fire hydrant on the roadway adjacent to Lakeland Seniors' property had been recently replaced. [*See* Doc. 50-3, Exh. 3 at 2]. At the time of that inspection, the ITPM did not observe any water leaking from the meter or the hydrant and did not see any built-up water depth migrating uphill to Lakeland Seniors' property. [*Id.*]. This information was relayed to counsel for Lakeland Seniors shortly after receipt of the August 7 letter, approximately two weeks after the initial Complaint had been dismissed.

11

To demonstrate further that notice was *not* given to JXN Water, the only individual listed as "involved in the subject matter" and affiliated with JXN Water is the ITPM. [*See* Doc. 50-1, Exh. 1 at 3]. Lakeland Seniors does not allege that it communicated with anyone else at JXN Water, and it does not allege to have spoken with Mr. Henifin in November 2022 or June 2023, much less provide evidence of those communications.

Because notice was *not* provided to the ITPM or JXN Water, there cannot be any meritorious claim of negligence against JXN Water. Further, Lakeland Seniors has not provided any evidence of significant ongoing leaks from the new water meter or fire hydrant, certainly none that would cause the parking lot to sink or require removal of the asphalt already laid. Indeed, Lakeland Seniors states it has suffered damages "resulting from attempts to mitigate the excessive *groundwater* and *sewage* during the Project." [*Id.* at 2]. Neither of those sources are the responsibility of the ITPM or JXN Water, and no meritorious claim can be made against JXN Water for increased construction costs associated with any mitigation efforts.

Lakeland Seniors has failed to demonstrate a prima facie case against JXN Water. It has not provided allegations sufficient to survive Rule 12(b)(6) analysis, much less evidence sufficient to meet the more flexible standard for evaluating a motion for leave under the *Barton* doctrine. In addition, the *Crown Vantage* factors weigh against granting leave to file suit. As to the first factor, the claims asserted against JXN Water pertain to a time when the ITPM is still implementing the ISO. As to the second factor, under the ISO, "Except for instances of willful misconduct or gross negligence, the ITPM and ITPM Agents shall have the status of officers and agents of this Court, and shall be vested with the same immunities as vested with this Court." [Case No. 3:22-cv-686, Doc. 6, at 14 ¶ 9(b)]. Even in the most favorable light, Lakeland Seniors have failed to allege willful misconduct or gross negligence; accordingly, JXN Water's

derivative judicial immunity, as an ITPM Agent, would bar any claim against it. *See, e.g.*, *In re Summit Metals*, 477 B.R. at 501 ("Because Richardson's Complaint is composed almost entirely of claims stemming from official, Court-approved or Court-ordered actions, the factual allegations in the Complaint do not support a right to relief against the Defendants.").

### C.  This Court should deny the Motion for Leave and enjoin future litigation.

Based on the foregoing, this Court should deny Lakeland Seniors' Motion for Leave to File Suit against JXN Water. In addition, "district courts are authorized to issue stays or enjoin future litigation to preserve their control over receivership assets." *McIntire v. China MediaExpress Holdings, Inc.*, 113 F. Supp. 3d 769, 775 (S.D.N.Y. 2015); *see also S.E.C. v. Byers*, 609 F.3d 87, 92 (2d Cir. 2010) ("An anti-litigation injunction is simply one of the tools available to courts to help further the goals of the receivership.").

In this case, the ITPM has already had to expend time, attention, and receivership assets opposing a claim for harms that originated two years before his appointment and for complaints where notice was never provided to the ITPM or JXN Water. Even construing Lakeland Seniors' allegations in the most favorable light, the samples allegedly confirm sewer discharge and the observations of standing groundwater at the back of the lot. Both sewer discharge and groundwater are outside the responsibility of the ITPM. Accordingly, JXN Water respectfully requests this Court enjoin future litigation by Lakeland Seniors for any damages incurred prior to this Court's order on the pending Motion.

\* \* \* \* \*

Respectfully submitted this the 27th day of September, 2023.

                                                                       */s/ Mitch McGuffey*
                                                                        Charles Mitchell McGuffey (MSB #104986)
                                                                        Malissa Wilson (MSB # 100751)
                                                                        FORMAN WATKINS & KRUTZ LLP
                                                                        210 East Capitol Street, Suite 2200
                                                                        Jackson, MS 39201
                                                                        Telephone: (601) 690-8600
                                                                        Facsimile: (601) 960-8613
                                                                        mitch.mcguffey@formanwatkins.com
                                                                        malissa.wilson@formanwatkins.com

                                                                        *Counsel for ITPM*

OF COUNSEL:

F. Paul Calamita, III (*admitted PHV*)
AQUALAW, PLC
6 South 5th Street
Richmond, VA 23219
Telephone: (804) 716-9021
Facsimile: (804) 716-9022
paul@aqualaw.com