**Exhibit F**
United States' Responses to Comments

**EXHIBIT F**
**United States' Responses to Comments**

TABLE OF CONTENTS

A.     Comments in Support of the Proposed Stipulated Order (633 commenters)................... 2

1.     Examples of positive experiences (19 commenters) ........................................ 3

2.     Complaints about the Sewer System (49 commenters)................................... 5

3.     Additional work or concerns about the Sewer System (3 commenters) ........................ 6

4.     Long-term management of the Sewer System (18 commenters) ................................ 9

B.     Comments Opposing or Critical of the Stipulated Order (25 commenters)................... 10

1.     Scope of ITPM's authority and lack of public input, transparency, and oversight of ITPM and spending (18 commenters)................................................... 10

2.     Local hiring and contracting (12 commenters) ........................................... 20

3.     Supplemental Environmental Project for private laterals (1 commenter).................... 22

4.     Sewer rates and fees (4 commenters)................................................... 24

5.     Geographic areas of focus (4 commenters)................................................ 25

6.     JXN Water's call center (1 commenter)................................................... 26

7.     Procedural background (2 commenters) ................................................ 28

C.     Other Comments ................................................................... 29

1.     Alleged causes of, or responsibility for, the Sewer System's noncompliance (87 commenters)................................................................................ 29

2.     Solely about drinking water or Safe Drinking Water Act Case (6 commenters)........... 30

3.     Stormwater management (5 commenters)................................................ 30

4.     Questions............................................................................. 31

The United States held a public comment period on the proposed Stipulated Order from August 1 through 31, 2023, which included three public meetings. The United States reviewed each written and spoken comment submitted during the public comment period, as well as a few comments emailed as late as September 3, 2023. The comments were primarily from individuals who identified themselves as living and/or working in Jackson, and include a former mayor, a former Public Works Director, and members of the Mississippi state legislature. Some comments were submitted on behalf of organizations, including the Great City Mississippi Foundation, Pearl Riverkeeper, the People's Advocacy Institute, the Mississippi Poor People's Campaign, and the Spring Lake Fishing and Outing Club.

After reviewing all of the public comments from approximately 666 commenters, the United States concluded that the comments did not disclose facts or considerations indicating that the Stipulated Order is inappropriate, improper or inadequate. Based on the comments, the United States sought a minor amendment of the Stipulated Order to expressly require additional reporting by the ITPM on the Sewer System's finances. The United States also sought permission from the Court to disclose certain comments containing commenters' personally identifiable information to Ted Henifin—the prospective interim third-party manager of the City's Sewer System ("Sewer ITPM") who would be appointed under the Stipulated Order and the current interim third-party manager of the City's drinking water system ("Water ITPM")—so that he may investigate water/sewer issues raised in the comments. On Sept. 29, 2023, the Parties and the ITPM filed a stipulation agreeing to this amendment. Dkt. No. 66 (Joint Stipulation to Provide Certain Personally Identifiable Information (PII) to ITPM and for Entry of Amended Stipulated Order). The United States now seeks the Court's entry of the Stipulated Order, as amended by the addition of the stipulated language in Dkt. No. 66. *See* Stipulated Order (cited hereinafter as "SO") at ¶ 34.

Below, the United States summarizes and organizes the substance of significant comments into general categories and responds to the concerns raised. All tallies of the comments are approximate and may not add up to the total number of commenters because some commenters submitted duplicative comments or both written and spoken comments, and because some overall supportive/critical comments raised topics that fell within multiple sub-categories.

**A. Comments in Support of the Proposed Stipulated Order (633 commenters)**

The vast majority of comments supported entry of the Stipulated Order and specifically supported the management of the Sewer System by Ted Henifin (operating through JXN Water, Inc.) and thus do not warrant withdrawal of consent to, or amendment of, the Stipulated Order. Many commenters identified themselves as residents of the City, and a few also identified themselves as working in the City or as owners/managers/investors of businesses and properties in the City. As a basis for their support, some comments also generally praised Mr. Henifin's effectiveness as the Water ITPM. Examples are:

- I support the court's order and the sewer system being managed by Ted Henifin and JXN Water.

- Yes, we definitely support Mr. Henifin and JXN Water's taking over Jackson's sewer system as well as water system. He has shown his capability, and his ability to listen to all segments of the community.

- I am in favor of Ted Henifin taking over management of the City of Jackson's sewer system. He has done great work with our water system since he took control of that and has exhibited a commitment to excellence and integrity.

- In the time that Ted has been the manager of the city water system we have seen vast improvements in everything from billing to customer service to water pressure.

Below, the United States responds to significant sub-categories within the comments supporting entry of the Stipulated Order.

1.  **Examples of positive experiences (19 commenters)**

As a basis for their support, some comments provided examples of positive experiences with Mr. Henifin's work as the Water ITPM, as well as with Mr. Henifin's work on the Sewer System during the period of July 31 through August 16, 2023, when the Stipulated Order was briefly in effect (*see* Dkt. Nos. 40 and 46).  The comments cited quicker responses, improved customer service, and more effective actions regarding water and sewer problems under Mr. Henifin's stewardship than under the City's.  For example:

- Although the city workers were sympathetic and courteous, the city sewer truck and equipment remained inoperative until Ted Henifin took over and in the few weeks that he was allowed, a crew arrived to drain and mark the [sewer] blockages.

- Since the water system was turned over to Ted Henifin in late 2022, we have not experienced any water pressure issues.  In addition, there were several water leaks on [street] within a few hundred yards of [business].  We reported those leaks to the city for at least two years and there was never any action to fix them.  Because of the continuous water leaks, the streets experienced significant decay and extremely large potholes developed, causing damage to many cars, including our employees and our station fleet of vehicles.  Not only were the leaks repaired in a matter of months after Ted Henifin and his team took over, the damaged streets were also paved and now there are no leaks or dangerous potholes.

- For the past 2 years, we have repeatedly faced sewer problems in our part of the neighborhood.  There was a collapse in the sewer main that had gone unresolved for years by the city.  . . .  When the JXN Water team was brought into the discussions, they quickly identified the problem and developed a solution.  Within a week, both lines were repaired, the hole was covered, and the street was repaired.  This public health hazard and safety problem, that the city was utterly incapable of addressing, was fixed in about a week by the competent team at JXN Water.

- The city began work on the sewer system on one of the streets bordering our house to the extent that we were literally unable to use our driveway for 2 months and that section of the street for 3 months.  We were without water on multiple occasions when the ongoing sewer work caused damage to the water system.  . . .  It eventually required Ted Henifin and his JXN Water team being brought in to complete repairs.  They were finished with the project in under 2 weeks.  I feel fairly confident that had they not been assigned to take over the street would still be blocked off and torn up with no completion of project.

- I moved from one area of Jackson to another in April of this year. During this period of time I had to shut off the water in my old home and turn on the water at my new residence. I believe during this period of time the water department was transitioning to the JXN

Water organization.  It took me multiple attempts to contact the old water association to have my water turned off at my old residence.  It took me more than a month, and multiple calls to the old number, one of which I stayed on hold for hours, to have the water transferred to my name at my new residence.  It was only when I contacted JXN Water through their new process that I was able to talk to someone and finally have the water transferred to my name at my new home.  I can speak from experience, the customer experience with Mr. Henifin's group is far superior to the old group.

- I have experienced firsthand numerous problems and issues over the last five years, including service and billing issues.  Finally my bill is being sent on a monthly basis and our water issues have improved tremendously.  We have not had to purchase bottled water as we did in the past.

- I am a developer in city of Jackson.  We do commercial and residential development and have seen great improvement in the water dept in our restaurants and residences since Ted Henifin has taken over.

- There is a 24/7 call center.  I have personally called in leaky meters, water breaks and other issues.  What used to take years and a lot of political capital is getting resolved in an orderly ticketed fashion.

- Before JXN Water took over the operation of the system, the water at my residence was discolored and experienced low pressure.  I have seen drastic improvements under new management and anticipate the same with JXN Water taking over sewer administration.

- JXN Water had a leaking fire hydrant issue outside my dealership lot.  They came out a day after the leak began.  I checked on the crew as I got off work.  It was 6:20.  They were all still working after being out there all day.  They said they would be done that night and we should have water in the morning.  I have to tell you that I'm impressed with those guys.  The leak began sometime Sunday night and just 48 hours later they were getting close to getting it fixed.  That is a much different response than our experience with the other hole we had on [street] for so many months.  These guys are all employed by JXN Water.  They were eager to answer my questions and worked their tails off.  One guy stood in chest deep water for two hours as he successfully disconnected the old hydrant.

- I live on a busy road that has numerous water breaks.  Instead of waiting days or weeks for a repair, I have seen water crews repair breaks within hours.  This is unprecedented in the city!

**United States' Response:** The examples of positive experiences support the United States' request for entry of the Stipulated Order and thus do not warrant withdrawal of consent to, or amendment of, the Stipulated Order.  The Stipulated Order is similar in significant respects to the Safe Drinking Water Act Case's Interim Stipulated Order, which has been in effect since

November 29, 2022.  In particular, the two orders both appoint Mr. Henifin as the manager of critical city services and provide a similarly broad scope of authority—including latitude to exercise professional judgment and to act more quickly than the City typically has, and flexibility to adapt to funding and technical challenges.  For these reasons, individuals' personal experiences over the last 10 months with implementation of the Interim Stipulated Order and with Mr. Henifin as an interim third-party manager carry significant weight.

### 2. Complaints about the Sewer System (49 commenters)

Some comments described complaints about the Sewer System based on personal experiences.  A few comments requested a response about currently ongoing problems at their property, sometimes providing photos or supporting documents.  Examples are:

- Since 2005, the creek behind our home has been full of sewage from sewage line breaks and overflows.  We do get periods of respite from the sewage, but most of these 18 years we have been challenged with raw sewage in our backyard!  . . .  The city of Jackson has had its chance to fix this over 18 years!  Please do not abandon us in our time of need.  We have lost treasured neighbors, friends, and quality of life because the entire community smells of sewage frequently.

- All three properties have sewage backing up issues.  Coming up through manholes, backing in toilets.  Driveway cracked.  Loss of rent.  Streets flooding.  Fence destroyed.  We have asked [that] the drainage ditch debris in pipes be blown cleared out [sic] which would help a great deal.  There is a sewage drainage ditch between these streets which overflows with sewage and smells horrible.  We have spoken with Public Works - Bridges & Sewage Divisions many times, sent videos and pictures.  They have come out, nothing done/completed.  I'm sure they're doing their best.  Very nice.  PLEASE HELP!

- As someone who lives in Jackson and is raising a family here, JXN Water is the only way that I can justify keeping my family here. The raw sewage overflowing in my street for two years has yet to be fixed.

- [Business] has experienced raw sewage in the drainage ditch adjacent to our building for two years.  We have contacted all responsible parties on 10 occasions with no results. Please help.

- At one point this year there were three active sewer leaks within a few blocks of my house in Jackson.  These were all reported to the City who did nothing.

**United States' Response:** The United States regards these comments as supporting entry of the Stipulated Order because they underscore the need for near-term relief for the City's continuing noncompliance with the Consent Decree and the resulting adverse environmental and public health impacts felt by people who live and work in the City. Thus the comments do not warrant withdrawal of consent to, or amendment of, the Stipulated Order.

As to the comments that complained about an ongoing problem at a specific address, the United States will forward them in unredacted form to Mr. Henifin for follow-up once the Court enters the Parties' Joint Stipulation to Provide Certain Personally Identifiable Information (PII) to ITPM and for Entry of Amended Stipulated Order (Dkt. No. 66). Under the Stipulated Order, part of the ITPM's responsibilities in operating the Sewer System is to address sewer overflows. Along with the 215 locations of emergency sewer failures prioritized in Appendix C of the Stipulated Order, the ITPM will address newly reported overflows and increase preventive measures (such as sewer line inspections and cleaning) as part of operating and maintaining the Sewer System and implementing the Consent Decree's Sewer Overflow Response Plan. SO at ¶ 5.n.

### 3. Additional work or concerns about the Sewer System (3 commenters)

Some comments, although supportive of the Stipulated Order, requested that the Stipulated Order address additional work or concerns about the Sewer System. Specifically:

- To improve notifications to the public about SSOs, the ITPM should prioritize utilizing a "heatmap" website showing SSOs that is kept updated and issuing more timely notifications to the public, such as through email and text notifications.

- The ITPM should consider and alleviate the "significant staffing issues faced by the City" with regard to its Public Works Department, as upper-level management positions have gone vacant for years or are filled on an interim or temporary basis, and few skilled workers remain to operate equipment such as sewer vacuum trucks.

- Sewer and water should be considered together because when the sewer overflows, sewage enters the water. There should be a study on cancer rates and other impacts as a result of "toxic waste" being in the water.

- The impact of stormwater on the Sewer System should be considered.  Ditches, culverts, and tributaries are no longer being cleared, which causes sewer lines in them to burst.

- Ensure FOG (Fats, Oils, and Grease) education is included as it was in the Consent Decree.

**United States' Response:** These comments do not warrant withdrawal of consent to, or amendment of, the Stipulated Order.  For some suggestions for additional work/investigation (e.g., stormwater, cancer study), the Stipulated Order does not authorize the ITPM to perform or fund them.  For example, stormwater management (e.g., drainage ditches) is and will remain a City responsibility.  To the extent that a suggestion is within the ITPM's authority, the ITPM has the authority and discretion to consider and address it based on his professional judgment.

As to notifications to the public about SSOs, the Stipulated Order requires the ITPM to make best efforts to implement the Consent Decree's Sewer Overflow Response Plan ("SORP"), which includes posting signage about sewer overflows for which there is a reasonable expectation of public exposure.  SO at ¶ 5.n.  Should the ITPM wish to revise the substance of the SORP, he must submit the revisions to EPA and MDEQ within 365 days of the Order Effective Date, and the revised SORP cannot be implemented until EPA grants approval.  *Id.*  Mr. Henifin has also indicated that within 30 days of the Order Effective Date he intends to enter into contracts/agreements to respond to sewer overflows and post signage about sewer overflows for which there is a reasonable expectation of public exposure.  *Id.* at 5.  Mr. Henifin also intends to put in place systems to (a) create and regularly update a "heatmap" webpage of reported ongoing sewer overflows, reflecting both the location and estimated volume of sewer overflows and (b) send electronic notifications of newly reported sewer overflows through an opt-in text or e-mail system.  Henifin Decl. at ¶ 12.  He estimates it may take up to six months before these systems are fully operational.  *Id.*

As to FOG issues, the Stipulated Order requires the ITPM to make best efforts to implement the existing FOG Control Program required by the Consent Decree.  SO at ¶ 5.n. Should the ITPM wish to revise the substance of the FOG Control Program, he must submit the revisions to EPA and MDEQ within 365 days of the Order Effective Date, and the revised program cannot be implemented until EPA grants approval.  *Id.*  Mr. Henifin has also indicated his intent to continue FOG inspections of food service establishments.  *Id.* at 5.

As to the Public Works Department, the staffing challenges facing the City are symptomatic of the lack of technical, financial, and managerial capacity that has contributed to the City's failure to fully comply with the Consent Decree and the law.  Sustainable staffing— including adequate funding and expertise for employee recruitment, retention, and training at every level of the Public Works Department involved in running the Sewer System—is necessary to enable the City to operate the Sewer System in compliance with the CWA, MAWPCL, and the NPDES Permits.  As a relatively short-term remedy, the Stipulated Order provides the ITPM the authority and discretion to staff the Sewer System with employees and contractors based on his professional judgment.  However, the Stipulated Order also recognizes the need for the City to rebuild its capacity sufficiently to operate the Sewer System after the interim third-party managership ends and the City resumes responsibility.  For example, the City must submit a Staffing and Training Plan for retaining and training the appropriate level of staffing needed to continue implementing the programs and procedures under the Stipulated Order.  *See id.* at ¶ 15.f. During the transition period to the City, the ITPM must make its staff and contractors reasonably available to the City to educate, interface with, and assist the City in transferring responsibilities. *Id.* at ¶ 5.bb. Also, the ITPM may make staffing recommendations as part of the required Further Measures Report, *see id.* at ¶ 5.aa, and should consider staffing costs as part of the required

Financial Management Plan, *id.* at ¶ 5.v.  Ultimately, the City is responsible for rebuilding the Public Works Department's capacity to manage the Sewer System, and such rebuilding will be a critical underpinning for the City's compliance with the Consent Decree or a future consent decree modification.

### 4.  Long-term management of the Sewer System (18 commenters)

Some comments that supported management of the Sewer System by Mr. Henifin also stated that they would like the time period of the third-party managership to be indefinite or extendable.  Other comments stated that the third-party managership should be permanent or that control should not ever revert to the City.  One comment suggested the formation of a public water/sewer authority governed by an independent board comprised of individuals with utility and financial management experience.  Another comment suggested forming a regional water/sewer utility district.

**United States' Response:** These comments do not warrant withdrawal of consent to, or amendment of, the Stipulated Order.  The Stipulated Order and interim third-party managership are intended to last four years, unless standards for earlier termination of either are met, *see* SO at ¶¶ 10.a and 28.a, b, and c, or unless the Court approves the United States' motion, after consultation with MDEQ, for an extension of the Stipulated Order, *see id.* at ¶ 28.d.  The Stipulated Order is not the proper vehicle to address or alter the long-term or permanent control of the Sewer System and assumes that the City, as the owner of the Sewer System, will keep operating it after the Stipulated Order terminates and in accordance with the Consent Decree or a future consent decree modification.

**B.  Comments Opposing or Critical of the Stipulated Order (25 commenters)**

Below, the United States responds to significant sub-categories within the comments opposing or critical of the Stipulated Order.

### 1.  Scope of ITPM's authority and lack of public input, transparency, and oversight of ITPM and spending (18 commenters)

A large proportion of the comments opposing or critical of the Stipulated Order focused on the relative lack of control and participation by citizens and elected officials if the Sewer System is placed under the control of the ITPM and a perceived lack of built-in transparency requirements. Comments urged that citizens be allowed to directly participate in overseeing the Sewer System and the ITPM, expressing concern that the ITPM has authority to generally run the Sewer System without involvement or oversight by the public or the City (e.g., Public Works Director, Mayor, or City Council) and that requirements for the ITPM to keep the public informed do not allow for participation before the ITPM makes a decision.  Some comments also noted disagreement with authority seemingly vested in just two individuals (the ITPM and Judge Wingate) and remarked that the court process was inappropriate and insufficient for addressing citizens' concerns.  One comment also stated—inaccurately—that Mr. Henifin was involved with the Flint, Michigan drinking water crisis[1] to express skepticism that management by Mr. Henifin and management in general by an ITPM and without community input could succeed.  Another comment stated that the same person should not be in charge of both the drinking water system and the Sewer System. Some comments critiqued that the Stipulated Order does not build in federal or public oversight of the state government's actions, particularly with regard to use of federal monies.

---

[1] Mr. Henifin was not involved in the Flint crisis.  Henifin Decl. at ¶ 4.  As Mr. Henifin's CV shows, during all relevant times, he was working as General Manager of the Hampton Roads Sanitation District (2006-2022).  Henifin Decl., Ex. 1 (Henifin *curriculum vitae*).

The concerns about the breadth of the ITPM's authority and a lack of public input, transparency, and oversight generally related to (a) spending and finances, (b) hiring and contracting, (c) Sewer System Service Charge (rate) increases, (d) the ITPM's records, and (e) privatization or decisions regarding the future of the Sewer System.  Examples are:

- Citizens of Jackson have been excluded from the process concerning the water and sewer systems and their future.

- The Stipulated Order transfers the citizens' self-determination to Judge Wingate.

- The people of Jackson have always been and remain the experts of our own lived experiences and we deserve to have meaningful opportunities to provide input and obtain information about improvements to the sewage system that will affect our city for generations to come.

- I have watched with a degree of disgust as the mandated responsibility of duly elected local officials and the control of the resources to carry out mandated federal government policies have been placed in the hands of a single, appointed individual.  . . .  I do not agree with the "infrastructure czar" model as an implementation strategy.  Duly elected officials must be involved in the process, since voters will ultimately hold them accountable.

- You have neutered our political leadership.

- The ITPM is not expressly prohibited from transferring assets to a private entity, such as a profit-driven corporation.

- The city should be present at every meeting, function, and decisionmaking.  They need to see how the process works and hopefully this will add value to them and help them become better leaders.  Also, Jackson leaders will bring a different perspective to the table.

- Status hearings are not a place where folks can actually provide input in a way that is appropriate and friendly to residents.  The hearings occur during the day and you have to leave your cell phone behind.

- At the status hearing to give public comments, I felt more like I was being interrogated by a prosecutor than I was giving public comment.

- I didn't like what you mentioned about the rate increase will be solely on Mr. Henifin.  I welcome input from the City Council [on a rate increase], but if they disagree, then he has a final ruling.  This is our city.  We thank you for doing it for us.  We definitely need to address the issues, but we need to have a say so.

Some comments requested specific changes to the Stipulated Order to:

- implement a citizens' oversight committee or public accountability oversight board to review the ITPM's plans and actions and provide input

- implement a citizens' selection committee for contract bids

- require the ITPM to hire an ombudsman to represent the citizens or to serve as the liaison between the Parties, the ITPM, and the people of Jackson

- amend Paragraph 18.a to require the ITPM to disclose records if requested by the public within 21 days unless the records would be otherwise exempt from disclosure pursuant to the Mississippi Public Records Act

- amend Paragraph 6 (Limitations of ITPM's Authority) by striking "unless otherwise ordered by the Court" so there is no ability for the ITPM to request to sell the City's assets or privatize the Sewer System

- amend Paragraph 5.gg by require customer complaints to be processed with a local independent source separate from the ITPM

- amend Paragraph 5.gg to require that procedures to receive and respond to customer complaints be implemented by a date certain, within 60 days of entry of the Stipulated Order

- amend Paragraph 18.b, which requires the ITPM to establish and maintain a public website to post information that "in the ITPM's reasonable judgment" should be disclosed to the public, to include: (i) a clear definition of what "reasonable judgment" is based on; (ii) a specific requirement for how often to update the ITPM's website (recommending weekly updates); and (iii) a requirement for the ITPM to post to the website all notices and other information to be submitted to MDEQ pursuant to the CWA and the wastewater system's NPDES permit, including but not limited to required SSO Assessment Forms pursuant to the City's Sewer Overflow Response Plan, and copies of all official correspondence concerning Notices of Violation, reporting or inspections under the CWA

- increase the frequency of the ITPM's quarterly status reports to monthly status reports

- increase the frequency of the ITPM's quarterly public meetings to monthly or bi-monthly public meetings

- place the City's information-retention obligations under Paragraphs 86 to 88 of the Consent Decree on the ITPM and JXN Water

- implement an institutionalized community input process into how money on the Sewer System is spent

- amend Paragraph 5.w to remove all provisions that give the ITPM unilateral control over rate changes

- require the ITPM to report all accounts, balances, payments, contracts, and other financial interests

- amend Paragraph 5.q to require the ITPM to disclose contracts and agreements, and

- require monthly written reports of project implementation and progress and of project accounting and financials.

**United States' Response:** These comments do not warrant withdrawal of consent to the Stipulated Order.  In response to comments about the ITPM's responsibility and accountability for financial accounts and spending, the Parties agreed to amend the Stipulated Order's reporting requirements in the fashion detailed further below pursuant to their Joint Stipulation to Provide Certain Personally Identifiable Information (PII) to ITPM and for Entry of Amended Stipulated Order (Dkt. No. 66).  Under the circumstances, allowing the ITPM broad authority and latitude to manage the Sewer System with speed and flexibility—rather than with additional layers of consultation and review by citizens or elected officials—is appropriate and the most efficient and effective means of providing some near-term relief related to sewer overflows and prohibited bypasses.

Further, the Stipulated Order is not unilaterally and undemocratically imposed on the City of Jackson by the federal government or the Court.  Rather, the Stipulated Order is the path forward approved by the City's elected officials, who are accountable to their constituents.  Specifically, the City consented to the Stipulated Order through approval by the City's Mayor and by the vote of five of the seven City Council members.[2]  (The same is true of the 2013 Consent Decree, which the City consented to with the necessary approvals by the Mayor and City Council members.)

---

[2] See Minutes of July 12, 2023 Special Meeting of City Council at page 519, published at, https://storage.googleapis.com/proudcity/jacksonms/uploads/2023/07/785fb61d-july-12-2023-special-council-meeting.pdf (last accessed Sept. 25, 2023).

The City, through the City Attorney, also specifically requested the type of short-term relief embodied in the Stipulated Order during the May 9, 2023, status conference in the Safe Drinking Water Act Case: "I think what the City of Jackson would like to see is for us to stay the current consent decree on the wastewater system and for us to move forward with a short-term agreement that would allow us—and when I say 'us,' I might be including Mr. Henifin, that would allow the City of Jackson to move forward really focusing on those 256 SSOs [sanitary sewer overflows] and trying to actually gain some type of resolution for those before moving forward with the underlying requirements of the consent decree." *See United States v. City of Jackson*, 3:22-cv-00686-HTW-LGI (S.D. Miss., May 9, 2023) (Dkt. No. 31), transcript at pp. 26-27.

The Stipulated Order in fact reflects input from the City because it is the result of complex, arms-length, and often adversarial negotiations involving the United States, MDEQ, and the City. During negotiations, the City was zealously represented by its Office of the City Attorney and by experienced outside counsel and obtained concessions from the plaintiffs.  Importantly, if certain standards are met, the City has the ability to resume control of the Sewer System, SO at ¶ 10.a, and the ability to terminate the Stipulated Order entirely, *id.* at ¶ 28.b.  The other many rights reserved for the City under the Stipulated Order include: the right to dispute the ITPM's decisions relating to Sewer Service Charge increases, *id.* at ¶ 7; the right to review and comment on the ITPM's changes to the Sewer Priority Project List and to engage in discussions with EPA, MDEQ, and the ITPM, *id.* at ¶ 19.b and e; weekly consultations between the ITPM and Director of Public Works, *id.* at ¶ 5.b; the ITPM's mandatory consultation with the Office of the City Attorney in modifying or terminating pre-existing contracts, *id.* at ¶ 5.t; the ITPM's required discussion and advanced notice to the City regarding proposed Sewer Service Charge structure changes or fee increases, *id.* at ¶ 5.w; the ITPM's required meetings and cooperation with the City to plan for and

14

assist the City in transitioning the Sewer System back to the City, *id.* at ¶¶ 5.z and 5.bb; consultation between the ITPM and the Director of Public Works on the amount of Water/Sewer Billing Administration Division ("WSBA") revenues to direct to the Sewer System, *id.* at ¶ 5.hh; the right to receive up to $400,000 a year towards future consent decree negotiations, *id.* at ¶ 5.ii; and reimbursement by the ITPM for damages from certain building backups, *id.* at ¶ 8.d.

In addition, the United States disagrees that the temporary transfer of control of the Sewer System to a third party, subject to this Court's oversight, is inappropriate under the current circumstances. The United States recognizes the extraordinary nature of placing a city function under the control of a third party and has agreed to do so only after many years of the City's demonstrated failure to comply with the CWA, MWAPCL, and NPDES permits—resulting in public health risks and environmental degradation that affect citizens' quality of life, cause economic losses, and contribute to distrust in their government.

Extraordinary circumstances warrant an extraordinary remedy. Under the City's control (and presumably under the watch of the City's elected officials), the Sewer System experienced violations under the CWA and MWAPCL, thus necessitating the Consent Decree in 2013. Despite the years afforded to the City to comply with the Consent Decree, it failed to do so and committed violations under the Consent Decree. The physical condition of the WCTS and the WWTPs continued to deteriorate, and the staffing necessary to operate and maintain the Sewer System and to respond to SSOs has fallen to inadequate levels. Indeed, the City has not mustered the financial, technical, and managerial resources to perform fundamental duties expected of a competent sewer system operator, such as quickly remedying active overflows of sewage from City sewer lines onto streets and yards.

The law contemplates that, pursuant to a court's inherent equitable powers and/or Federal Rules of Civil Procedure 66 and 70, temporary third-party control of a governmental entity may be necessary when the governmental entity persistently fails to comply with the law and court orders. For example, third-party receivers have been appointed, both with and without the consent of the defendants, to oversee:

- Hinds County's jail system, *United States v. Hinds Cty.*, No. 3:16-CV-489-CWR-RHWR, 2022 WL 3022385, at *2 (S.D. Miss. July 29, 2022) (citing *Plata v. Schwarzenegger*, 603 F.3d 1088, 1093–94 (9th Cir. 2010));

- Fort Gay's wastewater treatment plant and water works, *United States v. Town of Fort Gay*, No. 3:09-0855 (S.D. W.Va. Jan. 12, 2012), Dkt. No. 62;

- Guam's Solid Waste Management Division within its Department of Public Works, *United States v. Gov't of Guam*, No. 02-00022, 2008 WL 732796 (D. Guam Mar. 17, 2008); and

- Detroit's wastewater treatment plant within its Water and Sewerage Department, *United States v. City of Detroit*, 476 F. Supp. 512, 520 (E.D. Mich. 1979).

Here, the United States could have sought to enforce the Consent Decree by unilaterally moving the Court to appoint a third-party receiver, as with the Hinds County jail, and after expensive, lengthy, and resource-intensive litigation. However, this path would have had an uncertain outcome for all the Parties and would not have allowed for the same input from and negotiated concessions afforded the City under the Stipulated Order, or the same transparency and reporting to the public required under the Stipulated Order.

In further recognition of the import of placing a publicly owned and operated sewer system in the hands of a third party, the Stipulated Order builds in checks and balances on the ITPM's authority and ample accountability to the Parties, the Court, and the public. Among such provisions are:

- the ITPM is subject to the oversight of the Court, SO at ¶ 8.a

16

- the United States, MDEQ, or the City may move to remove the ITPM for good cause shown, *id.* at ¶ 9.a

- the ITPM is not immune to liability for instances of willful misconduct or gross negligence, *id.* at ¶ 8.b and c

- the ITPM is prohibited from transferring Sewer System assets to another governance structure or operating entity or consolidating the Sewer System with another utility, *id.* at ¶ 6.c and d

- the ITPM has fiduciary responsibility for the various financial accounts used for the Sewer System, *id.* at ¶¶ 11.a, 12.a, 13.d, and 14

- EPA, in consultation with MDEQ and after discussions involving MDEQ and the Public Works Director, may petition the Court over disagreements about changes to the Sewer Priority Project List, changes to the project implementation schedule that are greater than 60 days, written deliverables required by the Sewer Priority Project List, and proposed increases to the ITPM's compensation or the ITPM Professional Sewer Budget, *id.* at ¶ 19.a, e, and f

- the ITPM must report to the Court, Parties, and the public[3]: on work conducted and to be conducted, including delays and actions to address them; expenditures; trends analyses (i.e., measurable progress); and a proposed ITPM Professional Sewer Budget for the upcoming fiscal year, *id.* at ¶ 17

- the ITPM must hold public meetings each quarter, *id.* at ¶ 17.c

- the ITPM must use best efforts to respond to document requests from the public unless he demonstrates that such efforts would prevent him from carrying out his duties under the Stipulated Order, *id.* at ¶ 18, and

- the ITPM must report on measurable metrics of his progress, including information on all SSOs and prohibited bypasses that occurred in the preceding quarter, and annual trends analyses of the number, volume, duration, and cause of SSOs and prohibited bypasses, *id.* at ¶ 17.a.ix.

Outside of the Stipulated Order, the ITPM is subject to conditions and requirements attached to Sewer System grants, loans, and bonds, which are independently overseen and enforceable by the respective grantor/lender/bondholder.

---

[3] As the Water ITPM, Mr. Henifin has been posting quarterly reports about his work on JXN Water's public website at https://jxnwater.com.

The Stipulated Order balances the need for accountability and transparency against the need for the ITPM to have sufficient authority, time, and resources to efficiently bring about much-needed near-term relief for Jackson residents and businesses.  The Stipulated Order was negotiated with the City and approved by the Mayor and City Council.  By entering into this Order, the elected officials of the City have determined that the Order, including the role specified for the City, represents the best path forward for the Sewer System.  Additional layers of process, review, and approvals involving citizens, elected officials, and/or the City would divert the ITPM's time and resources away from the demands of running the Sewer System in a responsible, compliant, and sustainable manner, and would likely delay the ITPM's operation of the Sewer System.  The comments have not presented evidence that further involvement or decision-making by elected officials/the City or the direct involvement or decision-making by citizens about the Sewer System would enhance the ITPM's efforts.

To be clear, the ITPM has the authority and discretion to engage and solicit input from the public and stakeholders beyond the Stipulated Order's requirements.  In fact, as the Water ITPM, Mr. Henifin has voluntarily participated in over 30 community events and speaking engagements. *See* Drinking Water Case Dkt. No. 41 at 10-11 & Fig. 9 (listing more than 30 events from December 2022 through June 2023).  Some comments also stated that they saw more transparency and opportunities for public input with Mr. Henifin compared to the City.  For example, one commenter stated that during the brief period that the Stipulated Order was in effect, "Mr. Henifin has spoken at several community meetings and clearly described his plans to begin chipping away at the sewer issues . . . .  I heard more of a plan from his 30 minute Q&A than I have seen from the City in the last 5 years, and importantly, a genuine passion for finding a way to help the citizens of Jackson."

Thus, the United States declines to amend the Stipulated Order to address the authority and oversight of the ITPM as requested by the comments, except as to the ITPM's responsibility and reporting for financial accounts and spending.  Under the Stipulated Order, the ITPM's quarterly status reports must include, among other things, "an accounting of the expenditures from, additions to, and remaining balance of the ITPM Professional Sewer Budget."  SO at ¶ 17.a.vi.  In each report filed in the month of January, the ITPM must provide "an audited financial statement of the ITPM Professional Sewer Account, Sewer O&M Account, and Sewer Capital Improvements Account for the City's previous fiscal year." *Id.* at ¶ 17.a.viii.  Based on the concerns raised and a review of the current language in the Stipulated Order, the Parties and the ITPM agreed to revise Paragraphs 17.a.vi and viii, as stated in their Joint Stipulation to Provide Certain Personally Identifiable Information (PII) to ITPM and for Entry of Amended Stipulated Order (Dkt. No. 66), to expressly require quarterly reporting and annual audited financial statements on any accounts used by the ITPM for the Sewer System and Stipulated Order by adding the following language shown in red:

> vi.    An accounting of expenditures from, additions to, and remaining balance of the ITPM Professional Sewer Budget, the Sewer O&M Account, the Sewer Capital Improvements Account, the SEP escrow fund, WSBA accounts, and any other account used by the ITPM to receive, borrow, or spend funds for expenses and/or work related to the Sewer System and implementation of this Stipulated Order;
>
> * * *
>
> viii.    In each Status Report filed in the month of January, an audited financial statement of the ITPM Professional Sewer Account, Sewer O&M Account, and Sewer Capital Improvements Account, the SEP escrow fund, WSBA accounts, and any other account used by the ITPM to receive, borrow, or spend funds for expenses and/or work related to the Sewer System and implementation of this Stipulated Order for the City's previous fiscal year. Any information revealing bank account numbers or constituting personally identifiable information shall be redacted;

With this amendment, the United States believes it has adequately addressed the comments on this topic.

### 2. Local hiring and contracting (12 commenters)

Several comments criticized the lack of requirements for the ITPM to use local/minority/small businesses or to hire local residents, with a few also expressing concern for City employees who may lose their jobs when the ITPM begins managing the Sewer System. With millions of dollars being spent by the ITPM towards Sewer System improvements, comments stated that local businesses and residents should benefit from at least some of that spending, and that development of a qualified and local contractors/workforce is necessary for the City to run the Sewer System with autonomy after the Stipulated Order is terminated. A few comments criticized Mr. Henifin's awarding of contracts, as Water ITPM, to national companies or companies outside of Jackson (such as the call center in Pearl, Mississippi). Examples are:

- Jackson should benefit from the rebuilding and repair of sewer system infrastructure, including fair access to jobs and contracts.

- It would be a travesty for a population that is 80% black, and over 25% impoverished, not to receive some economic benefit.

Some specific suggestions offered were: requiring the ITPM to prioritize hiring Jackson residents and to offer business contracts to local businesses first; requiring the ITPM or decisionmaker to explain why they are not hiring local partners and residents; requiring the ITPM to prioritize businesses that agree to engage in a community benefits agreement that has local hiring and contracting goals; requiring a report on subcontractors and the race and location of their workers; provide skills training for local residents; requiring an implementation plan with required minority participation in all elements, including professional hires in the office of the ITPM; and establishing an internship program through local colleges.

20

**United States' Response:** These comments do not warrant withdrawal of consent to, or amendment of, the Stipulated Order.  The Stipulated Order is intended to provide latitude and flexibility to the ITPM to hire and to enter contracts in his professional judgment in order to meet the Stipulated Order's objectives.  Nonetheless, the ITPM may comply with Miss. Code Ann. § 31-7-13 or may use best efforts to have the procurement process be competitive, transparent, and efficient.  SO at ¶ 5.s.  Imposing additional requirements and layers of process on staffing and contracting risks unduly delaying much-needed on-the-ground relief for residents and businesses experiencing sewer overflows and failures.  However, the ITPM has the authority and discretion to implement hiring and contracting practices as he deems appropriate.

As the Water ITPM, Mr. Henifin has recognized the comments' concerns about developing capacity within the City—local businesses and local employees—as important to long-term success and as important to the community.  To that end, Mr. Henifin has voluntarily initiated efforts to enter contracts and establish programs to develop capacity among local businesses and residents.  Mr. Henifin also recently reported on minority outreach efforts in a quarterly status report in the Safe Drinking Water Act Case:

> At the end of the reporting period, the ITPM was in negotiations with a local firm to assist with advancing MBE [minority business enterprise] efforts in the coming months.  One goal is to create small Black owned firms to provide some of the specialized skills that are not currently available in the Jackson area.  Examples include valve and hydrant maintenance and piping contractors.  These needs will go on perpetually in Jackson, long after the Interim Stipulated Order is finished.

Safe Drinking Water Act Case, Dkt. No. 41 at 12.  Through June 30, 2023, 11% (over $2.5 million) of Mr. Henifin's total contract spending as the Water ITPM has gone to minority-owned businesses.  *Id.*; Henifin Decl. at ¶ 11.  Excluding Jacobs—the contractor hired to operate the City's water treatment plants only because no local firms had the required specialized expertise—over 18% of Mr. Henifin's total contract spending has gone to

minority-owned businesses.   Henifin Decl. at ¶ 11.   As the Sewer ITPM, Mr. Henifin

intends to proceed similarly and seek out and hire local and small businesses and minority-

owned businesses to perform some of the work required by the Sewer Priority Project List.

*Id.*   As for the current City sewer employees, Mr. Henifin will continue his ongoing efforts

to ensure that they can find meaningful employment with some of the firms that will be

doing the sewer work.   *Id.*

### 3.   Supplemental Environmental Project for private laterals (1 commenter)

One comment requested changes to the Stipulated Order's requirement for the ITPM to

"[m]ake best efforts" to implement the Consent Decree's Supplemental Environmental Project

("SEP") "to the extent of the balance remaining in the City's escrow fund for the SEP."   SO at

¶ 5.jj.   The SEP requires the City to spend at least $875,000 for the repair and/or replacement of

private laterals[4] or removal of illicit connections for eligible residential property owners who meet

financial hardship qualifications, with preference given to eligible "very low income" residents,

then eligible "low income" residents, and then eligible "moderate income" residents.   Consent

Decree (Dkt. No. 10), App. F at 1 (pages 379-380 of the PDF).   The comment criticized the "best

efforts" requirement as hard to enforce and requested that the ITPM be required to disclose how

much funding remains in the SEP escrow account and to report in each quarterly status report his

progress in implementing the SEP.

**United States' Response:** The comment does not warrant withdrawal of consent to the

Stipulated Order.   The Stipulated Order's language appropriately reflects the large amount of work

---

[4] The Consent Decree and the Stipulated Order define "Private Lateral" as "that portion of a
sanitary sewer conveyance pipe that extends from the wastewater main to the single-family,
multi-family, apartment, or other dwelling unit or commercial or industrial structure to which
wastewater service is or has been provided."   Consent Decree (Dkt. No. 10) at ¶ 8(cc); SO at 8.

that the ITPM should prioritize first, including (per the Sewer Priority Project List) major capital improvements that will improve the Sewer System overall for all customers and 215 locations of emergency sewer failures.  However, based on the comment about disclosure of remaining funding and a review of the current language in the proposed Stipulated Order, the Parties and the ITPM agreed to revise Paragraphs 17.a.vi and viii, as stated in their Joint Stipulation to Provide Certain Personally Identifiable Information (PII) to ITPM and for Entry of Amended Stipulated Order (Dkt. No. 66), to expressly require quarterly reporting and annual audited financial statements on any accounts used by the ITPM for the Sewer System and Stipulated Order—including the SEP escrow account—by adding the following language shown in red:

> vi.       An accounting of expenditures from, additions to, and remaining balance of the ITPM Professional Sewer Budget, the Sewer O&M Account, the Sewer Capital Improvements Account, the SEP escrow fund, WSBA accounts, and any other account used by the ITPM to receive, borrow, or spend funds for expenses and/or work related to the Sewer System and implementation of this Stipulated Order;
>
> * * *
>
> viii.       In each Status Report filed in the month of January, an audited financial statement of the ITPM Professional Sewer Account, Sewer O&M Account, and Sewer Capital Improvements Account, the SEP escrow fund, WSBA accounts, and any other account used by the ITPM to receive, borrow, or spend funds for expenses and/or work related to the Sewer System and implementation of this Stipulated Order for the City's previous fiscal year. Any information revealing bank account numbers or constituting personally identifiable information shall be redacted;

With this amendment, the United States believes it has adequately addressed the comments on this topic.

### 4. Sewer rates and fees (4 commenters)

A few comments raised the topic of sewer rates and fees (referred to in the Stipulated Order as "Sewer Service Charges"). Some comments opposed increases in sewer rates, while another comment stated that everyone must pay their sewer fees. Another comment complained about being billed excessively for water since Mr. Henifin began serving as the Water ITPM and expressed concern about sewer charges if Mr. Henifin is the Sewer ITPM.

**United States' Response:** These comments do not warrant withdrawal of consent to, or amendment of, the Stipulated Order. The United States interprets the comments opposing Sewer Service Charge increases as critical of the Stipulated Order, which authorizes the ITPM to modify the Sewer Service Charge structure or increase a Sewer Service Charge or fee under certain conditions. SO at ¶ 5.w. This authority is important so that the ITPM has the tools necessary to remedy the poor financial condition of the Sewer System and improve operations. Local water and sewer revenues, which consist primarily of customer payments for water and sewer service, are allocated to the City's Water & Sewer Enterprise Fund, which funds the operation and maintenance of the drinking water system and Sewer System and funds debt service for capital improvements to both systems. Henifin Decl. at ¶ 5. Moreover, while there are certain federal and state grant and loan funds available to be used for the Sewer System, those funds may only be used on capital improvement projects and are not available to be used for operation and maintenance expenses or other non-capital costs. *Id.* at ¶ 7. Consequently, local revenues are an essential component of the Sewer System's stability and sustainability.

The City has represented that the significant decrease in local revenue collections—attributed to a failed investment to replace customers' water meters and the water billing system—is a factor affecting the City's ability to comply with the Consent Decree. Dkt. No. 29 (Joint Status

Report Update) at 6.  Thus, while it is understandable that some customers oppose rate increases, the ITPM must have the option to implement them.  Mr. Henifin, as the Water ITPM, is continuing his efforts to raise local revenues by collecting past due accounts, tracking down unbilled accounts, and improve upon the current 56.2% collection rate.  Safe Drinking Water Act Case, Dkt. No. 41 at 5; Henifin Decl. at ¶ 6.

### 5.  Geographic areas of focus (4 commenters)

Two comments suggested that work be divided among four quadrants of the City (e.g., assign contractors and one vacuum truck per quadrant to work across the City simultaneously) rather than concentrated in one area to minimize citizens' feelings about favoritism or neglect. Another comment expressed concern that less affluent parts of the City might be overlooked because they often lack an advocate for their needs.  Another comment stated that JXN Water trucks were only seen in a majority-white affluent area and not in south Jackson.

**United States' Response:** These comments do not warrant withdrawal of consent to, or amendment of, the Stipulated Order.  The Stipulated Order's Sewer Priority Project List was determined based on the Parties mutually identifying certain Sewer System projects, repairs, and improvements based on their technical analysis—not to favor one part of the City over another. Technical considerations included the root causes of significant and persistent problems, and the cost-effectiveness of a project/repair/improvement given the limited funds available.  As an example, the top-ranked project is to rehabilitate the sewers in the Queens area of the City, where many dry-weather SSOs have occurred and where sewer lines have collapsed in multiple places. *See* SO App. A (Sewer Priority Project List) at 1.  As another example, the second-ranked project addresses 215 emergency sewer failure locations that are located all across the City (see Appendix C of the Stipulated Order) and are listed based on their longstanding nature, the

complexity/expense of repair, and the City's inability to repair them. *See* SO at 3 (describing the locations as "requiring immediate emergency repair . . . yet the City has been unable to respond quickly to or rehabilitate the vast majority of them"). The ITPM is afforded the latitude to exercise his professional judgment to modify, update, or reprioritize the Sewer Priority Project List—subject to review by the Public Works Director, EPA, and MDEQ, SO at ¶ 19—and to prioritize newly reported SSOs and deploy resources based on his professional judgment. Mr. Henifin has also indicated that for find-and-fix problems (such as sewer main breaks and backups), he will deploy personnel, vacuum trucks, and other equipment where they are most needed in his professional judgment, considering among other things the urgency, severity, and impact of the problem. Henifin Decl. at ¶ 13.

For reference, Mr. Henifin, as Water ITPM, has reported on system stabilization actions directed to south Jackson as well as throughout the entire drinking water system. *See* Safe Drinking Water Act Case, Dkt. No. 41 at 42-43 (table of project status updates). He also reported performing 208 repairs with an additional 257 under construction in the second quarter of 2023. *See id.* at 15-16 and Figures 12 and 16 (maps of completed and under-construction "find and fix" repairs of small lines). The maps of the repairs show that they occurred across all wards of the City and do not appear to show undue priority or neglect of any areas based on affluence.

### 6. JXN Water's call center (1 commenter)

The United States received one complaint about poor service from JXN Water's call center, which is part of Mr. Henifin's responsibility as the Water ITPM but also relevant to his appointment as ITPM of the Sewer System. The comment expressed frustration that the process to report water issues has been lengthy and requires answering too many questions.

26

**United States' Response:** As stated above, individuals' personal experiences with implementation of the Safe Drinking Water Act Case's Interim Stipulated Order and with Mr. Henifin as an interim third-party manager carry significant weight. In addition, the call center currently receives calls from customers about the Sewer System and forwards them to the City for response. Henifin Decl. at ¶ 14. Once Mr. Henifin is appointed as the Sewer ITPM, the call center will take over the responsibilities of responding to sewer-related calls. *Id.* Thus, a commenter's experience with the call center is relevant to consideration of the Stipulated Order.

The United States views this comment as critical of the Stipulated Order. However, this comment does not warrant withdrawal of consent to, or amendment of, the Stipulated Order. The commenter does not provide a timeframe for the experience with the call center, but the United States recognizes that Mr. Henifin's work on running and improving call center operations has been challenging and in progress since his appointment. As he reported in the most recent quarterly status report in the Safe Drinking Water Act Case, he began with a WSBA call center that had been reduced from nearly 70 full-time employees to fewer than 25, subjecting callers to routinely high wait times. *See* Safe Drinking Water Act Case, Dkt. No. 41 at 13. On June 5, 2023, the JXN Water customer service number at (601) 500-5200 went live and calls are now handled by an experienced call-center contractor, with greatly reduced wait times. The United States also recognizes that multiple commenters reported receiving better and quicker service from the call center under JXN Water. *See* Section A.1 (Examples of Positive Experiences), *supra* at pages 3-4.

**7.   Procedural background (2 commenters)**

One comment opposed the Stipulated Order partly because "the deliberation and implementation process of the Order at hand was improper due to its questionable history," relying on a transcript of a May 2023 status hearing in the Safe Drinking Water Act Case.  The comment criticized that "problematic" provisions from the Interim Stipulated Order in the Safe Drinking Water Act Case were duplicated in the Stipulated Order, and that, among other things, the Court instructed the Parties to appoint Mr. Henifin as ITPM of the Sewer System.  Another critical comment asked whether federal and state governmental assistance and funding for the City was made contingent upon the City's consent to court orders appointing ITPMs.

**United States' Response:** This comment does not warrant withdrawal of consent to, or amendment of, the Stipulated Order.  As to the first comment, the United States disagrees with the simplified and incomplete characterization of the procedural background of the Stipulated Order and the Parties' negotiations, which imply undue pressure or coercion by the Court and Mr. Henifin.  While the United States is bound by a confidentiality order in this case from sharing details about the negotiations, it emphasizes that the Parties negotiated in good faith, at arm's length, and with experienced counsel.  Each Party consented to the Stipulated Order based on its own independent assessment of the merits of the order and the possibility of alternatives.  In addition, the duplication of provisions from the Interim Stipulated Order is appropriate and efficient here, where similar parties and objectives were involved.  To be sure, the Stipulated Order differs in significant respects because of vigorous negotiations among the Parties, because of the Parties' experiences with the Interim Stipulated Order, and because of important differences in this case compared to the Safe Drinking Water Act Case (e.g., different procedural posture, different state agencies involved).  To the extent that the comment provided substantive criticisms

of the "problematic" provisions, the United States has responded to them elsewhere in this Response to Comments.

As to the second comment, the United States affirms that governmental assistance and funding for the City are *not* contingent on the City consenting to court orders appointing ITPMs.

## C.  Other Comments

The comments categorized in this section are not legally relevant to the United States' consideration of whether to withdraw its consent to the Stipulated Order because they (a) stated opinions or questions about the Sewer System or Stipulated Order in general or (b) stated concerns about drinking water and stormwater that do not implicate the Stipulated Order.

### 1.  Alleged causes of, or responsibility for, the Sewer System's noncompliance (87 commenters)

Many comments (whether supportive, critical, or silent on the Stipulated Order) expressed a desire to hold someone accountable and/or expressed opinions on the causes of or responsibility for the Sewer System's noncompliance.  These comments were varied, with some requesting civil or criminal enforcement and investigation, and some attributing blame on alleged failures, lack of funding, corruption, racism, or lack of oversight by elected officials, the City, the State, and/or the federal government.

**United States' Response:** Comments attributing blame are not relevant to the Stipulated Order, which focuses on providing near-term relief to Sewer System customers and placing the Sewer System on a path towards compliance.  The United States maintains its enforcement authority against the City, as the owner and operator of the Sewer System.  Moreover, under the Stipulated Order, the Consent Decree is stayed during the pendency of the Stipulated Order, but the United States' right to demand stipulated penalties for violations of the Consent Decree prior

to the Order Effective Date is preserved.  SO at ¶¶ 29, 31.  Thus, these comments do not warrant withdrawal of consent to, or amendment of, the Stipulated Order.

### 2.  Solely about drinking water or Safe Drinking Water Act Case (6 commenters)

Some comments expressed concerns about drinking water or the Safe Drinking Water Act Case that do not implicate the Stipulated Order.  Examples are:

- All the old pipes in the water system should be replaced by new ones.

- The water is discolored and smells like chlorine.

- I'm concerned about PFAS (per- and poly-fluoroalkyl substances) in the water system.

- I'm billed for water even if I can't use it.

- I'm concerned about lead rates in the water.

- In the Safe Drinking Water Act Case, Entergy should not have been ordered to share customers' personal information with JXN Water.

**United States' Response:** These comments have no implication for the Stipulated Order and thus do not warrant withdrawal of consent to, or amendment of, the Stipulated Order. However, Mr. Henifin, as the Water ITPM, should be aware of and appropriately address concerns about drinking water.  Thus, the United States will forward these comments to Mr. Henifin.  As to the comments that complained about an ongoing problem at a specific address, the United States will forward them in unredacted form to Mr. Henifin for follow-up once the Court enters the Parties' Joint Stipulation to Provide Certain Personally Identifiable Information (PII) to ITPM and for Entry of Amended Stipulated Order (Dkt. No. 66).

### 3.  Stormwater management (5 commenters)

Some comments discussed problems with the City's stormwater management system and the possibility that they contribute to or overlap with sewer overflows and sewer line breaks.  They

stated that drainage ditches, culverts, and tributaries are not being cleared, and when it rains, flooding can result and mix with sewage.

**United States' Response:** These comments have no implication for the Stipulated Order and thus do not warrant withdrawal of consent to, or amendment of, the Stipulated Order. Stormwater management is outside the purview of this case and the Stipulated Order. Stormwater management (e.g., drainage ditches) is and will remain the City's responsibility. However, Mr. Henifin, as the prospective Sewer ITPM, should be aware of and appropriately address sewer issues even if they also involve stormwater issues. The United States will forward these comments to Mr. Henifin. To the extent the problems are issues with the Sewer System, the ITPM has the authority and discretion to investigate and address them based on his professional judgment.

### 4. Questions

Some commenters asked the below questions related to the Stipulated Order that may be helpful to answer in this Response to Comments.

- Does the Stipulated Order mandate or legally require the ITPM to use consumption data as the only allowable basis for billing customers? Does the Stipulated Order prohibit any of the other methods (assessed value) that the ITPM previously proposed? (1 commenter)

**United States's Response:** This question refers to Mr. Henifin's proposal as the Water ITPM to explore billing customers based on a property's assessed value using data from the Hinds County Assessor's Office rather than rely on water consumption measured by meters.[5] The Stipulated Order does not mandate or legally require the ITPM to use consumption data or any other particular method as the basis for billing customers. Nor does the Stipulated Order prohibit any particular method for billing customers.

---

[5] *See* Jackson's Water System – Financial Management Plan, Jan. 27, 2022, at 13, *available at* https://jxnwater.com/wp-content/uploads/2023/01/JXN-Water-Financial-Management-Plan-01272022.pdf (last accessed Sept. 11, 2023).

- Is there an avenue to seek restitution/compensation for economic losses resulting from the Sewer System (e.g., repair and cleanup costs, alternative lodging, loss of rent, inability to sell property)? (3 commenters)

**United States' Response:** The statutes under which this lawsuit was brought—the Clean Water Act and the Mississippi Air and Water Pollution Control Law—do not authorize the United States or MDEQ to sue on behalf of private individuals to recover economic losses. The Stipulated Order neither authorizes nor prohibits any individual from seeking restitution/compensation from the City for any economic losses.

- What are the plans for reconstruction and how will they be implemented? If the U.S. Army Corps of Engineers is helping, why aren't they taking the lead on the project rather than having a third-party manager? (1 commenter)

**United States' Response:** The Stipulated Order provides for the ITPM to implement the Sewer Priority Project List (Appendix A of the Stipulated Order), which consists of 11 priority projects that address capital improvements, repairs, and preventive and routine maintenance. As the Stipulated Order states, $125 million has been authorized for the U.S. Army Corps of Engineers ("USACE") to design and construct improvements to the Sewer System and drinking water system. SO at 4. The first increment of work using USACE funding will be the purchase of a 100-MGD (million gallons per day) pump at the Savanna Street Wastewater Treatment Plant, which is one of the projects on the Sewer Priority Project List. *See* USACE, "USACE Vicksburg District announces Project Partnership Agreement with city of Jackson," https://www.mvk.usace.army.mil/Media/News-Releases/Article/3290147/usace-vicksburg-district-announces-project-partnership-agreement-with-city-of-j/ (last accessed Sept. 16, 2023). Future projects are to be determined. *Id.* Working and coordinating with the USACE is part of the ITPM's responsibilities, just as they would be part of the City's responsibilities if the City were to continue managing the Sewer System. To learn about how the ITPM is implementing projects

under the Stipulated Order, the commenter may review the ITPM's Quarterly Status Reports as they are published on the ITPM's website at jxnwater.com.

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/