IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
(Northern Division)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| and the STATE OF MISSISSIPPI, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 3:12-cv-790-HTW-LGI |
| | ) | (Clean Water Act Case) |
| v. | ) | |
| | ) | |
| | ) | |
| THE CITY OF JACKSON, MISSISSIPPI, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:22-cv-00686-HTW-LGI |
| | ) | (Safe Drinking Water Act Case) |
| v. | ) | |
| | ) | |
| | ) | |
| | ) | |
| THE CITY OF JACKSON, MISSISSIPPI, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## UNITED STATES' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION TO ENTER STIPULATED ORDER (CLEAN WATER ACT CASE)

On July 26, 2023, Plaintiff the United States of America filed a Notice of Lodging and lodged a proposed Stipulated Order on Sewer System (Dkt. No. 36) in *United States and State of Mississippi v. City of Jackson*, No. 3:12-cv-790-HTW-LGI (S.D. Miss.) (Clean Water Act Case). The proposed Stipulated Order was entered into by the United States, on behalf of the U.S. Environmental Protection Agency ("EPA"), co-Plaintiff the State of Mississippi, acting through

the Mississippi Commission on Environmental Quality and the Mississippi Department of Environmental Quality (collectively "MDEQ"), and Defendant the City of Jackson, Mississippi. It places the operation of the City's sewer system under the temporary control of an Interim Third-Party Manager ("ITPM") and is intended to put the City on a pathway to compliance with the federal Clean Water Act and the Mississippi Air and Water Pollution Control Law.

From August 1 through 31, 2023, the United States held a 30-day public comment period to receive comments on the Stipulated Order. After carefully considering each of the comments from the 666 commenters, the United States has determined that the comments did not disclose facts or considerations indicating that the Stipulated Order is inappropriate, improper, or inadequate. Based on the comments, the United States sought a minor amendment of the Stipulated Order to expressly require additional reporting by the ITPM on the Sewer System's finances and, on September 29, 2023, the Parties and the ITPM filed a stipulation agreeing to this amendment. Dkt. No. 66.[1] Therefore, the United States respectfully moves the Court to approve the Stipulated Order by signing and entering the Stipulated Order (Dkt. No. 36-1), as amended by the inclusion of the additional language agreed to in the Joint Stipulation to Provide Certain Personally Identifiable Information (PII) to ITPM and for Entry of Amended Stipulated Order (Dkt. No. 66). This Motion is unopposed by MDEQ and the City, and MDEQ and the City each consent to entry of the Stipulated Order without further notice (Dkt. No. 36-1 at ¶ 34).

## I.    FACTUAL AND LEGAL BACKGROUND

### A.  The City of Jackson's Sewer System

---

[1] As discussed below, several commenters raised concerns they are currently having with the sewer system on or near their properties. The address information for these commenters is considered personally identifiable information (PII) and has been redacted from the comments lodged with the Court. The Parties also included in the Stipulation a request that the redacted address information be allowed to be provided to the ITPM, so that he may investigate these comments that raise specific concerns about ongoing sewer problems.

The City owns and operates a sewer system ("Sewer System") consisting of a wastewater collection and transmission system ("WCTS") and three wastewater treatment plants ("WWTPs").  The WCTS, which includes sewer main lines, pumps, and manholes, transports wastewater to the Savanna Street WWTP, the Trahon/Big Creek WWTP, and the Presidential Hills WWTP, where wastewater is intended to be stored and treated before being released into certain permitted outfalls.  *See e.g.*, Clean Water Act Case, No. 3:12-cv-00790 – HTW-LGI, Complaint at ¶ 6, Dkt. No. 1 (filed Nov. 20, 2012).

The Sewer System must comply with the Clean Water Act, 33 U.S.C. § 1251 *et seq.* ("CWA"), the Mississippi Air and Water Pollution Control Law, Miss. Code Ann. § 49-17-1 *et seq.* ("MAWPCL"), and National Pollutant Discharge Elimination System ("NPDES") permits issued under the CWA.  EPA oversees compliance with the CWA and NPDES permits, and MDEQ oversees compliance with the MAWPCL.  Because of the rapidly deteriorating WCTS and WWTPs, the Sewer System has a long history of noncompliance with the CWA, MAWPCL, and its NPDES permits.  In particular, the Sewer System experiences frequent and recurring discharges of sewage from the WCTS—known as sanitary sewer overflows or SSOs—and discharges of untreated/undertreated wastewater from the WWTPs—known as prohibited bypasses—that violate the CWA, MAWPCL, and NPDES permits.  *See, e.g., id.* at Joint Status Report Update, Dkt. No. 29 (May 5, 2023) at 2-3.

To fund Sewer System operations, the City relies heavily on revenues collected from customers of the Water/Sewer Business Administration Division ("WSBA") for water and sewer services.  The WSBA is the division within the City's Department of Public Works that bills and collects payments from customers for water, sewer, and sanitation services.  Currently, the WSBA and the City's drinking water system are managed by an interim third-party manager,

Edward "Ted" Henifin, who was appointed by this Court on November 29, 2022, pursuant to the terms of an Interim Stipulated Order in the separately filed Safe Drinking Water Act Case, No. 3:22-cv-00686-HTW-LGI.  The WSBA has had long running problems properly billing and collecting the funds it is owed.  According to the most recent quarterly report prepared by Mr. Henfin, between December 2022 through June 2023, the WSBA had a collection rate of 56.2%. *See* Safe Drinking Water Case, No. 3:12-cv-00790 – HTW-LGI, Dkt. No. 41 (Consolidated Report of Activities for Quarter Ended June 30, 2023) at 5.  Among the billing challenges are nonpayment of accounts due, and an estimated 7,000 users who are not currently receiving bills. While there are certain grant funds available to be used for capital improvements in the sewer system (see proposed Stipulated Order at 4), funding of the operation and maintenance of the Sewer System is dependent upon Sewer revenues collected by the WSBA.  Declaration of Edward G. Henifin ("Henifin Decl.") at ¶ 7, attached as Exhibit A to the Motion to Enter, Dkt. No. 67.

### B.  The 2013 Consent Decree

In March 2013, the Court entered as final judgment in this case a consent decree among the parties that had "the objective of causing the City to achieve and maintain full compliance with the CWA, the MAWPCL, and the NPDES Permits, including the elimination of all Sanitary Sewer Overflows."  *See* Dkt. No. 10 ("Consent Decree"); Dkt. No. 29 (Joint Status Report Update) at 2.  In the approximately five years leading up to the Consent Decree, the WCTS had over 2,300 SSOs and the Savanna Street WWTP experienced numerous prohibited bypasses into the Pearl River.  Dkt. No. 29 at 2.  To achieve its objective, the Consent Decree mandated, among other things: (1) the evaluation and rehabilitation of the WCTS, the Savanna Street WWTP, and the main transmission pipe to the Savanna Street WWTP, known as the West Bank

Interceptor; (2) the development and implementation of numerous programs to ensure proper Capacity, Management, Operations and Maintenance ("CMOM") of the WCTS; and (3) the implementation of certain work required by two prior agreed orders with the MDEQ.  *Id.* at 2-3. All of the Consent Decree's requirements were to be completed no later than June 1, 2030.  *Id.* at 3.

However, since entry of the Consent Decree, the City has achieved only limited progress towards compliance with the Consent Decree.  *Id.* at 3.  The City has not yet begun, has significantly delayed, or has not fully implemented some crucial elements and CMOM programs required by the Consent Decree.  *Id.* at 3-5.  As a result, the City continues to violate the CWA, the MAWPCL, and the NPDES permits.  *Id.* at 5.  From March 1, 2020, to February 28, 2022, the City reported 460 SSOs, which released over 111,081,920 gallons of untreated wastewater; 13 SSOs at the West Bank Interceptor low point (408 S. Jefferson St.), known as the "Entergy Manhole," which released over 95,219,768 gallons; and 27 prohibited bypasses, which allowed a total of 4,465,590,000 gallons of wastewater to discharge into the Pearl River without the required treatment.  *Id.*  The City has been unable to quickly respond to or rehabilitate many known locations of SSOs that require immediate emergency repair.  *Id.*

## C.  The City of Jackson's Continuing Non-Compliance

In light of the City's continuing noncompliance with the Consent Decree and with federal and state law, and in recognition of the public health risks posed by SSOs and prohibited bypasses, the United States could have sought a Court order enforcing the Consent Decree.  *See* Fed. R. Civ. P. 70(e).  In the alternative, the United States could have unilaterally requested that the Court appoint a receiver to bring the City's Sewer System into compliance.  *See, e.g.,* Fed. R. Civ. P. 70(a) and Fed. R. Civ. P. 66; *United States v. Hinds Cnty.*, No. 3:16-CV-489-CWR-

BWR, 2023 WL 1186925 (S.D. Miss., Jan. 30, 2023). As the *Hinds County* Court noted, "[t]he Fifth Circuit has recognized the availability of receiverships 'in the context of ensuring a governmental entity's compliance with court orders.'" *Id*. at *4 (citing *Netsphere, Inc. v. Baron*, 703 F.3d 296, 306 (5th Cir. 2012)).

That said, in this matter the United States chose to take a different approach in order to provide some near-term partial relief to the citizens of Jackson and to avoid the costs, uncertainty, and risk associated with litigation.[2] The parties have negotiated the agreement embodied in the proposed Stipulated Order. The proposed Order prioritizes short-term work on the WCTS and WWTPs, including addressing 215 known locations of emergency sewer failures that the City has been unable to address. While the proposed Stipulated Order is intended to put the City on a pathway to compliance, the proposed Stipulated Order is not intended to fully resolve the Plaintiffs' claims against the City nor achieve full compliance during its relatively short term. The parties agree that, in the long term, a Consent Decree modification or a superseding consent decree is necessary to bring about a viable solution for the Sewer System. *See* Stipulated Order at 5, 39.[3] Until the parties negotiate and agree upon such modification or superseding consent decree however, the Stipulated Order fast-tracks substantial work to address problems plaguing the Sewer System and temporarily transfers control of the Sewer System to a qualified third-party manager. Finally, unlike the receivership imposed by the Court in the *Hinds County* matter, the proposed Stipulated Order provides for cooperation among the Parties,

---

[2] The City specifically requested an arrangement such as the one in the proposed Order during the May 9, 2023 Status Conference in the Safe Drinking Water Act case. *See* No. 3:22-cv-00686-HTW-LGI, Dkt. No. 31 (filed May 19, 2023), Transcript at 23-24.

[3] If a Consent Decree Modification or superseding consent decree cannot be agreed upon the United States reserves its rights to enforce the Consent Decree or litigate the matter to judgment.

including cooperation between the City and the ITPM.  The proposed Stipulated Order requires quarterly Status Reports to the public, information sharing with the public, and Court oversight. The proposed Stipulated Order is structured to lead to a long-term enforceable agreement to get the City back into compliance with the Clean Water Act and the MAWPCL.

### D. The Proposed Stipulated Order

The proposed Stipulated Order was negotiated among the parties, all of whom were represented by experienced counsel.  The proposed Stipulated Order was approved by the Mayor, who then presented it to the City Council on July 12, 2023.  On July 12, 2023, following a Special Meeting of the City Council, the City Council approved the proposed Stipulated Order.[4]  The proposed Stipulated Order was lodged with the Court on July 26, 2023 (Dkt. No. 36), notice of the proposed Stipulated Order was published in the Federal Register, 88 Fed. Reg. 50177 (Aug. 1, 2023), initiating a public comment period, running from August 1, 2023, through August 31, 2023, during which a total of 666 comments, including comments taken during in-person public comment meetings, were received.  The public comments, and transcripts of the public comment meetings, with PII redacted, are attached to the Motion as Exhibits B through E.

### II.        SUMMARY OF THE PROPOSED STIPULATED ORDER

Under the Stipulated Order, operation of the Sewer System will be placed under the temporary control of an Interim Third-Party Manager.  Dkt. 36-1 at ¶¶ 4, 5.a.  The ITPM will be Ted Henifin.  *Id.* at ¶ 3.  Solely for purposes of implementing the Stipulated Order, Mr. Henifin is authorized to operate through JXN Water, Inc., or a successor entity.  *Id.* at ¶ 3. Mr. Henifin's

---

[4] See, Minutes of July 12, 2023, Special Meeting of City Council, published at, https://storage.googleapis.com/proudcity/jacksonms/uploads/2023/07/785fb61d-july-12-2023-special-council-meeting.pdf (last accessed Sept. 22, 2023).

qualifications are set forth in the declaration and *curriculum vitae* appended to the United States'
Motion as Exhibit A ("Henifin Decl.") and attached as Exhibit A-Attachment 1 ("Henifin CV").
In sum, Mr. Henifin is a registered professional engineer with over four decades of public works
experience, including nearly 25 years of experience, first as Director of Public Works and then as
General Manager of the Hampton Roads Sanitation District, a regional wastewater treatment
agency.  *See* Henifin CV.  The Hampton Roads Sanitation District handled wastewater/sewage
treatment across multiple cities and counties in southeast Virginia with a population of about 1.7
million.  *Id.*  As General Manager, Mr. Henifin managed a staff of over 800 employees and
oversaw the operations of a wastewater collection system comprised of more than 500 miles of
pipes and a wastewater treatment system comprised of eight major plants and six smaller ones.
*Id.*  He retired from the Hampton Roads Sanitation District in 2022.  *Id.*  Since November 29,
2022, he has served as the ITPM of the City's drinking water system and Water/Sewer Business
Administration Division ("WSBA") pursuant to an Interim Stipulated Order in the Safe Drinking
Water Act Case, No. 3:22-cv-00686-HTW-LGI.  Henifin Decl. at ¶¶ 2 and 5.  He will continue
to serve as the ITPM of the drinking water system while also serving as ITPM of the Sewer
System.  *Id.* at ¶ 2.  Through his work on the City's drinking water system and WSBA, Mr.
Henifin has gained specialized knowledge and experience relevant to serving as the ITPM.  For
instance, he has supervised and trained City employees and contractors, procured contractors
(including contractors from Jackson or from within Mississippi) to perform tasks requiring
expertise or equipment beyond the City's existing resources, evaluated the financial challenges
facing the Sewer System (as part of evaluating the public water system), and developed a
financial management plan to address such challenges.

Mr. Henifin's effectiveness as the Drinking Water ITPM demonstrates his capability to serve effectively as ITPM of the Sewer System.  Mr. Henifin and JXN Water have made substantial progress in stabilizing the Drinking Water System in the approximately 10 months since his appointment as the Drinking Water ITPM.  *See* Status Report filed by JXN Water in the Safe Drinking Water Act Case, Dkt. No. 41 (filed Aug. 1, 2023). These accomplishments include locating and repairing a leak in the drinking water distribution system that was releasing about 5 million gallons of treated drinking water a day.  Henifin Decl. at ¶ 8.  Mr. Henifin is also making progress in addressing the items set forth in the Priority Project List attached to the Interim Stipulated Order.  *See* Status Report filed by JXN Water in the Safe Drinking Water Act Case, Dkt. No. 41 (filed Aug. 1, 2023).

The issues with the Sewer System developed over many years, and it will take time for it to be fixed and financially sustainable.  Thus, the Stipulated Order is intended to be a temporary measure, with long-term fixes to be addressed in a superseding consent decree or consent decree modification.  To allow the ITPM the flexibility and latitude to implement much-needed repairs, capital projects, and operational improvements more quickly and more effectively than the City has been able to achieve, the Stipulated Order grants the ITPM broad authority and allows him to exercise his professional judgment in managing the Sewer System.  At the same time, as explained below, the proposed Stipulated Order also places obligations on the ITPM to regularly consult with the City and provide the Court and the citizens of Jackson with regular status reports and quarterly public meetings.

### A.    ITPM Responsibilities

Many provisions governing the responsibilities of the ITPM are based on the Interim Stipulated Order in the Safe Drinking Water Act Case.  *See* Safe Drinking Water Act Case, No.

3:22-cv-00686-HTW-LGI, Dkt. No. 6 (filed Nov. 29, 2022).[5]  For example, pursuant to the proposed Stipulated Order, the ITPM assumes all of the responsibilities, functions, duties, powers and authorities of the City insofar as they affect compliance with the Stipulated Order. Stipulated Order at ¶ 5.  Among the additional responsibilities of the ITPM are to "advise, consult and collaborate weekly with the [City's] Director of Public Works on all material aspects of complying with [the] Stipulated Order and operation of the Sewer System . . ." (*id.* at ¶ 5.b.); Collect, through the WSBA, revenues associated with the operation of the Sewer System (*id.* at ¶ 5.d.); Take certain actions, in consultation with the City, with respect to the City's Sewer System indebtedness (*id.* at ¶¶ 5.e-g.); Enter into contracts, modify or terminate contracts, purchase materials, and direct City employees, as necessary, for the benefit of the Sewer System (*id.* at ¶¶ 5.i., 5.t-u., and q.); and adjust the Sewer Service Charge structure in certain circumstances (*id.* at ¶ 5.w.).

Certain of the ITPM's responsibilities are unique to the proposed Stipulated Order.  For example, the ITPM is tasked with implementing the Sewer Priority Project List (Appendix A to the proposed Stipulated Order (detailed in Section II.B, below)), which may be modified, updated or reprioritized as appropriate.  *See id.* at ¶ 5.a. and y.  The ITPM is to use best efforts to continue implementation of the Management, Operation and Maintenance ("MOM") programs required under the Consent Decree, including the Sewer Overflow Response Program, the Gravity Line Preventative Maintenance Program, the Fats, Oil, and Grease Program, the Pump Station Operations Program, and the Pump Station Preventive Maintenance Program.  *Id.* at ¶ 5.n.  The ITPM is to use best efforts to continue implementation of the Supplemental

---

[5] These matters are both assigned to the Honorable Henry T. Wingate and have been consolidated for purposes of administration.  *See* Clean Water Act Case, No. 3:12-cv-00790 – HTW-LGI, Dkt. No. 45 (Order Consolidating Cases filed Aug. 14, 2023).

Environmental Project ("SEP") required under the Consent Decree, which provides for the repair and/or replacement of private lateral sewer connections, or removal of illicit connections, for eligible residential property owners.  *Id.* at ¶ 5.jj.  Before the Stipulated Order terminates, the ITPM is to work with the City (including through weekly meetings with the City's Public Works director) and the Parties on a Transition Plan that shall set forth necessary and reasonable actions to transition the System.  *Id.* at ¶ 5.z.  Before the Stipulated Order terminates, the ITPM is also required to develop a Further Measures Report which will provide a comprehensive review of the work implemented under the Stipulated Order along with recommendations of additional work.  *Id.* at ¶ 5.aa.  The ITPM is required to implement procedures and practices to receive customer complaints about sewer overflows and other Sewer System problems at any hour of the day and to track and address customer complaints, *id.* at ¶ 5.gg., and consult with the City's Public Works Director to determine the amount of WSBA revenues that are directed to the Sewer System.  *Id.* at ¶ 5.hh.  The ITPM will also provide funding to help the City retain experts and attorneys needed to negotiate a modified or superseding Clean Water Act Consent Decree with the United States and MDEQ.  *Id*. at ¶ 5.ii.  The proposed Stipulated Order also provides limitations on the ITPM's ability to transfer the City's Sewer System assets and ability to incur debt.  *See id*. at ¶ 6.

> **B.      Sewer Priority Project List**

One of the ITPM's main responsibilities is to implement the Sewer Priority Project List (contained in Appendix A of the Stipulated Order).  *Id.* at ¶ 5.a.  Developed by the Parties' technical and engineering staff and consultants, the list sets forth 11 projects to address the most urgent problems facing the Sewer System and bring about relatively quick corrective action to fix sewer overflows and discharges onto streets, private properties, and the Pearl River.  *Id.* at

App. A.  For example, one priority project is to remedy the 215 emergency sewer failures listed at Appendix C of the Stipulated Order by rehabilitating or replacing sewer lines.  *Id.* at App. A., project #2.  Other projects provide critical maintenance and investigation of sewer lines generally (projects #3 and 4), and other projects focus on specific areas of the Sewer System with known deficiencies, such as the Queens neighborhood, Mill Street, the West Bank Interceptor, the Savanna WWTP, and the Trahon WWTP (projects #1 and 5-11).  *Id.* at App. A.

With a preliminary, conceptual, planning-level estimated total cost of $130 million to complete the priority projects (see *id.* at App. A), the Sewer Priority Project List is a significant responsibility that—under the ITPM's direction—is expected to bring much needed and much faster relief to sewer customers and the Sewer System than could otherwise be achieved by the City at this time.  The ITPM must submit to EPA and MDEQ an implementation schedule within 60 days of the Order Effective Date.  *Id.* at ¶ 19.a.  The ITPM may modify, update, or reprioritize the list and implementation schedule, subject to EPA's review of the proposed changes.  *Id.* at ¶ 5.y.

### C.    ITPM Reporting Requirements

The Stipulated Order requires that the ITPM prepare Quarterly Status Reports describing the progress in implementing the Stipulated Order, as well as certain other detailed information. *Id.* at ¶ 17.a.  In addition, the Stipulated Order requires the ITPM to hold a public meeting within 30 days of filing each quarterly status report.  *Id.* at ¶ 17.c.  The proposed Stipulated Order also provides, that while the ITPM is not a governmental agency, it will use best efforts to respond to requests for certain documents and will maintain a public website where it will post the Status reports and certain other information.  *Id.* at ¶¶ 18 a. and b.

### D.   ITPM Professional Budget

The ITPM's estimated professional budget for the first 12 months of work under the Stipulated Order, set forth in Appendix B of the Stipulated Order, may be funded from the accrued interest on funds that must be deposited in the bank accounts designated for capital improvements and for operations and maintenance.  *Id.* at ¶ 11.c.

### E.  The City's Rights and Obligations

The City's Director of Public Works is to advise, consult and collaborate (on a weekly basis) with the ITPM on all material aspects of implementation of the Stipulated Order and collaborate with the ITPM, and consult with EPA and MDEQ on financial and managerial decisions, where such decisions could potentially materially impact the Water System.  *See id.* at ¶ 5.b.  The ITPM will consult the City regarding the restructuring, refinancing, retirement, or other modifications of the System Indebtedness.  *Id.* at ¶ 5.e.  The ITPM will consult the City Attorney's Office on a proposed form contract to be used in New Contracts and in negotiating New Contracts whose terms extend beyond one year.  *Id.* at ¶ 5.u.  The ITPM will discuss any changes to Sewer Service Charges and Sewer Service Charge structure with the City and the Mayor and the Mayor's staff before requesting that the Mayor or the City Counsel make changes or modifications to Sewer Service Charges and/or the Sewer Service Charge Structure.  *Id.* at ¶ 5.w.  The ITPM will work with the City's Public Works Director to prepare the ITPM Transition Plan to transition maintenance, management, and control of the Sewer System back to the City. *Id.* at ¶ 5.z.  The City's Director of Public Works is to be consulted by the ITPM regarding the amounts of WSBA revenues to be directed to the Sewer System.  *Id.* at ¶ 5.hh.  The ITPM will also provide the City with funding to support the City's efforts to modify the Consent Decree or negotiate a superseding Consent Decree.  *Id.* at ¶ 5.ii.  The City has the right to invoke dispute

resolution with respect to certain matters, including decisions about the Sewer System that have

the potential to materially adversely impact the Water System.  *Id.* at ¶ 7.  The City can seek to

terminate the Stipulated Order upon a demonstration that the ITPM has substantially complied

with the Stipulated Order and that the City is capable of operating, maintaining, managing, and

controlling the Sewer System and capable of implementing the items in the Sewer Priority

Project List.  *Id.* at ¶ 10.a.  After the submittal of the ITPM's Transition Plan, the City will

prepare a Staffing and Training Plan to ensure that the City has in place appropriate and qualified

personnel to assume the responsibilities and obligations transitioned from the ITPM to the City.

*Id.* at ¶ 15.f.  The City's Director of Public Works will collaborate with the ITPM in preparing a

proposed schedule for implementation of the projects on the Sewer Priority Project List.  *Id.* at ¶

16.  Before modifications, updates, or reprioritization of the Sewer Priority Project List the

ITPM must submit justification of such an action to the City's Public Works Director.  *Id.* at ¶

19.b.

### F.  Termination of the ITPM, the Managership, and the Stipulated Order

Unless extended by the Parties, and approved by the Court, the Stipulated Order will

terminate 4 years from the Order Effective Date.  Yet it may terminate before such time if the

Court approves a superseding Consent Decree or Consent Decree modification before then, or

upon a motion, and approval by the Court, that the ITPM or City have achieved substantial

compliance with the Sewer Priority Project List work.  While the Stipulated Order is in effect,

the 2013 Clean Water Act Consent Decree between the City and the United States and MDEQ is

stayed.  *See id.* at Section VIII.

The Stipulated Order also sets forth processes and timelines for the Parties and ITPM to

follow in situations when the ITPM withdraws or is terminated, *id.* at ¶ 9; the interim third-party

managership of the sewer system ends and the City resumes control of the sewer system, *id.* at ¶ 10, or substantial compliance with the Sewer Priority Project List has been achieved, *id.* at ¶ 28.b.

### G.  Oversight of the ITPM

As noted above, the Stipulated Order requires that the ITPM file quarterly reports, and annual audited reports, and hold quarterly public meetings and consult the City, EPA and MDEQ on certain matters.  Most importantly, the ITPM is also subject to plenary oversight by the Court, which reviews the Quarterly Status reports filed by the ITPM and holds regular Status Conference hearings within a few weeks of each such filing.  In addition, the ITPM remains liable in the event of willful misconduct or gross negligence.  State and federal grant funding available to the ITPM is already subject to grant conditions and oversight by the grantor entity.

### III.    PUBLIC COMMENTS

During the public comment period, the United States received comments from around 666 members of the public.  Of those, 620 were received in writing by email and mail and are compiled in Exhibit B appended to the United States' Motion (personally identifiable information has been redacted).  The United States also held three public meetings on August 21 and 22, 2023, at Jackson State University and Tougaloo College that were attended by 113 people.  At those meetings, the United States received 46 spoken comments from individuals, some of whom also later submitted written comments.  Transcripts of each of those meetings are attached in Exhibit C (Aug. 21, 2023, 6:00pm meeting), Exhibit D (Aug. 22, 2023, 10:00am meeting), and Exhibit E (Aug. 22, 2023, 6:00pm meeting) (personally identifiable information has been redacted).

The vast majority of public comments were from individuals living and working in Jackson.  Comments were also sent on behalf of the following organizations: the Great City Mississippi Foundation, Pearl Riverkeeper, the People's Advocacy Institute, the Mississippi Poor People's Campaign, and the Spring Lake Fishing and Outing Club.

In all, the comments submitted may be categorized as (a) 633 overall in support of the proposed Stipulated Order, (b) 25 overall opposing or critical of the proposed Stipulated Order, and (c) 8 other (neither expressing support nor opposition).



As shown in the above chart, the commenters were overwhelmingly in favor of the proposed Stipulated Order.  The United States' summary and response to the comments are set forth in Exhibit F to the Motion to Enter.

## IV.    STANDARD OF REVIEW

The Court has the authority to enter interim injunctive relief agreed upon by the parties as an exercise of its broad equitable power.  *See, e.g.*, *Wine Country Gift Baskets.com v. Steen*, 612 F.3d 809, 812 (5th Cir. 2010) (noting that the parties agreed to a preliminary injunctive order blocking enforcement of contract provisions during the lawsuit); *Am. S. Ins. Co. v. Williamson*, No. 3:13CV689 DPJ-FKB, 2013WL 11327715, at *1 (S.D. Miss. Nov. 12, 2013) (granting preliminary injunctive relief that the parties agreed upon); *Gilchrist Mach. Co. v. Komatsu Am. Corp.*, 601 F. Supp. 1192, 1195 (S.D. Miss. 1984) (noting that the parties agreed to a temporary order preventing the defendant from terminating its franchise agreement with plaintiff during the litigation).  The Court's equitable authority includes the inherent power to appoint a third party as a court-appointed official.  *See* Fed. R. Civ. P. 66 (Receiver); *United States v. Am. Tobacco Co.*, 221 U.S. 106, 186–87 (1911).  Indeed, the Fifth Circuit has recognized that a court-appointed official may be an appropriate equitable remedy "in the context of ensuring a governmental entity's compliance with court orders," *Netsphere*, 703 F.3d at 306 (internal citations omitted), and, as noted above, a court in the Southern District of Mississippi recently appointed an official to remedy longstanding problems in the Hinds County jail system.  *Hinds County*, 2022 WL 3022385, at *2 (citing *Plata v. Schwarzenegger*, 603 F.3d 1088, 1093–94 (9th Cir. 2010)).  Courts may appoint third-party officials whose duties and responsibilities have been negotiated by the parties.  Stipulated Order, *Jones v. Gusman*, No. 2:12-cv-00859 (E.D. La. Jun. 21, 2016), Dkt. No. 1082 (appointing an independent compliance director to operate the Orleans Parish Jail); Consent Decree, *United States v. Town of Fort Gay*, No. 3:09-0855 (S.D.W.Va. Jan. 12, 2012), ECF No. 62 (appointing receiver in negotiated settlement to oversee town waste water treatment plant and water works).  "'[A] district court's power to supervise an equity receivership

and to determine the appropriate action to be taken in the administration of the receivership is extremely broad.'"  *United States v. Alisal Water Corp.*, 431 F.3d 643, 658 (9th Cir. 2005) (quoting *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986)).

The appointment of a third-party official is "particularly appropriate where public health issues are implicated."  *United States v. Alisal Water Corp.*, 326 F. Supp. 2d 1010, 1012 (N.D. Cal. 2002).  In fact, federal courts have appointed officials to oversee environmental violators, including governmental entities, in various contexts because of public health concerns.  *See*, *e.g.*, *United States v. Gov't of Guam*, No. 02-00022, 2008 WL 732796 (D. Guam Mar. 17, 2008) (receiver appointed and charged with bringing about compliance with the Clean Water Act); *United States v. Acadia Woods Add. #2 Sewer Co.*, 41 F. Supp. 2d 632, 633 (W.D. La. 1999) (receiver appointed to run defendants' wastewater treatment plants to achieve compliance with decree and Clean Water Act); *United States v. City of Detroit*, 476 F. Supp. 512, 520 (E.D. Mich. 1979) (administrator appointed to run City's sewage department to secure compliance with decree and Clean Water Act); *United States v. Alder Creek Water Co.*, Civ. No. 79-1090-JU, 1984 U.S. Dist. LEXIS 17371 (D. Or. Apr. 23, 1984) (receiver appointed in SDWA case to comply with the Act's reporting and monitoring requirements); *Ohio v. Chem-Dyne Corp.*, No. CA-80-03-0021, 1981 WL 5234, at *2 (Ohio Ct. App. Oct. 28, 1981) (affirming appointment of a state receiver to eliminate hazardous waste located at a hazardous waste site).  This Court therefore possesses ample legal authority to appoint an official to manage the City's Sewer System.

## V.    ARGUMENT

The Parties have worked diligently and cooperatively to develop the Stipulated Order which provides for some near-term relief until a superseding consent decree or a Consent Decree

modification is achieved, or until the Stipulated Order is otherwise terminated.  Pursuant to Paragraph 34 of the Stipulated Order, the City and MDEQ have already consented to entry of the Stipulated Order.  The Stipulated Order, at Paragraph 34, also provides that "The United States reserves the right to withdraw or withhold its consent if the comments regarding this Stipulated Order disclose facts or considerations indicating that the Stipulated Order is inappropriate, improper, or inadequate."  After consideration of the comments submitted by about 666 commenters with respect to the proposed Stipulated Order, the United States has concluded that the comments did not disclose facts or considerations indicating that the Stipulated Order is inappropriate, improper, or inadequate.  To the extent that some comments were critical of or requested changes to the Stipulated Order, the United States determined that these comments do not warrant withdrawal or withholding of its consent to the Stipulated Order and responds to these in Exhibit F.  As explained in greater detail below, after consideration of the comments, the Parties and the ITPM have agreed to a Stipulation, filed simultaneously herewith, to provide certain information to the ITPM and to revise a provision in the proposed Stipulated Order to require certain additional information be included in the quarterly financial reports and the annual audited financial statement.  The United States provides a general summary of the significant categories of comments below.

### A.  Comments in Support of the Proposed Stipulated Order (633 commenters)

The vast majority of comments supported entry of the Stipulated Order and specifically supported the management of Sewer System by Ted Henifin and JXN Water.  As a basis for their support, some comments praised Mr. Henifin's effectiveness as the ITPM of the City's drinking water system.  Because these comments are supportive of the Stipulated Order, we do not summarize or discuss them further in this Memorandum.

**B.  Comments Opposing or Critical of the Stipulated Order (25 commenters)**

    **a.  Scope of ITPM's authority and lack of public input, transparency, and oversight of ITPM and spending**

As noted above, the Stipulated Order was supported by the City and approved by the Mayor and the City Council, it was not imposed upon the City like the Receiver of the Hinds County Jail.  The Stipulated Order results from complex, arms-length, and often adversarial negotiations involving the United States, MDEQ, and the City.  During negotiations, the City was zealously represented by its Office of the City Attorney and by experienced outside counsel. The United States disagrees with any assertion that the temporary transfer of control of the Sewer System to a third party, subject to this Court's oversight, is inappropriate under the current circumstances.  The United States recognizes the extraordinary nature of placing a city function under the control of a third party and has agreed to do so only after many years of the City's demonstrated failure to comply with the CWA, MWAPCL, and NPDES permits and the Consent Decree—resulting in public health risks and environmental degradation.  Despite the years afforded to the City to comply with the Consent Decree, it failed to do so and committed more violations under the Consent Decree (and accrued millions of dollars of stipulated penalties, *see* Dkt. No. 29 at 5).  The physical condition of the WCTS and the WWTPs continued to deteriorate, and the staffing necessary to operate and maintain the Sewer System and to respond to SSOs has fallen to inadequate levels.  Indeed, the City lacks the financial and technical resources to perform fundamental duties expected of a competent sewer system operator, such as quickly remedying active overflows of sewage from City sewer lines onto streets and yards and preventing bypasses of the Sewer System to the Pearl River.  *Id.* (Joint Status Report).

As an initial matter, it is worth noting that none of the comments raised concerns with the Sewer Priority Project List.  The Sewer Priority Project List is at the heart of the proposed

Stipulated Order and is intended to provide some near-term relief to the sewer issues that have been plaguing the City. The Stipulated Order includes several requirements that are directed at ensuring the ITPM's actions are transparent.  First, the ITPM is subject to the plenary oversight of this Court, which holds regular Status Conference hearings to question the parties and the ITPM on the progress of the work and on the items set forth in the Quarterly Status Reports.[6] Second, the Stipulated Order requires that the ITPM file quarterly reports on the Court's docket (which is available to the Public) and post them on the JXN Water website.  The quarterly reports provide detailed information about the work the ITPM has done, the upcoming work that is planned, and summaries of the funds incoming and outgoing with respect to the ITPM's efforts in implementing the Stipulated Order.  The financial information will be audited annually.  The Stipulated Order also requires that the ITPM hold a public meeting within 30 days of the filing of each quarterly report.  The Stipulated Order provides for many areas of consultation between the ITPM, the City, and EPA and MDEQ.  These comments are discussed in greater detail in the Response to Comments, Exhibit F.  Because the Order already includes these provisions, these comments do not show that the Order is inappropriate, improper, or inadequate.

### b.    Local hiring and contracting

Several comments criticized the ITPM's hiring and contracting practices and requested that the ITPM be required to prioritize hiring local residents and local/small/minority-owned

---

[6] *See e.g.*, Clean Water Act Case, No. 3:12-cv-00790 – HTW-LGI, unnumbered docket Entries dated July 31, 2023, and August 14, 2023 (reflecting status conferences held in the Clean Water Act Case); Safe Drinking Water Case, No. 3:22-cv-00686 – HTW-LGI, unnumbered docket Entries dated Feb.17, 2023, and May 9, 2023 (reflecting status conferences held in the Safe Drinking Water Act Case).  In addition, as the Court is aware, sometimes both cases are discussed during the Status conferences, and that will likely be the case as the cases have now been consolidated for administrative purposes.

contractors.  As for the Sewer System, several years ago the City contracted with a large national

company, Veolia, to take over operation of its Sewer Treatment Plants.  *See, e.g.,* Henifin Decl.

at ¶ 11.  As the Water ITPM, Mr. Henifin has endeavored to enter into contracts with local and

minority business enterprises.  *See* Safe Drinking Water Case, Dkt. No. 41 at 12 (Consolidated

Report of Activities for the Quarter Ended June 30, 2023).  Mr. Henifin has indicated that he will

continue to seek qualified local and minority business enterprises to implement the work

required under the Sewer Priority Project List. *See* Henifin Decl. at ¶ 11.  These comments are

discussed in greater detail in the Response to Comments, Exhibit. F.  These comments do not

show that the Order is inappropriate, improper, or inadequate.

### c.    Comments concerning transparency of ITPM bank accounts

Several comments raised concerns about the transparency of the ITPM's use of funds

generated through the WSBA, any bank accounts established to carry out the Stipulated Order,

and funds in the City's SEP escrow account.  Under the proposed Stipulated Order, the ITPM

Reporting Requirements mandate that the ITPM must file Quarterly Reports with the Court (and

make publicly available on the JXN Water Website), that include, among other things, "an

accounting of the expenditures from, additions to, and remaining balance of the ITPM

Professional Sewer Budget."  Proposed Stipulated Order at ¶ 17.a.vi.  Upon further consideration

of these comments, and a review of the current language in the proposed Stipulated Order, the

Parties and the ITPM agreed to revise the language as proposed in the Joint Stipulation to

Provide Certain Personally Identifiable Information (PII) to ITPM and for Entry of Amended

Stipulated Order (Dkt. No. 66) to include similar quarterly reporting on the Sewer O&M

Account, the Sewer Capital Improvements Account, the SEP escrow account, and any other

account used by the ITPM to fund work or expenses related to the Sewer System, and/or the

Stipulated Order.  With this stipulation, which will be incorporated into the Stipulated Order presented to the Court for approval, the United States believes it has adequately addressed the comments on this topic.

### d.  Complaints about the Sewer System and Unrelated or Other Comments

Comments solely regarding the drinking water system or the City's stormwater management program are unrelated to the Stipulated Order at issue.  To the extent that the comments complained about the drinking water system, the United States has forwarded these comments to Mr. Henifin, as the ITPM of the drinking water system, to review and address as he considers appropriate.  Some commenters raised concerns about sewer issues affecting their property.  Pursuant to the Stipulation (Dkt. No. 66), the parties have agreed to provide this information to Mr. Henifin, with the address and contact information unredacted so that he may investigate the concerns raised by the commenters and submitted a proposed Order to that effect to Chambers.  Upon approval of the Order, the United States will forward these comments for follow-up to the ITPM.

### VI.        CONCLUSION

For the reasons above, the United States respectfully requests that the Court sign the proposed Stipulated Order, as amended per the Joint Stipulation to Provide Certain Personally Identifiable Information (PII) to ITPM and for Entry of Amended Stipulated Order, that has been provided to Chambers, pursuant to Local Rule 7(b)(2)(F) and enter the Stipulated Order on the docket.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA:

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

Dated: Sept. 29, 2023       *Karl J. Fingerhood*
KARL FINGERHOOD (PA Bar No. 63260)
ANGELA MO (CA Bar No. 262113)
Attorneys
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 514-7519
Fax: (202) 616-2427
Email: Karl.Fingerhood@usdoj.gov
           Angela.Mo@usdoj.gov


DARREN J. LAMARCA
United States Attorney for the
Southern District of Mississippi

Dated:  Sept. 29, 2023        /s/ Angela Givens Williams (with permission by KF)
ANGELA GIVENS WILLIAMS (MS Bar No. 102469)
Chief, Civil Division
Assistant United States Attorney
United States Attorney's Office
501 East Court Street, Suite 4.430
Jackson, Mississippi 39201
Tel: (601) 965-4480