IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
(Northern Division)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| and the STATE OF MISSISSIPPI, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 3:12-cv-790-HTW-LGI |
| | ) | (Clean Water Act Case) |
| v. | ) | |
| | ) | |
| | ) | |
| THE CITY OF JACKSON, MISSISSIPPI, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:22-cv-00686-HTW-LGI |
| | ) | (Safe Drinking Water Act Case) |
| v. | ) | |
| | ) | |
| | ) | |
| THE CITY OF JACKSON, MISSISSIPPI, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**STIPULATED ORDER ON SEWER SYSTEM (CWA CASE)**

# I.     **BACKGROUND**

**WHEREAS**, the Parties—Plaintiffs the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), and the State of Mississippi, acting through the Mississippi Commission on Environmental Quality and the Mississippi Department of Environmental Quality (collectively "MDEQ"), and Defendant the City of Jackson, Mississippi ("City")—agreed to a Consent Decree to resolve the Plaintiffs' claims against the City for alleged violations of the Clean Water Act, 33 U.S.C. § 1251 *et seq.* ("CWA"), the Mississippi Air and Water Pollution Control Law, Miss. Code Ann. § 49-17-1 *et seq.* ("MAWPCL"), and the City's National Pollutant Discharge Elimination System ("NPDES") permits arising from the City's Wastewater Collection and Transmission System ("WCTS") and Wastewater Treatment Plants ("WWTPs") (collectively the "Sewer System");

**WHEREAS**, the City's WCTS transports wastewater to three publicly owned WWTPs— the Savanna Street WWTP, the Trahon/Big Creek WWTP, and the Presidential Hills WWTP— which are operated by the City pursuant to NPDES permit numbers MS0024295, MS00444059, and MS0030295, respectively;

**WHEREAS,** on March 1, 2013, the Court entered a Consent Decree in this case as a judgment of the Court pursuant to Federal Rules of Civil Procedure 54 and 58 (*see* Dkt. No. 10) ("Consent Decree"), and pursuant to Section XVII (Effective Date) of the Consent Decree, the effective date of the Consent Decree is therefore March 1, 2013;

**WHEREAS**, the Consent Decree requires the City to undertake, among other things: (1) the evaluation and rehabilitation of the City's WCTS, the Savanna Street WWTP, and the main transmission pipe to the Savanna Street WWTP, known as the West Bank Interceptor; (2) the development and implementation of numerous programs to ensure proper capacity, management,

operations, and maintenance of the Sewer System; and (3) the implementation of certain work required by two prior administrative orders agreed to between the City and MDEQ;

**WHEREAS**, as the Parties began reporting to the Court in 2021 in joint status reports, the City has failed to achieve significant progress under the Consent Decree and, as a result, the City continues to routinely violate the CWA, the MAWPCL, and its NPDES permits and the City's Sewer System has deteriorated further;

**WHEREAS**, the City represents that the City's performance under the Consent Decree has been delayed by a number of factors that have impacted the City's financial capability to comply with the Consent Decree, including a long period of significantly reduced water and wastewater billing collections attributed to a failed investment to modernize the City's customer water meters and billing system; the downgrading in 2018 of the City's bond rating; a global COVID-19 pandemic; historic worker shortages, inflation, and supply chain disruption; and a continuing declining population;

**WHEREAS**, the Parties have engaged in regular negotiations since 2019 to modify the Consent Decree's compliance requirements and deadlines in recognition of the current state of the Sewer System, longstanding and unanticipated financial difficulties represented by the City, and the resulting practical realities created by the limited progress under the Consent Decree by the City;

**WHEREAS**, because of the City's violations of the Consent Decree and the law, the WCTS experiences recurring Sanitary Sewer Overflows ("SSOs") and/or sewer failures that spill raw sewage into homes, businesses, streets, yards, waterways, and other properties and the Savanna Street WWTP repeatedly engages in Prohibited Bypasses of wastewater by releasing untreated or under-treated wastewater into the Pearl River;

WHEREAS, from March 1, 2020, to February 28, 2022, the City reported 460 SSOs, which released over 111,081,920 gallons of untreated wastewater, 13 SSOs at the West Bank Interceptor low point, which released over 95,219,768 gallons, and 27 Prohibited Bypasses from the Savanna Street WWTP, which allowed 4,465,590,000 gallons of untreated or under-treated wastewater to discharge into the Pearl River;

WHEREAS, in March 2023, EPA and MDEQ conducted a three-day Clean Water Act compliance inspection of the City's Sewer System and observed that the Trahon/Big Creek WWTP was not being properly operated and maintained because it lacked a functional grit removal system, the second oxidation ditch had not been cleaned out or used, and one of the two secondary clarifiers had not recently been rehabilitated and was not functioning;

WHEREAS, there are currently approximately 215 known locations in the City's WCTS requiring immediate emergency repair as a result of known SSOs or other conditions indicative of sewer failure, yet the City has been unable to respond quickly to or rehabilitate the vast majority of them;

WHEREAS, due to delays in performance under the Consent Decree and the Parties' understanding of current conditions of the Sewer System, the Parties have mutually identified certain capital projects, repairs, and improvements to the Sewer System's condition and operations and maintenance that they expect will bring quicker relief to the City's residents and businesses and which projects, repairs, and improvements can be completed in a relatively short time compared to requiring full compliance with the Consent Decree;

WHEREAS, on November 29, 2022, in a separate civil case the United States, on behalf of EPA, filed a complaint against the City under the Safe Drinking Water Act, 42 U.S.C. § 300f *et*

*seq.* (*see United States v. City of Jackson, Mississippi*, Case No. 3:22-cv-00686-HTW-LGI (S.D. Miss.)) (hereinafter "Drinking Water Case");

WHEREAS, on November 29, 2022, the Court issued an interim stipulated order in the Drinking Water Case—agreed to by the United States, the Mississippi State Department of Health, and the City—that appointed an interim third-party manager for the City's Water System and Water/Sewer Business Administration Division (*see* Dkt No. 6 in Drinking Water Case);

WHEREAS, the Parties now request that the Court issue this Stipulated Order on Sewer System ("Stipulated Order") to similarly appoint an interim third-party manager for the City's Sewer System;

WHEREAS, the Parties recognize the City has over $8 million in American Rescue Plan Act ("ARPA") funds that will be partially matched by State ARPA funds through the Mississippi Municipality and County Water Infrastructure grant program administered by MDEQ;

WHEREAS, the Parties recognize $125 million has been authorized for the U.S. Army Corps of Engineers ("USACE") to design and construct improvements to the Sewer System and Water System under the Water Resources Development Act Section 219; this significant funding is available to improve the Sewer System and Water System provided (i) the Sewer System Interim Third-Party Manager ("ITPM") or the City enters into a Project Partnership Agreement with USACE, (ii) the USACE (after discussions with the ITPM or the City) then submits a work plan request to the Assistant Secretary of the Army (Civil Works) to obtain its portion of the funding that will be utilized for that work plan year, (iii) the Assistant Secretary of the Army (Civil Works) approves the funding, and (iv) the ITPM or the City is able to provide local matching funds (or obtain a waiver) before initiation of the project(s) approved in the work plan;

**WHEREAS**, in February 2023, the City and USACE entered into a Project Partnership Agreement for work to rehabilitate the Savanna Street WWTP;

**WHEREAS**, the ITPM has indicated that within 30 Days of the Order Effective Date he intends to enter into contracts/agreements to respond to sewer overflows and post signage about sewer overflows for which there is a reasonable expectation of public exposure as well as to continue the Fats, Oils, and Grease inspections of food service establishments;

**WHEREAS**, the Parties agree that the City is violating the Consent Decree, the CWA, the MAWPCL, and the NPDES permits, and assessment of stipulated penalties under the Consent Decree, modification of the terms of the Consent Decree, and/or litigation is necessary to resolve such non-compliance;

**WHEREAS**, the Parties intend to modify the terms of the Consent Decree and recognize that any such modification must take into account the finances, resources, and other considerations associated with the City's Water System;

**WHEREAS**, the Parties agree that during the pendency of this Stipulated Order, the Consent Decree is stayed;

**WHEREAS**, the Parties agree that upon termination of this Stipulated Order, the stay of the Consent Decree shall be lifted;

**NOW THEREFORE**, the Parties agree and stipulate, and the Court ORDERS:

## II.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and over the Parties.  This Court has supplemental jurisdiction over the state law claims asserted by the State pursuant to 28 U.S.C. § 1367.  Venue lies in this District pursuant to Section 309(b) of the

CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391(b) and 1395(a), because it is the judicial district where the City is located, where a substantial part of the events or omissions giving rise to the claims occurred, and where the alleged violations occurred.

### III.   **DEFINITIONS**

2.     Unless otherwise expressly provided in this Stipulated Order, terms used in this Stipulated Order that are defined by the CWA and the regulations promulgated thereunder shall have the meanings ascribed to them therein.  Whenever the terms set forth below are used in this Stipulated Order, the following definitions shall apply:

"Building Backup" shall mean a wastewater release or backup into a building that is caused by blockages, flow conditions, or other malfunctions in the WCTS. A wastewater backup or release that is caused by blockages, flow conditions, or other malfunctions of a Private Lateral is not a Building Backup.

"City" shall mean the City of Jackson, Mississippi.

"City Council" shall mean the duly elected Jackson City Council pursuant to Miss. Code Ann. § 21-8-7.

"Day" or "Days" shall mean a calendar day or calendar days.  In computing any period of time under this Stipulated Order, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

"Director of Public Works" or "Public Works Director" shall mean the Director of the City of Jackson's Public Works Department, or of any successor department of the City of Jackson, and may include any persons within the Public Works Department with the appropriate delegated authority to act on behalf of or in the absence of the Director of Public Works.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

6

"Emergency Sewer Failure" or "ESF" shall mean locations of known SSOs or other conditions indicative of sewer failure that have been prioritized for assessment and repair and are identified on Appendix C.

"ITPM Agents" shall mean the ITPM's staff and agents including officers, managers, accountants, consultants, professionals, contractors, engineering firms, and counsel.

"Mayor" shall mean the duly elected Mayor of the City of Jackson, pursuant to Miss. Code Ann. § 21-8-7, and may include any persons with the appropriate delegated authority to act on behalf of the Mayor.

"MDEQ" shall mean the Mississippi Department of Environmental Quality and any of its successor departments or agencies of the State of Mississippi.

"MOM" or "Management, Operations, and Maintenance" shall mean a program of accepted industry practices to properly manage, operate, and maintain sanitary wastewater collection, transmission, and treatment systems, and respond to Sanitary Sewer Overflow events.

"Month" shall mean calendar month.

"MSDH" shall mean the Mississippi State Department of Health and any successor department or agency of the State of Mississippi.

"New Contracts" shall mean all City contracts pertaining to the Sewer System entered into after the Order Effective Date.

"Office of the City Attorney" shall mean the City of Jackson's Office of the City Attorney, as defined in Section 2-216 of the Code of Ordinances, City of Jackson, Mississippi, and any successor department or office of the City, and shall include any outside counsel retained by the City for representation in this matter.

"Order Effective Date" shall mean the date of entry of this Stipulated Order by the Court.

"Paragraph" shall mean a portion of this Stipulated Order identified by an Arabic numeral.

"Parties" shall mean the United States, MDEQ, and the City of Jackson.

"Pre-Existing Contracts" shall mean all City contracts pertaining to the Sewer System in existence as of the Order Effective Date.

"Private Lateral" shall mean that portion of a sanitary sewer conveyance pipe that extends from the wastewater main to the single-family, multi-family, apartment, or other dwelling unit or commercial or industrial structure to which wastewater service is or has been provided.

"Prohibited Bypass" shall mean the intentional diversion of waste streams from any portion of a treatment facility which is prohibited pursuant to the terms set forth at 40 C.F.R. § 122.41(m).

"Public Works Department" shall mean the City of Jackson Department of Public Works and any successor department or office of the City of Jackson.

"Quarter" and "Quarterly" shall refer to the calendar year quarters beginning on January 1, April 1, July 1, and October 1.

"Sanitary Sewer Overflow" or "SSO" shall mean any discharge of wastewater to waters of the United States or the State from the City's Sewer System through a point source not specified in any NPDES permit, as well as any overflow, spill, or release of wastewater to public or private property from the Sewer System that may not have reached waters of the United States or the State, including all Building Backups.

"Section" shall mean a portion of this Stipulated Order identified by a Roman numeral, unless the Stipulated Order states that the "Section" referred to is a section of a statute or regulation.

"Sewer Service Charges" shall mean rates and amounts required to be paid for sewer services per month by customers whose sewage and wastewater empties into the City's collection and treatment systems as prescribed in Section 122-234 and Section 122-235 of the Code of

Ordinances, City of Jackson, Mississippi or such charges as may otherwise be imposed by the ITPM in accordance with the authority provided in this Stipulated Order and/or the interim stipulated order (Dkt. No. 6) in the Drinking Water Case.

"Sewer System" shall mean the WCTS and the WWTPs.

"Water System" shall mean the City's public drinking water system consisting of the surface water system identified as PWS ID No. MS0250008, the groundwater system identified as PWS ID No. MS0250012, and appurtenant treatment, storage, and distribution facilities.

"WCTS" or "Wastewater Collection and Transmission System" shall mean the municipal wastewater collection, retention and transmission system, including all pipes, force mains, gravity sewer lines, pump stations, pumps, manholes, and appurtenances thereto, which are owned or operated by the City.

"WWTPs" or "Wastewater Treatment Plants" shall mean devices or systems used in the storage, treatment, recycling, and reclamation of municipal wastewater.  For purposes of this Stipulated Order, this definition shall include all facilities owned, managed, operated, and maintained by the City, including but not limited to the following treatment facilities: the Savanna Street WWTP located at 3810 I-55 South & Savanna Street, Jackson, Mississippi 39121; the Trahon/Big Creek WWTP located at One Apache Dr., Landfill Road, Byram, Mississippi; the Presidential Hills WWTP located at Franklin D. Roosevelt Dr. W, Jackson, Mississippi; and all components of such wastewater treatment plants.

"Water/Sewer Business Administration Division" or "WSBA" shall mean the division within the Department of Public Works responsible for all aspects of billing customers for and collecting payments from customers for water, sewer, and sanitation services, which currently includes the responsibility for (i) establishing customer service agreements and setting up the

9

associated account(s), including, where necessary, the setting and commissioning of new meters; (ii) collecting water and sewer consumption data using meters and an advanced metering infrastructure system and, where necessary, obtaining manual meter reads; (iii) processing the collected data using a billing software system; (iv) generating bills for water and sewer services based directly on the consumption data and the associated volumetric rate and for sanitation services based on a flat charge; (v) causing bills to be mailed to customers, including coordination with the Water/Sewer Utilities Division in mailing out required notices; (vi) responding to customer issues about bills; (vii) collecting and processing customer payments; and (viii) providing administrative hearings to customers for billing disputes and representing the interests of the Water/Sewer Utilities Division in such administrative hearings and any appeals of the decision of the hearing officer.

"Water/Sewer Utilities Division" shall mean the City of Jackson's Water/Sewer Utilities Division of the Department of Public Works and any successor division or department of the City of Jackson.

## IV.   INTERIM THIRD-PARTY MANAGER

3.   **Interim Third-Party Manager.**   In accordance with Federal Rule of Civil Procedure 66, Edward "Ted" Henifin is hereby appointed as Interim Third-Party Manager of the Sewer System.  The ITPM and ITPM Agents shall have the status of officers and agents of this Court.  Solely for the purpose of implementing this Stipulated Order, Ted Henifin may operate through JXN Water, Inc., or a successor entity.  Any document submitted pursuant to the Stipulated Order through JXN Water, Inc., or a successor entity, to the City, MDEQ, or EPA shall be signed by Ted Henifin as ITPM.

4.   **Objectives.**  The ITPM shall pursue the following objectives:

a.      To operate, maintain, manage, and control the Sewer System in compliance with the CWA, MAWPCL, their implementing regulations, and all applicable NPDES permits, and to implement capital improvements to the Sewer System, including those identified in the Sewer Priority Project List (attached hereto as Appendix A); and

b.      To comply with all the requirements of this Stipulated Order, including but not limited to: (i) implementing each of the projects included in the Sewer Priority Project List, in accordance with the Sewer Priority Project List Implementation Schedule ("Implementation Schedule"); (ii) advising, consulting, and collaborating weekly with the Director of Public Works and consulting with EPA and MSDH, in making financial, managerial, planning, and operational decisions about the Sewer System where such decisions have the potential to materially impact the Water System; (iii) performing all reporting requirements outlined in Paragraph 17 (ITPM Reporting Requirements) herein; and (iv) making discretionary financial, managerial, planning, and operational decisions that are in the best interest of the Sewer System.

5.      **Responsibilities and Authority of ITPM.**  Except as otherwise provided in this Stipulated Order, in accordance with Fed. R. Civ. P. 66, the ITPM shall have the full power and authority necessary to carry out the requirements of this Stipulated Order and all powers and authority under all applicable state and federal law and, as an appointed officer of this Court, assumes all of the responsibilities, functions, duties, powers, and authority of the City insofar as they affect compliance with this Stipulated Order.  The ITPM, as well as any ITPM Agents as specifically directed in writing by the ITPM, assumes all of the responsibilities, functions, duties powers, and authority of the City insofar as they affect compliance with any of the City's outstanding debt obligations for the Water System and Sewer System.  The ITPM shall:

a.      Operate, maintain, manage, and control the Sewer System, including implementation of the Sewer Priority Project List in accordance with the Implementation Schedule, consistent with the terms of this Stipulated Order;

b.      Advise, consult, and collaborate weekly with the Director of Public Works on all material aspects of complying with this Stipulated Order and operation of the Sewer System and advise, consult, and collaborate with the Director of Public Works and consult with EPA and MSDH in making financial, managerial, planning, and operational decisions about the Sewer System where such decisions have the potential to materially impact the Water System;

c.      Pay any and all bills related to the Sewer System from accounts established for the benefit of the Sewer System, including but not limited to the ITPM Professional Sewer Budget, Sewer O&M Account, and/or Sewer Capital Improvements Account (as defined herein), as appropriate;

d.      Collect all funds generated through the operations of the WSBA and those funds generated through the operations of the Sewer System and Water System ("System Revenues"), including, but not limited to, tap fees; Fats, Oils, and Grease (FOG) permits; fees from the disposal of septage, leachate, and other sewage byproducts; fees from the operation of the Industrial Pretreatment Program; and any fines assessed for violations of the City's Sewer Use Ordinance, Sections 122-166 through 122-180;

e.      Pay any and all bond indebtedness and loans of the Sewer and Water Systems ("System Indebtedness") as they become due, or early in the ITPM's discretion. Reimburse the City on the 15th of each month the amount of state sales tax intercepted during the previous month by the State of Mississippi for State Revolving Loan Fund ("SRF") payments related to Sewer and Water Systems' SRF debt outstanding as of the Order Effective Date.  Make any necessary reporting to the appropriate lenders, reporting agencies, bond holders, bond insurers,

12

and any other agencies or entities in accordance with the loan and bond documents for the outstanding System Indebtedness with the assistance of the financial professionals retained by the ITPM in its discretion.  System Indebtedness may be restructured, refinanced, retired, defeased or otherwise modified in the best interest of the Sewer System to the extent allowed by law and consistent with obligations associated with existing System Indebtedness.  As such, the ITPM in consultation with the City, shall have the full authority to take all steps necessary to execute a restructuring, refinancing, retirement, defeasance or other modifications of outstanding System Indebtedness, including but not limited to entering into agreements with agents, banks, insurers, or other parties.  Additionally, the issuance of new debt in support of the Sewer System is within the authority and discretion of the ITPM.  Any disputes between the City and the ITPM arising from the ITPM's reporting obligations or its restructuring, refinancing, retirement or other modifications of outstanding System Indebtedness shall be within the exclusive jurisdiction of this Court.  Notwithstanding any provision of this Order, a dispute arising between the City and the ITPM regarding obligations related to system indebtedness shall not extend, postpone, or affect in any way any obligation of the City or the ITPM under this Stipulated Order.

    f. Work cooperatively with the City to ensure that information will be properly submitted to the appropriate lenders, reporting agencies, bond holders, bond insurers, and any other agencies or entities as heretofore referenced pursuant to the fulfillment of any continuing disclosure obligations with respect to existing System Indebtedness as of the date of this Stipulated Order;

    g. Not take or fail to take any action that would cause tax-exempt System Indebtedness existing as of the date of this Stipulated Order to lose its tax-exempt status;

13

h.      Consult with professionals, including legal and financial advisors, prior to the issuance, restructuring, refinancing, retirement, or other modifications of outstanding System Indebtedness and to ensure compliance with obligations associated with System Indebtedness.

i.      Direct ITPM Agents, City employees, and City contractors in the operation, maintenance, management, and control of the Sewer System; in the undertaking of the Sewer Priority Project List; and in the performance of duties associated with this Stipulated Order;

j.      Respond to notices of violation, information requests, and lawful orders regarding the Sewer System from local, state, and federal governments;

k.      Complete, sign, verify, and submit reports required under the CWA, MAWPCL, and NPDES permits or required under any grants or loans or other financial instruments (including but not limited to Municipality and County Water Infrastructure grants and SRF loans);

l.      Timely complete, sign, verify, and submit NPDES permit renewal applications for each WWTP, including performing any sampling necessary to complete such applications;

m.      Timely complete and execute all documents required under 11 Miss. Admin. Code Part 6, Chapter 1, Rule 1.1.6.B(1) regarding new connections to the Sewer System;

n.      Make best efforts to implement MOM programs to properly manage, operate, and maintain the Sewer System, including, but not limited to, the following programs: (i) Sewer Overflow Response Plan ("SORP"), which includes posting signage about sewer overflows for which there is a reasonable expectation of public exposure, originally approved under the Consent Decree as Appendix E on October 10, 2011; (ii) Gravity Line Preventive Maintenance Program ("GLPMP"), approved by EPA on April 21, 2015, which includes programs and procedures for cleaning and CCTV of lines on a recurring scheduled basis as outlined in the

14

GLPMP; (iii) Fats, Oils, and Grease ("FOG") Control Program, approved by EPA on August 9, 2016; and (iv) Pump Station Operations Program ("PSOP") and Pump Station Preventive Maintenance Program ("PSPMP"), each approved by EPA on June 17, 2014. The ITPM shall submit any proposed revisions to the substance of the SORP, GLPMP, FOG, PSOP, or PSPMP no later than three hundred sixty-five (365) Days after the Order Effective Date to EPA and MDEQ and shall implement the programs, as revised, upon written approval by EPA after consultation with MDEQ. Any modification of a MOM program proposed by the ITPM and approved by EPA, after consultation with MDEQ, shall not be considered as a modification of the Consent Decree already entered in this case;

o.      Access, without limitations, the staff, documents, books, records, electronic data, and facilities of the City deemed necessary by the ITPM for carrying out this Stipulated Order and make such employees and items available to any ITPM Agent;

p.      Hire any ITPM Agent that the ITPM deems necessary for the performance of administrative, financial, advisory, legal, technical, accounting, or other services;

q.      Enter into contracts, as provided herein, on behalf of or for the benefit of the City, that are necessary for the operation and maintenance of the Sewer System and/or to comply with or implement this Stipulated Order;

r.      Hire and/or contract directly with such operators or ITPM Agents that are necessary for the undertaking of the Sewer Priority Project List or preparing financial reports or legal documents associated therewith;

s.      Make such purchases as the ITPM deems necessary for the benefit of the Sewer System. In exercising procurement authority and awarding New Contracts that do not involve funds from grants or loans administered by MDEQ, the ITPM may choose not to comply with Miss. Code Ann. § 31-7-13 and instead use best efforts to have the procurement process be

competitive, transparent, and efficient.  For any purchases that are made using funds from grants or loans administered by MDEQ, the ITPM must comply with the terms, conditions, and assurances of the grant or loan providing the funds including compliance with Miss. Code Ann. § 31-7-13;

t.      Perform, modify, or terminate Pre-Existing Contracts.  The ITPM's ability to modify or terminate Pre-Existing Contracts shall be governed by the contract's terms or as allowed by law.  The ITPM shall consult with the Office of the City Attorney in modifying or terminating Pre-Existing Contracts;

u.      Enter into New Contracts related to the Sewer System.  The terms and conditions of any New Contracts entered into by the ITPM shall be based on a form contract agreed upon by the ITPM and the City.  The ITPM shall consult with the Office of the City Attorney in negotiating New Contracts whose terms extend beyond one (1) year after the Order Effective Date. The ITPM's ability to modify or terminate New Contracts shall be governed by the contract's terms or as allowed by law;

v.      Submit, within sixty (60) Days of the Order Effective Date, through a professional financial advisor, an update to the Financial Management Plan dated January 27, 2023, prepared pursuant to the interim stipulated order in the Drinking Water Case, that takes into consideration the short-term (12-18 Months), mid-term (1.5 to 5 years), and long-term (more than 5 years) operation and maintenance and capital improvement funding needs of the Sewer System, Water System, and WSBA; identifies possible sources of funding, including but not limited to SRF loans, Municipality and County Water Infrastructure grants, and Water Resources Development Act Section 219 matching funding, for those needs and includes an implementation plan and schedule for seeking such funding; identifies opportunities for debt restructuring relevant to the

Sewer System, Water System, and/or WSBA and includes a plan and schedule for seeking such debt restructuring; and update the Financial Management Plan as warranted;

       w.      Within ninety (90) Days of the Order Effective Date, and annually until the termination of this Stipulated Order, meet with the City to discuss the need to adjust the Sewer Service Charge structure, the Sewer Service Charges under the existing or a modified structure, and any fees that the City charges customers for sewer utilities:

           i.      If, in reliance on the latest Financial Management Plan and after consulting with the Mayor and the Mayor's staff, the ITPM deems a modification of the Sewer Service Charge structure or a Sewer Service Charge or fee increase appropriate to meet the requirements of this Stipulated Order, the Mayor shall propose an amendment, consistent with the ITPM's recommendation, to Sections 122-234 and/or 122-235, Code of Ordinances of Jackson, Mississippi, to be placed on the agenda of the next scheduled regular City Council meeting;

          ii.      In the event the City Council does not pass an amendment proposed by the Mayor in accordance with the preceding sub-Paragraph and more than three hundred sixty-five (365) Days have passed from the date of the last Sewer Service Charges adjustment, the ITPM shall have the full power and authority to adjust the Sewer Service Charges, Sewer Service Charges structure, and/or fees without the necessity of any actions on the part of the City Council and with thirty (30) Days' notice to the Mayor, Director of Public Works, the City Council, and the Sewer System's customers published in accordance with Miss. Code Ann. § 21-13-11 and published on the ITPM's website;

       x.      Seek out, apply for, and execute state and federal grants, loans, and other sources of funds (including but not limited to Municipality and County Water Infrastructure grants, SRF loans, and funds under Water Resources Development Act Section 219) for the

implementation of this Stipulated Order and for funding of the ITPM Professional Sewer Account, Sewer O&M Account, and Sewer Capital Improvements Account, as they are defined herein, subject to the limitations of Paragraph 6 (Limitations of ITPM's Authority).  Where local matching funds are required to access available grants, the ITPM shall make best efforts to obtain such funds —taking into account all available WSBA revenues for the Water System and Sewer System— and, if not available, seek a waiver of any such local matching requirement;

       y.    Modify, update, or reprioritize the Sewer Priority Project List and the Implementation Schedule, consistent with Paragraph 19 (EPA Review);

       z.    Develop and submit to the Parties an ITPM Transition Plan that shall set forth necessary and reasonable actions the City and the ITPM shall take to transition operation, maintenance, management, and control of the Sewer System and the timeframes for such actions. The Plan shall include logistical steps, at a minimum, to transfer the ITPM's processes and procedures (as applicable), contracts and contract oversight, staff, bank account access, and to provide necessary training to relevant City employees and/or contractors;

       i.    The ITPM shall begin meeting with the Public Works Director at least weekly (or another schedule as mutually agreed between the Public Works Director and the ITPM) to discuss the ITPM Transition Plan no later than three (3) years after the Order Effective Date.  If the Court enters an order granting a motion for termination of the interim third-party managership under Paragraph 10 or an order granting a motion for termination of the Stipulated Order under sub-Paragraphs 28.a, b, or c, then the ITPM shall begin such meetings with the Public Works Director within seven (7) Days of entry of such order;

       ii.    The ITPM Transition Plan shall be submitted to the Parties no later than three (3) years after the Order Effective Date.  If the Court enters an order granting a

18

motion for termination of the interim third-party managership under Paragraph 10 or an order granting a motion for termination of the Stipulated Order under sub-Paragraphs 28.a, b, or c, the ITPM shall submit the ITPM Transition Plan to the Parties within sixty (60) Days of entry of such order.  The Parties shall have thirty (30) Days following the date of submittal to review and comment on the ITPM Transition Plan.  Within fifteen (15) Days after receiving comments from all Parties, the ITPM shall file the ITPM Transition Plan on the Court's docket for the Court's approval.  Any Party shall be permitted to file any objection to the ITPM Transition Plan within thirty (30) Days of its submission to the Court;

aa. Develop a Further Measures Report that includes a comprehensive review of the status of the projects and MOM programs required under this Stipulated Order and recommendations for additional work and programs to be performed.  The ITPM shall submit the Further Measures Report to the Parties concurrently with the ITPM Transition Plan;

bb. The ITPM shall make its staff and contractors, including WSBA staff and contractors, reasonably available—consistent with their existing duties during the transition period under the ITPM Transition Plan—to educate, interface with, and assist the City in the transfer of responsibilities to implement this Stipulated Order.  During the transition period under the ITPM Transition Plan, the ITPM shall pay necessary and reasonable salaries and training costs for City employees and/or contractors that will carry out the programs and procedures of the Stipulated Order in accordance with the Court-approved ITPM Transition Plan;

cc. Subject to the exception in sub-Paragraph 5.s, comply with the terms, conditions, and assurances of any current or future grant or loan that funds the Sewer System;

dd. In the ITPM's judgment, except as otherwise required herein, consult with EPA and MDEQ with respect to any material aspect of complying with this Stipulated Order and

19

secure technical advice or assistance from EPA and MDEQ for the purpose of ensuring compliance with the CWA and all other applicable laws and regulations;

ee.     Cause to be issued any notices to customers, EPA, and/or MDEQ required under the CWA, MAWPCL, and their implementing regulations;

ff.     Cause to be compiled and issued any reports to customers required under the CWA, MAWPCL, and their implementing regulations;

gg.     Cause to be implemented procedures and practices, including procedures in the SORP, to receive customer complaints at any hour of any day regarding SSOs and conditions of the Sewer System and to track and address customer complaints;

hh.     Determine, in consultation with the Director of Public Works the amount of WSBA revenues that shall be directed to the Sewer System;

ii.     Provide funding in an amount of up to $400,000 per year to support the City's efforts to modify the Consent Decree or negotiate a superseding Consent Decree under Paragraph 27, including the City's retention of consultants and attorneys.  The funding will be included in periodic updates to the Financial Management Plan.  The ITPM shall commence providing the funding no earlier than two (2) years following the Order Effective Date and on a date/schedule agreed to by the ITPM and the City.  If the Court enters an order granting a motion for termination of the interim third-party managership under Paragraph 10 or an order granting a motion for termination of the Stipulated Order under sub-Paragraphs 28.b or c, the ITPM shall commence providing the funding on a date/schedule agreed to by the ITPM and the City.  The City and the ITPM will make best efforts to agree on the amount of funding necessary, subject to the annual cap above or as mutually agreed between the City and the ITPM.  The City will provide the ITPM with specific documentation of the uses of such funds;

jj.     Make best efforts over the four (4) years from the Order Effective Date to implement the Supplemental Environmental Project ("SEP") pursuant to Appendix F of the Consent Decree to the extent of the balance remaining in the City's escrow fund for the SEP; and

kk.     Reimburse the City for the fully burdened personnel costs of any City staff retained on the JXN Water, Inc. staff during the term of this Stipulated Order within forty-five (45) Days of receipt of a detailed invoice from the City for costs incurred.

6.     **Limitations of ITPM's Authority.**  Unless otherwise ordered by the Court, the ITPM shall not:

a.     Encumber or sell any real property asset of the City;

b.     Purchase any real property for administrative use without the consent of the City;

c.     Transfer ownership of any Sewer System assets from the City of Jackson to any other governance structure or operating entity;

d.     Propose or agree to consolidate the Sewer System with any other public or private utilities;

e.     Authorize another governmental agency to operate a publicly owned treatment works within the Sewer System's current service areas; or

f.     Apply for a loan in excess of the amount of additional debt capacity recommended in the latest Financial Management Plan.

7.     **ITPM/City Disputes.**  Disputes between the ITPM and the City shall be limited to disputes relating to: (i) Sewer Service Charge increases, (ii) grant applications and SRF loan applications or any other indebtedness in excess of the amount of additional debt capacity recommended in the latest Financial Management Plan, (iii) the form contract for New Contracts, (iv) the date/schedule and amounts for the ITPM's provision of funding to support the City's

efforts to modify the Consent Decree or negotiate a superseding Consent Decree, (v) issues that arise under this Stipulated Order relating to the Sewer O&M Account, or (vi) decisions regarding the Sewer System that have the potential to materially adversely impact the Water System or WSBA.  A dispute will be initiated by the City serving on the ITPM a written notice of dispute within ten (10) Days of the Office of the City Attorney receiving knowledge of an action by the ITPM which has aggrieved the City, with a copy to both EPA and MDEQ.  The ITPM and the City will engage in informal discussions in an attempt to resolve any dispute.  If the City and the ITPM cannot resolve the dispute within thirty (30) Days of the invocation of informal discussions, the City may file a request to this Court for judicial resolution within ten (10) Days of the conclusion of the informal discussion period.  The United States and MDEQ shall be permitted to file statements of position with respect to any disputes submitted to this Court within thirty (30) Days of the City's filing of the motion for judicial resolution.

8.   **Liability of the ITPM**.

a.      The ITPM is subject to the oversight of the Court.

b.      Except for instances of willful misconduct or gross negligence, the ITPM and ITPM Agents shall have the status of officers and agents of this Court, and shall be vested with the same immunities as vested with this Court.  No suit shall be filed against the ITPM or ITPM Agents without leave of this Court except as provided in 28 U.S.C. § 959(a).

c.      Subject to the following sub-Paragraph 8.d, the City shall indemnify, hold harmless, and defend the ITPM and ITPM Agents from any claim asserted by a third-party with respect to actions taken in their official capacity within the scope of this Stipulated Order, with the exception of any gross negligence or willful misconduct, including but not limited to conduct which constitutes fraud, malice, libel, slander, defamation, or any criminal offense.

d.      With respect to Sewer Overflow Response Plan (SORP) obligations relating to Building Backups caused by the Sewer System but not attributable to force majeure or other mitigating circumstances, that occur within one (1) calendar year following the Order Effective Date, the City will continue to pay the cost of cleanup for Building Backups verified to the City's Risk Manager by the ITPM.  Thereafter, the ITPM shall be responsible for the cost of cleanup for Building Backups that occur after one (1) calendar year following the Order Effective Date and which are caused by the Sewer System but not attributable to force majeure or other mitigating circumstances.  With respect to any payments by the City for damages arising from such Building Backups that occur after one (1) calendar year following the Order Effective Date, the ITPM shall reimburse the City up to $250,000 per year in damages.

e.      In light of the need for the ITPM and ITPM Agents to focus their attention on the obligations of this Stipulated Order, unless granted leave of the Court, the ITPM and ITPM Agents may not testify in any litigation or proceeding, other than this case, with regard to acts or omissions of the City, the ITPM, or ITPM Agents relating to the Sewer System.

9.      **Removal or Replacement of the ITPM.**

a.      For good cause shown, the United States, MDEQ, or the City may move for removal or replacement of the ITPM.

b.      After forty-five (45) Days' notice to the Parties, the ITPM may file a notice of withdrawal with this Court.

c.      The ITPM shall cooperate with the Parties to identify an appropriate replacement and to take any steps necessary to facilitate the transfer of ITPM authority to the replacement ITPM.  This shall include, but not be limited to, the transfer/assignment of financial authority, all contractual matters, entities/agents used by the ITPM, and other actions to allow the replacement ITPM to assume all ITPM responsibilities and authority under this Stipulated Order.

d.      In the event the ITPM's appointment is terminated for good cause in accordance with sub-Paragraph 9.a or the ITPM provides the notice required under sub-Paragraph 9.b, the Parties shall, jointly or separately, propose at least one ITPM candidate for replacement. The Court shall select and appoint the replacement ITPM from the candidates provided by the Parties.

e.      Unless the ITPM has elected to withdraw due to some disability or other exigent circumstance that prevents the performance of ITPM duties, the ITPM shall continue to perform ITPM duties until at least thirty (30) Days after the ITPM's filing of the notice of withdrawal.

f.      Withdrawal or termination of the ITPM shall not relieve the City from complying with all other provisions of this Stipulated Order or from complying with all requirements of the CWA, the MAWPCL, or any other local, state, or federal law.  In the event of any vacancy of the ITPM position, the Parties shall request a status conference with the Court to address the vacancy.  Until such time as a replacement ITPM is appointed by this Court, the City shall perform all the activities of the ITPM under this Stipulated Order, subject to the provisions of Section V (City Dispute Resolution), or take any such actions otherwise ordered by the Court. The Court shall order any financial institutions in which funds of the ITPM have been deposited to immediately authorize the Chief Financial Officer of the City to access and withdraw said funds in accordance with this Stipulated Order only for such time until a replacement ITPM is appointed by the Court.  Upon appointment of the replacement ITPM, the City shall provide an accounting to the Court of the use of any such funds, and all remaining funds (less those accounted for and approved by the Court of the former ITPM) shall be restored within ten (10) business days and made available to the replacement ITPM.

10.      **Termination of the Interim Third-Party Managership of the Sewer System.**

a.     Any Party may move to terminate the interim third-party managership of the Sewer System and authorize the City to resume operating, maintaining, managing, and controlling the Sewer System before this Stipulated Order terminates.  Such motion shall be granted upon a showing by a preponderance of the evidence that (i) the ITPM has substantially complied with the Stipulated Order and (ii) the City is capable of operating, maintaining, managing, and controlling the Sewer System in compliance with this Stipulated Order, and is capable of completing the projects identified in the Sewer Priority Project List on the timeline set forth in the Implementation Schedule.

b.     If the Court grants a motion for termination under sub-Paragraph 10.a, termination of the interim third-party managership shall not be effective until and unless (i) the Court has approved an ITPM Transition Plan under the process set forth in sub-Paragraph 5.z, if not already approved, (ii) the ITPM has submitted the Further Measures Report required under sub-Paragraph 5.aa to the Parties, if not already submitted, and (iii) the City has submitted the Staffing and Training Plan required under sub-Paragraph 15.f to the Parties, if not already submitted.

11.     **ITPM Professional Sewer Budget.**

a.     Within thirty (30) Days of the Order Effective Date, the ITPM shall establish an ITPM Professional Sewer Account (the "ITPM Professional Sewer Account") to track expenses and revenues related to the Sewer System to be used consistent with the ITPM Professional Sewer Budget, attached hereto as Appendix B ("ITPM Professional Sewer Budget"). The ITPM shall have financial control and fiduciary responsibility of the ITPM Professional Sewer Account, including accrued interest.

b.     Upon the creation of the ITPM Professional Sewer Account, the ITPM shall notify the Parties in writing of its creation.  Such notice shall include the identity and location of

the bank at which the ITPM Professional Sewer Account is established, the account number, and other identifying information.  The ITPM may use accounts already established provided there is a mechanism for separate accounting between the Water and Sewer Systems.  The ITPM shall provide this information to the Court under seal.

      c.     The ITPM Compensation, as reflected in Appendix B, may be derived from interest accrued in the Sewer Capital Improvements Account and in the Sewer Operations and Maintenance Account, which interest is not derived from monies paid by customers for water and sewer services.

      d.     The City and the ITPM shall, with assistance from EPA and MDEQ as appropriate, identify funding or other funds to support the ITPM Professional Sewer Budget.  If there are insufficient funds for the ITPM Professional Sewer Budget, the Budget shall be funded from the Sewer Operations and Maintenance Account.

      e.     Consistent with the ITPM Professional Sewer Budget, the ITPM is authorized to draw down the ITPM's and the ITPM Agents' compensation and expenses from the ITPM Professional Sewer Budget with the exception of operators or engineering firms hired to perform operations and maintenance.

      f.     The ITPM shall maintain supporting documentation such as timesheets, invoices, receipts, and contracts and shall provide such documentation to any Party, if requested.

      g.     The ITPM shall make best efforts to conserve the funds in the ITPM Professional Sewer Account.

      h.     If, in the best professional judgment of the ITPM, a modification to the ITPM's Professional Sewer Budget is necessary, the ITPM, in consultation with the Director of Public Works under sub-Paragraph 5.hh, shall submit any proposed increase of the ITPM's compensation or of the overall budget to EPA and MDEQ, subject to the provisions of Paragraph

26

19 (EPA Review).  After the conclusion of EPA and MDEQ's review period under Paragraph 19 (EPA Review), the ITPM shall file the proposed modification with the Court.

       12.    **Sewer Operations and Maintenance Account.**

          a.    Within thirty (30) Days of the Order Effective Date, the ITPM shall establish a Sewer Operations and Maintenance Account (the "Sewer O&M Account") for purposes of depositing revenues to be used to fund operations and maintenance activities of the Sewer System, including those operations and maintenance activities to be performed by contractors or to respond to imminent and substantial endangerments to the health of persons or to the welfare of persons due to the Sewer System.  The ITPM may use accounts already established provided there is a mechanism for separate accounting between the Water System and Sewer System.  The ITPM shall have financial control and fiduciary responsibility of the Sewer O&M Account, including accrued interest.

          b.    Upon the creation or designation of the Sewer O&M Account, the ITPM shall notify the Parties in writing of its creation/designation.  Such notice shall include the identity and location of the bank at which the Sewer O&M Account is established/designated, the account number, and other identifying information.  The ITPM shall provide this information to the Court under seal.

          c.    The Sewer O&M Account shall be funded in amounts directed by the ITPM from WSBA revenues and any applicable grants, loans, and financial assistance.

       13.    **Sewer Capital Improvements Account.**

          a.    Within thirty (30) Days of the Order Effective Date, the ITPM shall establish or designate a Sewer Capital Improvements Account ("Sewer Capital Improvements Account") for the purpose of depositing all federal and state grants, loans, and other financial

assistance awarded for, and any WSBA revenues directed by the ITPM toward, capital improvements related to the Sewer System.

b.    The purpose of the Sewer Capital Improvements Account is to fund capital improvements of the Sewer System, including the work identified in the Sewer Priority Project List.

c.    Upon the creation/designation of the Sewer Capital Improvements Account, the ITPM shall notify the Parties in writing of its creation/designation.  Such notice shall include the identity and location of the bank at which the Sewer Capital Improvements Account is established/designated, the account number, and other identifying information.  The ITPM may use accounts already established provided there is a mechanism for separate accounting between the Water System and Sewer System.  The ITPM shall provide this information to the Court under seal.

d.    The ITPM shall have financial control and fiduciary responsibility over the Sewer Capital Improvements Account, including accrued interest.  Subject to the exception in sub-Paragraph 5.s, all expenditures from the Sewer Capital Improvements Account shall be made in a manner consistent with the terms and conditions of the originating loan, grant or other financial assistance.

e.    The Sewer Capital Improvements Account shall be funded in amounts directed by the ITPM from WSBA revenues, in accordance with existing bond and loan agreements, and any applicable grants, loans, and financial assistance.

14.    **Bank Accounts Generally.**  Upon the creation/designation of any bank accounts to carry out the requirements of this Stipulated Order, the ITPM shall notify the Parties in writing of its creation/designation.  Such notice shall include the identity and location of the bank at which the account is established, the account number, and other identifying information.  The ITPM shall

provide this information to the Court under seal.  The ITPM shall have financial control and fiduciary responsibility of all such bank accounts, including accrued interest.

15.    **Duties of the City.**  During the pendency of this Stipulated Order, the City shall:

a.    Cooperate with the ITPM in all respects, including executing any required documents to allow the ITPM to fully exercise its obligations under this Order;

b.    In coordination with the ITPM, apply for and execute grants to support the ITPM Professional Sewer Budget;

c.    Within seven (7) Days of the Order Effective Date, take all actions (if any) needed to convey all System Revenues, including revenues related to interjurisdictional agreements, and those funds generated through the operations of the Sewer System and Water System, including, but not limited to, tap fees; FOG permits; fees from the disposal of septage, leachate, and other sewage byproducts; fees from the operation of the Industrial Pretreatment Program; and any fines assessed for violations of the City's Sewer Use Ordinance to the ITPM and ensure that the ITPM directly receives all such future revenues;

d.    At the direction of the ITPM, immediately, but in no less than seven (7) Days of the ITPM's request, deposit into the Sewer Capital Improvements Account (i) the City's matching funds for any federal or state loans or grants related to the Sewer System which are in City accounts as of the Order Effective Date, (ii) the City's funds from any federal or state loans or grants related to the Sewer System which are in City accounts as of the Order Effective Date, (iii) the City's funds held in reserve for System Indebtedness debt service payments due on September 1, 2023 and December 1, 2023, and (iv) the City's funds held in escrow for the Supplemental Environmental Project as described in Appendix F of the Consent Decree. Thereafter, (i) federal or state loans or grants or other financial assistance awarded to the City for the Sewer System shall be directly deposited into the Sewer Capital Improvements Account, and

29

(ii) the City shall, within seven (7) Days of the ITPM's request, deposit into the Sewer Capital Improvements Account its matching funds for any federal or state loans or grants related to the Sewer System, which shall specifically include all ARPA matching funds (in an amount no less than $8,828,512) held by the City for Sewer System projects as of the Order Effective Date;

e.      Direct its employees to support the ITPM and continue supporting the operations of the Sewer System;

f.      Within thirty (30) Days of the ITPM's submittal of the ITPM Transition Plan to the Parties, the City shall submit to the Parties a Staffing and Training Plan that outlines the processes and procedures, including schedules for implementation, to retain and train the appropriate level of staffing (which may be employees and/or contractors) to continue implementation of the programs and procedures under this Stipulated Order.  The Staffing and Training Plan shall ensure that the City has in place appropriate and qualified personnel and/or contractors to assume the responsibilities and obligations transitioned from the ITPM to the City under the ITPM Transition Plan;

g.      Collaborate with the ITPM on preparation of the Further Measures Report required under sub-Paragraph 5.aa;

h.      Provide information related in any way to the Sewer System in response to requests from the ITPM, EPA, or MDEQ;

i.      Provide an easy-to-find link to the ITPM's website within the City's website for purposes of publishing Quarterly status reports and other updates about the Sewer System;

j.      Approve requests from the ITPM for loans that do not exceed the debt capacity recommended in the latest Financial Management Plan; and

k.      Request in a timely manner any and all applicable financial assistance, which may include subsidies, available to the City for grants/loans that may be awarded to support the Sewer System, but only after consultation with the ITPM and with the ITPM's consent.

16.    **Sewer Priority Project List.**

a.      Attached hereto as Appendix A is the Sewer Priority Project List.  The Parties acknowledge that commencement and completion of the projects identified in the Sewer Priority Project List is subject to any changes (including scope, sequence, or prioritization) made in a manner consistent with this Stipulated Order.

b.      Within sixty (60) Days of the Order Effective Date, the ITPM, in collaboration with the Public Works Director, shall submit for review to EPA and MDEQ a schedule for implementation of all projects on the Sewer Priority Project List (Implementation Schedule).  Projects that the City is implementing as of the Order Effective Date shall continue subject to potential adjustment based on EPA and MDEQ's review and consultation with the ITPM.  The ITPM shall immediately commence work in accordance with the schedule, subject to the provisions of Paragraph 19 (EPA Review).

17.    **ITPM Reporting Requirements.**

a.      **Quarterly Status Reports.**  Commencing with the first Quarter after the Order Effective Date and continuing Quarterly until termination of this Stipulated Order pursuant to Section VIII (Termination), the ITPM shall submit to the Parties and file on the Court's docket written status reports on its progress in implementing the Stipulated Order ("Status Reports").  The Status Reports shall be due on the last Day of January, April, July, and October and shall cover the immediately preceding Quarter, except as otherwise specified below.  In each report, the ITPM shall provide the following:

i.        The date, time, location, source, estimated duration, estimated volume, receiving water (if any), and cause of all Sanitary Sewer Overflows occurring in the preceding Quarter in a tabulated electronic format;

ii.        The date, time, location, source, estimated duration, estimated volume, and cause of all Prohibited Bypasses occurring in the preceding Quarter in a tabulated electronic format;

iii.        A description of the projects and activities conducted during the reporting period to comply with the requirements of this Stipulated Order;

iv.        A summary of any delays encountered or anticipated that may affect the ITPM's performance or implementation of this Stipulated Order, including the Sewer Priority Project List, and any actions taken to address such delays;

v.        Any modification to the Sewer Priority Project List or Implementation Schedule consistent with Paragraphs 16 (Sewer Priority Project List) and 19 (EPA Review);

vi.        An accounting of the expenditures from, additions to, and remaining balance of the ITPM Professional Sewer Budget, the Sewer O&M Account, the Sewer Capital Improvements Account, the SEP escrow fund, WSBA accounts, and any other account used by the ITPM to receive, borrow, or spend funds for expenses and/or work related to the Sewer System and implementation of this Stipulated Order;

vii.        A projection of work to be performed pursuant to this Stipulated Order during the next or succeeding Quarter;

viii.        In each Status Report filed in the month of January, an audited financial statement of the ITPM Professional Sewer Account, Sewer O&M Account, and Sewer Capital Improvements Account, the SEP escrow fund, WSBA accounts, and any other

32

account used by the ITPM to receive, borrow, or spend funds for expenses and/or work related to the Sewer System and implementation of this Stipulated Order for the City's previous fiscal year. Any information revealing bank account numbers or constituting personally identifiable information shall be redacted;

        ix.      In each Status Report filed in the month of April, the following information: (1) a trends analysis of the number, volume, duration, and cause of Sanitary Sewer Overflows and (2) a trends analysis of the number, volume, duration, and cause of all Prohibited Bypasses. The April 2024 Status Report shall provide the trends analyses for the period starting from the Order Effective Date through December 31, 2023; the April 2025 Status Report shall provide the trends analyses for the period starting from the Order Effective Date through December 31, 2024; and the April 2026 and April 2027 Status Reports shall each provide the trends analyses for the preceding two calendar years; and

        x.      In each Status Report filed in the month of July, a proposed ITPM Professional Sewer Budget for the upcoming fiscal year.

        b.      The reporting requirements in this Stipulated Order do not relieve the ITPM of any reporting obligations required by the CWA, or its implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement, including all requirements for reporting Sanitary Sewer Overflows and Prohibited Bypasses to MDEQ pursuant to the SORP or applicable law or regulations.

        c.      **Quarterly Public Meeting**. The ITPM shall hold a public meeting within thirty (30) Days after filing each Quarterly Status Report required in sub-Paragraph 17.a.

18.    **Records and Information Sharing**.

      a.    The ITPM is not a federal, state, county, or local agency; nor is the ITPM an agent of a federal, state, county, or local agency.  Nonetheless, the ITPM shall use best efforts to respond to requests from the public for documents in its custody relating to compliance with this Stipulated Order unless the ITPM demonstrates that such efforts would prevent the ITPM from carrying out its duties under this Stipulated Order.

      b.    Within thirty (30) Days of the Effective Date, the ITPM shall establish and maintain a public website to inform the public of its work, post Status Reports, post requests for proposals, and post other information that—in the ITPM's reasonable judgment—should be disclosed to the public.

      d.    Any information provided pursuant to this Stipulated Order may be used by the United States or MDEQ in any proceeding to enforce the provisions of this Stipulated Order and as otherwise permitted by law.

      e.    Nothing herein shall affect any of the information gathering authorities of EPA or MDEQ.

      f.    MDEQ shall send any notices of violation, information requests, and lawful orders issued regarding the Sewer System to the ITPM and the City.

19.    **EPA Review**.

      a.    The ITPM shall submit to EPA and MDEQ: (i) within sixty (60) Days of the Order Effective Date, the Implementation Schedule; (ii) a written justification (including any Public Works Director Disagreement as provided under sub-Paragraph 19.b below), prior to making any modifications, updates or reprioritization of the Sewer Priority Project List; (iii) a written justification, prior to making any changes to the Implementation Schedule that would impact the timetable for completion of any Priority Project by more than sixty (60) Days; (iv)

34

written submissions as required by the Sewer Priority Project List; and (v) a written justification for any proposed increase of the ITPM's compensation or of the overall ITPM Professional Sewer Budget.

        b.      Prior to submitting any written justification for any modifications, updates or reprioritization of the Sewer Priority Project List as provided in category (ii) in sub-Paragraph 19.a above and except as provided in sub-Paragraph 19.c. below, the ITPM shall submit such justification to the Public Works Director for review and comment.  Within ten (10) Days of receipt of submittal of the justification, the Public Works Director shall submit written comments to the ITPM of any areas of disagreement regarding such modifications, update or reprioritization of the Sewer Priority Project List.   Within ten (10) Days of receipt of the Public Works Director's comments, the Public Works Director and the ITPM shall meet to discuss and attempt to resolve any disagreements and will use best efforts to reach agreement on the modifications, updates or reprioritization of the Sewer Priority Project List.  If agreement cannot be reached, the Public Works Director shall submit in writing the specific items of disagreement to the ITPM within five (5) Days of the meeting under this paragraph ("Public Works Director Disagreement").  If the Public Works Director provides no comments to the ITPM within ten (10) Days of receipt of submittal of the justification, the ITPM may submit the written justification to EPA and MDEQ.

        c.      If any change, modification, or reprioritization falling into categories (ii), (iii), (iv), or (v) in sub-Paragraph 19.a above is necessary to abate an imminent and substantial endangerment or is due to conditions beyond the control of the ITPM, the ITPM shall notify EPA and MDEQ as soon as practicable, but in no event later than two business days after the change, modification, or reprioritization was implemented.

        d.      EPA, after consultation with MDEQ, may provide written comments to the ITPM within thirty (30) Days of receipt of the items identified in categories (i), (ii), (iii), (iv), and

35

(v) in sub-Paragraph 19.a above.  If EPA does not provide comments within thirty (30) Days of receipt, the ITPM may implement the submission.  If EPA provides comments, the ITPM may implement any part of its submission that is not the subject of EPA's comments.

e.    During the thirty (30)-Day period following receipt of EPA's comments, or such longer period as may be agreed to by EPA and the ITPM (the "Discussion Period"), EPA, MDEQ, the Public Works Director, and the ITPM shall engage in discussions using best efforts to reach agreement on the portion of the submission about which EPA commented.

f.    If EPA, MDEQ, the Public Works Director, and the ITPM fail to reach agreement, then the United States, after EPA consultation with MDEQ, may, within five (5) Days after the expiration of the Discussion Period, petition the Court for relief by filing a motion on the Court's docket.  If the United States files such a motion, the ITPM shall respond to the motion within the time period allowed by the Local Rules of this Court.  The United States may file a reply memorandum, to the extent permitted by the Local Rules.  The dispute shall then be resolved by the Court.  If EPA does not so petition, the ITPM may implement the portion of the submission that was the subject of the comments.

## V.    CITY DISPUTE RESOLUTION

20.    In the event that the City assumes responsibility for implementing this Stipulated Order pursuant to sub-Paragraph 9.f or Paragraph 10, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Stipulated Order between EPA, MDEQ, and the City.  The City's failure to seek resolution of a dispute under this Section shall preclude the City from raising any such issue as a defense to an action by the United States to enforce any obligation of the City arising under this Stipulated Order.

21.    Any dispute subject to Dispute Resolution under this Stipulated Order shall be the subject of informal negotiations.  The dispute shall be considered to have arisen when the City

sends EPA and MDEQ a written notice of dispute that clearly states the matter in dispute. The period of informal negotiations shall not exceed twenty (20) Days from the date EPA and MDEQ receive the City's notice unless that period is modified by written agreement. Within seven (7) Days of the end of this period of informal negotiations, EPA, after consultation with MDEQ, shall provide its written statement of position to the City.

22.     If EPA, MDEQ, and the City cannot resolve the dispute by informal negotiations, then the position advanced in writing by EPA, after consultation with MDEQ, shall be considered binding unless the City files a motion seeking judicial review of the dispute within ten (10) Days of receipt of EPA's statement of position. The motion shall contain a written statement of the City's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation. The United States shall respond to the City's motion within the time period allowed by the Local Rules of this Court. The City may file a reply memorandum, to the extent permitted by the Local Rules. The dispute shall then be resolved by the Court.

23.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of the City under this Stipulated Order, unless and until final resolution of the dispute so provides.

24.     Stipulated penalties shall continue to accrue as provided in Section VI (City Stipulated Penalties) during any Dispute Resolution but need not be paid until the dispute is resolved.

## VI.     CITY STIPULATED PENALTIES

25.     In the event that the City assumes responsibility for implementing this Stipulated Order pursuant to Paragraph 10, the City shall be liable for stipulated penalties to the United States and the State for violations of this Stipulated Order as specified below, unless excused by force majeure under Paragraph 26. For purposes of this section, a violation is defined as failing to

perform for more than thirty (30) Days any obligations related to the Sewer Priority Project List or implementation of a MOM program described in sub-Paragraph 5.n due under this Stipulated Order.  Prior to issuing a demand for a stipulated penalty, EPA and MDEQ shall issue a notice of violation to the City.  A stipulated penalty of $500 ($250 payable to the United States and $250 payable to MDEQ) shall accrue for each day of violation.  The United States and the State may each, in the unreviewable exercise of their discretion, reduce or waive stipulated penalties otherwise due under this Stipulated Order.

26.    "Force majeure," for purposes of this Stipulated Order, is defined as any event arising from causes beyond the control of the City, of any entity controlled by the City, or of the City's consultants and contractors, that delays or prevents the performance of any obligation under the Stipulated Order despite the City's best efforts to fulfill the obligation.  "Force majeure" does not include the City's financial inability to perform any obligation under this Stipulated Order.

## VII.   MODIFICATION

27.    Except as otherwise provided herein, the terms of this Stipulated Order may be modified only by a subsequent written agreement signed by all the Parties and approved by the Court.  Any disputes between the Parties concerning modification of this Stipulated Order shall be resolved pursuant to Section V of this Stipulated Order (City Dispute Resolution), provided that the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## VIII.   TERMINATION

28.    This Stipulated Order shall terminate upon the earliest of the following:

a.    the Court's entry of a superseding consent decree or Consent Decree modification;

38

b.       upon motion by any Party showing that the ITPM or the City, as applicable, has achieved substantial compliance with the Sewer Priority Project List, and approval by the Court;

c.       upon motion by the United States, after consultation with MDEQ, and approval by the Court; or

d.       Four (4) years from the Order Effective Date, unless the United States, after consultation with MDEQ, moves for, and the Court approves, an extension of this Stipulated Order.

29.     The Consent Decree (Dkt. No. 10) is stayed during the pendency of this Stipulated Order.

30.     The Parties shall resume negotiations of a superseding consent decree or Consent Decree modification no later than three (3) years after the Order Effective Date.  If the Court enters an order granting a motion for termination of the interim third-party managership under Paragraph 10 or an order granting a motion for termination of the Stipulated Order under sub-Paragraphs 28.b or c, the Parties shall resume negotiations within one (1) Month of entry of such order.

31.     Stipulated penalties have accrued for violations of the Consent Decree prior to the Order Effective Date.  Plaintiffs shall not demand or collect such stipulated penalties during the pendency of this Stipulated Order.  However, nothing herein waives such stipulated penalties or prejudices Plaintiffs' collection of such stipulated penalties after termination of this Stipulated Order.

32.     Upon termination of this Stipulated Order, the stay of the Consent Decree shall immediately be lifted and the Consent Decree shall be in effect and enforceable, unless this Stipulated Order is terminated pursuant to sub-Paragraph 28.a in which case the superseding consent decree or Consent Decree modification shall be in effect.

33.     If the Court grants a motion for termination under sub-Paragraphs 28.a, b, or c, termination of this Stipulated Order shall not be effective until and unless (i) the Court has approved an ITPM Transition Plan under the process set forth in sub-Paragraph 5.z, if not already approved, (ii) the ITPM has submitted the Further Measures Report required under sub-Paragraph 5.aa to the Parties, if not already submitted, and (iii) the City has submitted the Staffing and Training Plan required under sub-Paragraph 15.f to the Parties, if not already submitted.

## IX.     PUBLIC PARTICIPATION

34.     This Stipulated Order shall be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment.  The United States reserves the right to withdraw or withhold its consent if the comments regarding this Stipulated Order disclose facts or considerations indicating that the Stipulated Order is inappropriate, improper, or inadequate.  The City and MDEQ each consent to entry of this Stipulated Order without further notice and agree not to withdraw from or oppose entry of this Stipulated Order by the Court or to challenge any provision of the Consent Decree, unless the United States has notified the Parties in writing that it no longer supports entry of the Stipulated Order.

## X.     APPENDICES

35.     The following appendices are attached to and incorporated into this Stipulated Order:

> a.     Appendix A is the Sewer Priority Project List;
>
> b.     Appendix B is the ITPM Professional Sewer Budget.
>
> c.     Appendix C is the list of Emergency Sewer Failures.

## XII. INTEGRATION

36.     This Stipulated Order and its appendices constitute the final, complete and exclusive agreement and understanding among the Parties with respect to the agreement embodied

in this Stipulated Order and supersedes all prior agreements and understandings, whether oral or written, concerning the agreement embodied herein.  No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Stipulated Order, nor shall they be used in construing the terms of this Stipulated Order.

Entered this 30th day of September, 2023.

/s/HENRY T. WINGATE
UNITED STATES DISTRICT JUDGE

**Signature Page for Stipulated Order on Sewer System in**
***United States and State of Mississippi v. City of Jackson***

FOR THE UNITED STATES OF AMERICA:

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

Dated: _____        _____
KARL FINGERHOOD (PA Bar No. 63260)
ANGELA MO (CA Bar No. 262113)
Attorneys
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 514-7519
Fax: (202) 616-2427
Email: Karl.Fingerhood@usdoj.gov
             Angela.Mo@usdoj.gov

DARREN J. LAMARCA
United States Attorney for the
Southern District of Mississippi

Dated: _____        _____
ANGELA GIVENS WILLIAMS (MS Bar No. 102469)
Chief, Civil Division
Assistant United States Attorney
United States Attorney's Office
501 East Court Street, Suite 4.430
Jackson, Mississippi 39201
Tel: (601) 965-4480

**Signature Page for Stipulated Order on Sewer System in**
***United States and State of Mississippi v. City of Jackson***

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:


Dated: _____         _____
                               JOSEPH THEIS
                               Acting Division Director
                               Water Enforcement Division
                               Office of Civil Enforcement
                               Office of Enforcement and Compliance Assurance
                               United States Environmental Protection Agency
                               1200 Pennsylvania Ave., N.W.
                               Washington, DC 20460



                               _____
                               JAMES VINCH
                               Attorney-Advisor
                               Water Enforcement Division
                               Office of Civil Enforcement
                               Office of Enforcement and Compliance Assurance
                               United States Environmental Protection Agency
                               1200 Pennsylvania Ave., N.W.
                               Washington, DC 20460

**Signature Page for Stipulated Order on Sewer System in**
***United States and State of Mississippi v. City of Jackson***

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:


Dated:                                        _____

LEIF PALMER (GA Bar No. 560159, OR Bar No. 873163)

Regional Counsel

Region 4

United States Environmental Protection Agency

61 Forsyth Street S.W.

Atlanta, Georgia 30303

Tel: (404) 562-9542

Email: Palmer.Leif@epa.gov



_____

SUZANNE G. RUBINI (NY Bar No. 2268696)

Deputy Regional Counsel

Region 4

United States Environmental Protection Agency

61 Forsyth Street S.W.

Atlanta, Georgia 30303

Tel: (404) 562-9674

Email: Rubini.Suzanne@epa.gov

**Signature Page for Stipulated Order on Sewer System in**
***United States and State of Mississippi v. City of Jackson***

FOR THE CITY OF JACKSON, MISSISSIPPI:


Dated: _____

                                       CATORIA MARTIN (MS Bar No. 103938)
City Attorney
Email: cmartin@city.jackson.ms.us

TERRY WILLIAMSON (MS Bar No. 8639)
Legal Counsel
Email: twilliamson@city.jackson.ms.us

OF COUNSEL:
OFFICE OF THE CITY ATTORNEY
455 East Capitol Street
Post Office Box 2779
Jackson, Mississippi 39207-2779
Tel: (601) 960-1799
Fax: (601) 960-1756

**Signature Page for Stipulated Order on Sewer System in**
***United States and State of Mississippi v. City of Jackson***

FOR THE STATE OF MISSISSIPPI, ACTING THROUGH THE MISSISSIPPI COMMISSION
ON ENVIRONMENTAL QUALITY AND THE MISSISSIPPI DEPARTMENT OF
ENVIRONMENTAL QUALITY:

Dated:                                    _____
                                          GRETCHEN ZMITROVICH (MS Bar No. 101470)
                                          DONNA J. HODGES (MS Bar No. 9561)
                                          ROY FURRH (MS Bar No. 4321)
                                          Senior Attorneys
                                          Mississippi Department of Environmental Quality
                                          Post Office Box 2261
                                          Jackson, Mississippi 39225-2261
                                          Tel: (601) 961-5050
                                          Fax: (601) 961-5349
                                          Email: gzmitrovich@mdeq.ms.gov
                                                 dhodges@mdeq.ms.gov
                                                 rfurrh@mdeq.ms.gov