**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> and the STATE OF MISSISSIPPI, <br><br> Plaintiffs, <br><br> v. <br><br> THE CITY OF JACKSON, MISSISSIPPI, <br><br> Defendant. | Case No. 3:12-cv-790-HTW-LGI <br> (Clean Water Act Case) |
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> THE CITY OF JACKSON, MISSISSIPPI, <br><br> Defendant. | Case No. 3:22-cv-00686-HTW-LGI <br> (Safe Drinking Water Act Case) |

**JXN WATER, INC.'S PROPOSED SURREPLY IN OPPOSITION TO
MOTION FOR LEAVE TO FILE SUIT
(SAFE DRINKING WATER ACT CASE & CLEAN WATER ACT CASE)**

JXN Water, Inc. ("JXN Water"), through counsel for the Interim Third-Party Manager Ted Henifin ("Mr. Henifin" or the "ITPM"), provides this surreply to address the arguments and evidence presented for the first time in Lakeland Seniors, LLC's ("Lakeland Seniors") Reply in Support of its Motion for Leave to File Suit.

**Exhibit 1**

As this Court has explained, neither Rule 7 of the Federal Rules of Civil Procedure nor Local Rule 7(b)(4) contemplate filing of a surreply. *See Brown v. Wiggins*, 2019 WL 3723628, at *1 (S.D. Miss. Aug. 7, 2019) (Wingate, J.). However, courts in this district routinely grant leave to file surreplies when the moving party "has raised new arguments in the reply brief." *Id.* (permitting surreply to address new declarations in support); *see also State Auto Prop. Cas. Ins. Co. v. Pendleton*, 2017 WL 5659992, at *2 (S.D. Miss. Aug. 18, 2017) ("Because Defendants raise entirely new grounds in support of their motion for extension of time, the Court will grant State Auto's motion for leave to file a sur-reply."); *Kennedy v. Jefferson Cnty., Miss., by and through Bd. of Supervisors*, 2014 WL 12773803, at *1 (S.D. Miss. Oct. 28, 2014) (permitting surreply to address "an argument raised for the first time" in reply). Here, Lakeland Seniors' Reply in Support of its Motion for Leave presented new arguments regarding a statutory limitation on the Interim Stipulated Order and due process along with new evidence, including a declaration not previously provided to this Court or JXN Water, submitted in an effort to meet the required prima facie case standard. JXN Water addresses each in turn.

I. **The statutory exception provided by 28 U.S.C. § 959(a) and raised by Lakeland Seniors in its reply brief does not apply to its proposed claims.**

In reply, Lakeland Seniors asserts for the first time that "leave to sue is not strictly necessary because . . . Lakeland Seniors asserts torts that Jxn Water is committing in its ordinary business." [Doc. 71, at 2]. Lakeland Seniors explains that the "prior approval" protection granted in Paragraph 9(b) is subject to 28 U.S.C. § 959(a), which permits suit against a receiver "without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business." Lakeland Seniors takes this position based on two arguments: (1) JXN Water is not protected by the Amended Interim Stipulated Order ("ISO"); and (2) Lakeland Seniors' claims relate to carrying on business such that prior approval is not needed.

JXN Water reiterates its firm position that, under the ISO and the Amended Stipulated Order on the Sewer System ("Sewer Order"), the ITPM operates *through* JXN Water to implement the Stipulated Orders. [*See* Doc. 65, at 3–5; *see also* Case No. 3:22-cv-686, Doc. 23, at 2 ¶ 4; Doc. 72, at 10 ¶ 3]. Contrary to Lakeland Seniors assertion, the Parties and the Court did not use this language "casually" but intentionally. The ITPM was always intended to implement the ISO and Sewer Order through JXN Water and JXN Water may not operate on the Water or Sewer Systems without approval of the ITPM. Accordingly, JXN Water is an ITPM Agent; moreover, all entities contracting with JXN Water are afforded the protections contemplated for ITPM Agents in the Stipulated Orders. [*See* Doc. 72, at 7; Case No. 3:22-cv-686, Doc. 6, at 9 (defining ITPM Agents); *see also* Doc. 72, at 22 ¶ 8; Case No. 3:22-cv-686, Doc. 6, at 13–14 ¶ 9 (conferring immunity on ITPM Agents)]. To make the point, Lakeland Seniors' interpretation would strip that immunity from any contractor of JXN Water, because it is not the ITPM or an ITPM Agent. But, that was never how the ISO or Sewer Order were meant to be implemented. Unlike Ford Motor Company, JXN Water was created for the sole purpose of allowing the ITPM to open bank accounts or enter contracts necessary to implement the ISO and Sewer Order. By design and intent, the ITPM operates *through* JXN Water, and JXN Water along with its contractors are provided immunity by the ISO and Sewer Order.

This argument has been fully briefed for the Court's consideration. JXN Water now turns to the second argument presented for the first time in Lakeland Seniors' reply brief.

**A. 28 U.S.C. § 959(a) provides a narrow exception to the prior approval protection.**

Lakeland Seniors contends they do not "second-guess the receiver's performance *qua* receiver," but in truth, that is precisely what they seek to do. [Doc. 71, at 4]. Lakeland Seniors' claims are *not* based on some negligent act or operation that took place after December 2022, when JXN Water was formed and the ITPM began operating through that entity. Instead, the

**Exhibit 1**

claims against JXN Water are based solely on the fact that the ITPM was named receiver, took possession of the Water and Sewer Systems as receiver, and operates through JXN Water. Lakeland Seniors contends that possession combined with any alleged harm from a purported leak is sufficient to meet the "carrying on business" exception.

"The phrase 'carrying on business' as used in § 959(a) has been interpreted narrowly by the courts." *OHM Sys., Inc. v. Park Place Corp.*, 2020 WL 2572203, at *5 n.6 (S.D. Ohio May 21, 2020) (citing cases); *see also In re McKenzie*, 2011 WL 3439081, at *7 (E.D. Tenn. Aug. 5, 2011) ("courts have determined that this exception [§ 959(a)] is a narrow one"). Courts have explained, "Merely . . . taking steps to preserve, and/or holding assets . . . do not constitute 'carrying on business' as that term has been judicially interpreted." *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1241 (6th Cir. 1993). As Judge Learned Hand put it, "Merely to hold matters in status quo; to mark time, as it were . . . such activities do not seem to us to be a continuance of the business." *Vass v. Conron Bros. Co.*, 59 F.2 969, 971 (2d Cir. 1932). Likewise, this Court has stated, "actions taken in the mere continuous administration of property under order of the court do not constitute an 'act' or 'transaction' in carrying on business connected with the estate." *Clanton v. N. Pacific Group, Inc.*, 2010 WL 2944562, at *4 (S.D. Miss. July 22, 2010) (quoting *Muratore v. Darr*, 375 F.3d 140, 145 (1st Cir. 2004)).

Here, Lakeland Seniors' allegations against JXN Water make it clear that their proposed claims have nothing to do with actions taken by JXN Water or the ITPM. Rather, the claims are made because the ITPM took over the Water and Sewer system for the City of Jackson.

> **B. The narrow exception does not apply to Lakeland Seniors' claims, which are not based on business actions but are made solely due to the ITPM taking operational control of the Water and Sewer Systems.**

Lakeland Seniors claims the lack of past communications with the ITPM or any employee of JXN Water are irrelevant. [Doc. 71, at 8–9]. However, its failure to provide notice

4
**Exhibit 1**

or complaint to JXN Water of any issue demonstrates the fact that its claims are *not* based on negligent action by JXN Water. Lakeland Seniors does not dispute that it failed to provide notice of any leak to JXN Water until the letter sent by counsel in August 2023, after the dismissal of its first Complaint. According to Lakeland Seniors, the alleged harm began in June 2020 and notice was provided to the City of Jackson (and MSDH and MDEQ) in November 2022; then, the ITPM was named receiver. JXN Water was created in December 2022. Lakeland Seniors contends those facts are sufficient to permit a claim against the ITPM or ITPM Agents.

The court in *OHM Systems* confronted similar claims based on a receiver taking possession of a business that had allegedly breached a contract prior to being placed in receivership. That case involved claims against a corporation and the receiver in possession of the corporate assets and business. *OHM Systems*, 2020 WL 2572203, at *1. There were no allegations of actions taken by the receiver. *Id.* at *2, 6. The court's analysis is instructive:

> Plaintiff's allegations leave no doubt that it is suing the Receiver only because he is in possession of Park Place's assets and has control over those assets under the authority of the state court Order appointing him as the Receiver for Park Place. . . . [P]laintiff seeks to recover assets that are under the Receiver's control as relief for damages caused by Park Place's breach of contract. Plaintiff does not seek to recover damages from the Receiver for alleged acts or omissions of the Receiver himself.

*Id.* at *6.

Here, as there, Lakeland Seniors seeks to make claims against JXN Water solely because it took over for the City of Jackson. It seeks to assert trespass, private nuisance, and negligence claims against JXN Water without any evidence that JXN Water ever knew or should have known of an isolated and relatively minor leak. [*See* Doc. 70, at 5 (showing "damp" area around water meter downhill from Lakeland Seniors' property)]. Previously, this Court has recounted the types of claims that are permitted under the narrow § 959(a) exception, which include a claim against a trustee operating a railroad "for damages for use of another's tracks," a claim for

**Exhibit 1**

wrongful death and injuries incurred at a railway crossing after the railroad filed a bankruptcy petition, or a claim for a slip and fall occurring in a business operated by a receiver. *See Clanton*, 2010 WL 2944562, at *4 (quoting *Muratore*, 375 F.3d at 144). In each case, unlike this one, there were actions taken by the business operated by the receiver/trustee that caused the harm.

The additional evidence provided by Lakeland Seniors is addressed more fully below, but at most, Lakeland Seniors provided evidence of "damp" dirt surrounding a meter and hydrant. [Doc. 71, at 5]. Without making light of their claims, this is not the type of leak, if one existed, that should have been discovered and addressed by JXN Water. As this Court is aware, there are far more serious issues in need of repair in Jackson's Water System. Lakeland Seniors does not claim JXN Water knew of its alleged leak. Lakeland Seniors does not claim JXN Water caused its alleged leak. Simply put, the proposed claims are not based on "carrying on business" but merely the fact that the ITPM was named receiver and operates through JXN Water.

Further proof that Lakeland Seniors seeks to assert claims against JXN Water solely because the ITPM took possession of the City of Jackson's systems is the fact that they are asserting claims based on an alleged *sewer* leak. The ITPM was not named receiver for the Sewer System until September 30, 2023, nearly a month *after* Lakeland Seniors' Motion for Leave was filed. Plainly, that claim is not a claim for damages caused by any action or inaction of JXN Water; instead, it is made because the ITPM was named receiver and operates through JXN Water. However, "[m]erely . . . holding assets . . . [does] not constitute 'carrying on business.'" *In re DeLorean Motor Co.*, 991 F.2d at 1241. The narrow exception to this Court's prior approval protection does not apply to any of Lakeland Seniors' claims. Instead, Lakeland Seniors must demonstrate its claims are "not without foundation," by making the type of prima facie case required by the case law discussed in JXN Water's earlier briefing. [Doc. 65, 6–12].

6
**Exhibit 1**

**II.     Due Process is not harmed by the *Barton* doctrine or the derivative judicial immunity provided by the ISO and Sewer Order.**

The second new argument put forward by Lakeland Seniors in its reply brief appears to be a contention that applying the "prior approval" protection from the second half of Paragraph 9(b) and the *Barton* doctrine itself would result in a violation of Lakeland Seniors' due process rights. As an initial matter, Lakeland Seniors does not provide a single case concluding that denial of leave to sue a court-appointed receiver, pursuant to the *Barton* doctrine, violates the due process rights of the moving party/claimant. There is simply no support for that contention.

Moreover, Lakeland Seniors does not contradict the "prima facie case" standard discussed in JXN Water's response brief. *See, e.g.*, *In re VistaCare Group, LLC*, 678 F.3d 218, 232 (3rd Cir. 2012) ("A party seeking leave of court to sue a trustee must make a prima facie case against the trustee, showing that its claim is not without foundation."). It does not provide any case law contradicting the fact that the prima facie case standard is something more flexible than the motion to dismiss standard and permits a court "to determine whether a claim . . . has merit" and "to determine the potential effect" on the receivership. *In re Highland Capital Mgmt., LP*, 2023 WL 5523949, at *40–41 (Bankr. N.D. Tex. Aug. 25, 2023). Instead, Lakeland Seniors contends that applying the *Barton* doctrine or the "prior approval" provision in the ISO and denying leave is somehow a taking. In truth, a denial would merely follow from a finding that Lakeland Seniors failed to demonstrate a prima facie case against JXN Water.

As discussed above, 28 U.S.C. § 959(a) does not apply to Lakeland Seniors' proposed claims because those claims do not relate to any action taken by the ITPM or JXN Water but instead state claims against JXN Water because it is successor to the City of Jackson as manager of the City's Water and Sewer Systems. Lakeland Seniors' failure to even mention the applicability of 28 U.S.C. § 959(a)'s narrow exception to immunity in its Motion for Leave

Exhibit 1

reinforces the fact that prior approval is necessary under the ISO and the *Barton* doctrine. As to the prima facie case, JXN Water will address the new evidence below.

Lakeland Seniors' due process argument appears to boil down to one contention. It argues "this Court does not otherwise have jurisdiction to hear or adjudge the merits of Lakeland Seniors' case." [Doc. 71 at 7]. This is plainly incorrect. Lakeland Seniors make a common mistake by classifying the *Barton* doctrine as an "immunity," but "*Barton* presents a jurisdictional question. . . . [T]he doctrine requires the [appointing] court to determine *where* the suit may be brought, not *whether* the [receiver] may be sued." *See, e.g.*, *In re J&S Properties, LLC*, 545 B.R. 91, 98 (Bankr. W.D. Pa. 2015), *aff'd sub nom. Phoenician Mediterranean Villa, LLC v. Swope*, 554 B.R. 747 (W.D. Pa. 2016), *aff'd sub nom. In re J&S Properties, LLC*, 872 F.3d 138 (3rd Cir. 2017). The quasi-judicial immunity provided to the ITPM and ITPM Agents in ISO Paragraph 9(b) and raised in JXN Water's response brief must be analyzed separately from this *Barton* analysis. *Id.* at 100. However, Lakeland Seniors' contention that it has no choice but to proceed in state court is simply incorrect. JXN Water is an ITPM Agent with "the status of officers and agents of this Court." [Case 3:22-cv-686, Doc. 6, at 14 ¶ 9(b)]. Plainly, this Court has proper jurisdiction over claims against JXN Water and may judge the merits of Lakeland Seniors' claims in assessing its Motion for Leave to file suit against the ITPM's Agent.

Neither this Court's exercise of jurisdiction nor application of the *Barton* doctrine nor analysis of the Lakeland Seniors' prima facie case standard violate due process.

**III. Lakeland Seniors' new evidence does not make a prima facie case against JXN Water, as required on a Motion for Leave.**

Lastly, for the first time on reply, Lakeland entered evidence in an effort to meet their burden to demonstrate a prima facie case. That evidence includes a declaration dated October 3, 2023, photos purportedly from August 2023, and arguments not made in Lakeland Seniors'

8
**Exhibit 1**

initial briefing. In short, Lakeland Seniors contends they have a claim because it alleges "damage caused to its property by leaking water and sewer infrastructure." [Doc. 71 at 4]. Yet, it asserts claims for trespass, private nuisance, and negligence. None of these causes of action impose strict liability. Unfortunately for Lakeland Seniors, the evidence demonstrates that it has no claim against the ITPM or JXN Water.

### A. Declaration of David Vondenberger

The primary evidence provided in support of Lakeland Seniors' claim is the October 3, 2023 Vondenberger Declaration. Mr. Vondenberger declares that, on one occasion, there was sufficient water flowing from a water meter and fire hydrant on an adjacent lot to see it migrate to Lakeland Seniors' property. [Doc. 71-1, at ¶ 3]. Although he does not explain it, the meter and hydrant in question are northeast and *down gradient* from Lakeland Seniors' property. *See* Declaration of Edward "Ted" Henifin, at ¶¶ 5–6 and pg. 3 (overhead map). Mr. Vondenberger does not state *when* this observation was made. There is no evidence that this occurred after the appointment of the ITPM and JXN Water. There is no assertion that this was ever brought to the attention of JXN Water.

Next, Mr. Vondenberger states that he visited the site on August 16, 2023, that the area around the meter and hydrant was "damp, both visibly and to the touch." [Doc. 71-1, at ¶ 4]. He does not allege that there was leaking from that area sufficient to go up the slope and across the parking lot to reach Lakeland Seniors' property. He also states that he is unaware of any repairs "to this leak." [Doc. 71-1, at ¶ 5]. Finally, Mr. Vondenberger states that samples collected in May 2023, four months before the Sewer Order, "tested positive for bacteria commonly found in human sewage," implying to him that there was a sewer leak. [*Id.*]. He does not claim that the same tests demonstrated the presence of treated drinking water.

B. Declaration of Ted Henifin

As discussed in JXN Water's response brief, the ITPM first learned of this issue after Lakeland Seniors' initial complaint was filed in June 2023. *See* Henifin Dec., at ¶ 4. Almost immediately after that, on June 15, 2023, the ITPM visited the site. Mr. Henifin observed that the meter had been recently replaced, and he did not observe any active water leak. *See id.* at ¶¶ 5–6; *see also* [Doc. 50-3, Exh. 3 at 2]. Certainly, there was no evidence of a leak significant enough to move up gradient and across the parking at the UMMC clinics to reach Lakeland Seniors' property. This is a photo of the area on June 15, 2023, showing the new meter:



Following Lakeland Seniors' reply brief, the ITPM returned to the site to check for leaks. Once again, he observed that was no leak from the meter or hydrant. *See* Henifin Dec., at ¶ 7. Apparently, in the interim, UMMC had repaved its parking lot immediately adjacent to the meter and hydrant. UMMC did not report any leak. *See id.* at ¶ 8. The following photos were taken on October 6, 2023, showing the meter, hydrant, and repaved area:





The water seen in these images came from rain on the morning of October 6. *See id*. These images demonstrate that no water leak has been active at this location since the water meter was replaced in June 2023. Indeed, weeks later, the site still shows no signs of any active water leak. *See id.* at ¶ 10. With the full context of the evidence, JXN Water turns to each claim proposed by Lakeland Seniors

### C. Trespass

In Mississippi, civil liability for trespass requires "(1) interference with the right of exclusive possession of one's land[, ] (2) an invasion that is the 'direct result of some act committed by the defendant." *Gaw v. Seldon*, 85 So. 3d 312, 318 (Miss. Ct. App. 2012). Moreover, "trespass is an intentional tort," which requires proof that the trespasser intended to enter onto the land. *Id.*

As an initial point, Lakeland Seniors does not allege any *act* by JXN Water. It certainly has not provided any evidence of an intentional invasion. Indeed, as repeatedly stated, JXN Water was not even aware of this alleged issue until June 2023 and was not informed of the issue by Lakeland Seniors until August 2023. Plainly, Lakeland Seniors has not demonstrated a prima facie case for a civil trespass claim.

### D. Private Nuisance

Next, Lakeland Seniors asserts it has a private nuisance claim. "A private nuisance is a nontrespassory invasion of another's interest in the use and enjoyment of his property." *Id.* at 317. As Mississippi courts have explained:

> A defendant may be liable for a nuisance . . . [i]f, but only if, . . . the invasion is either:
>
> (a) Intentional and unreasonable, or
>
> (b) Unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities."

*Young v. Crowley Liner Servs., Inc.*, 2009 WL 824532, at *9 (S.D. Miss. Mar. 20, 2009). As noted above, Lakeland Seniors has provided no evidence of any intentional act. Likewise, there is no evidence of reckless conduct or abnormally dangerous activities. The private nuisance claim, then, turns on the analysis of negligence.

**Exhibit 1**

### E. Negligence

Lakeland Seniors' negligence claim (and its private nuisance claim by extension) requires a showing of the familiar elements of negligence: (1) existence of a duty, (2) a breach of that duty, (3) a causal link between breach and injury, and (4) injury or damages. *Id.* at * 3. The existence of a duty "is a question of law to be decided by the court." *Id.* at *4. Moreover, the key component for the existence of a duty "is that the injury is 'reasonably foreseeable.'" *Id.*

Here, the evidence demonstrates that Lakeland Seniors failed to provide notice of an alleged leak (either water or sewer) to the ITPM or any other employee of JXN Water until August 2023.[1] Even in August, when notice was first provided, an inspection of the site showed "damp" dirt around a newly-replaced, down-gradient meter. There was no evidence of a water leak, certainly none significant enough to move up hill and across UMMC's parking lot. During the period from the time JXN Water learned of the claim until today, Lakeland Seniors has provided no evidence that there was anything more than "damp" dirt across the parking lot from its property. [*See* Doc. 71-1, at ¶¶ 4–5; *see also* Henifin Dec. at ¶¶ 5, 8, 10]. Simply put, the alleged injury or damages were not foreseeable from that damp dirt.

Moreover, there is no evidence that JXN Water breached any duty it owed. Before learning of the alleged leak, the water meter was replaced in June 2023. Since that time, the ITPM has visited the site numerous times and has seen no evidence of a water leak. Mr. Vondenberger asserts samples and professional testing confirmed bacteria that he takes to mean there is an ongoing sewer leak. He does not allege those tests confirmed the presence of treated drinking water or an ongoing water leak. Lakeland Seniors has failed to demonstrate the merit of their claim that JXN Water had a duty (and a foreseeable harm) or breached that duty.

---

[1] Note, the ITPM learned of the pending lawsuit and made a site visit on June 15, 2023; however, notice was not provided by Lakeland Seniors until the August 2023 letter.

Lastly, Lakeland Seniors fails to demonstrate or even allege what their damages were from the time it provided notice of the ITPM (for water) and from the entry of the Sewer Order (for sewer). A court analyzing a motion for leave is permitted, if not required, to determine whether the claims have merit, which permits the reviewing court to hold evidentiary hearings and make determinations on the underlying facts. *See In re Highland Capital Mgmt.*, 2023 WL 5523949, at *40; *In re VistaCare Group*, 678 F.3d at 233. Here, the scant evidence provided by Lakeland Seniors fails to demonstrate a meritorious claim for negligence or private nuisance.

**F. Quasi-Judicial Immunity and Impact on the Receivership**

Finally, two additional reasons further support denial of Lakeland Seniors' Motion for Leave. Pursuant to the first provision in Paragraph 9(b) of the ISO and the Sewer Order, the ITPM and JXN Water "is vested with the same immunities as vested with this Court" unless there is willful misconduct or gross negligence. [Case No. 3:22-cv-686, Doc. 6, at 14 ¶ 9(b)]. In response, Lakeland Seniors contends gross negligence should be determined by the state court, but case law is clear that it can and should be considered at this stage. *See, e.g.*, *Beck v. Fort James Corp. (In re Crown Vantage, Inc.)*, 421 F.3d 963, 976 (9th Cir. 2005). Lakeland Seniors' new evidence fails to demonstrate any prior notice provided to JXN Water, any failure from JXN Water to discover the alleged leak, or any failure of JXN Water to inspect the meter after receiving notice of a potential leak. Lakeland Seniors has failed to allege facts that could be construed as gross negligence.

Lastly, this Court has the authority to determine the effect the proposed claims could have on the receivership. *In re Highland Capital Mgmt.*, 2023 WL 5523949, at *40. Even assuming there is a water or sewer leak, the practical implication of permitting this suit is to allow Lakeland Seniors to determine the priority of projects addressed by the ITPM. *See OHM Systems*, 2020 WL 2572203, at *2 (likening plaintiff's "status to that of an unsecured creditor . . .

14
**Exhibit 1**

attempting to jump ahead of other creditors"). This is not the only leak in the City of Jackson. Both the ISO and the Sewer Order include priority project lists and, outside those lists, give discretion to the ITPM for determining which infrastructure repairs to make first. Lakeland Seniors is attempting to usurp the discretionary authority given to the ITPM and re-prioritize its alleged leak above others.

* * * * *

Based on the foregoing, the evidence submitted, and JXN Water's prior briefing, JXN Water respectfully requests this Court deny Lakeland Seniors' Motion for Leave.

Respectfully submitted this the 31st day of October, 2023.

/s/ Mitch McGuffey
Charles Mitchell McGuffey (MSB #104986)
Malissa Wilson (MSB # 100751)
FORMAN WATKINS & KRUTZ LLP
210 East Capitol Street, Suite 2200
Jackson, MS 39201
Telephone: (601) 690-8600
Facsimile: (601) 960-8613
mitch.mcguffey@formanwatkins.com
malissa.wilson@formanwatkins.com

*Counsel for ITPM*

OF COUNSEL:

F. Paul Calamita, III (*admitted PHV*)
AQUALAW, PLC
6 South 5th Street
Richmond, VA 23219
Telephone: (804) 716-9021
Facsimile: (804) 716-9022
paul@aqualaw.com