**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>and the STATE OF MISSISSIPPI,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF JACKSON, MISSISSIPPI,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:12-cv-790-HTW-LGI<br>(Clean Water Act Case) |
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF JACKSON, MISSISSIPPI,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:22-cv-00686-HTW-LGI<br>(Safe Drinking Water Act Case)<br><br>**ORDER** |

Before this court is the motion [Doc. 50] of Lakeland Seniors, LLC ("Lakeland") seeking

leave of this federal court to file suit in a State court against JXN Water, Inc./ Ted Henifin, Interim

Third-Party Manager (ITPM), tasked with operating under a multi-party Interim Stipulated Order

("ISO" or "Consent Order"), the water and sewage plants for the City of Jackson, Mississippi[1].

Jackson's city leaders have been divested of authority over those plants by lawsuits filed by the

---

[1] Unless otherwise noted, pursuant to this court's Order consolidating the Clean Water Act [Doc. 45] and Safe Drinking Water Act Cases, all docket references will relate to Case No. 3:12-cv-790. The Motion for Leave was initially filed on the docket for the Safe Drinking Water Act Case, Case No. 3:22-cv-686; however, the Motion was refiled on the consolidated docket following this Court's instruction.

Environmental Protection Agency (EPA), which, in agreement with other involved State and federal authorities, has agreed to enter into the Consent Order which is at the center of this controversy[2].

The key interrogatory is whether, as an aspiring litigant against the named defendants in *Lakeland Seniors, LLC v. The University of Mississippi Medical Center; the City of Jackson, Mississippi; and JXN Water Inc.,* Case no.25CI1;-cv-655, Lakeland is required to obtain this court's approval of the contemplated litigation. This is so because the Consent Order contains language which might prevent Lakeland from pursuing that course of action without this court's approval.

Attached to this Opinion are various exhibits vital to the resolution of the question: the Interim Stipulated Consent Order currently in effect **[Exhibit A]**; Lakeland's Notice of Claim against JXN Water **[Exhibit B]**; and Articles of Incorporation for JXN Water **[Exhibit C]**.

Presuming that the readers have read these documents, this court will not repeat their contents, but will dive directly into the issue, and this court's views.

Lakeland's Complaint [Doc. 108] is not the Company's first effort at a suit of this type. In *Lakeland Seniors, LLC v. The University of Mississippi Medical Center, et al.*, Case No. 25CI1:23-cv-331, Lakeland filed suit in the Circuit Court of Hinds County, Mississippi, against the University of Mississippi Medical Center (UMMC) and the City of Jackson, but soon abandoned the lawsuit. Thereafter, Lakeland, for the first time, advised JXN Water and Ted Henifin of its grievances via a "notice of claim" letter. Dissatisfied with Lakeland's ability to obtain satisfactory talks with these defendants, Lakeland Seniors asked this court for permission to champion another lawsuit, to wit, a suit expressly allowed by this court.

---

[2] See Cause No. 3:22-cv-686, Docs. 6 and 23.

Although Lakeland says it is convinced that it does not need this court's blessing to file its contemplated suit, Lakeland acknowledges that JXN Water takes a different position. And it knows why.

The language in the Consent Order is the bedrock for the defendants' belief, specifically the "immunity from suit" provision of the Consent Order. That provision is quoted below:

"No suit shall be filed against the ITPM or ITPM Agents without leave of this Court except as provided in 28 U.S.C. § 959(a)[3]." Cause no. 3:22-cv-686, Doc. 6. p. 15, ¶ 9(b).

Plaintiff and defendants in the State court lawsuit, however, do not enjoy the same interpretation. Further, they do not agree on the affect of Mississippi State law. Although their question at hand grows out of a federal lawsuit, the ultimate answer, says Lakeland, necessarily will involve matters of State law. While the adverse parties are not united in their conclusion, they both bow in various instances to State law as to how Mississippi treats the principal-agent scenario.

Lakeland's picture of the relationship between JXN Water and Henifin is that of JXN Water as principal, and Henifin as agent, while JXN Water sees the situation quite to the opposite, with Henifin being the principal and JXN Water as the agent. This question is key to this dispute.

This is not a difficult question for this court, as this court is thoroughly familiar with all of the developments pertaining hereto and, more, had to approve the amendment to the Consent Order. The amendment, which is the focus of interest here, states: "for the purpose of implementing this Stipulated Order, the ITPM may operate ***through*** JXN Water, Inc." [Case No. 3:22-cv-686,

---

[3] The statute states: **(a)** Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.
28 U.S.C.A. § 959 (West).
The contemplated suit in question against JXN Water does not fall into this exception due to the narrow interpretation by the Courts.

Doc. 23 at 2, ¶ 4 (emphasis added)]. Further, under this amendment, all documents submitted by JXN Water to the City of Jackson, Mississippi State Department of Health, or the EPA "shall be signed by the ITPM." *Id*.

The Joint Motion of the City of Jackson and the United States, which resulted in the amended ISO, explained that JXN Water was an "entity created by the ITPM solely to implement the ITPM's obligations under the [ISO]." [Case No. 3:22-cv-686, Doc. 22, at 1 & 2 ¶ 2]. The amendment's signatories further acknowledged that "for legal, financial, and practical reasons, Mr. Henifin performs many ITPM obligations ***through*** JXN Water." [Id. at 2 ¶ 3 (emphasis added)].

Agreed to by all the parties, and especially by this court, which approved the amendment, the parties saw the amendment's purpose as an aid to Henifin's implementation of the obligations under the Consent Order.

When this court and the involved parties sought to breathe life into the Consent Order, everyone understood the enormity of the effort: that employees would need to be hired; that operational/maintenance/repair contracts would have to be negotiated and signed; that federal and state moneys would be sought; and that bank accounts had to be opened.

Neither this court, nor the parties involved wanted Henifin to enter into contracts under his own name, to hire contractors under his own name, to open the requisite bank accounts under his own name for receipt of hundreds of millions of dollars from the United States of America, the State of Mississippi, and the City of Jackson.  Favored, instead, was the creation of a business entity through which Henifin would be able to perform his tasks: legal, financial, and commercial.

One need understand the complexity of Henifin's assignment: constantly the City was inundated with boil-water notices of possible contamination; communities became accustomed to

generated low-pressured water which could not support bathing/showering; brown water in some neighborhoods had become the standard color, concomitant with strong odors that dissuaded would-be consumers from drinking from their household faucets.

By now, the reader should be able to grasp clearly this court's rationale for denying Lakeland Seniors, LLC's motion for approval to file a lawsuit in State court against Henifin and JXN Water: Henifin is the principal; JXN Water is the agent; under the Consent Order, Henifin cannot be sued; the Consent Order also covers Henifin's agents; as above stated JXN Water is Henifin's agent.

In this court's eye, Lakeland's request could dangerously undermine what this court and the Consent Order authors are seeking to accomplish. Lakeland wants permission to file a lawsuit against Henifin and JXN Water in State court, where a State court judge could issue rulings completely adverse to this court's handling of the city's water and sewer crisis. Such an empowered State court presiding over a Henifin/JXN Water matter may be in a position to affect the progress of the entire water/sewage litigation and even affect the moneys set aside for that effort.

The courts of this nation have recognized in instances akin to that in this case the logic in requiring outside litigants to seek leave of the host court before filing a lawsuit against certain court-appointed officers. Court-appointed receivers and bankruptcy trustees fall into this category.

In *Barton v. Barbour*, 104 U.S. 126 (1881), the United States Supreme Court held that:

> when the court of one State has[….] property in its possession for administration as trust assets, and has appointed a receiver to aid it in the performance of its duty by carrying on the business to which the property is adapted, until such time as it can be sold with due regard to the rights of all persons interested therein, a court of another State has not jurisdiction, without leave of the court by which the receiver was appointed, to entertain a suit against him for a cause of action arising in the State in which he was appointed and in which the property in his possession is

situated, based on his negligence or that of his servants in the performance of their duty in respect of such property.

*Barton v. Barbour*, 104 U.S. 126, 136-37 (1881).

Henifin's legal brief, quoting from *In re World Mktg. Chicago, LLC*, 584 B.R. 737, 743 (Bankr. N.D. Ill. 2018), summarizes the *Barton* doctrine's purpose as (1) to protect the assets under the authority of the appointing court; (2) to maintain the integrity of the appointing court's jurisdiction; (3) to control burdensome litigation that could impede the receiver's work; and (4) to allow the appointing court to monitor complaints against the receiver more effectively. *Id.*

Courts have recognized that, in addition to receivers and trustees, other court-appointed officers fall into this action-proof category.  *See, e.g.*, *Lawrence v. Goldberg*, 573 F.3d 1265, 1269 (11th Cir. 2009) (explaining *Barton* doctrine "applies to actions against officers approved by the […]court when those officers function 'as the equivalent of court appointed officers'"); *Lowenbraun v. Canart*, 453 F.3d 314, 321 (6th Cir. 2006)(internal citations omitted).

JXN Water, operating as an ITPM agent, should be afforded the same protection under both the Consent Order and common law.

**IT IS THEREFORE ORDERED that Lakeland Seniors, LLC's Motion for Leave to File Suit [Doc. 50] is hereby DENIED for all the reasons stated *infra*.**

**This, the 20th day of June, 2024.**


**/s/HENRY T. WINGATE_____**
**UNITED STATES DISTRICT COURT**