**IN THE UNITED STATES DISTRICT COURT,**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
(Northern Division)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>And THE STATE OF MISSISSIPPI,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF JACKSON, MISSISSIPPI<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:12-cv-790-HTW-LGI<br>(Clean Water Act Case) |
| UNITED STATES OF AMERICA,<br><br>Plaintiff, and<br><br>MISSISSIPPI POOR PEOPLE'S CAMPAIGN and THE PEOPLE'S ADVOCACY INSTITUTE<br><br>Intervenors-Plaintiffs,<br><br>v.<br><br>THE CITY OF JACKSON, MISSISSIPPI,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:22-cv-686-HTW-LGI<br>(Safe Drinking Water Act Case) |

---

**MEMORANDUM OF LAW IN SUPPORT OF INTERVENORS-PLAINTIFFS'**
**MOTION[1] TO AMEND THE INTERIM STIPULATED ORDER**

---

[1] Pursuant to L.U. Civ. R. 7(b)(10), Intervenors-Plaintiffs represent that the other Parties received a copy of this motion. The United States of America opposes the Motion. The State of Mississippi and the City of Jackson, Mississippi did not offer a response.

## I.    INTRODUCTION

The Interim Stipulated Order ("ISO") was entered in November 2022,[2] at the height of an unprecedented water crisis in Jackson, Mississippi—an emergency declared at both the state and federal levels. However, more than two years have elapsed since the ISO was first entered, the state of emergency has long been lifted, and both the condition of Jackson's public water system ("PWS" or the "System") and the posture of this litigation have changed significantly. In light of these developments, Intervenors-Plaintiffs Mississippi Poor People's Campaign ("MS-PPC") and People's Advocacy Institute ("PAI") now seek to modify the ISO for three primary reasons.

*First*, Intervenors-Plaintiffs were not parties to the suit when the ISO was ordered. Further, they never received an opportunity to review and comment on the ISO prior to its execution. Nevertheless, Intervenors-Plaintiffs invoked the Citizens' Participation provision of the Safe Drinking Water Act, and joined the lawsuit, as a party with full rights. Yet, the ISO is narrowly tailored and it restricts access to important records and other data related to the control and management of the PWS, impeding Intervenors-Plaintiffs' ability to meaningfully participate in this case.

*Second*, substantial changes in this litigation warrant a governing order aligned with the current reality of the PWS. The emergency conditions that justified the expedited entry of an ISO— that excludes provisions requiring compliance with state law—no longer exist. Furthermore, the omission of these provisions hinders Intervenors-Plaintiffs and the public from accessing public records pertaining to the water quality and the financial management of the PWS. Moreover, these

---

[2] *See* SDWA Doc. 6. All citations to docket items in the Safe Drinking Water Act ("SDWA") Case, No. 3:22-cv-00686-HTW-LGI, are denoted herein as "SDWA Doc." All citations to docket items in the Clean Water Act ("CWA") Case, No. 3:12-cv-790-HTW-LGI, with which the SDWA case administratively consolidated on August 14, 2023, are denoted herein as "CWA Doc." Wherever available, Intervenors-Plaintiffs cite to the CWA docket.

elisions continue to obstruct the efficient prosecution of this case and undermine the progress of inclusive settlement negotiations, contemplated by the litigation stay, and in which all Parties can participate.

*Lastly*, because the ISO was drafted during the emergency, it is therefore silent on important public policy considerations. Now that the emergency has subsided, the ISO must be modified to require, *at the least*, strict neutrality and a mechanism to return control of the PWS back to the City of Jackson, once this case is resolved. These policies are not only necessary to ensure effective prosecution of this matter, but they will guarantee that the PWS is inclusive for the benefit of all System users.

Because significant changes in circumstances warrant amendments to the ISO, the Intervenors-Plaintiffs respectfully request that this Court use its discretionary power to enter a new order reflecting the necessary changes proposed below as well, as all just and proper relief in the premises.[3]

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.  Suit initiation and expedited filing of the Interim Stipulated Order.

A series of climate disasters, as well as historic systemic divestment in Jackson, drove Jackson's water system into total collapse in August and September of 2022. To help redress the significant damage to the PWS, the United States sued the City of Jackson (the "City") pursuant to the Safe Drinking Water Act. 42 U.S.C. § 300f *et seq.* ("SDWA"). *United States v. The City of Jackson, Mississippi*, No.: 3:22-cv-686-HTW-LGI, Compl. SDWA Doc. No. 1 at 4.

---

[3] The relief enumerated in this memorandum only addresses some of the changes necessary to revise the ISO.

On the day suit was filed, the United States also filed an unopposed motion for entry of the ISO. SDWA Doc. 3. The ISO "serve[s] as an *interim measure* to increase the System's stability while the Parties either litigate this matter to conclusion or attempt to negotiate a judicially enforceable consent decree." *Id.* at 5 (emphasis added). The Court granted the order on the same day. SDWA Docs. 5 & 6.

The rapid timeline and dire circumstances left no opportunity for the residents affected by the order to review or comment on the ISO prior to its effective date. Once docketed, the ISO stayed the case and prohibited any party from serving any discovery without leave of the Court. SDWA Doc. 6 at 28.

**B. The ISO grants the Interim Third-Party Manager broad and unfettered decision-making authority.**

The ISO replaces the City's authority to control and manage Jackson's PWS by appointing the Interim Third-Party Manager (the "ITPM"). In this role, the ITPM assumed unilateral control over Jackson's water system and its water billing system. *See* SDWA Doc. 3 at 9. Further, the ITPM is authorized to (1) hire any agent that he deems necessary for the performance of administrative, financial, advisory, legal, technical, and accounting services; (2) enter into long-term contracts (without City authorization); (3) hire and/or contract directly with operators or ITPM agents that are necessary for the undertaking of the Priority Project List; and (4) make purchases that the ITPM deems necessary for the benefit of the System. SDWA Doc. 6 at 8-12.

Additionally, the ITPM need not comply with Mississippi laws requiring competitive bidding processes for public procurement, Miss. Code Ann. § 31-7-13, or access to public records, Miss. Code Ann. §§ 25-61-1 to 25-61-19. *Id.* at 10 ("In exercising procurement authority and awarding New Contracts, the ITPM need not comply with Miss. Code Ann. § 31-7-13."); *id.* at 23 ("[R]ecords maintained or in the custody of the ITPM are not public records subject to public

records laws."). Rather, the ITPM is afforded *deference* to "use best efforts to have the procurement process be competitive, transparent, and efficient," with no measures of accountability to direct this effort. *See id.* at 10.

Moreover, the ITPM has unilateral power to increase water rates as often as annually, among other decisions, without seriously considering input from the community or Jackson's elected officials. *See* SDWA Doc. 6 at 11.[4] While the Jackson City Council can review the ITPM's proposal to increase the water rate, it has no veto power and the ITPM can still implement the rate change over the City's Council's objections. *See id.* And although the ITPM, in his role as a receiver, is supposed to act as an officer of the Court, the ISO has not explicitly required that the ITPM be neutral, *see generally id.* As a result, the ITPM has power to publicly engage in one-sided advocacy, including his public lobbying in support of legislation that has the propensity to strip the City's control of the public water system.[5]

---

[4] Intervenors-Plaintiffs have strongly objected to these rate changes for numerous reasons, including on grounds they have previously raised, such as lack of community involvement. *See* CWA, Doc. 171 (Intervenors-Plaintiffs' Objections to Proposed Rate Change Proposal, filed Mar. 24, 2025).

[5] Shaunicy Muhammed, *Renewed Jackson Water Takeover Bill Earns Henefin's Support*, Miss. Free Press, Feb. 28, 2024, https://www.mississippifreepress.org/renewed-jackson-water-takeover-bill-earns-henefins-support/#:~:text=%E2%80%9CThe%20ITPM%20supports%20many%20of,Authority%20can%20issue%20bonds.

**C. Community groups raised concerns about the ITPM's broad authority, the lack of transparency, and ongoing water quality violations.**

From the early stages of this lawsuit, Intervenors-Plaintiffs and other Jackson Community Groups[6] raised concerns about the ITPM's broad authority. Indeed, the ITPM even admitted publicly that the ISO granted him more power than he would have given himself.[7]

On July 11, 2023, Intervenors-Plaintiffs and other Jackson Community Groups submitted a community statement through an online portal established by the Department of Justice ("DOJ").[8] Their submission laid out their vision for full data sharing and transparency during the ITPM's tenure as manager of Jackson's public water system. Additionally, their letter called for a collaborative process of community input and a requirement that Jackson's water system remain publicly owned and locally controlled.[9] Then, a status hearing was held before this Court and representatives for Intervenors-Plaintiffs and other Groups appeared on the record to speak openly about their collective concerns. *See CWA* Doc. 55-2 (Holmes Decl.) ¶¶ 47-48.

Soon thereafter, Intervenors-Plaintiffs met with EPA Region 4 representatives[10] and during this "listening session," they repeated concerns on behalf of themselves and their community

---

[6] The People's Advocacy Institute's Jackson's People's Assembly ("PAI") and Mississippi-Poor People's Campaign ("MS-PPC") are grassroot organizations. PAI and MS-PPC are a part of the Mississippi Rapid Response Coalition and both organizations make up the "Community Groups". CWA Doc. 56 at 1.

[7] Lacey Alexander, *A Mississippi college hosts a panel on Jackson Water and Public Health*, Miss. Public Broadcasting, Mar. 8, 2023, https://www.mpbonline.org/blogs/news/a-mississippi-college-hosts-a-panel-on-jackson-water-and-public-health/ ("'It sounds really terrible, but [the ISO] gives me really, really broad authority, probably more than I'd give myself.' [Henifin] said. 'So theoretically there's a process in the order that I could propose this rate structure to the city, and the city would have to consider it, but if they didn't do it, I could just do it anyway.'").

[8] See Cmty. Stmt. from PAI and MS-PPC to U.S. Dep't of Justice, July 11, 2023, available at https://ccrjustice.org/sites/default/files/attach/2023/08/PAI-MS-PPC-Community-Statement-7-11-23.pdf/.

[9] *See id.*

[10] The EPA Region 4 representatives work to protect human health and the environment, including but not limited to water sources and systems in Alabama, Florida, Georgia, Kentucky, Mississippi, South Carolina, Tennessee and six Tribal Nations. *See* Organization of EPA's Region 4 Office in Atlanta, April 1, 2025, https://www.epa.gov/aboutepa/organization-epas-region-4-office-atlanta.

members.  Specifically, Intervenors-Plaintiffs reported that the appointment of the ITPM had not resulted in any discernible improvement in water quality.  Furthermore, they reiterated the worries highlighted in their community statement. *See* CWA Doc. 55-2 ¶¶ 52-53.

On August 9, 2023, Intervenors-Plaintiffs submitted an emergency petition to the EPA, urging the EPA to take emergency action under the Safe Drinking Water Act, (42 U.S.C. § 300i). At the time the emergency petition was filed, the ITPM had not addressed the corrosion control violations and residents were no longer receiving boil water notices despite continued reports of discolored and foul-smelling water. *See* Pet'n for Emerg. Action Under the SDWA, 42 U.S.C. § 300i, to Abate Substantial Imminent Endangerment ("Emergency Petition"), Aug. 9, 2023, https://ccrjustice.org/sites/default/files/attach/2023/08/_2023.08.09%20-%20PAI%20and%20MS-PPC%20Emergency%20Petition_.pdf ).[11]

*Four months* after filing the Emergency Petition, the EPA acknowledged receipt of the petition.  Exhibit A, ¶ 4 (Declaration of Emily Early) ("Early Decl.").  The EPA responded by suggesting that PAI and MS-PPC supplement the Emergency Petition record with health and safety concerns. No mechanism was provided to do so. *Id.* ¶ 4.  In early 2024, PAI and MS-PPC scheduled a meeting with EPA Region 4 intending to "supplement the record" with the technical basis for their ongoing concerns about the SDWA violations.  However, the EPA canceled six days before the set date and the meeting was never rescheduled.  Exhibit A, Early Decl., ¶¶ 4-5.

---

[11] This petition detailed technical concerns with the current state of the PWS, supported by an engineer's expertise in water treatment processes, and requested that the EPA provide immediate, interim relief to ensure Jackson residents have access to safe water; real-time information about the safety of their water; and a role for community in the enforcement and development of community-driven solutions to this crisis.

**D.  Jackson community groups successfully intervened after ongoing advocacy.**

On September 25, 2023, Intervenors-Plaintiffs filed a Motion for Leave to Intervene in this SDWA lawsuit to protect Jackson's residents' access to a safe, equitable PWS. CWA Doc. 55. In support of their motion to intervene, Intervenors-Plaintiffs raised several concerns related to the ISO that warranted their intervention, including: (1) the ITPM's broad authority and decision-making powers over all aspects of the public water system, (2) the ITPM's exemption from state laws, and (3) the ITPM's access to an unprecedented amount of federal funding to make improvements to the PWS, without adequate oversight. CWA Doc. 56 at 7.

On March 20, 2024, this Court granted the Motion for Leave to Intervene and authorized the filing of Intervenors-Plaintiffs' Complaint-in-Intervention.  CWA Doc. 102.  Intervenors-Plaintiffs filed their complaint. CWA Doc. 105 ¶¶ 128-52.

**E.  Intervenors-Plaintiffs' initiatives to participate in the SWDA case have largely been ignored.**

Within days of being granted intervention, Intervenors-Plaintiffs sent correspondence to the EPA, DOJ, City of Jackson, and Mississippi Department of Health, indicating that the Intervenors-Plaintiffs intended to fully participate in the SDWA case. They also requested that the confidentiality order be modified to give Intervenors-Plaintiffs an opportunity to participate in ongoing discussions about the consent decree and related settlement items.  Exhibit A, Early Decl. ¶¶ 7.  Following two months of negotiations, the Parties, including Intervenors-Plaintiffs, filed an amended confidentiality order reflecting the inclusion of PAI and MS-PPC as Parties. The Court granted the amended order on July 3, 2024. CWA Doc. 123; CWA Doc. 135.

Since the confidentiality order was granted, Intervenors-Plaintiffs have attempted, to no avail, to gain insight into the status of the consent decree.  Exhibit A, Early Decl.¶ 8.  To date, all

requests to allow the Intervenors-Plaintiffs to participate in the consent decree process have been ignored.  Exhibit A, Early Decl.  ¶ 9.

Additionally, Intervenors-Plaintiffs have spent months trying to schedule ongoing meetings with the other Parties to gain clarity about the status of the case. Finally, on July 24, 2024, a meeting was held with the United States and the City. However, Interventors-Plaintiffs' offers to meet on a regular basis were rejected. Exhibit A, Early Decl. ¶ 10.

Nonetheless, Intervenors-Plaintiffs continued their attempts to engage with the other Parties on an ad-hoc basis by exchanging additional correspondence and holding additional meetings in October and November 2024. During these exchanges, Intervenors-Plaintiffs raised their clients' previously discussed concerns regarding the ISO and attempted to discuss Intervenors-Plaintiffs' requested relief for the public water system. Despite all efforts, neither the other Parties nor the ITPM have provided regular updates as to whether all of the concerns have been addressed, when they will be resolved, or how.  Exhibit A, Early Decl.  ¶¶ 9-17.

Attempts to meet with the ITPM and JXN Water have also remained fruitless. For example, when Intervenors-Plaintiffs asked to meet with the ITPM in early 2025, they were told that he was too busy and instructed not to contact him directly. Exhibit A, Early Decl. ¶ 11. When Intervenors-Plaintiffs asked to meet with Jacobs Engineering because new violations were posted on the State of Mississippi's website, Intervenors-Plaintiffs were told that there were no violations. This turned out to be incorrect. In fact, notices of violations were mailed to residents soon thereafter.  *See* CWA Doc. No. 171-1. When it was finally confirmed that there were indeed violations, *See* Exhibit B, Letter from Meyers, Intervenors-Plaintiffs re-requested an opportunity to meet with Jacobs Engineering.  The request was ignored.  Exhibit A, Early Decl. ¶ 12.

Intervenors-Plaintiffs continually encountered obstacles in obtaining up-to-date water quality and contract-related data from summaries in the quarterly reports. Exhibit A, Early Decl. ¶ 11. This is largely because, among other reasons: (1) Intervenors-Plaintiffs are not Parties to the ISO; (2) neither the ITPM nor JXN Water are subject to the Mississippi Open Meeting Act or the Public Record Act, SDWA Doc. 6 at 23; (3) this case is stayed and thus, requests for documentation from JXN Water or the government are often flagged for being akin to discovery, Exhibit A, Early Decl. ¶ 10.; and (4) even when information and documents are provided, the records are not complete, as Intervenors-Plaintiffs noted in their Objections to the ITPM's Proposed Rate Change Proposal, CWA Doc. 171 at 3.

**F. Intervenors-Plaintiffs' attempts to modify the ISO demonstrate a need for judicial relief.**

When concerns about the ISO and requests to participate meaningfully were repeatedly ignored, Intervenors-Plaintiffs attempted to orally move the Court to modify the ISO at a status conference held in October 2024. The Court never heard the oral motion but instructed Intervenors-Plaintiffs to file a written motion to give the other parties an opportunity to respond. CWA Doc. 156 at 62-69.

Thereafter, Intervenors-Plaintiffs provided a proposed modified ISO to the other Parties and followed up regarding the same numerous times. Exhibit A, Attachment 1. It has been over five months since Intervenors-Plaintiffs shared the proposed modified ISO, and still, no party has responded. Exhibit A, Early Decl. ¶ 14, Attachment 1.

The ISO provides that, "the terms of this Stipulated Order may be modified only by a subsequent written agreement signed by all the Parties and approved by the Court." SDWA Doc. 6 at 26. However, Intervenors-Plaintiffs exhausted all other avenues for collaboration related to modifying the ISO and are left with no alternative but to respectfully submit this Motion seeking

relief. Furthermore, the requests put forth by Intervenors-Plaintiffs are not only reasonable, but they align with existing law.

### III.    STANDARD OF REVIEW

"A district court's power to modify or reverse a previous non-final judgment is discretionary." *Ariano-Favela v. Empire Scaffold, LLC*, No. 1:13-CV-377, 2016 WL 10988588, at *2 (E.D. Tex. Nov. 1, 2016) (citing *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 701 (5th Cir. 2014)) (discussing discovery matters); *Holoway v. Triola*, 172 F.3d 866, No. 98-30529, 1999 WL 129656, at *1 (5th Cir. Feb. 2, 1999) ("It is a well established rule of trial procedure that a district court may reconsider and reverse a previous interlocutory order at its discretion" (citing F.R.C.P. 54(b));[12] *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) (noting that "every order short of a final decree is subject to reopening at the discretion of the district judge"). Furthermore, when the decision at issue is interlocutory in nature, the court "may reconsider and reverse for *any reason it deems sufficient*, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Ariano-Favela*, 2016 WL 10988588, at *2 (quoting *Jackson v. Roach*, 364 F. App'x 138, 139 (5th Cir. 2010)) (emphasis added).

Courts may also modify interim, non-final orders, including preliminary injunctions to which the ISO is akin in this case,[13] based on a significant change in the circumstances of the case.

---

[12] *Ariano-Favela* discussed in detail how the Fifth Circuit has not announced what the standard of review is for reviewing a non-final interlocutory order. Without a clear announcement from the court, *Ariano-Favela* considered the Fifth Circuit's confirmation that the district court has authority to revise an order "at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

[13] The Court may treat the current ISO as a preliminary injunction, given Plaintiff, the United States' argument, and this Court's acceptance, that the ISO is an injunction:

This standard permits modifications to interim injunctions when there is a significant change in factual circumstances. *See MMR Constructors, Inc. v. JB Grp. of LA, LLC*, No. CV 22-00267-BAJ-RLB, 2024 WL 5155878, at *6 (M.D. La. Dec. 18, 2024) ("Courts . . . generally require a significant change in factual circumstances to modify a stipulated or consent preliminary injunction."). As the Fifth Circuit has stated, "[m]odification of an injunction is appropriate when the legal or factual circumstances justifying the injunction have changed." *ICEE Distributors, Inc. v. J&J Snack Foods Corp.*, 445 F.3d 841, 850 (5th Cir. 2006) (citing *Black Assoc. of New Orleans Fire Fighters v. City of New Orleans*, 853 F.2d 347, 354 (5th Cir. 1988)) ("Ordinarily, the purpose of a motion to modify an injunction is to demonstrate that changed circumstances make the continuation of the order inequitable . . ..").

## IV.    LEGAL ARGUMENT

This Court should employ its discretionary powers to modify the current ISO because there are material changes in the factual circumstances related to the crux of this litigation, all of which occurred after the ISO was originally executed.

---

The EPA Administrator may seek a permanent or temporary injunction under the SDWA to abate an imminent and substantial endangerment. 42 U.S.C. § 300i(a). The Parties have worked diligently and cooperatively to develop the Interim Stipulated Order which provides for preliminary relief until a final resolution of the case is achieved. The Court has the authority to enter interim injunctive relief agreed upon by the parties as an exercise of its broad equitable power. *See, e.g., Wine Country Gift Baskets.com v. Steen*, 612 F.3d 809, 812 (5th Cir. 2010) (noting that the parties agreed to a preliminary injunctive order blocking enforcement of contract provisions during the lawsuit); *Am. S. Ins. Co. v. Williamson,* No. 3:13CV689 DPJ-FKB, 2013 WL 11327715, at *1 (S.D. Miss. Nov. 12, 2013) (granting preliminary injunctive relief that the parties agreed upon); *Gilchrist Mach. Co. v. Komatsu Am. Corp.*, 601 F. Supp. 1192, 1195 (S.D. Miss. 1984) (noting that the parties agreed to a temporary order preventing the defendant from terminating its franchise agreement with plaintiff during the litigation).

SDWA Doc. 3 at 6.

*First*, a year after the ISO was filed, Intervenors-Plaintiffs invoked the Citizens' Participation provision of the SDWA and were granted leave to join this litigation. At no time did Intervenors-Plaintiffs have an opportunity to comment on the ISO as a party. Yet, the provisions in the ISO prevent Intervenors-Plaintiffs from participating as parties with full rights in this ligation.

*Second*, the City of Jackson's water system is no longer in a state of emergency, thus obviating the ITPM's and JXN Water's exemptions from existing state laws related to public records and procurement laws.

*Lastly*, the ISO is an "interim" order, drafted during an emergency, and important policies were not included at the time of drafting. Now, the emergency is over and the status of the PWS has materially changed. Accordingly, the omission of important public policy provisions must be rectified. At a minimum, the ISO should be modified to include strict neutrality from the ITPM and his agents, as well as a plan to transition the PWS back to the City.

## A. Jackson community groups are now Plaintiffs with the full rights of any other party.

Because the current ISO was entered on November 29, 2022, and immediately stayed for 18 months before Intervenors-Plaintiffs entered the litigation, Intervenors-Plaintiffs did not have an opportunity to review, negotiate, or stipulate to the ISO. Once Intervenors-Plaintiffs became a party to this litigation in March 2024, they were entitled to a panoply of rights as plaintiffs, including the right to fully litigate the case. *Sierra Club v. Hamilton County Bd. of County Comm'rs*, 504 F.3d 634, 643 (6th Cir. 2007) (holding an intervenor is a party to the case, "able to litigate fully on the merits"); *Northeast Iowa Citizens For Clean Water v. Agriprocessors, Inc.*, 489 F. Supp. 2d 881, 892 n.7 (N.D. Iowa 2007) (explaining an intervenor is generally "entitled to

litigate fully on the merits once intervention has been granted"); *Frere v. Lee*, 2000 WL 64297, at *1 (E.D. La. 2000).

In this case, the ISO is narrowly tailored to the ITPM and the original parties and therefore provides no effective way for Intervenors-Plaintiffs to gain insight on the progress of their claims. Although litigation is stayed in the SDWA case, significant changes are being made to the PWS. Yet record-sharing requirements that are traditionally available to the public, such as the Mississippi Open Records Act, do not exist in this case. These omissions are therefore creating a barrier that prevents Intervenors-Plaintiffs from meaningfully participating in this case. Under the current ISO, the ITPM is only required to respond to information requests from "local, state, and federal governments." SDWA Doc. 6 at 9. Because Intervenors-Plaintiffs were not a party at the time the ISO was executed, the ITPM does not have to respond to their inquiries. As a result, Intervenors-Plaintiffs cannot adequately protect their claims or fully participate in this litigation.

It is not enough to simply say that the Parties can make information requests to the ITPM and JXN Water because, as stated previously, Intervenors-Plaintiffs have made repeated requests to the ITPM and were denied access to the appropriate data or there were significant delays. This includes, for example, the revised Optimized Corrosion Control Plan (the "OCCT Plan") that forms the basis of remedying the ongoing Lead and Copper Rule violations for water quality parameter deviations, which the ITPM promised to release in the next quarterly report but has not yet done.[14] The OCCT Plan and other long-term stabilization reports and studies referenced

---

[14] U.S. EPA, Email from Ted Henifin, ITPM, to U.S. EPA re ITPM Response to EPA Comments on Q32024 Status Report, Nov. 20, 2024, https://www.epa.gov/system/files/documents/2024-11/response-to-comments-on-q3-report.pdf ("As a general note, the EPA respectfully requests that JXN Water provide a copy of any technical memo, scope of work, plan, or any other deliverable that directly impacts the priority projects to the EPA and MSDH at the same time that Quarterly Reports are submitted, to expedite our review and coordination. Such documents can be included in the Quarterly Report or as an addendum to the Quarterly Report to protect sensitive information.").

throughout the quarterly report, but not otherwise provided on the JXN Water website, directly affect Intervenors-Plaintiffs' claims asserted in their complaint. CWA Doc. 104; Doc. 103 at 28. However, under the ISO as currently drafted, they have no way of accessing this data without being able to contact the ITPM.

If this case is to remain stayed, Intervenors-Plaintiffs need to be able to purposefully participate in this lawsuit. Because they were not Parties to this case when the ISO was ordered, this Court should use its discretionary power to modify the ISO by adding Intervenors-Plaintiffs as Parties to the ISO to permit them to fully protect the claims asserted in their Complaint.

**B. Because there is no longer a state of emergency, the ISO should be modified to include basic public policy principles as well as compliance with state law.**

It is well established that the emergency that precipitated the expedited ISO is over, removing the justification for the exemptions and other elements that hinder the current litigation, including settlement, by *all* Parties. The current ISO was negotiated and prepared in three months—a timeframe which is not typical.[15] As a result, the executed ISO left out important public policy considerations and legal requirements to comply with state laws. In the absence of a state of emergency, there is no just reason for the ISO to circumvent crucial aspects of state law or public policies that promote impartiality, accountability, and community governance.

      i.  *The ITPM and JXN Water derive their power from the City of Jackson and since the emergency has lapsed, it is no longer warranted for JXN Water to be exempted from Mississippi Procurement Laws.*

The Fifth Circuit Court of Appeals recently determined that JXN Water became an officer of the court and a federal receiver, but "all true legal authority stems from City ordinances."

---

[15] *See* SDWA Doc. 31 at 68 (quoting DOJ attorney Karl Fingerhood, "[t]he safe drinking water act case was an emergency. That took us three months to negotiate that document, which I think is a world record.")

*Mississippi v. JXN Water*, No. 24-60309, 134 F. 4th 312, 325 (5th Cir. 2025). "A receiver appointed in any cause pending in any court of the United States . . . shall manage and operate the property in his possession as a trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated." *Id*. (citing 28 U.S.C § 959) (cleaned up). Further, "the receiver's powers, while stemming from both a statutory grant and the 'court's equitable power to fashion an appropriate remedy as ancillary relief measures' … fall in line with laws of the state[.]" *Id.* (quoting *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019).

In the case at hand, the ISO was intended to *temporarily* replace the City's authority to manage and control the PWS. Now, the ITPM and JXN Water maintain full control and management of the PWS. Yet, JXN Water does not have to adhere to state laws and ordinances that the City would have had to comply with had it retained control and management of the PWS.

The ITPM is only obligated to use its "best efforts" to be "transparent" solely for the contract procurement process. *See* SDWA Doc. 6 at 10. The ITPM otherwise has full discretion to post information on its website to the public within his "reasonable judgement." *Id.* at 23. It has come to Intervenors-Plaintiffs' attention that the ITPM makes other information available to JXN Water's investors in a "data room" that is otherwise inaccessible to the public and the federal government.[16] To date there have been ongoing concerns about the lack of competitive bidding. *See* Exhibit C (Letter to EPA Admin. Regan); Exhibit D (Letter from Congressman)

The ITPM and JXN Water operate the PWS and both entities should be required to comply with Mississippi Procurement Laws.

---

[16] JXN Water, *JXN Water Investor Questions*, *available at* https://jxnwater.com/wp-content/uploads/2024/07/Investor-Questions.pdf (mentioning revenue rate memo, and operating expense tracking versus projections) (last visited May 6, 2025).

ii.  *Because JXN Water is effectively a public body and the records it produces are public records, the Court should require the ITPM and its agents to follow the terms of the MS Public Records Act and the Jackson Municipal Code.*

Pursuant to Mississippi Code, "public records shall be available for inspection by any person unless otherwise provided by this chapter; furthermore, providing access to public records is a duty of each public body and automation of public records must not erode the right of access to those records." Miss. Code Ann. § 25-61-2. In addition, "each public body must ensure reasonable access to records electronically maintained, subject to records retention." *Id.* According to the code, "public body" shall mean any department, bureau, division, council, commission, committee, subcommittee, board, agency and any other entity of the state or a political subdivision thereof, and any municipal corporation and *any other entity created by the Constitution or by law*, executive order, ordinance or resolution. Miss. Code Ann. § 25-61-3 (emphasis added).[17] Furthermore, in 2003, the Mississippi Attorney General stated that "[a]s a general rule, unless state law provides a specific exemption from disclosure, records in the possession of a public body, including a municipality and its departments, would be "public records." Miss. Code Ann. § 25-61-3 (Miss. A.G. Opinion, May 30, 2003).

Moreover, through the Mississippi Public Records Act, Mississippi Code Annotated Section 25-61-1 (Rev. 2003), "Mississippi has declared as its public policy that public records be generally made available for viewing by any member of the public." *Harrison Cty. Dev. Comm'n v. Kinney*, 920 So. 2d 497, 502 (10) (Miss. Ct. App. 2006). Accordingly, allowing access to public records is a duty of the public bodies of Mississippi and any questions of disclosure must be

---

[17] For further guidance, the Attorney General has indicated that municipalities, including the water/sewer department, is a public body, and the records of such departments, including meter reading lists, billings, and individual account documents, are public records. Thompson, May 13, 1992, A.G. Op. #92-0310.

construed liberally. *Id*. In other words, any doubt about disclosure of the requested information by the public body should be resolved in favor of disclosure. *Id*.

This interpretation is in alignment with our federal courts, who favor transparency in order to foster trust in the community. Maintaining transparency through public access to judicial records "serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness." *Id*. (citation omitted). *United States ex rel. Frey v. Health Mgmt. Sys., Inc.*, No. 3:19-CV-0920-B, 2023 U.S. Dist. LEXIS 221632, at *3 (N.D. Tex. Dec. 13, 2023).

In the case at hand, the ISO authorized the ITPM to create JXN water to carry out duties prescribed in the order. On December 7, 2022, Ted Henifin (the ITPM) incorporated JXN Water, and he is the sole incorporator and director. Currently, JXN water operates all of the water and sewer billing in the City. It produces budgets, hires contractors, and maintains the facilities. In addition, some of the current employees of JXN Water were once members of the City's water department. The ISO requires the City to allow JXN Water and the ITPM to inspect all books and the City must comply with all requests from the ITPM. Based on these facts, JXN Water clearly operates as a public body pursuant to the Mississippi Code. Even if the Court finds that JXN Water does not fall within the definition of a public body, it should still require JXN Water to comply with the Mississippi Public Records Act because the Act's interpretation is construed liberally in favor of disclosure.

**C. Considering the changed circumstances around this litigation, it is imperative that this Court modify the ISO to include necessary provisions regarding neutrality of the ITPM and planning for the transition of control over the PWS back to the City.**

    i. *The emergency has subsided and there are constant changes being made to the PWS; now there is a clear need to modify the ISO to require ITPM and his agents to be neutral while carrying out duties in this litigation.*

"A receiver is an indifferent person between parties, appointed by the court to receive the rents, issues, or profits of land, or other thing in question in this court, pending the suit, where it does not seem reasonable to the court that either party should do it." *Booth v. Clark*, 58 U.S. 322, 331 (1854). Further, "[h]e is appointed in behalf of all parties, and not of the complainant or of the defendant only. He is appointed for the benefit of all parties who may establish rights in the cause." *Id.* "The receiver is but the creature of the court; he has no powers except such as are conferred upon him by the order of his appointment and the course and practice of the court[.]" *Id.*

The Fifth Circuit has held that a receiver appointed by a federal district court is considered an officer of the court. *See Davis v. Bayless*, 70 F.3d 367, 373 (5th Cir. 1995) ("Court appointed receivers act as arms of the court[.]"); *see also Baron v. Vogel*, No. 3:15-CV-232-L, 2015 U.S. Dist. LEXIS 128812, at *10 (N.D. Tex. Sep. 25, 2015). With respect to this case, the Fifth Circuit held that the ITPM is an officer of the court, "while JXN Water became an officer of the court and a federal receiver, its compliance with state and local law did not become a matter of federal law or administration of federal assistance." *Mississippi v. JXN Water*, 134 F. at 325.

The ITPM is an officer of this Court, operating as an arm of the court. Therefore, this Court must restrict the ITPM and its agents from engaging in activities that call the presiding court's impartiality into question. The Supreme Court has indicated that, "[a] judge shall avoid impropriety and the appearance of impropriety." *Caperton v. A. T. Massey Coal Co.*, 556 U.S. 868, 888 (2009). The Court notes that "The ABA Model Code's test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired." *Id.* Moreover, the Code of Conduct for United States Judges outlines that, "A Judge Should Avoid Impropriety and the Appearance of Impropriety in All Activities" and it specifies that "judges must refrain

from political activity." Code of Conduct for U.S. Judges, *Guide to Judiciary Policy*, Vol. 2A, Ch. 2 (Mar. 12, 2019), https://www.uscourts.gov/administration-policies/judiciary-policies/ethics-policies/code-conduct-united-states-judges.

Acting on behalf of this Court's judiciary, the ITPM has had multiple public conflicts with city leadership and state legislators and has publicly embraced transferring ownership of the PWS.[18]  The ITPM's actions could easily lead a reasonable person to question his impartiality as the receiver in this case. Furthermore, such actions pose a risk to the perception of judicial impartiality.

To avoid the appearance of bias, this Court should use its discretionary power to modify the ISO to expressly mandate a duty of impartiality and neutrality for the ITPM and his agents. This must include prohibiting the ITPM and all his agents from publicly or privately endorsing or otherwise supporting any proposed state or federal law or any conduct that would lead a reasonable person to call into question the presiding Court's duty of strict impartiality to those affected by the resolution of this litigation.

> ii.  *The Court should exercise its discretion to modify the ISO to include a fair transitional plan that prepares the City to resume full control of the public water system.*

---

[18] *See* Shaunicy Muhammad, *Renewed Jackson Water Takeover Bill Earns Henefin's Support*, Miss. Free Press (2024), https://www.mississippifreepress.org/renewed-jackson-water-takeover-bill-earns-henefins-support/ (last visited May 8, 2025); Charlie Drape & Pam Dankins, *Henifin defends water rate increase after clash with Jackson city leaders: "We got nothing,"* Clarion Ledger (2025), https://www.clarionledger.com/story/news/local/2025/04/08/jackson-ms-jxn-water-council-clash-rates/82988240007/ (last visited May 8, 2025); Alex Rozier, *Jackson lawmakers 'shocked' after Henifin backs bill depleting local power*, Miss. Today (2024), https://mississippitoday.org/2024/03/01/jackson-lawmakers-shocked-after-henifin-backs-bill-depleting-local-power/ (last visited May 8, 2025).

A receiver is appointed to hold or manage the assets of another entity for a specific and temporary purpose. *See generally* 28 U.S.C. 959; *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830. Here, the ITPM's specific purpose is to stabilize the PWS by implementing the Priority Project List. SDWA Doc. 3 at 12.  The receivership is not intended to last indefinitely.  In this case, the ITPM announced a five-year tenure, and his role is expected to end as early as October of 2027.[19]

However, the ISO was drafted during an emergency and is currently silent on what will happen when the ITPM leaves and on how transition of the PWS will occur. The omission of a transitional plan leaves critical questions unanswered and presents foreseeable risks to the sustainability of the improvements made under the receivership. This absence could frustrate the very goal of the receivership and hinder the City's ability to reassume its responsibilities.  In light of this, the Court should exercise its discretion and require a detailed transitional plan addendum to the ISO. There are important policy reasons to do so.

*First*, a transitional plan would reduce legal uncertainty regarding which contracts, obligations, and decisions made under receivership will carry over once control is returned to the City. The plan should also provide guidance on how those ongoing commitments should be implemented or modified.

*Second*, a well-structured transitional plan would help preserve the integrity of federally funded improvements and ensure that the investments made into the PWS remain protected. It would also provide a clear framework for a stable handover, ensuring that the system remains functional and well-managed during and after the transition.

---

[19] Anthony Warren & Quentin Smith, *Ted Henifin plans to leave in 2027. Here's what leaders shay should happen with Jackson's water system.* WLBT3 (2024), https://www.wlbt.com/2024/09/26/ted-henifin-plans-leave-2027-heres-what-leaders-say-should-happen-with-jacksons-water-system/ (last visited May 8, 2025).

*Third*, requiring a transitional plan would further the Court's core goal: ensuring long-term stability of the PWS. It would serve as a roadmap to help local officials resume operational control competently, with safeguards in place to avoid regression.

## V.    CONCLUSION

In sum, material changes related to this case warrant modifying the ISO. As indicated above, (1) Intervenors-Plaintiffs are new parties to this litigation, but the ISO prevents them from fully participating in this case; (2) the emergency declaration has lifted and there is no just reason to allow the receiver to circumvent state law; and (3) because the emergency circumstances no longer exist and the posture of this case has changed, provision that were inadvertently excluded from the ISO must be included in order to ensure fairness and prolonged sustainability of the PWS.

For the reasons stated and in the interest of justice, Intervenors-Plaintiffs respectfully ask this Court to allow the ISO to be amended, consistent with the requests in the Memorandum, at a minimum.


Respectfully submitted, this 15 day of May 2025.

 /s/ Joshua Tom
Joshua Tom, MS Bar No. 105392
Ayanna Hill, 106590
American Civil Liberties Union of Mississippi
101 South Congress St.
Jackson, MS 39201
601.354.3408 ext. 112
jtom@aclu-ms.org
ahill1@aclu-ms.org


Emily Early, GA Bar No. 810206*
Jessica Vosburgh, Ala. Bar No. 1710-A00Y*
D. Korbin Felder, MS Bar No. 106643

The Center for Constitutional Rights
666 Broadway Avenue, Floor 7
New York, New York 10012
(212) 614-6464
eearly@ccrjustice.org
jvosburgh@ccrjustice.org
kfelder@ccrjustice.org


Lori Sherman, IN Bar No. 31102-53*
Kathleen Roblez, NC Bar No. 57039*
Caitlin Swain, NC Bar No. 57042*
Forward Justice
P.O. Box 1932
Durham, NC 27721
(919) 323-3889
lsherman@forwardjustice.org
kroblez@forwardjustice.org
cswain@forwardjustice.org


*Counsel for Intervenor-Plaintiffs*

*admitted pro hac vice