# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT,**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
(Northern Division)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, And THE STATE OF MISSISSIPPI, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. |
| v. | ) ) ) | 3:12-cv-790-HTW-LGI (Clean Water Act Case) |
| THE CITY OF JACKSON, MISSISSIPPI | ) ) | |
| Defendant. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff, and | ) ) ) | |
| MISSISSIPPI POOR PEOPLE'S CAMPAIGN and THE PEOPLE'S ADVOCACY INSTITUTE | ) ) ) ) | Case No. 3:22-cv-00686-HTW-LGI (Safe Drinking Water Act Case) |
| Intervenors-Plaintiffs, | ) ) | |
| v. | ) ) | |
| THE CITY OF JACKSON, MISSISSIPPI, | ) ) ) | |
| Defendant. | ) ) | |

**DECLARATION OF EMILY EARLY IN SUPPORT OF INTERVENORS-PLAINTIFFS' MOTION TO AMEND THE INTERIM STIPULATED ORDER**

I, Emily Early, under penalty of perjury, declare as follows:

1

1. My name is Emily Early. I am over 18 years of age and have personal knowledge of the facts set forth in this Declaration. I make this Declaration based upon my personal knowledge and in support of Intervenors-Plaintiffs' Motion to Amend the Interim Stipulated Order ("ISO").

2. Along with my co-counsel at the American Civil Liberties Union of Mississippi and Forward Justice, I am legal counsel for Intervenors-Plaintiffs Mississippi Poor People's Campaign ("MS-PPC") and People's Advocacy Institute ("PAI") in the above-captioned Safe Drinking Water Act Case. In addition, we represented MS-PPC and PAI along with attorneys at the Natural Resources Defense Council ("NRDC"), in connection with their Petition for Emergency Action under the Safe Drinking Water Act, 42 U.S.C. § 300i, to Abate Substantial and Imminent Endangerment (the "Petition"), filed with the EPA Headquarters and Region 4 in August 2023.

3. I have led or participated in correspondence—via letters, emails, and virtual meetings—with legal counsel for the other Parties, the United States of America and Defendant the City of Jackson, Mississippi, in this action and in connection with the Petition since approximately July 2023.

4. Approximately four months after filing the Petition, our co-counsel team, including counsel from the NRDC, received notification from the EPA that it had received the Petition, as well as a general suggestion from the EPA that PAI and MS-PPC supplement their Petition with health and safety concerns. The EPA did not provide or otherwise provide any mechanism, guidance, or other instructions for our clients to do so. Nor did it indicate whether any supplemental information would be considered.

5. In February 2024, after receiving updated data from Region 4, NRDC asked Region 4 via email, on behalf of PAI and MS-PPC, for a meeting with EPA Region 4 technical staff to discuss the scientific basis for their concerns about status of the water quality in Jackson, Mississippi's

2

public water system, which the Region scheduled for March 20, 2024. However, on March 14, 2024, Region 4 postponed that "listening session" one week before it was to occur.

6. Region 4 stated the postponement was in response to a separate request sent by our legal team on behalf of MS-PPC and PAI to EPA Headquarters–of which I was a part–asking for a meeting to discuss the breakdown in community relationships with the ITPM. Despite the separate purposes of the two meeting requests, Region 4 never rescheduled the listening session, and EPA Headquarters never responded to discuss community concerns.

7. On or around March 28, 2025, our co-counsel legal team, on behalf of our clients, sent correspondence to counsel for the U.S. EPA in this action, the U.S. Department of Justice, the City of Jackson, and the Mississippi State Department of Health ("MSDH") indicating that Intervenors-Plaintiffs intended to fully participate in the SDWA case and requested that the Confidentiality Order be modified so that the Intervenors-Plaintiffs could participate in ongoing discussions about the consent decree and related settlement items.

8. After approximately two months of negotiating the language of the ISO, the Parties reached agreement to modify the Confidentiality Order to include Intervenors-Plaintiffs as Parties.

9. Since PAI and MS-PPC intervened in this case in March 2024 and were added as "parties" to the Confidentiality Order in this case in July 2024, I, on behalf of Intervenors-Plaintiffs, have requested on at least 5 occasions—via emails to and in virtual meetings with counsel for the other Parties from July 2024 through March 2025—to obtain a copy of the consent decree being negotiated in this case and to participate in discussions about the negotiation of and drafting process for the consent decree. I, and our clients, have promised to keep the draft consent decree, as well as any correspondence and other communication regarding the same, confidential per the confidentiality order entered in this case.

3

10. To date, all of my requests for Intervenors-Plaintiffs to participate in the consent decree negotiation process, to obtain a copy of the consent decree drafts, and to participate in regular settlement discussions in this case have gone unanswered or been rejected by counsel for the other Parties.

11. In addition, in response to my and my co-counsel's requests for documents from Plaintiff the United States, the United States reminded us that this case is stayed and that our requests for documents are akin to discovery.

12. I, along with my co-counsel, have also experienced similar impediments when requesting information from JXN Water and the Interim Third Party Manager Ted Henefin. When on or around February 26, 2025, our legal team, on behalf of Intervenors-Plaintiffs, asked to meet with counsel for the ITPM, Paul Calamita, regarding violations of water quality parameters, Mr. Calamita told us that the ITPM was too busy to meet and to not to contact the ITPM. Emails between Paul Calamita, counsel for ITPM & JXN Water, and Lori Sherman, counsel for Intervenors-Plaintiffs, Feb. 26 to Mar. 13, 2025 (on file with author(s)).

13. And on or around March 12, 2025, when our co-counsel legal team asked, on behalf of Intervenors-Plaintiffs, to meet with Jacobs Engineering concerning new violations posted on the MSDH's website regarding the water system, and their plans for remedying them, Intervenors-Plaintiffs were told there was no reason to meet with Jacobs and waffled on whether the violations were accurate. *Id.* A subsequent request to meet with Jacobs was again raised shortly thereafter and never responded to. *Id.*

14. Moreover, when our co-counsel legal team requested from JXN Water a copy of the Jacobs Engineering contract for the Jackson Public Water system, we were told to look in the Quarterly reports–although the reports do not contain the contract. *Id.*

4

15. On December 9, 2024, on behalf of MS-PPC and PAI, I emailed legal counsel for the other Parties in this case a proposed modification to the ISO, requesting their position on modifying the ISO. I also attached to my email a summary of the proposed modifications to the ISO. The proposed modified ISO is attached as Attachment 1 to this email.

16. Only a representative from the U.S. EPA, on behalf of Plaintiff the United States in this case, responded to my email to acknowledge receipt of our clients' request to modify the ISO.

17. I have followed up with counsel for the United States and City of Jackson on at least three separate occasions via email over the last several months to obtain their position on modification of the ISO. Five months have passed without any response from the other Parties as to their position on the proposed modifications our legal team shared with opposing counsel in December 2024.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 15th day of May 2025.

*Emily Early*
_____
Emily C.R. Early

# EXHIBIT A "proposed changes to the ISO"

## I. Background

**WHEREAS,** Mississippi Poor People's Campaign and People's Advocacy Institute (collectively referred to herein as "Intervenors-Plaintiffs") filed an unopposed motion for leave to intervene in the underlying lawsuit on September 25, 2023.

**WHEREAS** Intervenors-Plaintiffs' motion was granted on March 20, 2024.

**WHEREAS**, the United States, MSDH, Intervenors-Plaintiffs and the City (collectively, the "Parties") agree that the current Interim Stipulated Order entered on November 29, 2022 ("2022 ISO"), has been in effect nearly 24 months.

**WHEREAS**, the Parties agree that the 2022 ISO was drafted and entered by this Court during a state- and federally-declared emergency and modifications to the 2022 ISO are necessary to allow for clear procedures to foster information-sharing, and opportunities for the residents to regularly participate and engage in the processes to collaboratively address the current and future needs of the System.

## III. DEFINITIONS

3. Unless otherwise expressly provided in this Amended Stipulated Order, terms used in this Amended Stipulated Order that are defined by the SDWA and the regulations promulgated thereunder shall have the meanings ascribed to them therein. Whenever the terms set forth below are used in this Amended Stipulated Order, the following definitions shall apply:

"Effective Date" shall mean the date of entry of this Amended Stipulated Order by the Court.

1

"Jackson Residents" shall mean all residents residing in the City of Jackson as well as individuals living outside the City who rely on and utilize Jackson water.

"JXN Water Inc" shall mean the for-profit entity established by the Ted Henifin on November 7, 2022, to control and manager the public water system in Jackson, Mississippi.

"Monthly Report" shall mean a short report written in layperson's terms that incorporates the requirements set forth in this Amended Stipulated Order.

"New Contracts" shall mean all City contracts pertaining to the System or WSBA entered into after the Effective Date of this Amended Stipulated Order.

"Parties" shall mean the United States, MSDH, Intervenors-Plaintiffs, and the City of Jackson.

5. **Objectives.**

    d.    "Develop and publicly share a financial and operational plan that will outline strategic steps that will return the System's operation and maintenance back to the City of Jackson."

6. **Responsibilities and Authority of the ITPM.**

    g.    Respond to notices of violation, information requests, and lawful orders regarding the System from local, state, and federal governments, as well as from Intervenors-Plaintiffs; and file any such notices and the ITPM's corresponding responses with the Court.

    k.    Enter into contracts, as provided herein, on behalf of the City, necessary for the operation and maintenance of the System and/or WSBA; at least 60 days prior to entering into a contract that binds the City of Jackson, beyond a year the ITPM must consult and confer with the Mayor and City Council and provide notice to parties.

    m.    Make such purchases as the ITPM deems necessary for the benefit of the System and/or WSBA from the ITPM Professional Budget, the O&M Account, and the Capital Improvements Account. In exercising procurement authority and awarding New

Contracts, the ITPM ~~need not~~ must comply with Miss. Code Ann. § 31-7-13 ~~but will~~ and ensure that ~~use best efforts to have~~ the procurement process ~~be~~ is competitive, transparent, and efficient;

n.  Perform, modify, or terminate Pre-Existing Contracts. The ITPM's ability to modify or terminate Pre-Existing Contracts shall be governed by the contract's terms or as allowed by law. The ITPM shall consult with the Office of the City Attorney in modifying or terminating Pre-Existing Contracts;

   i.  At least 30 days prior to modifying or terminating contracts involving more than $350,000 dollars, the ITPM must provide notice to all parties

o.  Enter into New Contracts related to the System and/or WSBA and funded from the ITPM Professional Budget, the O&M Account and/or the Capital Improvements Account. The terms and conditions of any New Contracts entered into by the ITPM that are funded from the ITPM Professional Budget, O&M Account, or Capital Improvements Account shall be based on a form contract agreed upon by the ITPM and the City. The ITPM shall consult with the Office of the City Attorney in negotiating New Contracts whose terms extend beyond one (1) year after the Effective Date. The ITPM's ability to modify or terminate New Contracts shall be governed by the contract's terms or as allowed by law;

   i.  At least 30 days prior to entering into any new contracts of $1,000,000 or higher value, or contracts that bind the City of Jackson and/or entity operating the water system on behalf of the City for a year or more, including any existing contracts that will be extended beyond a term of one year, the ITPM must make public the contractual terms on JXN website and share the contract with the Parties; and

   ii.  The ITPM must hold a public notice and comment period for any contracts that bind the City of Jackson and/or entity operating the water system on behalf of the City for a year or more, including any existing contracts that will be extended beyond a term of one year; and

   iii.  The Mayor or the Jackson City Council must give express approval to any new contract of $1,000,000 or higher value, or any contract that binds the City of Jackson and/or entity operating the water system on behalf of the City for a year or more, including any contracts that will be extended beyond a year.

q.  Within thirty (30) Days of receipt by the City of a Financial Management Plan, and annually until the termination of this Stipulated Order, meet with the City to discuss the need to adjust the Rate structure, the Rates under the existing or a modified Rate structure, and any fees that the City charges customers for water utilities:

   i.  If, in reliance on the latest Financial Management Plan and after consulting with at least 20 different Jackson Residents from each neighborhoods situated in north, east, south and west Jackson, the Parties, the Mayor and the Mayor's staff, the ITPM deems a modification of the

3

        Rate structure or a Rate or fee increase appropriate to meet the requirements of this Amended Stipulated Order, the ITPM shall publish the proposed rate change and the explanation for the rate change on JXN Water's website, as well as issue a press release and a notice of the rate change proposal and explanation for the same on social media. Within ten (10) days of the ITPM's publication of the rate change proposal as required by this provision, the ITPM must open a portal on the JXN website, for at least 30 days, that allows customers of JXN Water, and other members of the public, to submit comments. In addition, the ITPM, must hold a public hearing to review and consider comments on the same. Thereafter, the ITPM must address the comments prior to submitting any rate proposal to the Mayor. After the ITPM addresses the public's documented concerns, the Mayor shall, in accordance with Title 21, Chapter 13, of the Miss. Code Ann., propose an amendment, consistent with the ITPM's recommendation and in consideration of the public comments submitted in response thereto, to Sections 122-268 and/or 122-269, Code of Ordinances of Jackson, Mississippi, to be placed on the agenda of the next scheduled regular City Council meeting;

    ii.    ii. In the event the City Council does not pass an amendment proposed by the Mayor in accordance with the preceding sub-Paragraph and more than 365 Days have passed from the date of the last Rate adjustment, the ITPM shall have the full power and authority to adjust the Rates, Rate structure, and/or fees without the necessity of any actions on the part of the City Council and with thirty (30) Days' notice to the Mayor, Director of Public Works, the City Council, and the System's customers

r.    Seek out, apply for, and execute state and federal grants, loans, and other sources of funds for the implementation of this Amended Stipulated Order (including but not limited to Municipality and County Water Infrastructure grants and State Revolving Fund loans), subject to the limitations of Paragraph 7 (Limitations of ITPM's Authority). The ITPM shall organize quarterly in-person community information sessions with written materials explaining which funds the ITPM has applied for in the preceding quarter and the reasoning therefore, and provide information on how interested community organizations can also apply for that funding, if applicable;

s.    Modify, update, or reprioritize the Priority Project List and the Implementation Schedule, consistent with Paragraph 18 (EPA Review);

    i.    At least 45 days prior to making any modifications or reprioritizations to the Priority Project List, the ITPM must submit the proposed changes to the Parties, and file such changes with the Court. Within 14 days of said filing, all Parties will have an opportunity to submit comment to the Court on the proposed modifications, updates, or reprioritizations of the Priority Project List, and within 14 days of the Parties' submission of any

4

comments, the Court must approve the ITPM's proposals prior to implementation.

v. Cause to be issued any notices to customers, EPA, ~~and/or~~ MSDH, and/or Intervenors-Plaintiffs required under the SDWA, Mississippi SDWA, and their implementing regulations. Said notice should be issued within a reasonable timeframe, after the event or incident that triggers the requirement to issue the notice and be delivered via JXN Water's website, press releases, and text messages; ~~and~~

w. Cause to be compiled and issued any reports to customers required under the SDWA, Mississippi SDWA, and their implementing regulations, including but not limited to the Annual Consumer Confidence Report.

x. Cause to be issued any boil water notices, and explanation of their resolution, to JXN Water customers via automated email, text blast notifications, press releases, phone calls, and to the extent possible, deliver door hangings or handbills to the effected neighborhood, and posting all boil water notices on the front page of the JXN Water website;

y. Hold quarterly town halls to share information with the public about System updates, including the Monthly Reports and written materials explaining which funds the ITPM has applied for in the preceding quarter to fund the System and WSBA, the reasoning therefore, and provide information on how interested community organizations can also apply, if applicable, and to solicit feedback from residents. Town halls must be widely publicized and take place at a time and location to allow for widespread participation, with an option to participate by video and/or phone, and if authorized by customers, shall be recorded.

z. Within 6 months, the ITPM must develop and submit to all parties a proposed transition plan that shall set forth necessary and reasonable actions the City and the ITPM must take to transition back to the city operation, maintenance, management, and control of the water system and specify with clarity the timeframes for such actions. The Plan must include logistical steps to transfer the ITPM's processes, contract oversight, staff, bank account access, and a guide to provide necessary training to relevant City employees. The Transition Plan must also specify a deadline by which the ITPM expects to begin and conclude the transition process. The proposed deadline must be within five years of the ITPM's original appointment ("Date").

7. **Limitations on the ITPM's Authority.** Unless otherwise ordered by the Court, the ITPM shall not:

   a. Encumber or sell any real property asset of the City;

   b. Propose or agree to consolidate the System with any other public or private utilities;

  c. Authorize another governmental agency to operate a public water system within the System's current service areas; ~~or~~

  d. Apply for a loan in excess of the amount of additional debt capacity recommended in the latest Financial Management Plan;

  e. Publicly or privately endorse or otherwise support any proposed State or Federal law that would lead a reasonable person to call into question the presiding Court's duty of strict impartiality and loyalty to those affected by the resolution of the above-captioned SDWA litigation. Nor shall the ITPM allow JXN Water to endorse or otherwise support any State or Federal law that would lead a reasonable person to call into question the impartiality of the ITPM;

  f. Transfer ownership or complete control of the System to any person or entity, except for the City or unless otherwise expressly authorized by the City in writing. Nor shall the ITPM or JXN Water enter into any contract or other legal arrangement that has the effect of transferring ownership of the system to a private entity, another governmental entity besides the City, or any of their agents;

  g. Enter into long-term contracts that will bind the City of Jackson beyond the projected length of the receivership, unless the Mayor and City Counsel gives express written approval to the terms and conditions of the long-term contract or unless authorized by the Court.

**10.** **Removal or Replacement of the ITPM.**

  a. For good cause shown, ~~the United States, MSDH, or the City~~ any party may move for removal or replacement of the ITPM.

    i. Good cause shown shall include, but not limited to, failing to comply with all provisions of this Amended Stipulated Order or failing to conduct the business affairs of the water system with the level of care that a reasonable receiver would exercise under the same set of circumstances.

**13.** **Capital Improvements Account.**

  e. On a monthly basis, the ITPM shall make publicly available on the JXN Water website an accounting of all funds for the System received from the federal, State and City government into the O&M account, detailing how the funds are being allocated and spent.

**16.** **ITPM Reporting Requirements**

  a. Quarterly Status Reports. Commencing with the first Quarter after the Effective Date and continuing Quarterly until termination of this Stipulated Order pursuant to Section VII (Termination), the ITPM shall submit written status reports on its progress in implementing the Stipulated Order to the Parties and the Court ("Status Reports"). The Status Reports shall be due

6

on the last Day of January, April, July, and October and shall be written in layperson's terms and made publicly available on the JXN Water website in both English and Spanish and shall cover the immediately preceding Quarter. In each report, the ITPM shall provide the following:

      i.     A description of the projects and activities conducted during the reporting period to comply with the requirements of this Stipulated Order;

      ii.     A summary of any delays encountered or anticipated that may affect the ITPM's performance or implementation of this Stipulated Order, including the Priority Project List, and any actions taken to address such delays;

      iii.     Any modification to the Priority Project List or Implementation Schedule consistent with Paragraphs 15 (Priority Project List) and 18 (EPA Review);

      iv.     An accounting of the expenditures from, additions to, and remaining balance of the ITPM Professional Budget;

      v.     A projection of work to be performed pursuant to this Stipulated Order during the next or succeeding Quarter; ~~and~~

      vi.     The results of monthly monitoring and water testing conducted at the water treatment facilities and in the System's distribution system, including all water quality parameter monitoring, sampling and all monitoring concerning: (a) Total Chlorine, (b) Free chlorine, (c) HAA5, (d) Turbidity, (e) pH, (f) Alkalinity, (g) Hardness, and (h) Lead;

      vii.     The results of any water testing conducted in homes throughout the city and details explaining the reasons for the testing;

      viii.     Detail description of recent updates to the System;

      ix.     List of Requests for Proposals ("RFPs") issued as it relates to the System and Sewer System and JXN Water's response to those RFPs.

      x.     An accounting of all awarded contracts in the preceding month;

      xi.     A summary of System malfunctions and repairs;

      xii.     A customer service report including metrics for complaint resolution time, all customer feedback (including results of customer satisfaction surveys), and number of communications received from customers; and

      xiii. In each Status Report filed in the month of January, except in the Status Report due January 31, 2023, an audited financial statement of the ITPM Professional Account, O&M Account, and Capital Improvements Account for the City's previous fiscal year. Any information revealing bank account numbers or constituting personally identifiable information shall be redacted.

      xiv.    In each Status Report filed in the month of July, a proposed ITPM Professional Budget for the upcoming fiscal year.

   c.   **Monthly Reports:** Shall commence with the first Month after the entry of this Amended Stipulated Order and continuing until termination of this Amended Stipulated Order pursuant to Section VII (Termination). The Monthly report shall be a condensed report, written in layperson terms. The ITPM shall publish the Monthly Report in English and Spanish on the JXN water website. Monthly Reports shall address the following:

     i. all work completed during the prior month,

     ii. any anticipated repairs, specifying if repairs will have an impact on residents' ability to use water

     iii. Water testing results;

     iv. Boil water notices

     v. Any emergency including pipe repairs and replacements; and

     vi. any anticipated Shut-offs.

**17.**   **Records and Information Sharing.**

   a.   ~~The ITPM is not a federal, state, county, or local agency; nor is the ITPM an agent of a federal, state, county, or local agency. Accordingly,~~ Records maintained, produced, controlled ~~or in the custody of~~ by the ITPM, JXN Water, and/or any its employes, agents, and officers, as well as any other entities formed by the ITPM, shall be treated as public records, and thus, ~~not~~ subject to Mississippi's public and other open records laws.

**24.**   **TERIMINATION.** This Stipulated Order shall terminate at the earliest of the following: ~~when a final judgment is entered by the Court.~~

   a.   the Court's entry of a final consent decree;

   b. Upon motion by any Party showing that the ITPM or the City, as applicable, has achieved substantial compliance with the Priority Project List, and approval by the Court;

   c.   upon motion by the United States, after consultation with MDEQ and Intervenors- Plaintiffs, and approval by the Court; or

   d. Four (4) years from the Order Effective Date, unless the United States, after consultation with MDEQ and Intervenors- Plaintiffs, moves for, and the Court approves, an extension of this Stipulated Order.