IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
(Northern Division)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| and the STATE OF MISSISSIPPI, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 3:12-cv-790-HTW-LGI |
| | ) | (Clean Water Act Case) |
| v. | ) | |
| | ) | |
| | ) | |
| THE CITY OF JACKSON, MISSISSIPPI, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:22-cv-00686-HTW-LGI |
| | ) | (Safe Drinking Water Act Case) |
| v. | ) | |
| | ) | **UNITED STATES' OPPOSITION** |
| | ) | **TO INTERVENOR'S MOTION TO** |
| | ) | **UNILATERALLY AMEND** |
| THE CITY OF JACKSON, MISSISSIPPI, | ) | **INTERIM STIPULATED ORDER** |
| | ) | **(Safe Drinking Water Act Case)** |
| Defendant. | ) | |
| _____ | ) | |

## INTRODUCTION

Plaintiff United States of America opposes the Intervenor's proposed unilateral amendment of the Interim Stipulated Order in the Safe Drinking Water Act case. As explained below, the ISO may not be unilaterally modified without the consent of the Parties thereto. Further, the Intervenors' motion is based on the misconception that the emergency necessitating the ISO is over. Finally, the Intervenors fail to establish a legal basis for the relief they request. The Court should reject the Intervenor's Motion.

## BACKGROUND

This Court is familiar with the circumstances giving rise to the Interim Stipulated Order (the "ISO"). *See United States v. City of Jackson*, Civ. No. 3:22-cv-00686 HTW-LGI, (hereinafter, "SDWA Case"), Dkt. No. 6. The ISO was approved by this Court on November 29, 2022, and was the result of intense negotiations between the United States, the Mississippi State Department of Health ("MSDH"), and the City of Jackson ("City") (collectively, "the Parties"), to address the public health emergency that arose when the City's drinking water system collapsed in August of 2022. *Id.* at 1-3.

Among the items included in the ISO is a list of 13 "Priority Projects." *Id*. at Appendix A. The ISO's Priority Project List was developed among technical staff from the U.S. Environmental Protection Agency ("EPA"), MSDH, the City's Department of Public Works, and Mr. Henifin (the "Interim Third-Party Manager" or "ITPM"). *See* SDWA Case, Dkt. No. 3 at 12. The projects included on the list "will address near-term needs of the City's drinking water system and alleviate the current emergency situation, with the ITPM having primary responsibility for implementation." *Id.* Following entry of the ISO, the United States, MSDH,

and the City have been negotiating a partial consent decree geared towards the next phase of SDWA compliance work and system stabilization. *Id.* at 1; SDWA Case, Dkt. No. 6 at 4.

In September of 2023, the Peoples Advocacy Institute ("PAI") and the Mississippi Poor People's Campaign ("MS-PPC") (referred to collectively as "Intervenors"), filed a Motion for Leave to Intervene as well as lodged a proposed Complaint in Intervention. *See United States & State of Mississippi v. City of Jackson*, Civ. No, 3:12-cv-00790 HTW-LGI (hereinafter, "CWA Case"), Dkt. No. 55.[1]

In their Complaint in Intervention, the Intervenors allege three narrow causes of action, which mirror three of the United States' causes of action. *Compare* CWA Doc. 104, ¶¶ 128-152 with SDWA Doc. 1, ¶¶ 146-169. The Intervenors first allege exceedances of turbidity limits in June 2022 and February 2021; second, they allege that the City failed to timely rehabilitate water filters at the J.H. Fewell treatment plant; and third, they allege that the City failed to timely conduct optimal corrosion control treatment at the J.H. Fewell treatment plant. CWA Doc. 104, ¶¶ 128-152.

Intervenors now claim, without support, that the emergency precipitating the entry of the ISO is over and that the ISO should be unilaterally amended to insert relief that the Intervenors favor, but that none of the Parties to the ISO have agreed to. The United States opposes the Intervenors' Motion, and the relief sought as explained below.

---

[1]  On August 14, 2023, an Order was entered consolidating the SDWA and CWA case for administrative purposes. Filings made subsequent to that date are to use the combined case heading, indicating which matter the filing relates to (Clean Water Act Case or Safe Drinking Water Act Case), and filed in the ECF System using the older case number. See CWA Case, Dkt. No. 45.

## ARGUMENT

**I.    By Its Plain Terms, the ISO May Be Modified Only with Consent of the Parties and Approval of the Court.**

The ISO was the product of a negotiated agreement between the United States, MSDH, and the City. *See* SDWA Case, Dkt. No. 6 at 4 ("[T]he Parties agree and stipulate" to the terms of the ISO). Intervenors were not parties to the Order. Nevertheless, the Intervenors seek to unilaterally impose their desired revisions upon the United States, MSDH, and the City—without their consent. The Court should deny that request as inconsistent with the plain terms of the Court-approved Order.

The ISO contains a "Modification" section, which provides that the ISO "may be modified only by a subsequent written agreement signed by all the Parties and approved by the Court." SDWA Case, Dkt. No. 2-1, ¶ 23. The "Parties" are the United States, MSDH, and the City. *Id*. ¶ 3. None of the Parties have agreed to the Intervenors' proposal. That is fatal to Intervenors' motion pursuant to the plain terms of the ISO.

**II.    The Intervenors Are Not Entitled to the Relief They Request.**

**A.    The Intervenors have not met the standard for contested preliminary injunctive relief.**

Intervenors contend that the ISO is "akin" to a preliminary injunction. See Intervenors' Memorandum in Support of Motion to Amend the Interim Stipulated Order, CWA Case Dkt. No.176 at p. 11. But they fail to acknowledge that they seek to unilaterally impose new preliminary injunctive relief on the City that is different than the consented-to injunctive relief in the ISO. Despite seeking new preliminary injunctive relief, Intervenors have failed to satisfy the four elements required to justify that relief. *See, Opulent Life Church v. City of Holly Springs,*

*Miss.*, 697 F.3d 279, 288 (5th Cir. 2012) (identifying the four prerequisites to obtaining preliminary injunctive relief).

To be sure, the Court has the authority to enter interim injunctive relief agreed upon by the parties as an exercise of its broad equitable power. *See, e.g.*, *Wine Country Gift Baskets.com v. Steen*, 612 F.3d 809, 812 (5th Cir. 2010) (noting that the parties agreed to a preliminary injunctive order blocking enforcement of contract provisions during the lawsuit); *Am. S. Ins. Co. v. Williamson*, No. 3:13CV689 DPJ-FKB, 2013 WL 11327715, at *1 (S.D. Miss. Nov. 12, 2013) (granting preliminary injunctive relief that the parties agreed upon); *Gilchrist Mach. Co. v. Komatsu Am. Corp.*, 601 F. Supp. 1192, 1195 (S.D. Miss. 1984) (noting that the parties agreed to a temporary order preventing the defendant from terminating its franchise agreement with plaintiff during the litigation). But that is not what Intervenors are requesting—they are third parties asking the Court to impose their new, preferred injunctive relief on the parties to the Order.  On that score, the Intervenors do not even attempt to address the standard for preliminary injunctive relief where, as here, the parties have not consented to the proposed relief. The Court cannot award preliminary injunctive relief to Intervenors when they have not acknowledged, yet alone met, the standard for that relief.

In a similar vein, courts may not rewrite consent decrees agreed upon by the parties or delete, modify, or substitute certain provisions of a proposed decree. *See Reynolds v. Roberts*, 202 F.3d 1303, 1312 (11th Cir. 2000); *United States v. Akzo Coatings of America, Inc.*, 949 F.2d 1409, 1435 (6th Cir. 1991); *United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir. 1986); *Officers for Justice v. Civil Service Comm'n of City and Cnty. of San Francisco*, 688 F.2d 615, 630 (9th Cir. 1982); *United States v. DeKalb County, GA*, No. 1:10-cv-4039-WSD, 2011 WL 6402203 at *9 (N.D. Ga., December 20, 2011). A similar principle applies here.

The Court may not rewrite the terms of the ISO when no party to the ISO has consented – and the United States has expressly opposed that relief.

        **B.**      **The Intervenors' claims are narrow and do not support the requested relief.**

        The Intervenors seek new, broad relief related to the ITPM's authority and receivership generally, but they fail to demonstrate how they are entitled to such relief when the claims they asserted in their complaint are narrow and have largely been addressed. The Intervenors' claims seek to address turbidity violations from several years ago (First Cause of Action), the failure to timely rehabilitate water filters (Second Cause of Action), and the failure to implement corrosion control at the J.H. Fewell Treatment Plant, the older and smaller of Jackson's two water treatment plants (Third Cause of Action). *See* Complaint in Intervention, CWA Dkt. No. 104 at 25-29. The Intervenors' claims do not support the broad relief requested in their Motion.

        First, all three of the Intervenors' claims have been addressed through the ITPM's and JXN Water's work on the Priority Project List. As to turbidity exceedances, recent data in the System's Monthly Operating Reports, updated through April 2025, indicate no turbidity measurements exceeding 0.5 NTU so far in 2025 at either J.H. Fewell or O.B. Curtis, well below the turbidity limit of 1.0 NTU set forth in 40 C.F.R. § 141.13. *See* Exhibit A, Declaration of Bryan Meyers ¶ 5. Further, the average and maximum turbidity in 2024 at the Plants are as follows: (1) for J.H. Fewell, 0.18 NTU (avg) and 0.36 NTU (max); (2) for O.B. Curtis conventional filter, 0.16 NTU (avg) and 0.36 NTU (max); and (3) for O.B. Curtis membrane filter, 0.098 NTU (avg) and 0.188 NTU (max). *See* Exhibit A, Meyers Declaration ¶ 5.

        As to the filter rehabilitation work at J.H. Fewell for Filters 24 and 26, that rehabilitation was reported as complete in the ITPM's Quarterly Status Report for the quarter ended December 2023, SDWA Dkt. No. 51 at p 92. Similarly, the optimal corrosion control project at J.H. Fewell

was reported as fully operational in the Quarterly Status Report for the quarter ended March 2024. SDWA Dkt. No. 53 at p. 70.  Because the violations alleged in Intervenors' claims have already been addressed through implementation of the Order, they cannot use them to seek new injunctive relief.

Much of the relief requested by the Intervenors, however, is not tethered to their claims. For example, Intervenors seek to restrict the ITPM's ability to contract with outside parties or raise water rates, SDWA Dkt. No. 176-1, ¶¶ 6.k., n., o., and q; impose numerous reporting requirements, *id.* at ¶ 16; and obtain authority to remove the ITPM for failing to comply with "all provisions" of the Order, *id.* at ¶ 10. The Intervenors' narrow claims, however, do not entitle them to the broad relief they request, particularly where the ITPM has resolved the issues giving rise to their claims. *See Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008) (A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."). Further, "a request for injunctive relief must necessarily be tied to the specific claims on which the plaintiff is proceeding." *Souresrafil v. Carvajal*, 2022 WL 4234944 at *1 (S.D. Ind., Sept. 13, 2022), citing *Benisek v. Lamone*, 138 S. Ct. 1942, 1945 (2018). Put differently, if the Intervenors were to litigate successfully their turbidity, filter, or corrosion control claims to conclusion, they have not demonstrated how success on those claims would entitle them to an injunction providing the broad relief they seek.[2]

---

[2] "[A]n intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding." *Vinson v. Wash. Gas Light Co.*, 321 U.S. 489, 498 (1944); *see also, Wash. Elec. Coop., Inc. v. Mass Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990) (intervention "is not intended to allow for the creation of whole new suits by intervenors" and "cannot be used as a means to inject collateral issues into an existing action.").

### III.    Intervenors' Argument that the Emergency Necessitating the ISO is Over is Unsupported.

Claiming changed factual circumstances, the Intervenors urge the Court to amend the ISO to insert their preferred provisions, insisting "[i]t is well established that the emergency that precipitated the expedited ISO is over, removing the justification" for the provisions the Order contains. SDWA Case, Dkt. No. 176 at 11-13, 15. But the Intervenors cite no evidence to support their contention that the water emergency in Jackson is over.

In contrast, the United States supported entry of the ISO in its current form with evidence. For example, the United States submitted documentation of the system's shortcomings, including multiple agency orders, sworn declarations, and inspection and assessment reports documenting violations.  SDWA Case, Dkt. Nos. 1-1, 1-2, 1-3, 1-4, 2-2, and 2-3. The documentation established the precarious financial footing of the drinking water system, including lost revenue and a lack of technical capacity at the City. *E.g.*, Ex. 1 to Declaration of Brian Smith, SDWA Case, Dkt. No. 2-2 at EPA_0000063-64 & EPA_0000069-71). The United States provided evidence of violations of the SDWA from 2016 through 2022. *Id.* at 3.

Further, at the time the United States moved for entry of the ISO, it explained to the Court and the public that the Parties and the ITPM had identified a Priority Project List of key projects that would need to be completed before the emergency could be resolved. SDWA Doc. 3 at 12. The projects would "address near-term needs of the City's drinking water system and alleviate the current emergency situation." *Id.*[3] While the ITPM has made tremendous progress

---

[3] Section 1431of the Safe Drinking Water Act, 42 U.S.C. § 300i(a), provides broad authority for EPA to act when the prerequisites are met.

in addressing the items on the Priority Project List, several important items remain. *See* Quarterly Status Report for Quarter ended March 31, 2025, filed April 30, 2025, SDWA Dkt. No. 60 at 3-4, 44-48. For example, the ITPM continues necessary work to optimize corrosion control treatment at the O.B. Curtis Treatment Plant; to finalize the system planning and stabilization plan, which will provide the blueprint for long-term fixes needed for the system; and to assess and repair chemical feed pumps and other associated equipment. *Id.*

The City's water system remains in crisis. On May 20, 2025, the Jackson City Council agreed that the water emergency beginning on August 29, 2022, persists and approved "in the public interest and for the general welfare . . . the continued need for a civil emergency for the entire City of Jackson." *See* Exhibit B, Jackson City Council's Order Reviewing and Continuing August 29, 2022, State of Emergency.[4] The current Mayor of Jackson has noted that public works directors "run away before they have a day on the job," and the Public Works Department does not have staffing sufficient to operate the water system. *Lumumba: Jackson Likely Won't Have New Public Works Director Until 2025,* WLBT, July 8, 2024 (available at https://www.wlbt.com/2024/07/08/lumumba-jackson-likely-wont-have-new-public-works-director-until-2025/) (last visited May 19, 2025). The City has been without a public works director for an extended period of time. *John Horhn on JXN Water, Jackson airport, and his plans if he's elected*, WLBT, Apr. 18, 2025 https://www.wlbt.com/2025/04/18/john-horhn-jxn-water-jackson-airport-his-plans-if-hes-elected/) (last visited (May 29, 2025). Thus, even if the

---

[4] The May 2025 order passed by the City Council specifically provides, among other things, that pursuant to Section 33-15-17 (b) of the Mississippi Code, the City "is authorized to exercise the powers vested under [Section 33-15-1, et seq.,] in light of the exigencies of the extreme emergency situation without regard to time-consuming procedures and formalities prescribed by law pertaining to the performance of public work, entering into contracts, the incurring of obligations ... and the expenditure of public funds ...."

Court were to consider amending the Order, the Intervenors they have not and cannot demonstrate that the water emergency in Jackson has concluded. Because Intervenors have not shown a significant change in factual circumstances, their request fails on that independent ground.

## IV.    If the Court Does Not Deny the Motion, It Should Consider Less Burdensome Alternatives

For the reasons discussed above, the Court should deny Intervenors' request to amend the ISO. But if the Court concludes that it should address Intervenors' objections, it should consider less burdensome alternatives to amending the ISO that can provide the Intervenors with most of the information they seek. Much of the information sought by the Intervenors is publicly available in either the Quarterly Reports, [5] the JXN Water Website,[6] or MSDH's Website.[7] In one instance, it does not yet exist.[8] Rather than making unilateral changes to the ISO, a less

---

[5] The ITPM has provided a description of the progress of items on the Priority Project list in his most recent Quarterly Status Report, including an update as to the progress of the OCCT implementation at OB Curtis. Quarterly Status Report for Quarter ended March 31, 2025, filed April 30, 2025, SDWA Dkt. No. 60 at pp. 44-45. As noted above, the work related to implementation of corrosion control at J.H. Fewell alleged in intervenors complaint has been fully implemented.

[6] Intervenors request that boil water notices be posted on the front page of the JXN Water Website. It appears that they are. On the JXN Water website, www.jxnwater.com, there is a tab on the upper right hand portion of the page that takes you to the following link https://jxnwater.com/boil-water-notices/, which shows the precautionary boil water notices as well as recently resolved notices.

[7] https://apps.msdh.ms.gov/DWW/JSP/WaterSystemDetail.jsp?tinwsys_is_number=317&tinwsys_st_code=MS&wsnumber=MS0250008   There are links on the left side of the webpage with links to recent sampling results and other information related to the water system.

[8] Intervenors seek "long term stabilization reports." Presumably they are referring to the System Planning and Stabilization Plans and System Stabilization and Sustainability Plan, which have now been combined and are presently not due until December of 2025. *See*, Quarterly Status Report for Quarter ended March 31, 2025, filed April 30, 2025, SDWA Dkt. No. 60 at p.3.

burdensome alternative is for the Intervenors to file a written response to the ITPM's quarterly reports, outlining what information they seek that is not contained in the report. The ITPM could respond in writing or at the next status conference, typically held within a few weeks of the filing of the Quarterly Report.[9] To the extent Intervenors seek reports or documentation that the ITPM has submitted to either EPA and/or MSDH, Intervenors can seek those documents through either the applicable State Records law or the Freedom of Information Act.

The ITPM, through JXN Water, also has made good faith efforts to provide information to the community. He is holding quarterly public meetings.[10] He has held several Water Academy sessions,[11] where interested citizens can learn detailed information about how the water system works. He has held several forums for small local businesses about "how to do business with JXN Water"[12] and also maintains a website with a plethora of information, including recent boil water notices.

As the Court is aware, the ITPM has kept a streamlined staff and is focused on completing the items on the Priority Project List to address the ongoing emergency situation. The Court should deny the Intervenors' unilateral changes to the ISO.

---

[9] This is what occurred at the recent Status Conference held on June 16 - 17, 2025. The Intervenors asked questions of the ITPM and requested certain documents, which the ITPM agreed to provide. (Transcript pending).

[10] *See, E.g.,* Quarterly Status Report for Quarter ended March 31, 2025, filed April 30, 2025, SDWA Dkt. No. 60 at p. 12.

[11] *Id.*

[12] *Id.* at pp. 12-14.

V.    **Negotiations with the City Regarding its Violations of the Safe Drinking Water Act are Continuing and Involve the Intervenors.**

The United States continues to negotiate with the City and MSDH and has engaged the Intervenors in discussions regarding a partial Consent Decree to prepare for the ITPMs anticipated departure in 2027. But in its response to the Intervenor's Motion for Leave to Intervene, the United States made it clear that it only consented to intervention as to the three limited claims. *See* CWA Dkt. No. 73. Further, the United States made it clear that it reserved its rights to conduct negotiations with the City or otherwise vindicate its rights as it sees fit. *Id.*[13] This comports with the view that intervention "was not intended to enable citizens to commandeer the federal enforcement machinery," *Dubois v. Thomas*, 820 F.2d 943, 949 (8th Cir. 1987); *see also United States EPA v. City of Green Forest, Ark.*, 921 F.2d 1394, 1402 (8th Cir. 1990), *United States v. Lexington-Fayette Urban County Gov't*, 2007 WL 2020246 at *3-4. These concerns are heightened here, where it appears that the relief sought by the Intervenors in their Complaint in Intervention has been completed.

Notwithstanding the Intervenors' limited claims, the United States has engaged with the Intervenors on several occasions, as documented in the Intervenors' motion. The United States is aware of their concerns, has responded to the Intervenors as to their three causes of action, and will consider the Intervenors' preferred relief as negotiations continue. Consistent with the United States' previously stated positions about the Intervenors' role, the United States is open to additional discussions with the Intervenors at the appropriate time. Of course, if the parties reach

---

[13] Intervening Plaintiffs, even intervenors as of right, may be excluded from settlement negotiations. *See, United States v. Lexington-Fayette Urban County Gov't,* Civil Action No. 06-386-KSF, 2007 WL 2020246, *4 (E.D. Ky., July 6, 2007). The United States does not seek such relief at this time but reserves its rights to do so in the future.

a final or partial settlement and the Intervenors remain unsatisfied, they may oppose the

settlement at that time. But the Intervenors' objections to the current negotiation process do not

provide sufficient reason to override the Parties agreed-upon stipulated Order.

## CONCLUSION

For the reasons stated herein, the Court should deny the Intervenors' Motion to

Unilaterally Amend the Interim Stipulated Order.

Respectfully submitted,

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

Dated: June 26, 2025          /s/ KARL FINGERHOOD
                             KARL FINGERHOOD (PA Bar No. 63260)
                             Senior Counsel
                             Environmental Enforcement Section
                             Environment and Natural Resources Division
                             U.S. Department of Justice
                             P.O. Box 7611
                             Washington, D.C. 20044-7611
                             Tel: (202) 514-7519
                             Email: karl.fingerhood@usdoj.gov

                             PATRICK LEMON
                             Acting United States Attorney for the
                             Southern District of Mississippi

                             ANGELA GIVENS WILLIAMS (MS Bar No. 102469)
                             Chief, Civil Division
                             MITZI DEASE PAIGE (MS Bar No. 6014)
                             Assistant United States Attorney
                             United States Attorney's Office
                             501 East Court Street, Suite 4.430
                             Jackson, Mississippi 39201
                             Tel: (601) 965-4480
                             Email: angela.williams3@usdoj.gov
                                   mitzi.paige@usdoj.gov

                             *Counsel for Plaintiff the United States of America*

13