IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
(Northern Division)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and the STATE OF MISSISSIPPI, | ) ) ) | |
| *Plaintiffs*, | ) ) | Case No. 3:12-cv-790-HTW-LGI |
| v. | ) ) ) | (Clean Water Act Case) |
| THE CITY OF JACKSON, MISSISSIPPI, | ) ) ) | |
| *Defendant*. | ) ) ) | |
| UNITED STATES OF AMERICA, | ) ) ) | |
| *Plaintiff*, | ) ) ) | |
| MISSISSIPPI POOR PEOPLE'S CAMPAIGN and the PEOPLE'S ADVOCACY INSTITUTE, | ) ) ) ) | |
| *Intervenor-Plaintiffs*, | ) ) | Case No. 3:22-cv-00686-HTW-LGI |
| v. | ) ) ) | (Safe Drinking Water Act Case) |
| THE CITY OF JACKSON, MISSISSIPPI, | ) ) ) | |
| *Defendant*. | ) ) | |

**INTERVENORS-PLAINTIFFS' SUBMISSION OF ALTERNATIVES TO JXN WATER, INC.'S 2025 PROPOSED WATER RATE INCREASE**
(Safe Drinking Water Act Case)

Intervenors-Plaintiffs Mississippi Poor People's Campaign and People's Advocacy Institute ("Intervenors") hereby file, with the Court's leave, their Submission of Alternatives to JXN Water, Inc.'s 2025 Proposed Water Rate Increase. In support of their Submission, Intervenors attach a Memorandum by an expert utility rate consultant Brendan Larkin-Connolly—a regulatory

1

economist with more than 15 years' experience in public utility rate analysis and a managing consultant at Exeter and Associates, Inc., an independent firm specializing in utility sector regulation and policy focused on rate regulation. *See* Brendan Larkin-Connolly, Mem. on JXN Water Revenue Alternatives, Feb. 6, 2026, Exhibit A. Mr. Larkin-Connolly's Curriculum Vitae is also attached as Exhibit B. Given Mr. Larkin-Connolly's extensive expertise in water utility rates and regulation, Ex. B, and based on the findings in his Memorandum, Ex. A, Intervenors respectfully request the Court consider the three alternatives Mr. Larkin-Connolly proposes—(1) modifications of the existing rate design that change tier thresholds; (2) establishing meters and billing for approximately 4,000 premises currently receiving unbilled service, and (3) increasing rates for customers, outside Jackson's city limit—and order JXN Water to explain why they are not viable alternative options to its proposal.

Intervenors have repeatedly expressed to the Court and JXN Water concerns related to their inability to fully access JXN Water's financial documents and data to justify the 2025 proposal and to the unaffordability of the current and thus, proposed rate increase, *e.g.*, CWA Doc. 171 at 3, 4-6.[1] Accordingly, Intervenors engaged Mr. Larkin-Connolly to analyze—based on the limited data by JXN Water provided Intervenors (after many requested by Intervenors)—the feasibility of alternative approaches to generating the revenue that, according to JXN Water, Inc., is required to

---

[1] JXN Water's February 2025 Financial Management Plan explains that making bills more affordable to lower-income customers would allow JXN Water to generate <u>increased</u> revenue, as compared to sending the same customers higher bills that they cannot afford to pay and expending substantial effort trying to collect on those unpaid bills. JXN Water, Fin. Mgmt. Plan, at 15, Feb. 28, 2025, *available at* https://jxnwater.com/wp-content/uploads/2025/03/JXN-Water-Financial-Management-Plan-Feb28-2025.pdf; Tr. of Status Conference, Mar. 14, 2025, 53:16-82:22, *United States v. City of Jackson*, Case No. 312-cv-790. This reasoning is sound, as significantly increasing bills for residential customers regardless of a customer's ability to pay—particularly in a city with a 28% poverty rate—is not a sustainable financial strategy. Moreover, EPA's own water affordability tools show that under JXN Water's proposed rate increase, a typical bill would be unaffordable for more than 30% of Jackson households. UNC, Sch. Of Govt. Environ. Finan. Ctr., Affordability Simulator, https://uncsog.shinyapps.io/efc_affordability/ (select "MS," then "Jackson city, Mississippi" and enter "85" as the current monthly bill amount, "37" as proposed bill increase, and the affordability threshold at "4.5"). Nonetheless, JXN continues to spend millions of dollars per year to shut off thousands of users' water service, regardless of inability to pay. ITPM Edward Henifin, *The Consolidated Report of Activities for the quarter ended December 31, 2025*, at 9, Jan. 31, 2026.

maintain the Public Water System. According to Mr. Larkin-Connolly, JXN Water can generate significant additional revenue without an across-the-board rate increase.

Specifically, in his Memorandum, Mr. Larkin-Connolly explains three viable revenue scenarios, in lieu of the 2025 proposed rate increase, to generate the $20.4 million revenue increase that the ITPM represents is necessary to JXN Water's future: (1) modifications of the existing rate design that change tier thresholds; (2) establishing meters and billing for approximately 4,000 premises currently receiving unbilled service, and (3) increasing rates for customers, outside Jackson's city limit, who currently pay substantially below inside city rates—all of which are detailed in the attached Report, along with Mr. Larkin-Connolly's methodology. The alternatives presented in Mr. Larkin-Connolly's analysis are not mutually exclusive. Nor do they represent the only possible approaches to meeting JXN Water's revenue needs. Rather, they demonstrate that multiple viable paths exist for generating the revenue increase JXN Water seeks, each with different implications for how costs are distributed among customer groups. These alternatives provide stakeholders with options to consider as they evaluate JXN Water's rate proposal and work toward solutions that balance the utility's financial requirements with considerations of customer affordability and equity.

In sum, Mr. Larkin-Connolly's Memorandum shows that alternatives exist to the proposed rate increase without burdening the most impacted community members in Jackson, and that JXN Water is not—and cannot not—be the *sole* source of data or the *only* perspective to inform rate changes to the PWS. The Court, the other Parties, JXN Water, and most importantly, the public now have three professionally modeled alternatives to JXN Water's rate proposal that would still enable JXN Water to meet its current and future revenue needs without an across-the-board rate hike. Accordingly, based on Mr. Larkin-Connolly's attached Memorandum, Intervenors request

this Court consider these three alternative revenue approaches and order JXN Water to evaluate, in a written report, the feasibility of these alternatives before ruling on JXN Water's proposed rate increase.[2]

Dated: February 6, 2026                Respectfully submitted,

/s/ Ayanna Hill
Ayanna Hill, MS Bar No. 106590
Joshua Tom, MS Bar No. 105392
American Civil Liberties Union of Mississippi
101 South Congress St.
Jackson, MS 39201
(601) 354-3408, ext. 112
jtom@aclu-ms.org
ahill1@aclu-ms.org

Emily Early, GA Bar No. 810206*
Jessica Myers Vosburgh, Ala. Bar No. 1710-A00Y*
D. Korbin Felder, MS Bar No. 106643
The Center for Constitutional Rights
666 Broadway Avenue, Floor 7
New York, New York 10012
(212) 614-6464
eearly@ccrjustice.org
jvosburgh@ccrjustice.org
kfelder@ccrjustice.org

Lori Sherman, IN Bar No. 31102-53*
Kathleen Roblez, NC Bar No. 57039*
Ashley Mitchell, NC Bar No. 56889*
Caitlin Swain, NC Bar No. 57042*

---

[2] Irrespective of whichever rate increase may be ordered by the Court, Intervenors request the Court mandate JXN Water and the ITPM to follow strict conditions that ensure equity and fairness for Jackson system users to prevent mass shutoffs—which JXN Water's most recent quarterly report shows reached nearly 8,000 disconnections for overdue bills in 2025, of which 6,125 were in September to December 2025 alone. ITPM Edward Henifin, P.E., *Consolidated Report of Activities for the quarter ended Dec. 31, 2025*, at 9 (Jan. 31, 2026). Specifically, Intervenors request a standardized process for users to dispute inaccurate or irregular billing with accessible JXN Water customer service representatives, the provision of adequate notice of an impending shutoff, and alternatives to shutoffs such as reasonable payment plans or partial payments based on users' ability to pay. CWA Doc. 243, Ltr. from Intervenors to Chambers of Hon. Judge Henry Wingate (Nov. 7, 2025).

Forward Justice
P.O. Box 1932
Durham, NC 27721
(919) 323-3889
lsherman@forwardjustice.org
kroblez@forwardjustice.org
amitchell@forwardjustice.org
cswain@forwardjustice.org

*Admitted pro hac vice

*Counsel for Intervenor-Plaintiffs*

## **CERTIFICATE OF SERVICE**

  I hereby certify that a true and correct copy of the foregoing was served upon all the parties on today's date through the Court's electronic case filing system.

            /s/ D. Korbin Felder

            *Counsel for Intervenor-Plaintiffs*