IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

THE UNITED STATES OF AMERICA, ET AL                  PLAINTIFF

v.                                  CASE NO. 3:12cv790-HTW-LGI

THE CITY OF JACKSON, MISSISSIPPI                    DEFENDANTS

---

### CITY OF JACKSON'S MOTION FOR INJUNCTION OF STATE LAW HB1677SG

---

The City of Jackson, Mississippi ("City") files this Motion for Injunction of HB1677SG, which was recently passed by the Mississippi Legislature and signed into law by Governor Reeves. The Court should enjoin the implementation of HB1677SG as preempted by the federal Supremacy Clause.[1] This federal Court—not the State Legislature—is in the best position to determine when and how the system transitions away from the ITPM; and this federal Court—not the State Legislature—has the sole authority to do so. In support of its requested relief, the City states as follows:

### SUMMARY OF MOTION AND GROUNDS

This **federal** district Court presides over consolidated litigation that will decide the future of the City's water and sewer system, and which daily decides the present operation and management of that system.[2] This **federal** district Court has explicitly exercised jurisdiction over all matters involving

---

[1] By separate filing, the City is requesting to be heard on this Motion at the Court's earliest available date and time.

[2] This Court, at the urging of the federal government and the State government, and with the consent of the City of Jackson, Mississippi ("City"), entered an Interim Stipulated Order ("ISO") at docket number 6 on November 29, 2022, in case Number 3:22-cv-00686-HTW-LGI. That litigation is generally referred to as the Safe Drinking Water Act Case, or the SDWA Case. The ISO is attached as Exhibit 1.

Later, again at the urging of the federal and State governments and with the consent of the City, this Court entered a Stipulated Order on Sewer System at Docket number 72 on October 5, 2023, in

the treatment, storage, and distribution of the system, including the appointment of an Interim Third Party Manager ("ITPM") and the future transition of the system away from the ITPM. *See*, *e.g.*, Exhibit 1 at p. 3, ¶ 1 ("This Court has jurisdiction over the subject matter of this action"). The Court ordered that it would maintain its authority over the system until it enters a final judgment. Exhibit 1, p. 27, ¶ 24. And of course, the Court would maintain inherent jurisdiction to enforce the provisions of any settlement or consent decree.

In entering the orders which govern the system, the Court noted that the State requested the commencement of the suit by the federal government. *See*, *e.g.*, Exhibit 1 at p. 1 ("MSDH requests EPA to commence this civil action"). The Court also noted that the State consented to this Court's jurisdiction. Exhibit 1, p. 5, ¶ 2 ("the City and MSDH consent to this Court's jurisdiction over this Stipulated Order").

A primary purpose of the orders entered by the Court was "to serve as an interim measure to increase the System's stability while the Parties either litigate this matter to conclusion or attempt to **negotiate a judicially enforceable consent decree** to achieve long-term sustainability for the System and the City's compliance" with various State laws and regulations." Exhibit 1 at p. 4 (emphasis added).

Together, this Court's orders provide a detailed plan to develop a Transition away from the ITPM, with specific timelines and goals which must be met along the way.[3]

---

Case Number 3:12-cv-790-HTW-LGI. That litigation is generally referred to as the Clean Water Act Case, or the CWA Case. The Stipulated Order is attached as Exhibit 2.

The cases have been consolidated. The orders have been amended, but the substantive provisions of both remain in effect and subject to the jurisdiction of this federal district court.

[3] No later than October of 2026, the ITPM is to develop a Transition Plan recommending actions the City and the ITPM must take to transition "operation, maintenance, management, and control" of the system, including logistical steps necessary to achieve those goals. Exhibit 2, ¶ IV.5.z.

Notwithstanding this Court's efforts, orders, and explicit jurisdiction, earlier this month, the Governor of the State of Mississippi signed into law HB1677SG. Whatever its intent may have been, the law attempts to usurp the authority of this Court to manage the system today, to develop a transition plan for the future of the system, and to govern the system after that transition.

The Supremacy Clause of the United States Constitution prohibits a State from exercising authority over a matter over which the federal government has properly exercised its authority. Here, the State asked the federal government to take action. The State joined in that action as a plaintiff in present consolidated lawsuits before the Court. The State expressly consented to the jurisdiction of this Court.

The State has appeared at every hearing and conference set by this Court, generally with an attorney representing the Mississippi Department of Health ("MSDH") and a separate attorney representing the Governor. At every one of those hearings, this Court has invited input and comment from MSDH and from the Governor, through their attorneys. Both have generally declined to

---

At the same time, the ITPM must meet weekly with City to discuss the Transition Plan. Exhibit 2, ¶ IV.5.z.i.

Once the Transition Plan is submitted by the ITPM, Parties have thirty days to review and comment. Within fifteen days of receiving the comments, the ITPM must file the Transition Plan for the Court's approval. Parties then have thirty days to object to any portion. Exhibit 2, ¶ IV.5.z.ii.

Upon the Transition period beginning, the ITPM must make staff and contractors available "to educate, interface with, and assist the City in transfer of responsibilities," and the ITMP must pay necessary and reasonable salaries and training costs for City employees and/or contractor(s) who will be carrying out programs and procedures of the Transition. Exhibit 2, ¶ IV.5.z.ii.bb (emphasis added).

Approval of the Transition plan is a prerequisite condition for terminating ITMP management or the Stipulated Order. Exhibit 2, ¶ IV.10.b and VIII.33.

The Transition (and any termination of the Stipulated Order) also requires the ITPM to submit a Further Measures Report and the City to submit a Staffing and Training Plan. Exhibit 2, ¶ IV.5.z.ii.aa and IV.15.f.

comment. Neither has made any representation about the State's desire regarding future transition of the system.

The legislation requires a nine-member board[4] to be appointed by May 1. That board is then charged with selecting a president. The law dictates that the president will serve as the deputy of the ITPM. The legislation requires that this Court transition the system to the authority created by the legislation. The authority is to take control over the City's system—a system built and paid for by the blood and treasure of its government and citizens beginning in 1888 and accelerated by the construction of the J.H. Fewell Water Treatment Plant in 1914.

There are many reasons to question the provisions found in HB1677SG. There are many reasons to question the motives behind HB1677SG. But for now, it is sufficient to note that the State is preempted from usurping this federal Court's authority over federal litigation initiated to enforce federal regulations. The United States Constitution preempts the State from doing so pursuant to the Supremacy Clause.

This Court must exercise its inherent authority and enjoin the statute in its entirety. In further support, the City states as follows.

---

[4] The Board's composition is as follows:
1. three at-large members are to be appointed by the Mayor of the City of Jackson, confirmed by the Jackson City Council;
2. two at-large members are to be appointed by the Governor;
3. one at-large member is to be appointed by the Lieutenant Governor;
4. one at-large member is to be appointed by the Governor in consultation with the Mayor of the City of Jackson;
5. one at-large member is to be appointed by the Mayor of the City of Byram, confirmed by the Byram Board of Aldermen; and
6. one at-large member is to be appointed by the Mayor of the City of Ridgeland, confirmed by the Ridgeland Board of Aldermen.
7. Additionally, the Mayor of Jackson or his designee will serve as an *ex-officio* (non-voting) member.

**ANALYSIS**

1.      Despite this federal Court's orders detailing how a transition should apply and how a successor to the ITPM should be named, the State of Mississippi passed HB1677SG, which creates a new entity titled the Metro Jackson Water Authority.[5] The new State law mandates the appointment of a board, and it denies the City from having a majority voice in appointing the members of that board, which will oversee and manage the City's single largest asset—the sewer and water system and property.

2.      The new State law mandates that this Court accept not only the new board, but also a president who will be chosen by that board. The State law further mandates that the president will act as a deputy to the ITPM until operational duties are transitioned from the ITPM to the deputy/president. The new State law mandates that this Court accept the new president as deputy to the Court-appointed ITPM even before this Court relinquishes jurisdiction.

3.      HB1677SG attempts to usurp the jurisdiction and discretion of this Court, and it is counter to the federal law upon which this Court properly exercised jurisdiction.  Consequently, the new State law is preempted, and this Court should enjoin its implementation.

4.      "This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355 and Sections 1414 and 1431(a) of the SDWA, 42 U.S.C. §§ 300g-3, 300i(a), and over the Parties." Exhibit 1 at 3.

5.      The Supremacy Clause provides a clear rule that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." Art. VI, cl. 2.

6.      "State laws are preempted when they conflict with federal law." *Arizona v. United States*, 567 U.S. 387, 399 (2012) (citing *Crosby v. National Foreign Trade Counsel*, 530 U.S. 363, 372 (2000)).

---

[5] HB1677SG as signed by the Governor is attached as Exhibit 3.

7.      Such preemption "includes cases where 'compliance with both federal and state regulations is a physical impossibility.'" *Arizona*, 567 U.S. at 399 (quoting *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–143 (1963)).

8.      The SDWA was enacted to create national public health standards for water systems. *See City of Evansville, Inc. v. Ky. Liquid Recycling*, 604 F.2d 1008, 1016 n. 25 (7th Cir.1979) (quoting H.R. Rep. No. 93–1185, reprinted in [1974] U.S. Code Cong. & Admin. News at 6454), *cert*. denied, 444 U.S. 1025, 100 S.Ct. 689, 62 L.Ed.2d 659 (1980). Congress passed the SDWA to occupy the field of public drinking water regulation. *See Mattoon v. City of Pittsfield*, 980 F.2d 1, 4 (1st Cir.1992). *See also Arco Oil and Gas Co. v. E.P.A.*, 14 F.3d 1431, 1436 (10th Cir.1993). State efforts to interfere with federal enforcement are therefore preempted.

9.      The Interim Stipulated Order provides the process for replacement of the ITPM. Specifically, this Court's Order requires that "the Parties shall, jointly or separately, propose at least one ITPM candidate for replacement. The Court shall select and appoint the replacement ITPM from the candidates provided by the Parties." Exibhit 1 at 14.

10.      But the Mississippi Legislature's legislative findings and intent make clear that the State intends to take over the transition process and ITPM-successor appointment from this Court: "The creation and organization of a structure for future governance prior to the date of the conclusion of the interim third-party manager's work will allow for an orderly transition to ensure minimal disruption in water and wastewater service." Laws 2026, H.B. NO. 1677, § 2(j). This statement alone is evidence of the State's intent to invade the provenance of this federal Court.

11.      "Therefore, it is the intent of the Mississippi Legislature to: Provide the Metro Jackson Water Authority the ability to lease the existing water and wastewater assets from the city and, upon lease of such assets and termination of the interim third-party managership by the court, or an earlier date as ordered by the court, the **water and wastewater assets shall be under the authority's**

**management and control** . . . " Laws 2026, H.B. NO. 1677, § 2(2)(a) (emphasis added). This statement is further evidence of the State's efforts to take authority away from this federal Court.

12.    The new State law provides that the new State-created authority shall assume responsibility upon the relinquishment of jurisdiction of this Court, further usurping the authority of this Court to determine the transition plan and successor entity pursuant to the operative federal orders and federal law.

13.    Specifically, the State law provides that **"[t]he authority shall assume management and control** over the water and wastewater systems on the date of termination of the interim third-party managership by the court, or with respect to any specific functions on an earlier date as ordered by the court." Laws 2026, H.B. NO. 1677, § 4(4) (emphasis added).

14.    Although this Court now oversees the management and operation of the water system, through the ITPM pursuant to federal law, House Bill No. 1677 provides that "[t]he authority shall have the power, duty and responsibility to exercise general supervision over the design, construction, operation and maintenance of water and wastewater systems." Laws 2026, H.B. NO. 1677, § 8(1).

15.    A president of the new authority is to be appointed within thirty (30) days of the appointment of a majority of the board. Laws 2026, H.B. NO 1677. § 7(1).  "The president shall serve as deputy to the ITPM until the court enters final judgement, at which time the president shall manage the daily affairs of the authority and shall have such powers and duties as specified by this act . . . " *Id.*

16.    Thus, the new statute requires this Court to accept the new president as deputy to the ITPM, subverting the jurisdiction and prerogative of this Court to oversee the ITPM and operation of the water system.  This Court appointed the ITPM.  It is this Court, and not the State, that should appoint the ITPM's successor.  But if this new law is allowed to stand, it will be the State that is appointing the successor to the ITPM in contravention of this Court's judgment and authority.

17.    The statute also provides that "the president shall coordinate with the ITPM in order to provide the best opportunity for minimal disruption in service and maximum ease of transition after the ITPM has concluded its work." Laws 2026, H.B. NO 1677. § 7(2).  Yet again, the State predetermines the transition plan and the leadership structure going forward, cutting out this Court's power to determine an appropriate transition plan and successor leadership structure.

18.    HB1677SG cuts the City out from majority control over the appointment of the board to oversee the new water authority. Laws 2026, H.B. NO. 1677, § 5.

19.    Governor Tate Reeves has made abundantly clear that his purpose in signing this bill into law is to preclude the City of Jackson from having majority control over the new water authority. Specifically, on April 21, 2026, Governor Reeves is quoted as follows: ""I think the city of Jackson has proven they do not need majority control." Ross Adams, *Governor: 'Jackson has proven they do not need majority control' of water system*, WAPT, April 21, 2026, *available at* https://www.wapt.com/article/governor-on-jackson-water-authority/71088784.

20.    But it is this Court – and not the State of Mississippi – that is the appropriate entity to determine the transition plan and leadership structure to manage Jackson's water system going forward.  This fact is certainly recognized by the ITPM and JXN Water, Inc., quoted as saying correctly "we look to Judge Wingate for direction on how any transition is carried out within the framework of the existing court order."  Charlie Drape, *Gov. Tate Reeves signs bill creating new authority over Jackson water system*, Clarion Ledger, April 15, 2026, available at https://www.clarionledger.com/story/news/local/2026/04/15/mississippi-governor-tate-reeves-signs-jackson-ms-water-authority-bill-into-law/89602352007/.

21.    The new State law requires the City to "transfer by lease" the water system to the new State-created authority. Laws 2026, H.B. NO 1677. § 6(1).

22.     If HB1677SG is implemented, it will ultimately result in a taking of the City's property. In fact, the City's due process rights would be violated by the implementation of such a scheme wherein the City is forced to lease its property to the new entity created by the State, which purposefully prevents the City from having any majority control over the operation of its water system. A forced lease is not the appropriate procedure for providing just compensation and due process protections related to fundamental property rights. This new law is simply an effort of the State to insert its wishes over the judgment of this Court, wherein the State can make sure that the City loses any control over its water system and its property necessary to operate the water system. But federal law properly vests this Court with authority to make these important decisions, and it also vests this Court with authority to maintain jurisdiction over the terms of any eventual settlement or negotiated consent decree. *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994); *In re Omni Video, Inc.*, 60 F.3d 230, 232 (5th Cir. 1995) (citation omitted) ("Federal courts have the inherent power to enforce settlement agreements entered into by the parties."); *Cia Anon Venezolana De Navegacion v. Harris*, 374 F.2d 33, 35 (5th Cir. 1967) ("Where the parties, acting in good faith, settle a controversy, the courts will enforce the compromise without regard to what the result might, or would have been, had the parties chosen to litigate rather than settle.").

23.     The State of Mississippi is a party plaintiff to this case. The State of Mississippi could make proposals to this Court regarding the appropriate transition plan and leadership structure going forward, pursuant to federal law and the Interim Stipulated Order. Instead of actively participating before this Court, the State has chosen to enact legislation mandating a new authority that will take over the Jackson water system.

24.     In contrast, the City has been seeking common ground with stakeholders and following this Court's lead, and the City intends to continue to do so. That is exactly what is contemplated by the Court's Transition Plan—to get input from the ITPM, the City, the federal

government, and the State before entering an ultimate order. The City has represented to the Court that it has authority to draft and pass legislation through City ordinances which can create a municipal water authority and which can likely provide any and all provisions this Court finds appropriate for the Transition Plan. To the extent that the City lacks authority to legislate certain issues, this Court can supplement those issues through its own orders. Such actions would be consistent with this Court's jurisdiction and the requirements of the United States Constitution.

25.     To warrant a preliminary injunction, the City must show: "(1) a substantial likelihood that it will prevail on the merits, (2) a substantial threat that it will suffer irreparable injury if the injunction is not granted, (3) its threatened injury outweighs the threatened harm to the party whom it seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." *Bluefield Water Ass'n v. City of Starkville*, 577 F.3d 250, 253–54 (5th Cir. 2009). For the reasons stated herein, the City has established all of these elements for a preliminary injunction.

26.     The transition plan is to be ordered by this Court. HB1677SG appears to be an attempt by the State of Mississippi to insert its judgment in place of this Court's judgment. Because federal law is supreme, the State's attempt to usurp the authority of this Court is preempted. As a result, HB1677SG should be enjoined.

WHEREFORE, the City of Jackson, Mississippi, respectfully requests an order from this Court enjoining the implementation of the transition plan included in HB1677SG.

DATED: April 27, 2026.

Respectfully Submitted on Behalf of Defendant City of Jackson, Mississippi,


    /s/ Drew M. Martin
Drew M. Martin, MBN 101045
City Attorney

**OFFICE OF THE CITY ATTORNEY**
Drew M. Martin, MBN 101045
Jason L. Nabors, MBN 101630
Samuel L. Begley, MBN 2315
401 East Capitol Street, Suite 300
Post Office Box 2779
Jackson, Mississippi 39207-2779
601.960.1799 telephone
601.960.1756 facsimile
dmartin@city.jackson.ms.us
jnabors@jacksonms.gov
sbegley@jacksonms.gov

<u>CERTIFICATE OF SERVICE</u>

       I certify that on the date indicated below I filed the above pleading using the court's electronic

filing system, which delivered electronic notice to all attorneys of record.

           */s/ Drew M. Martin*