IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
(Northern Division)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.   3:22-cv-00686-HTW-LGI |
| | ) | |
| v. | ) | |
| | ) | **INTERIM STIPULATED ORDER** |
| | ) | |
| THE CITY OF JACKSON, MISSISSIPPI, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**EXHIBIT 1**

# I. BACKGROUND

**WHEREAS**, Plaintiff the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), filed a Complaint in this matter;

**WHEREAS**, the City of Jackson, Mississippi (the "City") owns and operates a public drinking water system consisting of the surface water system identified as PWS ID No. MS0250008, the groundwater system identified as PWS ID No. MS0250012, and appurtenant treatment, storage, and distribution facilities (collectively, the "System"), pursuant to the Safe Drinking Water Act, 42 U.S.C. § 300f *et seq.* ("SDWA");

**WHEREAS**, the surface water system includes but is not limited to two water treatment plants, O.B. Curtis Water Treatment Plant ("O.B. Curtis") located at 100 O.B. Curtis Drive, Ridgeland, Madison County, Mississippi and J.H. Fewell Water Treatment Plant ("J.H. Fewell"), located at 2302 Laurel Street, Jackson, Hinds County, Mississippi;

**WHEREAS**, pursuant to SDWA Section 1413, 42 U.S.C. § 300g-2, the Mississippi State Department of Health ("MSDH") has primary responsibility for the implementation and enforcement of the public water supply program in the State of Mississippi;

**WHEREAS**, pursuant to SDWA Sections 1414 and 1431, 42 U.S.C. §§ 300g-3 and 300i, EPA also has authority to enforce the provisions of the SDWA to address, *inter alia*, violations of the SDWA and/or conditions that may present an imminent and substantial endangerment to the health of persons;

**WHEREAS**, pursuant to SDWA Section 1414(b), 42 U.S.C. § 300g-3(b), MSDH requests EPA to commence this civil action;

**WHEREAS**, the Complaint alleges that the City has violated and/or is in violation of the SDWA and contaminants are in or likely to enter the System that present and may present an

1

imminent and substantial endangerment to the health of persons; the Complaint also alleges noncompliance with: EPA Emergency Administrative Order, Docket No. SDWA-04-2020-2300 (effective Apr. 2, 2020, as amended) ("Emergency Order"); the EPA Administrative Compliance Order on Consent, Docket No. SDWA-04-2020-2301 (effective July 1, 2021) ("Consent Order"); and the National Primary Drinking Water Regulations ("National Regulations"), promulgated at 40 C.F.R. Part 141 pursuant to Section 1412 of the SDWA, 42 U.S.C. § 300g-1, and the Mississippi Primary Drinking Water Regulations ("State Regulations"), promulgated pursuant to the Mississippi Safe Drinking Water Act of 1997, Miss. Code Ann. § 41-26-1 *et seq*. ("Mississippi SDWA");

**WHEREAS**, on July 29, 2022, MSDH issued a boil-water notice for the System;

**WHEREAS**, on August 29, 2022, the City proclaimed an emergency as a result of excessive rainfall and extreme flooding, which prevented parts of the System from delivering any running potable water to most of the approximately 160,000 persons served by the System, thereby foreclosing use of running water for basic drinking, hygiene, and safety purposes such as washing hands, showering, flushing toilets, fighting fires, and washing dishes;

**WHEREAS**, on August 30, 2022, the Mississippi Governor proclaimed an emergency, and MSDH declared a public drinking water supply emergency;

**WHEREAS**, on August 30, 2022, the President of the United States declared an emergency in the State of Mississippi and ordered federal assistance to supplement the state's response efforts;

**WHEREAS**, water pressure and water service was restored to persons served by the System on or about September 6, 2022;

2

**WHEREAS**, the July 29, 2022, boil-water notice remained in effect until September 15, 2022;

**WHEREAS**, a Unified Command, staffed by, among others, representatives from MSDH, the Mississippi Emergency Management Agency ("MEMA"), the Mississippi Department of Environmental Quality ("MDEQ"), the Federal Emergency Management Agency ("FEMA"), EPA, the United States Army Corps of Engineers, and the City, was established to address this emergency;

**WHEREAS**, the United States, MSDH, and the City (collectively, the "Parties") recognize that the System continues to experience instability and intend for this Interim Stipulated Order ("Stipulated Order") to serve as an interim measure to increase the System's stability while the Parties either litigate this matter to conclusion or attempt to negotiate a judicially enforceable consent decree to achieve long-term sustainability for the System and the City's compliance with the SDWA, Emergency Order, Consent Order, National Regulations, and State Regulations;

**NOW THEREFORE**, the Parties agree and stipulate, and the Court ORDERS:

## II. <u>JURISDICTION AND VENUE</u>

1. This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355 and Sections 1414 and 1431(a) of the SDWA, 42 U.S.C. §§ 300g-3, 300i(a), and over the Parties. Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b) and 1395(a), and Sections 1414(b) and (g)(3)(C) and 1431(a) of the SDWA, 42 U.S.C. §§ 300g-3(b) and (g)(3)(C), 300i(a), because it is the judicial district where the City is located, where a substantial part of the events or omissions giving rise to the claims occurred, and where the alleged violations occurred.

2. For purposes of this Stipulated Order, or any actions to enforce this Stipulated Order, the City and MSDH consent to the Court's jurisdiction over this Stipulated Order and in any such action the City and MSDH consent to venue in this judicial district.

### III. DEFINITIONS

3. Unless otherwise expressly provided in this Stipulated Order, terms used in this Stipulated Order that are defined by the SDWA and the regulations promulgated thereunder shall have the meanings ascribed to them therein. Whenever the terms set forth below are used in this Stipulated Order, the following definitions shall apply:

"City" shall mean the City of Jackson, Mississippi.

"City Council" shall mean the duly elected Jackson City Council pursuant to Miss. Code Ann. § 21-8-7.

"Day" or "Days" shall mean a calendar day or calendar days. In computing any period of time under this Stipulated Order, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

"Director of Public Works" shall mean the Director of the City of Jackson's Public Works Department, or of any successor department of the City of Jackson, and may include any persons within the Public Works Department with the appropriate delegated authority to act on behalf of the Director of Public Works.

"Effective Date" shall mean the date of entry of this Stipulated Order by the Court.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"Mayor" shall mean the duly elected Mayor of the City of Jackson, pursuant to Miss. Code Ann. § 21-8-7, and may include any persons with the appropriate delegated authority to act on behalf of the Mayor.

"Month" shall mean calendar month.

"MPSC" shall mean the Mississippi Public Service Commission and any successor department or agency of the State of Mississippi.

"MSDH" shall mean the Mississippi State Department of Health and any successor department or agency of the State of Mississippi.

"New Contracts" shall mean all City contracts pertaining to the System or WSBA entered into after the Effective Date of this Stipulated Order.

"Office of the City Attorney" shall mean the City of Jackson's Office of the City Attorney, as defined in Section 2-216 of the Code of Ordinances, City of Jackson, Mississippi, and any successor department or office of the City, and shall include any outside counsel retained by the City for representation in this matter.

"Paragraph" shall mean a portion of this Stipulated Order identified by an Arabic numeral.

"Parties" shall mean the United States, MSDH, and the City of Jackson.

"Pre-Existing Contracts" shall mean all City contracts pertaining to the System and WSBA in existence as of the Effective Date.

"Public Works Department" shall mean the City of Jackson Department of Public Works and any successor department or office of the City of Jackson.

"Quarter" and "Quarterly" shall refer to the calendar year quarters beginning on January 1, April 1, July 1, and October 1.

"Rate" shall mean rates and amounts required to be paid for water services per month by customers of the City waterworks as prescribed in Section 122-268 and Section 122-269 of the Code of Ordinances, City of Jackson, Mississippi.

"Section" shall mean a portion of this Stipulated Order identified by a Roman numeral, unless the Stipulated Order states that the "Section" referred to is a section of a statute or regulation.

"Sewer System" shall mean the WCTS and the WWTPs.

"WCTS" or "Wastewater Collection and Transmission System" shall mean the municipal wastewater collection, retention and transmission system, including all pipes, force mains, gravity sewer lines, pump stations, pumps, manholes, and appurtenances thereto, which are owned or operated by the City.

"WWTPs" or "Wastewater Treatment Plants" shall mean devices or systems used in the storage, treatment, recycling, and reclamation of municipal wastewater. For purposes of this Stipulated Order, this definition shall include all facilities owned, managed, operated, and maintained by the City, including but not limited to the following treatment facilities: the Savanna Street WWTP located at 3810 I-55 South & Savanna Street, Jackson, Mississippi 39121; the Trahon/Big Creek WWTP located at One Apache Dr., Landfill Road, Byram, Mississippi; the Presidential Hills WWTP located at Franklin D. Roosevelt Dr. W, Jackson, Mississippi; and all components of such wastewater treatment plants.

"Water/Sewer Business Administration Division" or "WSBA" shall mean the division within the Department of Public Works responsible for all aspects of billing customers for and collecting payments from customers for water, sewer, and sanitation services, which currently includes the responsibility for (i) establishing customer service agreements and setting up the associated account(s), including, where necessary, the setting and commissioning of new meters; (ii) collecting water and sewer consumption data using meters and an advanced metering infrastructure system and, where necessary, obtaining manual meter reads; (iii) processing the

6

collected data using a billing software system; (iv) generating bills for water and sewer services based directly on the consumption data and the associated volumetric rate and for sanitation services based on a flat charge; (v) causing bills to be mailed to customers, including coordination with the Water/Sewer Utilities Division in mailing out required notices;  (vi) responding to customer issues about bills; (vii) collecting and processing customer payments; and (viii) providing administrative hearings to customers for billing disputes and representing the interests of the Water/Sewer Utilities Division in such administrative hearings and any appeals of the decision of the hearing officer.

"Water/Sewer Utilities Division" shall mean the City of Jackson's Water/Sewer Utilities Division of the Department of Public Works and any successor division or department of the City of Jackson.

### IV. <u>INTERIM THIRD-PARTY MANAGER</u>

4. **<u>Interim Third-Party Manager</u>.** Edward "Ted" Henifin is hereby appointed as Interim Third-Party Manager ("ITPM") of the System and WSBA.

5. **<u>Objectives</u>.** The ITPM shall pursue the following objectives:

a. To operate, maintain, manage and control the System in compliance with the SDWA, Mississippi SDWA, and their implementing regulations, and to implement capital improvements to the System, including those identified in the Priority Project List (attached hereto as Appendix A), and operate, maintain, manage, and control WSBA, consistent with the terms of this Stipulated Order;

b. To comply with all the requirements of this Stipulated Order, including but not limited to: (i) implementing each phase of the projects included in the Priority Project List, in accordance with the Priority Project List Implementation Schedule ("Implementation Schedule") and to the extent that funding is available in the Capital Improvements Account for

each such phase of the projects on the List; (ii) advising, consulting, and collaborating with the Director of Public Works, and consulting with EPA and MDEQ, in making financial, managerial, planning, and operational decisions about the System and/or WSBA where such decisions have the potential to materially impact the Sewer System; (iii) and performing all reporting requirements outlined in Paragraph 16 (ITPM Reporting Requirements) herein; and

      c.      To abate conditions of the System that present or may present an imminent and substantial endangerment to the health of persons served by the System to the extent practicable.

      6.      **Responsibilities and Authority of ITPM.** Except as otherwise provided in this Stipulated Order, in accordance with Fed. R. Civ. P. 66, the ITPM shall have the full power and authority necessary to carry out the requirements of this Stipulated Order and all powers and authority under all applicable state and federal law, and assumes all of the responsibilities, functions, duties, powers, and authority of the City insofar as they affect the City's compliance with this Stipulated Order and shall:

      a.      Operate, maintain, manage, and control the System, including implementation of projects on the Priority Project List in accordance with the Implementation Schedule, consistent with the terms of this Stipulated Order;

      b.      Operate, maintain, manage, and control WSBA, consistent with the terms of this Stipulated Order;

      c.      Regularly consult with the Director of Public Works on all aspects of complying with this Stipulated Order and advise, consult, and collaborate with the Director of Public Works and consult with EPA and MDEQ on matters that may, in the judgment of the ITPM, materially impact the Sewer System.

8

d.      Pay any and all bills related to the System and WSBA from the ITPM Professional Budget, O&M Account, and/or Capital Improvements Account (as defined herein), as appropriate;

e.      Direct the ITPM's staff and agents including officers, managers, accountants, consultants, professionals, contractors, engineering firms, and counsel (collectively, "ITPM Agents"); City employees; and City contractors in the operation, maintenance, management, and control of the System, in the undertaking of projects on the Priority Project List, and the performance of duties associated with this Stipulated Order;

f.      Direct ITPM Agents, City employees, and City contractors in the operation, maintenance, management, and control of WSBA and the performance of duties associated with this Stipulated Order;

g.      Respond to notices of violation, information requests, and lawful orders regarding the System from local, state, and federal governments;

h.      Complete, sign, and verify reports required under the SDWA, Mississippi SDWA, and this Stipulated Order or required under any grants or loans or other financial instruments (including but not limited to Municipality and County Water Infrastructure grants and State Revolving Fund loans);

i.      Access, without limitations, the staff, documents, books, records, electronic data, and facilities of the City deemed necessary by the ITPM for carrying out this Stipulated Order and make such employees and items available to any ITPM Agent;

j.      Hire any ITPM Agent that the ITPM deems necessary for the performance of administrative, financial, advisory, legal, technical, and accounting services;

k.      Enter into contracts, as provided herein, on behalf of the City, necessary for the operation and maintenance of the System and/or WSBA;

9

l.      Hire and/or contract directly with such operators or ITPM Agents that are necessary for the undertaking of projects on the Priority Project List or preparing financial reports or legal documents associated therewith;

m.      Make such purchases as the ITPM deems necessary for the benefit of the System and/or WSBA from the ITPM Professional Budget, the O&M Account, and the Capital Improvements Account. In exercising procurement authority and awarding New Contracts, the ITPM need not comply with Miss. Code Ann. § 31-7-13 but will use best efforts to have the procurement process be competitive, transparent, and efficient;

n.      Perform, modify, or terminate Pre-Existing Contracts. The ITPM's ability to modify or terminate Pre-Existing Contracts shall be governed by the contract's terms or as allowed by law. The ITPM shall consult with the Office of the City Attorney in modifying or terminating Pre-Existing Contracts;

o.      Enter into New Contracts related to the System and/or WSBA and funded from the ITPM Professional Budget, the O&M Account and/or the Capital Improvements Account. The terms and conditions of any New Contracts entered into by the ITPM that are funded from the ITPM Professional Budget, O&M Account, or Capital Improvements Account shall be based on a form contract agreed upon by the ITPM and the City. The ITPM shall consult with the Office of the City Attorney in negotiating New Contracts whose terms extend beyond one (1) year after the Effective Date. The ITPM's ability to modify or terminate New Contracts shall be governed by the contract's terms or as allowed by law;

p.      Develop, within sixty (60) Days of the Effective Date, through a professional financial advisor, a Financial Management Plan for the System and WSBA that takes into consideration the short-term (12-18 Months), mid-term (1.5 to 5 years), and long-term (more than 5 years) operation and maintenance and capital improvement funding needs of the

10

System and WSBA; identifies possible sources of funding for those needs and includes an implementation plan and schedule for seeking such funding; identifies opportunities for debt restructuring relevant to the System and/or WSBA and includes a plan and schedule for seeking such debt restructuring; and may include suggested Rate structure changes or alternative governance options, including the mechanism for assessing customers for water and sewage usage and appropriate accompanying Rates; and update the Financial Management Plan as warranted;

q.      Within thirty (30) Days of receipt by the City of a Financial Management Plan, and annually until the termination of this Stipulated Order, meet with the City to discuss the need to adjust the Rate structure, the Rates under the existing or a modified Rate structure, and any fees that the City charges customers for water utilities:

i.      If, in reliance on the latest Financial Management Plan and after consulting with the Mayor and the Mayor's staff, the ITPM deems a modification of the Rate structure or a Rate or fee increase appropriate to meet the requirements of this Stipulated Order, the Mayor shall, in accordance with Title 21, Chapter 13, of the Miss. Code Ann., propose an amendment, consistent with the ITPM's recommendation, to Sections 122-268 and/or 122-269, Code of Ordinances of Jackson, Mississippi, to be placed on the agenda of the next scheduled regular City Council meeting;

ii.      In the event the City Council does not pass an amendment proposed by the Mayor in accordance with the preceding sub-Paragraph and more than 365 Days have passed from the date of the last Rate adjustment, the ITPM shall have the full power and authority to adjust the Rates, Rate structure, and/or fees without the necessity of any actions on the part of the City Council and with thirty (30) Days' notice to the Mayor, Director of Public Works, the City Council, and the System's customers

11

published in accordance with Miss. Code Ann. § 21-13-11 and published on the ITPM's website;

      iii.      For customers more than one (1) mile outside the corporate limits of the City, the ITPM shall have the authority to apply for Rate increases or modifications to the Rate structure to the MPSC;

      r.      Seek out, apply for, and execute state and federal grants, loans, and other sources of funds for the implementation of this Stipulated Order (including but not limited to Municipality and County Water Infrastructure grants and State Revolving Fund loans), subject to the limitations of Paragraph 7 (Limitations of ITPM's Authority);

      s.      Modify, update, or reprioritize the Priority Project List and the Implementation Schedule, consistent with Paragraph 18 (EPA Review);

      t.      Notwithstanding sub-Paragraph 6.m, comply with the terms, conditions, and assurances of any current or future grant or loan that funds the System, or—if compliance is not practicable—comply to the extent practicable;

      u.      In the ITPM's judgment, except as otherwise required herein, consult with EPA and/or MSDH with respect to any aspect of complying with this Stipulated Order, and secure technical advice or assistance from EPA and/or MSDH for the purpose of ensuring compliance with the SDWA and all other applicable laws and regulations;

      v.      Cause to be issued any notices to customers, EPA, and/or MSDH required under the SDWA, Mississippi SDWA, and their implementing regulations; and

      w.      Cause to be compiled and issued any reports to customers required under the SDWA, Mississippi SDWA, and their implementing regulations, including but not limited to the Annual Consumer Confidence Report.

7.   **Limitations of ITPM's Authority.** Unless otherwise ordered by the Court, the ITPM shall not:

a.   Encumber or sell any real property asset of the City;

b.   Propose or agree to consolidate the System with any other public or private utilities;

c.   Authorize another governmental agency to operate a public water system within the System's current service areas; or

d.   Apply for a loan in excess of the amount of additional debt capacity recommended in the latest Financial Management Plan.

8.   **ITPM/City Disputes.**  Disputes between the ITPM and the City shall be limited to disputes relating to: (i) Rate increases, (ii) grant applications and State Revolving Fund loan applications in excess of the amount of additional debt capacity recommended in the latest Financial Management Plan, (iii) the form contract for New Contracts, (iv) issues that arise under this Stipulated Order relating to the O&M Account, or (v) decisions regarding the System and/or WSBA that have the potential to materially adversely impact the Sewer System. A dispute will be initiated by either the ITPM or the City serving on the other a written notice of dispute, with a copy to both EPA and MSDH. The ITPM and the City will engage in informal discussion in an attempt to resolve any dispute. If the City and the ITPM cannot resolve the dispute within thirty (30) Days of the invocation of informal discussions, either the ITPM or the City may file a request to this Court for resolution. The United States and MSDH shall be permitted to file statements of position with respect to any disputes submitted to this Court within 30 days of the ITPM's or the City's filing of the motion for dispute resolution.

9.   **Liability of the ITPM.**

a.   The ITPM is subject to the oversight of the Court.

13

b.      Except for instances of willful misconduct or gross negligence, the ITPM and ITPM Agents shall have the status of officers and agents of this Court, and shall be vested with the same immunities as vested with this Court. No suit shall be filed against the ITPM or ITPM Agents without leave of this Court except as provided in 28 U.S.C. § 959(a).

c.      The City shall indemnify, hold harmless, and defend the ITPM and ITPM Agents from any claim asserted by a third-party with respect to actions taken in their official capacity within the scope of this Stipulated Order, with the exception of any gross negligence or willful misconduct, including but not limited to conduct which constitutes fraud, malice, libel, slander, defamation, or any criminal offense.

d.      In light of the need for the ITPM and ITPM Agents to focus their attention on the obligations of this Stipulated Order, unless granted leave of the Court, the ITPM and ITPM Agents may not testify in any litigation or proceeding, other than this case, with regard to acts or omissions of the City, the ITPM, or ITPM Agents relating to the System and WSBA.

10.    **Removal or Replacement of the ITPM.**

a.      For good cause shown, the United States, MSDH, or the City may move for removal or replacement of the ITPM.

b.      After forty-five (45) Days' notice to the Parties, the ITPM may file a motion with this Court seeking to withdraw.

c.      In the event the ITPM's appointment is terminated for good cause in accordance with sub-Paragraph 10.a or the ITPM provides the notice required under sub-Paragraph 10.b, the Parties shall, jointly or separately, propose at least one ITPM candidate for replacement. The Court shall select and appoint the replacement ITPM from the candidates provided by the Parties.

d. Unless the ITPM has moved to withdraw due to some disability or other exigent circumstance that prevents the performance of ITPM duties, the ITPM shall continue to perform ITPM duties until the earlier of (i) the Court's granting of the ITPM's motion to withdraw or (ii) thirty (30) Days after the ITPM's filing of the motion to withdraw.

e. Withdrawal or termination of the ITPM, regardless of the reason, shall not relieve the City from complying with all other provisions of this Stipulated Order or from complying with all requirements of the SDWA, the Mississippi SDWA, the National Regulations, the State Regulations, or any other local, state, or federal law. In the event of any vacancy of the ITPM position, the Parties shall request a status conference with the Court to address the vacancy. Until such time as a replacement ITPM is appointed by this Court, the City shall perform all the activities of the ITPM under this Stipulated Order and subject to the provisions of Section V (City Dispute Resolution), or take any such actions otherwise ordered by the Court. The Court shall order any financial institutions in which funds of the ITPM have been deposited to immediately authorize the Chief Financial Officer of the City to access and withdraw said funds in accordance with this Stipulated Order only for such time until a replacement ITPM is appointed by the Court. Upon appointment of the replacement ITPM, the City shall provide an accounting to the Court of the use of any such funds, and all remaining funds (less those accounted for and approved by the Court of the former ITPM) shall be restored and made available to the replacement ITPM.

11. **ITPM Professional Budget.**

a. Within thirty (30) Days of the Effective Date, the ITPM shall establish an ITPM Professional Account (the "ITPM Professional Account") for purposes of depositing funds to be used consistent with the ITPM Professional Budget, attached hereto as Appendix B ("ITPM

15

Professional Budget"). The ITPM shall have financial control and fiduciary responsibility of the ITPM Professional Account, including accrued interest.

b.  Upon the creation of the ITPM Professional Account, the ITPM shall notify the Parties in writing of its creation. Such notice shall include the identity and location of the bank at which the ITPM Professional Account is established, the account number, and other identifying information. The ITPM shall provide this information to the Court under seal.

c.  Within seven (7) Days of the City's receipt of EPA or other grant funds to support the ITPM Professional Budget (which shall not be derived from monies paid by customers for water and sewer services), the City shall deposit such funds in the ITPM Professional Account.

d.  Consistent with the ITPM Professional Budget, the ITPM is authorized to draw down the ITPM's and the ITPM Agents' compensation and expenses from the ITPM Professional Budget with the exception of operators or engineering firms hired to perform operations and maintenance.

e.  The ITPM shall maintain supporting documentation such as timesheets, invoices, and contracts and shall provide such documentation to any Party, if requested.

f.  The ITPM shall make best efforts to conserve the funds in the ITPM Professional Account.

g.  If, in the best professional judgment of the ITPM, a modification to the ITPM's Professional Budget is necessary, the ITPM shall submit any proposed increase of the ITPM's compensation or of the overall budget to EPA and MSDH, subject to the provisions of Paragraph 18 (EPA Review). After the conclusion of EPA and MSDH's review period under Paragraph 18 (EPA Review), the ITPM shall file the proposed modification with the Court.

16

12. **<u>Operations and Maintenance Account.</u>**

a. Within thirty (30) Days of the Effective Date, the ITPM shall establish an Operations and Maintenance Account (the "O&M Account") for purposes of depositing City funds to be used to fund operations and maintenance activities of the System and WSBA, including those operations and maintenance activities to be performed by contractors or to respond to imminent and substantial endangerments to the health of persons from the System. The ITPM shall have financial control and fiduciary responsibility of the O&M Account, including accrued interest.

b. Upon the creation of the O&M Account, the ITPM shall notify the Parties in writing of its creation. Such notice shall include the identity and location of the bank at which the O&M Account is established, the account number, and other identifying information. The ITPM shall provide this information to the Court under seal.

c. For each fiscal year following the Effective Date, the ITPM, after coordinating with the Director of Public Works, shall develop and submit an O&M Budget ("O&M Budget") and funding schedule to the City. In the event the O&M Budget and/or funding schedule is not approved by the City on or before September 15th of any year, the ITPM shall submit the O&M Budget and/or funding schedule to the Court for approval.

d. If, at any time, the ITPM believes that additional City funds, beyond those designated for the O&M Budget pursuant to sub-Paragraph 14.c, are necessary for the continued operation and maintenance of the System and/or WSBA, or to address an imminent and substantial endangerment to the health of persons, the ITPM and the Director of Public Works shall confer about the estimated amount of additional funds needed and, if in agreement, present the request to the Chief Financial Officer of the City. Within seven (7) Days or, in the event of an imminent and substantial endangerment to the health of persons, within forty-eight (48) hours,

the Chief Financial Officer shall identify in any City fund or other source available to the City the additional funds and cause the additional funds to be transferred to the O&M Account. In the event the ITPM and the Director of Public Works are unable to agree on the additional funds requested or the Chief Financial Officer reports, within the time the Chief Financial Officer is to transfer the funds, that the funds are unavailable, the ITPM may request that this Court order the City to transfer the additional funds to the O&M Budget. Any requests under this sub-Paragraph 12.d shall not cumulatively exceed ten percent (10%) of $15,911,397 during fiscal year 2023. Thereafter, requests under this sub-Paragraph 12.d shall not cumulatively exceed ten percent (10%) of the O&M Budget for the fiscal year in which the requests for additional funds are made.

13. **<u>Capital Improvements Account.</u>**

a. Within thirty (30) Days of the Effective Date, the ITPM shall establish a Capital Improvements Account ("Capital Improvements Account") for the purpose of depositing all federal and state grants, loans, and other financial assistance awarded for capital improvements related to the System and/or WSBA.

b. The purpose of the Capital Improvements Account is to fund capital improvements, including the work identified in the Priority Project List.

c. Upon the creation of the Capital Improvements Account, the ITPM shall notify the Parties in writing of its creation. Such notice shall include the identity and location of the bank at which the Capital Improvements Account is established, the account number, and other identifying information. The ITPM shall provide this information to the Court under seal.

d. The ITPM shall have financial control and fiduciary responsibility over the Capital Improvements Account, including accrued interest. All expenditures from the Capital

Improvements Account shall be made in a manner consistent with the terms of the originating loan, grant or other financial assistance.

14. **Duties of the City.** During the pendency of this Stipulated Order, the City shall:

a. Cooperate with the ITPM in all respects, including, but not limited to, any decisions regarding the Sewer System that could materially impact operation of or improvements to the System;

b. Apply for and execute grants to support the ITPM Professional Budget;

c. Within seven (7) Days of the Effective Date, cause funds in the amount of $2 million to be transferred to the O&M Account. Thereafter, during fiscal year 2023, the City shall transfer funds in accordance with sub-Paragraphs 14.h. During fiscal year 2023, the City shall transfer funds to the O&M Account totaling $15,911,397, less actual expenditures by the City for operation and maintenance of the System and WSBA during fiscal year 2023 as of the date of the City's initial transfer to the O&M Account, and including such additional funds as may be committed as provided in sub-Paragraph 12.d, and the City shall provide EPA an accounting of these actual expenditures within thirty (30) Days of the Effective Date. For each subsequent fiscal year, the City shall fund the O&M Account at no less than the amount of $15,911,397 and on a schedule to be agreed upon between the ITPM and the City;

d. For each fiscal year following the Effective Date, review for approval the O&M Budget and funding schedule submitted by the ITPM, in accordance with sub-Paragraph 12.c;

e. At the direction of the ITPM, immediately, but in no less than seven (7) Days of the ITPM's request, deposit into the Capital Improvements Account (i) the City's matching funds for any federal or state loans or grants related to the System and/or WSBA which are in City accounts as of the Effective Date, and (ii) the City's funds from any federal or state

19

loans or grants related to the System and/or WSBA which are in City accounts as of the Effective

Date. For fiscal year 2023, the amount cumulatively deposited shall be at least $22.948 million.

Thereafter, (i) federal or state loans or grants or other financial assistance awarded to the City for

the System and/or WSBA shall be directly deposited into the Capital Improvements Account,

and (ii) the City shall deposit, within seven (7) Days of the ITPM's request, into the Capital

Improvements Account its matching funds for any federal or state loans or grants related to the

System and/or WSBA;

     f.     Direct its employees to support the ITPM and continue supporting the

operations of the System and WSBA;

     g.     Mail bills for water service;

     h.     Beginning thirty (30) Days after the Effective Date, for the remainder of

fiscal year 2023, deposit $1 million into the O&M Account on a monthly basis up to and

including the amount committed pursuant to sub-Paragraph 14.c;

     i.     Provide information related in any way to the System and/or WSBA in

response to requests from the ITPM, EPA, or MSDH;

     j.     Hear, document, and respond to customer complaints to the extent

practicable;

     k.     Provide an easy-to-find link to the ITPM's website within the City's

website for purposes of publishing Quarterly status reports and other updates about the System

and/or WSBA;

     l.     Approve requests from the ITPM for loans that do not exceed the debt

capacity recommended in the latest Financial Management Plan; and

     m.     Request in a timely manner any and all applicable financial assistance,

which may include subsidies, available to the City for loans awarded in support of the System

20

and/or WSBA, but in no event later than thirty (30) Days of being made aware of the availability of such assistance.

15.     **Priority Project List.** Attached hereto as Appendix A is the Priority Project List. The Parties acknowledge that commencement and completion of the projects identified in the Priority Project List is subject to the availability of funds and any changes (including scope or sequence) made in a manner consistent with this Stipulated Order.

a.     Within thirty (30) Days of the Effective Date, the ITPM shall submit for review to EPA and MSDH, a schedule for implementation of all projects on the Priority Project List for which there is available funding. Projects that the City is implementing as of the Effective Date shall continue subject to potential adjustment based on EPA and MSDH's review and consultation with the ITPM. The ITPM shall immediately commence work in accordance with the schedule, subject to the provisions of Paragraph 18 (EPA Review).

b.     Within seven (7) Days of additional funds being deposited in the Capital Improvements Account, the ITPM shall identify additional projects or phases of projects on the Priority Project List to be implemented and shall submit an updated Implementation Schedule to EPA and MSDH for review, subject to the provisions of Paragraph 18 (EPA Review).

16.     **ITPM Reporting Requirements.**

a.     **Quarterly Status Reports.** Commencing with the first Quarter after the Effective Date and continuing Quarterly until termination of this Stipulated Order pursuant to Section VII (Termination), the ITPM shall submit written status reports on its progress in implementing the Stipulated Order to the Parties and the Court ("Status Reports"). The Status Reports shall be due on the last Day of January, April, July, and October and shall cover the immediately preceding Quarter. In each report, the ITPM shall provide the following:

i.     A description of the projects and activities conducted during the reporting period to comply with the requirements of this Stipulated Order;

ii.     A summary of any delays encountered or anticipated that may affect the ITPM's performance or implementation of this Stipulated Order, including the Priority Project List, and any actions taken to address such delays;

iii.     Any modification to the Priority Project List or Implementation Schedule consistent with Paragraphs 15 (Priority Project List) and 18 (EPA Review);

iv.     An accounting of the expenditures from, additions to, and remaining balance of the ITPM Professional Budget;

v.     A projection of work to be performed pursuant to this Stipulated Order during the next or succeeding Quarter; and

vi.     In each Status Report filed in the month of January, except in the Status Report due January 31, 2023, an audited financial statement of the ITPM Professional Account, O&M Account, and Capital Improvements Account for the City's previous fiscal year. Any information revealing bank account numbers or constituting personally identifiable information shall be redacted.

vii.     In each Status Report filed in the month of July, a proposed ITPM Professional Budget for the upcoming fiscal year.

b.     The reporting requirements in this Stipulated Order do not relieve the ITPM of any reporting obligations required by SDWA, or its implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

17. **Records and Information Sharing.**

a.      The ITPM is not a federal, state, county, or local agency; nor is the ITPM an agent of a federal, state, county, or local agency. Accordingly, records maintained or in the custody of the ITPM are not public records subject to public records laws.

b.      Within thirty (30) Days of the Effective Date, the ITPM shall establish and maintain a public website to inform the public of its work, post Status Reports, post requests for proposals, and post other information that—in the ITPM's reasonable judgment—should be disclosed to the public.

c.      Any information provided pursuant to this Stipulated Order may be used by the United States or MSDH in any proceeding to enforce the provisions of this Stipulated Order and as otherwise permitted by law.

d.      Nothing herein shall affect any of the information gathering authorities of EPA or MSDH.

e.      MSDH shall send any notices of violation, information requests, and lawful orders issued regarding the System to the ITPM and the City.

18. **EPA Review.**

a.      The ITPM shall submit to EPA and MSDH: (i) within thirty (30) Days of the Effective Date, the Implementation Schedule; (ii) a written justification, prior to making any modifications, updates or reprioritization of the Priority Project List; (iii) a written justification, prior to making any changes to the Implementation Schedule that would impact the timetable for completion of any Priority Project by more than sixty (60) Days; and (iv) a written justification for any proposed increase of the ITPM's compensation or of the overall ITPM Professional Budget.

23

b.      If any change, modification, or reprioritization falling into categories (ii), (iii), or (iv) in sub-Paragraph 18.a above is necessary to abate an imminent and substantial endangerment or is due to conditions beyond the control of the ITPM, the ITPM shall notify EPA and MSDH as soon as practicable, but in no event later than forty-eight (48) hours after the change, modification, or reprioritization was implemented.

c.      EPA, after consultation with MSDH, may provide written comments to the ITPM within twenty (20) Days of receipt of the items identified in categories (i), (ii), (iii), and (iv) in sub-Paragraph 18.a above. If EPA does not provide comments within twenty (20) Days of receipt, the ITPM may implement the submission. If EPA provides comments, the ITPM may implement any part of its submission that is not the subject of EPA's comments.

d.      During the 20-Day period following receipt of EPA's comments, or such longer period as may be agreed to by EPA and the ITPM (the "Discussion Period"), EPA, MSDH, and the ITPM shall engage in discussions using best efforts to reach agreement on the portion of the submission about which EPA commented.

e.      If EPA and the ITPM fail to reach agreement, then either EPA, after consultation with MSDH, or the ITPM may, within five (5) Days after conclusion of the Discussion Period, petition the Court for relief. If EPA does not so petition, the ITPM may implement the portion of the submission that was the subject of the comments.

## V. CITY DISPUTE RESOLUTION

19.      In the event that the City assumes responsibility for implementing this Stipulated Order pursuant to Paragraph 10.e, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Stipulated Order between EPA, MSDH, and the City. The City's failure to seek resolution of a dispute under this Section shall preclude the City from raising any such issue as a defense

24

to an action by the United States to enforce any obligation of the City arising under this Stipulated Order.

20.     Any dispute subject to Dispute Resolution under this Stipulated Order shall be the subject of informal negotiations. The dispute shall be considered to have arisen when the City sends EPA and MSDH a written notice of dispute that clearly states the matter in dispute. The period of informal negotiations shall not exceed twenty (20) Days from the date EPA and MSDH receive the City's notice, unless that period is modified by written agreement. Within seven (7) Days of the end of this period of informal negotiations, EPA shall provide its written statement of position to the City.

21.     If EPA, MSDH, and the City cannot resolve the dispute by informal negotiations, then the position advanced in writing by EPA, after consultation with MSDH, shall be considered binding unless the City files a motion seeking judicial review of the dispute within ten (10) Days of receipt of EPA's statement of position. The motion shall contain a written statement of the City's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation. The United States shall respond to the City's motion within the time period allowed by the Local Rules of this Court. The City may file a reply memorandum, to the extent permitted by the Local Rules. The dispute shall then be resolved by the Court.

22.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of the City under this Stipulated Order, unless and until final resolution of the dispute so provides.

## VI. **MODIFICATION**

23.      Except as otherwise provided herein, the terms of this Stipulated Order may be modified only by a subsequent written agreement signed by all the Parties and approved by the Court.

## VII. **TERMINATION**

24.      This Stipulated Order shall terminate when a final judgment is entered by the Court.

## VIII. **EFFECT ON ADMINISTRATIVE ORDERS**

25.      During the pendency of this Stipulated Order, this Stipulated Order supersedes the Emergency Order and the Consent Order and any MSDH order existing as of the Effective Date.

## IX. **APPENDICES**

26.      The following appendices are attached to and incorporated into this Stipulated Order:

     a.      Appendix A is the Priority Project List;

     b.      Appendix B is the ITPM Professional Budget.

## X. **INTEGRATION**

27.      This Stipulated Order and its appendices constitute the final, complete and exclusive agreement and understanding among the Parties with respect to the agreement embodied in this Stipulated Order and supersedes all prior agreements and understandings, whether oral or written, concerning the agreement embodied herein. No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Stipulated Order, nor shall they be used in construing the terms of this Stipulated Order.

## XI. <u>STAY OF LITIGATION</u>

28.     Litigation in this matter is stayed for six (6) Months from the Effective Date, subject to extensions by the Court. Prior to the expiration of the stay, the Parties shall file a joint report as to whether the Parties believe an additional stay is appropriate. During a stay, no Party shall serve any discovery nor file any dispositive motions in this matter, without leave of the Court.

Entered this 29th day of November, 2022.

/s/HENRY T. WINGATE

UNITED STATES DISTRICT JUDGE

**Signature Page for Interim Stipulated Order in *United States v. City of Jackson***

FOR THE UNITED STATES OF AMERICA:

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice


Dated: November 29, 2022 /s/ Karl Fingerhood
KARL FINGERHOOD (PA Bar No. 63260)
ANGELA MO (CA Bar No. 262113)
STEFAN J. BACHMAN (SC Bar No. 102182)
DEVON LEA FLANAGAN (VA Bar No. 87444)
Attorneys
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 514-7519
Fax: (202) 616-2427
Email: Karl.Fingerhood@usdoj.gov
Angela.Mo@usdoj.gov
Stefan.Bachman@usdoj.gov
Devon.Flanagan@usdoj.gov

DARREN J. LAMARCA
United States Attorney for the
Southern District of Mississippi

ANGELA GIVENS WILLIAMS
Chief, Civil Division
Assistant United States Attorney


Dated: November 29, 2022 /s/ Jennifer Case
JENNIFER CASE (MS Bar No. 104238)
Assistant United States Attorney
United States Attorney's Office
501 East Court Street, Suite 4.430
Jackson, Mississippi 39201
Tel: (601) 965-4480

**Signature Page for Interim Stipulated Order in** *United States v. City of Jackson*

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

Dated:

DIANA SAENZ
Digitally signed by DIANA SAENZ
Date: 2022.11.28 08:49:57 -05'00'

DIANA SAENZ
Acting Division Director
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, DC 20460

JAMES
VINCH
Digitally signed by JAMES
VINCH
Date: 2022.11.22
11:23:45 -05'00'

JAMES VINCH
Attorney-Advisor
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, DC 20460

**Signature Page for Interim Stipulated Order in *United States v. City of Jackson***

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

Dated:

LEIF PALMER
Digitally signed by LEIF PALMER
Date: 2022.11.28 15:41:35 -05'00'

LEIF PALMER (GA Bar No. 560159, OR Bar No. 873163)
Regional Counsel
Region 4
United States Environmental Protection Agency
61 Forsyth Street S.W.
Atlanta, Georgia 30303
Tel: (404) 562-9542
Email: Palmer.Leif@epa.gov

SUZANNE RUBINI
Digitally signed by SUZANNE RUBINI
Date: 2022.11.28 15:33:36 -05'00'

SUZANNE G. RUBINI (NY Bar No. 2268696)
Deputy Regional Counsel
Region 4
United States Environmental Protection Agency
61 Forsyth Street S.W.
Atlanta, Georgia 30303
Tel: (404) 562-9674
Email: Rubini.Suzanne@epa.gov

**Signature Page for Interim Stipulated Order in** *United States v. City of Jackson*

FOR THE CITY OF JACKSON, MISSISSIPPI:

Dated: _____

CATORIA MARTIN (MS Bar No. 103938)
City Attorney
Email: cmartin@city.jackson.ms.us

TERRY WILLIAMSON (MS Bar No. 8639)
Legal Counsel
Email: twilliamson@city.jackson.ms.us

OF COUNSEL:
OFFICE OF THE CITY ATTORNEY
455 East Capitol Street
Post Office Box 2779
Jackson, Mississippi 39207-2779
Tel: (601) 960-1799
Fax: (601) 960-1756

31

**Signature Page for Interim Stipulated Order in *United States v. City of Jackson***

FOR THE MISSISSIPPI STATE DEPARTMENT OF HEALTH:

Dated: 11/26/2022 | 6:26 PM CST

DocuSigned by:

*Daniel Edney, MD*

C1E0259FEE6A424...

DANIEL P. EDNEY, MD, FACP, FASAM
State Health Officer
Executive Director
Mississippi State Department of Health
P.O. Box 1700
Jackson, Mississippi 39215
Tel: (601) 576-7634
Fax: (601) 576-7931
Email: Daniel.Edney@msdh.ms.gov

11/26/2022 | 11:51 AM CST

DocuSigned by:

*Cassandra Walter*

1D6CE85904314A6...

CASSANDRA WALTER (MS Bar No. 8441)
Attorney
Legal Counsel
Mississippi State Department of Health
P.O. Box 1700
Jackson, Mississippi 39215
Tel: (601) 576-7847
Fax: (601) 576-7805
Email: Cassandra.Walter@msdh.ms.gov

32

**Appendix A - Priority Project List**

1.  O&M Contract
    a.  Establish, support, and maintain a contract(s) for operation and maintenance of the System. The contract must establish clear level of service goals including minimum appropriate staffing in accordance with Miss. Admin. Code § 15-20-72.2.2.1(5) and all applicable laws and regulations.

2.  Winterization of system
    a.  Develop and implement to the extent funding and schedule permit a comprehensive plan to properly winterize both O.B. Curtis and J.H. Fewell.
    b.  Complete membrane winterization project.

3.  Corrosion control
    a.  Address any outstanding issues impeding full implementation of optimized corrosion control treatment ("OCCT") at J.H. Fewell and O.B. Curtis, and complete implementation of such OCCT as required by MSDH and consistent with the MSDH-approved OCCT plans to meet State-approved water quality parameters.

4.  Alternative water source plan
    a.  Implement an Alternative Water Source Plan ("AWSP") including entering into agreements for the immediate provision of alternative water - at least one gallon per person per day.

5.  Distribution system study, analysis, and implementation
    a.  Develop a plan for EPA review and approval for distribution system study and analysis to include at a minimum:
        i.    A GIS-based dynamic hydraulic model
        ii.   Valve and hydrant location and assessment, including valve size
        iii.  An asset management system
        iv.   Water loss identification and reduction
        v.    System operation optimization and configuration standards
              1.  Pressure study – HGL analysis
              2.  Implement pressure control/pressure zones/booster pumping as recommended and as funding and schedule permit.
        vi.   Corrosion control
        vii.  Service line inventory and replacement planning
              1.  Prioritize replacement of any lead lines found, with schedule approved by EPA and MSDH.
              2.  Update lead service line replacement plan in compliance with Lead and Copper Rule Revisions.
    b.  Implement plan as funding and schedule permit.

1

6.  System stabilization and sustainability plan
    a.  Develop a sustainable plan to stabilize and invest in the water system to ensure safe and reliable drinking water for all of Jackson, all the time.
    b.  Key areas to be addressed include sustainable revenue models, appropriate levels of renewal and replacement, asset management plan, service levels, water demand modeling, and other related factors.

7.  SCADA system improvements – sensors, actuators, sensors, etc.

8.  Chemical systems at plants and wells
    a.  Assess and repair, as necessary, all chemical feed pumps and associated equipment at all facilities, including but not limited to; controls, sensors, weight indicators, and feed lines, to return all chemical feeds to fully functional status, ensure operational redundancy, and establish flow paced automated dosing for all chemical feed systems.

9.  Chlorine system improvements at O.B. Curtis
    a.  Make replacements or immediate interim repairs as necessary for continuous safe operation.
    b.  Develop and implement plan to eliminate use of gaseous chlorine at O.B. Curtis.

10. Intake Structure Repairs
    a.  Assess and repair, as necessary, the intake structures at J.H. Fewell and O.B. Curtis, including, but not limited to, sensors (including related remote SCADA capabilities), chemical feed systems, valves, electrical components, screens, physical structure, and any appurtenances, to return the intake structures and related components to fully operational status.

11. Treatment facilities (J.H. Fewell and O.B. Curtis as applicable) unit processes and pumps – evaluate performance and restore redundancy
    a.  Membrane system
    b.  Raw water pumping and screening
    c.  Oxidation basins
    d.  Rapid mix
    e.  Flocculation and sedimentation
    f.  Sludge removal
    g.  Filters
    h.  UV
    i.  Transfer pumping
    j.  High service pumping

12. Sludge assessment in all finished water storage facilities
    a. Assess sludge levels and remove as required. Develop operating procedures to minimize future sludge accumulation in all finished water storage facilities.

13. Resilient power plan
    a. Assess power vulnerability throughout the system and develop and implement a plan to address issues identified in the assessment as funding and schedule permit.

**Appendix B - ITPM Professional Budget**

*Estimated Interim Third-Party Manager's professional budget for 12 months following Effective Date*

| CATEGORY | YEARLY COST |
|---|---|
| ITPM Compensation - $33,333.33/month | |
| • Salary | |
| • Living expenses | |
| • Travel expenses | $400,000 |
| *ITPM Compensation Sub-total* | *$400,000* |
| ITPM Staff Compensation and Expenses | |
| • Local deputy administrator/senior project manager | |
| • Project managers/contract inspectors | |
| • Contract administrator/invoice processor | |
| • Environmental compliance manager | |
| • Other staff as needed | $725,000 |
| • Payroll taxes, fringe benefits, and human resources administration | $385,500 |
| *ITPM Staff Compensation and Expenses Sub-total* | *$1,110,500* |
| ITPM Contractor and Consultant Support and Services | |
| • General and regulatory legal support | $200,000 |
| • Accounting | |
| • Financial advisor | $300,000 |
| • Engineering | |
| • Information technology and website | $450,000 |
| • Community engagement/governance development | |
| • Pricing/rates | |
| • Other contractors and consultants as needed | $450,000 |
| *ITPM Contractor and Consultant Support and Services Sub-total* | *$1,400,000* |
| Other Direct Expenses | |
| • Phones and computers for ITPM and staff | |
| • Professional liability insurance | |
| • Office supplies/miscellaneous consumables | |
| • Other direct expenses as needed | $66,000 |
| *Other Direct Expenses Sub-total* | *$66,000* |
| *OVERALL ITPM PROFESSIONAL BUDGET TOTAL* | *$2,976,500* |

1