MISSISSIPPI LEGISLATURE                    REGULAR SESSION 2026

By:  Representatives Yates, Mansell          To:  State Affairs; Ways and Means

EXHIBIT
3

HOUSE BILL NO. 1677
(As Sent to Governor)

AN ACT TO CREATE THE METRO JACKSON WATER AUTHORITY ACT; TO DEFINE CERTAIN TERMS RELATING TO THIS ACT; TO ESTABLISH THE METRO JACKSON WATER AUTHORITY; TO PROVIDE FOR THE COMPOSITION AND TERMS OF THE BOARD OF DIRECTORS OF THE METRO JACKSON WATER AUTHORITY; TO REQUIRE THE AUTHORITY TO NEGOTIATE WITH THE CITY OF JACKSON TO ENTER INTO AN AGREEMENT FOR THE TRANSFER OF THE WATER SYSTEM BY LEASE TO THE AUTHORITY; TO PROVIDE FOR THE APPOINTMENT OF A PRESIDENT OF THE AUTHORITY WITHIN A CERTAIN TIME PERIOD; TO PROVIDE POWERS AND DUTIES OF THE AUTHORITY; TO REQUIRE THE PRESIDENT OF THE AUTHORITY TO SUPERVISE ALL ADMINISTRATIVE AND TECHNICAL ACTIVITIES AS PROVIDED IN THIS ACT; TO PROVIDE THAT EMPLOYEES OF THE AUTHORITY SERVE AT THE WILL AND PLEASURE OF THE PRESIDENT; TO REQUIRE THE AUTHORITY TO ENTER INTO CONTRACTS FOR MAJOR PROCUREMENTS ONLY AFTER A COMPETITIVE AND OPEN PROCUREMENT PROCESS; TO REQUIRE THAT MONIES RECEIVED BE DEPOSITED INTO CERTAIN OPERATING ACCOUNTS; TO PROVIDE THAT DIVISION HEADS, OFFICERS AND EMPLOYEES OF THE AUTHORITY ARE PUBLIC SERVANTS; TO AUTHORIZE ANY PUBLIC AGENCY TO ENTER INTO CERTAIN CONTRACTS WITH THE AUTHORITY; TO PROVIDE CERTAIN PROVISIONS RELATING TO PUBLIC CONVENIENCE AND NECESSITY; TO AUTHORIZE THE AUTHORITY TO BORROW MONEY AND ISSUE BONDS AND INTERIM NOTES; TO AUTHORIZE THE AUTHORITY TO PROVIDE FOR THE APPOINTMENT OF A TRUSTEE TO REPRESENT THE REGISTERED OWNERS OF ANY ISSUE OF BONDS IN THE ENFORCEMENT OR PROTECTION OF THEIR RIGHTS UNDER ANY SUCH RESOLUTION, TRUST INDENTURE OR SECURITY INSTRUMENT; TO PROVIDE THAT THE AUTHORITY IS NOT REQUIRED TO PAY ANY TAX OR ASSESSMENT ON ANY PROPERTY OWNED BY THE AUTHORITY OR UPON ANY INCOME THEREFROM; TO PROVIDE THAT THE STATE, COUNTY, MUNICIPALITIES OR PUBLIC AGENCIES WITHIN THE GEOGRAPHIC BOUNDARIES OF THE AUTHORITY ARE AUTHORIZED TO ADVANCE SUCH FUNDS WHICH IN THEIR DISCRETION ARE NECESSARY, OR BORROW SUCH FUNDS BY ISSUANCE OF NOTES, FOR INITIAL CAPITAL CONTRIBUTION, AND TO COVER START-UP COSTS UNTIL SUCH TIMES AS SUFFICIENT BONDS, ASSETS AND REVENUES HAVE BEEN SECURED TO SATISFY THE NEEDS OF THE AUTHORITY FOR ITS MANAGEMENT, OPERATION AND FORMATION; TO AMEND SECTION 21-19-1,

H. B. No. 1677          ~ OFFICIAL ~          G3/5
26/HR43/R1421SG
PAGE 1 (MCL\KP)

MISSISSIPPI CODE OF 1972, TO AUTHORIZE CERTAIN MUNICIPAL GOVERNING AUTHORITIES TO DEDICATE A PORTION OF THE RATES, FEES AND CHARGES FOR COLLECTING AND DISPOSING OF GARBAGE TO THE PAYMENT OF PRINCIPAL OF AND INTEREST ON BONDS OR NOTES ISSUED BY A PUBLIC AUTHORITY; TO AMEND SECTION 21-19-2, MISSISSIPPI CODE OF 1972, TO AUTHORIZE A MUNICIPAL GOVERNING AUTHORITY TO ENTER INTO CERTAIN CONTRACTS UPON MUTUAL AGREEMENT WITH CERTAIN COUNTIES; TO AMEND SECTION 21-27-57, MISSISSIPPI CODE OF 1972, TO UPDATE LANGUAGE IN THE SECTION; AND FOR RELATED PURPOSES.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF MISSISSIPPI:

**SECTION 1.**  This act shall be known and may be cited as the "Metro Jackson Water Authority Act."

**SECTION 2.**  (1)  The Mississippi Legislature finds the following:

(a)  For the benefit of the citizens centrally located in the State of Mississippi, including citizens residing or working in the capital city of the State of Mississippi, it is essential to have access to safe, clean and reliable water and wastewater systems at affordable, regulated rates which are just, reasonable and provide an adequate amount of capital to keep such systems in good repair;

(b)  The availability of safe, clean and reliable water and wastewater systems has vast impacts on health, schools and academic outcomes, crime and safety, state and local government operations, businesses and economic development, the availability of a workforce, tourism and many other critical areas;

(c)  The availability of safe, clean and reliable water and wastewater systems requires significant financial resources and human capital to engage in the planning, acquisition, construction, maintenance, coordination and operation required to

deliver transparent and efficient services which meet and exceed federal and state regulations and requirements;

(d)  On November 29, 2022, the Department of Justice filed a complaint alleging that the City of Jackson has failed to provide drinking water that is reliably compliant with the Safe Drinking Water Act to citizens within the boundaries of the water system.  The Department of Justice simultaneously filed a proposal which would appoint an interim third-party manager to stabilize the City of Jackson's public drinking water system and build confidence in the water system's ability to supply safe, clean and reliable water to citizens within the boundaries of the water system.  The U.S. District Court for the Southern District of Mississippi issued an interim stipulated order that appointed an interim third-party manager to oversee and operate the water system on November 29, 2022;

(e)  On or about September 30, 2023, the U.S. District Court for the Southern District of Mississippi issued a stipulated order that brought the City of Jackson's sewer and wastewater systems into the interim third-party managership;

(f)  The November 29, 2022, order appointing the interim third-party manager for the public drinking water system does not have a termination date and ends only when final judgment is entered by the court;

(g)  The September 30, 2023, order appointing the interim third-party manager for the sewer and wastewater system

terminates on September 30, 2027, unless such order is earlier terminated or extended by the court;

(h)  Before the termination of the orders by the court, the system must be stable, the financial plan sustainable, and the transition plan approved in order to transition the system to post-interim third-party managership operations;

(i)  The creation and organization of a structure for future governance requires legislation for it to continue in perpetuity beyond the eventual end of the interim third-party manager's work and related federal court orders; and

(j)  The creation and organization of a structure for future governance prior to the date of the conclusion of the interim third-party manager's work will allow for an orderly transition to ensure minimal disruption in water and wastewater service.

(2)  Therefore, it is the intent of the Mississippi Legislature to:

(a)  Provide the Metro Jackson Water Authority the ability to lease the existing water and wastewater assets from the city and, upon lease of such assets and termination of the interim third-party managership by the court, or an earlier date as ordered by the court, the water and wastewater assets shall be under the authority's management and control to ensure all citizens have access to safe, clean and reliable water and wastewater systems at affordable, just and reasonable regulated

rates and to provide an adequate amount of capital to keep such systems in good repair;

(b)   Authorize the Local Governments and Rural Water Systems Improvement Board (LGRWSI), as created in Section 41-3-16, while remaining compliant with all applicable provisions of the federal Safe Drinking Water Act, to loan to the authority any funds required in connection with the authority's acquisition of the leasehold interest in water assets as provided in this subsection (2) at an interest rate of zero percent (0%) with a maximum allowable term per federal Drinking Water State Revolving Fund regulations and applying the maximum principal forgiveness available and allowable per the LGRWSI Board's intended use plan;

(c)   Authorize the Department of Environmental Quality to loan to the authority any funds requested in connection with the authority's acquisition of the leasehold interest in wastewater assets as authorized in this subsection (2) at an interest rate of zero percent (0%) with a thirty-year term applying the maximum principal forgiveness available;

(d)   Authorize the authority, upon its establishment under this act, to issue bonds to refinance the system debts existing as of July 1, 2026, which bonds may be secured by and payable from one or more sources of nonsystem revenues made available to the authority for such purpose, provided that such bonds shall never constitute a debt, liability or loan of the credit of the state or any political subdivision thereof under the

Mississippi Constitution and laws of the state or a pledge of the faith, credit or taxing power of the state or any political subdivision thereof; and

(e)    Authorize the authority and each of the Department of Health, the Department of Environmental Quality, the City of Jackson and other municipalities or governmental entities within the service area of the authority, and any other federal, state or local entity to partner with each other in taking any action necessary under this act to ensure all citizens have access to safe, clean and reliable water and wastewater systems, with the understanding that federal and state agencies are solely responsible for regulating, but not operating, the authority.

**SECTION 3.**  As used in this act, the following words and phrases have the meanings provided in this section, unless the context clearly indicates otherwise:

(a)  "Authority" means the public benefit corporation created by Section 4 of this act, known as the Metro Jackson Water Authority.

(b)  "Board" means the Board of Directors of the Metro Jackson Water Authority.

(c)  "Bonds" means bonds, notes and other indebtedness issued by the authority pursuant to this act and the provisions of this act relating to bonds and bondholders shall apply with equal force and effect to notes and noteholders, respectively, unless the context otherwise clearly requires.

(d) "City" means the City of Jackson.

(e) "Court" means the U.S. District Court for the Southern District of Mississippi.

(f) "Fiscal year" means the period of time beginning on July 1 of each year and ending on June 30 of each year.

(g) "ITPM" means the interim third-party manager for the systems initially appointed by the court on November 29, 2022, to oversee and operate the systems.

(h) "Major procurement" means the procurement of any good or service in excess of One Million Dollars ($1,000,000.00).

(i) "Mayor" means the Mayor of the City of Jackson.

(j) "Person" means any person, firm, partnership, association, limited liability company or corporation organized or existing under the laws of the state or any other state.

(k) "Project" means the construction, development or acquisition by the authority of any infrastructure for water, wastewater and stormwater systems or services and includes the upgrading or repair of existing systems.

(l) "Public agency" means any county, municipality, state board or utility authority owning or operating properties, districts created pursuant to the general laws or local and private laws of the state, or any other political subdivision of the state possessing the power to own and operate waterworks, water supply systems, sewerage systems, sewage treatment systems

or other facilities or systems for the collection, transportation and treatment of water, wastewater and stormwater.

(m)  "State" means the State of Mississippi.

(n)  "State agency" means any state office, department, board, commission, bureau or division, or other agency or instrumentality of the state.

(o)  "Stormwater" means any flow occurring during or following any form of natural precipitation and resulting from that precipitation.

(p)  "System" or "systems" means any plants, structures, facilities or other real or personal property used or useful in the generation, storage, transportation or supply of water, and the collection, transportation, treatment or disposal of wastewater and stormwater, including, but not limited to, tanks, pipes, trunk lines, mains, sewers, conduits, pipelines, pumping and ventilating stations, plants, works, connections and any other real or personal property and rights therein necessary, useful or convenient for the purposes of the authority.

(q)  "Wastewater" means water being disposed of by any person and which is contaminated with waste or sewage, including industrial, municipal, and any other wastewater or stormwater that may cause impairment of the quality of waters in the state.

(r)  "Water" means potable water from either surface water or groundwater sources.

 

**SECTION 4.** (1)  There is hereby created and established a corporation known as the Metro Jackson Water Authority for public purposes and charged with the duties and having the powers provided in this act.  The authority shall be a body corporate and politic constituting a public benefit corporation.  The authority will be composed of geographic areas receiving water and wastewater services from the city as of January 1, 2026, for the planning, acquisition, construction, maintenance, operation and coordination of water and wastewater systems in order to ensure the delivery of water and wastewater services to citizens.  Such authority is created solely to accomplish the purposes under this act, and the exercise by the authority of the powers conferred by this act shall be deemed and held to be the performance of an essential public function promoting the health, welfare and prosperity of the general public.  It is the intent of the Legislature that the authority shall be accountable to ratepayers within the systems through the audits, reports and disclosures required by this act.

(2)  The existence of the public benefit corporation, which shall be domiciled in the state, shall begin upon the appointment of a majority of its board as provided in Section 5 of this act.

(3)  The transfer by lease of the water and wastewater system to the authority from the city shall be accomplished as provided in Section 6 of this act.

(4)  The authority shall assume management and control over the water and wastewater systems on the date of termination of the interim third-party managership by the court, or with respect to any specific functions on an earlier date as ordered by the court. If the termination date is not the same for all systems or functions, the authority shall assume management and control over the system or functions for which the interim third-party managership is terminated on the termination date for that system or function.

(5)  In the event of any action or matter against the authority, the Chief Justice of the Mississippi Supreme Court shall select an appropriate circuit or chancery court, which shall have exclusive jurisdiction over the matter.  Solely for purposes of court costs, the authority shall be deemed to constitute a private corporation.

(6)  All funds provided by the federal government in H.R. 2617, the Consolidated Appropriations Act of 2023, and any other funds provided by the state or federal government in response to the water crisis detailed by the court in Case No. 3:22-cv-00686, United States v. City of Jackson, shall be spent according to the direction of the ITPM until the authority assumes management and control of the water and wastewater systems or certain functions thereof and in accordance with federal law.

**SECTION 5.** (1) The affairs of the authority shall be administered by the board. The board shall be composed of nine (9) members as follows:

(a) Three member(s) at large to be appointed by the Mayor of the City of Jackson and confirmed by the City Council of the City of Jackson;

(b) Two (2) member(s) at large to be appointed by the Governor;

(c) One (1) member at large to be appointed by the Lieutenant Governor;

(d) One (1) member at large appointed by the Governor in consultation with the Mayor of the City of Jackson;

(e) One (1) member at large to be appointed by the Mayor of the City of Byram and confirmed by the Board of Alderman of the City of Byram; and

(f) One (1) member at large to be appointed by the Mayor of the City of Ridgeland and confirmed by the Board of Alderman of the City of Ridgeland.

All initial public members shall be appointed by May 1, 2026.

The Mayor of the City of Jackson shall be an ex officio non-voting member of the board, in addition to the three (3) appointees as provided in paragraph (a) of this subsection, and may designate a person or persons to represent him or her at all meetings of the board from which he or she may be absent.

For public members subject to the appointment process, appointing authorities shall attempt to ensure that all portions of society and its diversity are represented in members of the authority.  All appointed members must be residents of the state and must have significant, demonstrated experience in at least one (1) of the following areas:  business management; fiscal affairs; public finance; public health; engineering; or public utilities.  No voting members of the board shall be an elected official, and no current or former federal, state or local elected officials may be appointed.

(2)  (a)  The Governor shall appoint one (1) member for an initial term of four (4) years, and one (1) member for an initial term of three (3) years.

(b)  The Lieutenant Governor shall appoint one (1) member for an initial term of four (4) years.

(3)  Except as provided in subsection (2) of this section, appointments shall be for a term of four (4) years.  Each member shall serve at the will and pleasure of his or her appointing authority and hold office until his successor has been appointed and qualified.

Vacancies occurring otherwise than by expiration of the term of office, shall be filled by appointment by the appropriate appointing authority for the length of the unexpired term only.  Any member of the authority shall be eligible for reappointment for a maximum of two (2) full terms.  Each member of the authority

shall, before entering upon his duty, take an oath of office to administer the duties of his office faithfully and impartially, and a record of such oath shall be filed in the Office of the Secretary of State.

The authority shall annually elect from its membership a chairman and vice chairman who shall be eligible for reelection for up to four (4) consecutive terms.  The authority shall also elect or appoint, and prescribe the duties of, such other officers, who need not be members, as the authority deems necessary or advisable, and the authority shall fix the compensation of such officers.  The authority may delegate to one or more of its members, officers, employees or agents such powers and duties as it may deem proper, not inconsistent with this act or other provisions of law.

(4)  Except as otherwise specified in this act, the powers of the board shall be vested in and exercised by a majority of the whole number of the members thereof.  The members of the board shall serve without salary but shall be entitled to receive, upon authorization of the board, per diem pay as provided in Section 25-3-69, plus travel and necessary expenses, including mileage, as provided in Section 25-3-41, incurred while in the performance of his or her duties as a board member.  Expenses shall be paid from the available funds of the authority after the authority assumes management and control of the water and wastewater systems as provided in this act.  Subject to appropriations, until the date

the authority assumes management and control of the water and wastewater systems as provided in this act, expenses may be paid by the state.

(5)  All meetings of the board shall be subject to the Open Meetings Act in Section 25-41-1 et seq.  The chairman or a majority of members of the board may convene the board for a meeting.

(6)  Except as otherwise provided by law, all records of the authority shall be deemed public records and subject to public inspection as provided by Section 25-61-1 et seq.

(7)  The board may by majority vote excuse the absence of any board member.  If any board member is absent for two (2) board meetings in a twelve-month period without such absences being excused by the board, his or her membership on the board shall be terminated as a function of law, without any action by the board, and the removed board member shall be ineligible for reappointment to the board.  The original appointing authority shall retain the right to appoint a new board member to replace the removed board member.

(8)  No current or former employee of the authority shall be a board member.

(9)  Until the authority assumes management and control of the water and wastewater systems, the board shall coordinate with the ITPM in order to provide the best opportunity for minimal disruption in service and maximum ease of transition after the

ITPM has concluded his work in overseeing and operating the water system.

(10)  A  two-thirds (2/3) vote of the total membership of the board is required for any rate increase or expenditure in excess of Five Million Dollars ($5,000,000.00).

**SECTION 6.**  (1)  Promptly following the appointment of a majority of its board as provided in Section 5 of this act, the authority shall commence negotiations with the city to enter into an agreement with the authority for the transfer by lease to the authority, for use in the exercise of its corporate powers and purposes, the water system or wastewater system, or both, of the city, as the same shall then be owned by the city.  Such agreement shall be for such term and upon such conditions as may be deemed desirable by the city and the authority, provided that the term of the agreement shall continue until at least the date on which all the authority's bonds are paid in full or provision therefor shall have been made in accordance with the resolution, trust indenture or other security instrument under which the bonds were issued. To the extent not inconsistent with this act, such agreement may impose such limitations or conditions as may be agreed upon by and between the city and authority with respect to the power of the authority to sell or otherwise dispose of any property acquired by the authority pursuant to such agreement, and may provide for or authorize the authority to surrender to the city, any property no longer required by the authority for its public purposes.

Notwithstanding the provisions of any general, special or local law or charter to the contrary, any action taken by the city pursuant to this subsection shall not be subject to a permissive or mandatory referendum.

(2)  Such agreement shall set forth the liabilities of the city which it is contemplated are to be paid by the authority from monies available to it; provided, however, that such agreement does not require the authority to assume the liabilities of the city; and provided further, notwithstanding the foregoing, that the city shall continue to be the record owner for real estate tax purposes of any facilities located outside of its municipal boundaries.

(3)  Such agreement may provide for the payment by the city to the authority from any funds of the city, of such amount as may be determined appropriate for use by the authority.

(4)  The city and the authority are hereby authorized and empowered to make or enter into any contracts, agreements, deeds, leases, conveyances or other instruments as may be necessary or appropriate to effectuate the purposes of this act, and they shall have power and authority to do all things incidental, desirable or necessary to implement the provisions of this act.

(5)  The authority shall take possession of the water system or wastewater system, or both, of the city upon its filing of a copy of the instruments or documents effectuating the transfer

authorized by this section with the clerk of the city and the Secretary of State.

(6)  Any application filed or proceeding commenced under this act in relation to the water system or wastewater system, or both, that is transferred to the authority pending with the Mississippi State Department of Health, the Mississippi Department of Environmental Quality or any other state agency or with the United States Environmental Protection Agency or any other federal agency or instrumentality shall inure to and for the benefit of the authority and be binding upon the authority to the same extent and in the same manner as if the authority had been a party to such application or proceeding from its inception, and the authority shall be deemed a party thereto to the extent not prohibited by any federal law.  Any license, approval, permit or decision under this act hereafter issued or granted pursuant to or as a result of any such application or proceeding shall inure to the benefit of and be binding upon the authority and shall be assigned and transferred by the city to the authority unless such assignment and transfer is prohibited by federal law.

(7)  The rules and regulations of the authority may provide for the discontinuance or disconnection of the supply of water or the provision of wastewater service, or both, as the case may be, by the authority for nonpayment of fees, rates, rents or other charges imposed by the authority.  A copy of all bylaws, rules and regulations and amendments thereto, duly certified by the

secretary of the authority, shall be filed in the offices of the clerk of the city and the Secretary of State within three (3) months.  Violation of such rules and regulations shall subject the offending party to a civil penalty in an action brought by the authority, not to exceed One Hundred Dollars ($100.00) for each day the violation continues.  The Hinds County Circuit Court shall have jurisdiction to hear and determine, subject to the provisions of the Civil Practice Law and rules, any violation of such rules and regulations.

(8)  The board may retain or employ counsel, auditors, engineers or other private consultants for rendering professional or technical services and advice in connection with the negotiation of the agreement of lease under this section.  The state shall pay the reasonable cost and expense for such professional services on a bimonthly basis, subject to appropriations.

**SECTION 7.**  (1)  The authority shall consult with the court to appoint a president within thirty (30) days following the appointment of a majority of its board as provided in Section 5 of this act, who shall serve at the will and pleasure of the board. If the authority does not have management and control of the water and wastewater systems by the date of the appointment of a president, the state may pay the salary of the president on a bimonthly basis, subject to appropriations.  The president shall serve as deputy to the ITPM until the court enters final

judgement, at which time the president shall manage the daily affairs of the authority and shall have such powers and duties as specified by this act, by the board, and by any rules or regulations adopted by the board.  The president shall not be a member of the board and shall serve at the will and pleasure of the board.

(2)   Until the authority assumes management and control of the water and wastewater systems, the president shall coordinate with the ITPM in order to provide the best opportunity for minimal disruption in service and maximum ease of transition after the ITPM has concluded its work in overseeing and operating the water system or wastewater system or the respective functions with respect thereto.

(3)   The president shall employ such personnel as he or she deems necessary.  All personnel shall serve at the will and pleasure of the president.

(4)   The board shall set the salary of the president at such level as necessary to recruit and retain a qualified professional with the expertise necessary in a public utility.  The board may authorize whatsoever incentive compensation program for the president and authority staff as it deems necessary and proper. The authority shall be exempt from the provisions of Section 25-3-39.

**SECTION 8.**  (1)  The authority shall have the power, duty and responsibility to exercise general supervision over the design,

construction, operation and maintenance of water and wastewater systems.

(2)  The authority shall adopt rules and regulations regarding the design, construction or installation, operation and maintenance of water and wastewater systems.

(3)  The authority shall adopt rules and regulations regarding the use of decentralized treatment systems, individual on-site wastewater treatment systems and centralized wastewater treatment systems.

(4)  The authority shall adopt rules establishing performance standards for water and wastewater systems and the operation and maintenance of such systems.  Such rules and regulations shall include the implementation of a standard application form for the installation, operation and maintenance of systems; application review; approval or denial procedures for any proposed system; inspection, monitoring and reporting guidelines; and enforcement procedures.

(5)  (a)  Before a building or development that requires the installation of a water or wastewater system is constructed, such system plan must be submitted to the authority for certification that the system complies with the authority's requirements.

(b)  Before approving or renewing a permit for a water or wastewater system within the authority, the state agency must require certification that such system complies with the authority's requirements.

(6)  Any system of a municipality, public agency or other person that contracts with the authority shall be subject to the terms of that contract and this act.

(7)  Notwithstanding the provisions of Section 51-39-1 et seq., the authority may adopt rules and regulations and to construct, maintain, lease and operate facilities for the control of stormwater quality and quantity.  In addition, the provisions of Section 51-33-1 et seq., relating to drainage districts and flood control districts, do not apply to the authority.

(8)  The authority may control and operate the local retail water or wastewater services and may provide or be responsible for direct servicing of those services to residences, businesses and individuals; however, the authority shall not provide the same service in an area provided by a public utility or person holding a certificate of public convenience and necessity issued by the Mississippi Public Service Commission for the provision of such services in the certificated area.

(9)  The authority shall enter into contracts for major procurements after a bidding process.  The authority may adopt administrative rules and regulations pursuant to the provisions of this act providing for special procedures whereby the authority may make any class of procurement.

(10)  In its bidding processes, the authority may do its own bidding and procurement or may utilize the services of the Department of Finance and Administration, the Department of

Information Technology Services or other state agencies as appropriate and necessary.

(11)  In the City of Ridgeland, which is served by only the wastewater system as of January 1, 2026, the authority shall have oversight or control of only wastewater service provided to ratepayers.  To maintain consistency with the agreement in place with the city prior to the existence of the authority, the City of Ridgeland shall have control over its rate structure, with the City of Ridgeland compensating the authority for its prorated share of wastewater conveyance, treatment, capital improvements and debt service.

**SECTION 9.**  (1)  The authority, in addition to any other powers granted under this act and any other provision of law, is authorized:

(a)  To acquire, construct, improve, enlarge, extend, repair, operate and maintain any of its systems used for the collection, transportation, treatment and disposal of water and wastewater;

(b)  To make contracts with any person in furtherance thereof and to make contracts with any person for the purpose of collection, transportation, treatment or disposal of water and wastewater on behalf of such person;

(c)  To make contracts with any person to design and construct any water and wastewater systems or facilities, and thereafter to purchase, lease or sell any such system or systems

by installments over such terms as may be deemed desirable, reasonable and necessary, or otherwise;

(d)   To enter into operating agreements with any person, for such terms and upon such conditions as may be deemed desirable for the operation of any water and wastewater systems, and to lease to or from any person, for such term and upon such conditions as may be deemed desirable, any water and wastewater collection, transportation, treatment or other facilities or systems.  Any such contract may contain provisions requiring any public agency or other person to regulate the quality and strength of materials to be handled by the respective system or systems and also may provide that the authority shall have the right to use any streets, alleys and public ways and places within the jurisdiction of a public agency or other person during the term of the contract;

(e)   To enter into contracts with any person or public agency, including, but not limited to, contracts authorized by this act, in furtherance of any of the purposes authorized under this act upon such consideration as the board and such person may agree.  Notwithstanding any provision of law to the contrary, such contract may extend over any period of time, may be upon such terms and for such consideration, nominal or otherwise, as the parties thereto shall agree, and may provide that it shall continue in effect until bonds specified therein, refunding bonds issued in lieu of such bonds, and all other obligations specified

therein are paid or terminated.  Any such contract shall be binding upon the parties thereto according to its terms;

(f)  To sue and be sued, in its own name, and to enjoy all of the protections, immunities and benefits provided by the Mississippi Tort Claims Act, Section 11-46-1 et seq., as it may be amended or supplemented from time to time;

(g)  To maintain office space at such place or places within the authority's boundaries as it may determine;

(h)  To invest money of the authority, including proceeds from the sale of any bonds subject to any agreements with bondholders, on such terms and in such manner as the authority deems proper;

(i)  To pay or refinance any outstanding city bonds relating to the water and wastewater systems under their existing terms;

(j)  To require the necessary relocation or rerouting of roads and highways, railroad, telephone and telegraph lines, and properties, electric power lines, gas pipelines and related facilities, or to require the anchoring or other protection of any of these, provided fair compensation is first paid to the owners or an agreement is made with such owners regarding the payment of the cost of such relocation, and to acquire easements or rights-of-way for such relocation or rerouting and to convey the same to the owners of the property being relocated or rerouted in connection with the purposes of this act.  This provision shall be

in accordance with Mississippi Constitution Article 17A and Section 11-27-30;

(k)  To acquire, construct, improve or modify, or to operate or cause to be operated and maintained, either as owner of all or of any part in common with others, any water or wastewater system within the authority's service area.  The authority may pay all or part of the cost of any system from any contribution by persons, firms, public agencies or corporations;

(l)  To receive, accept and use all funds, public or private, and pay all costs of the development, implementation and maintenance as determined necessary for any project;

(m)  To acquire, in its own name, by purchase on any terms and conditions and in any manner as it may deem proper, property for public use, or by gift, grant, lease, or otherwise, real property or easements therein, franchises and personal property necessary or convenient for its corporate purposes.  This provision shall be in accordance with Mississippi Constitution Article 17A and Section 11-27-30;

(n)  To acquire insurance as available for the systems, facilities, buildings, treatment plants and all property, real or personal, to insure against all risks;

(o)  To use any property and rent or lease any property to or from others, including public agencies, or make contracts for the use of the property.  The authority may sell, lease, exchange, transfer, assign, pledge, mortgage or grant a security

interest for any property.  The powers to acquire, use and dispose of property as set forth in this paragraph shall include the power to acquire, use and dispose of any interest in that property, whether divided or undivided.  Title to any property of the authority shall be held by the authority exclusively for the benefit of the public;

(p)  To apply, contract for, accept, receive and administer gifts, grants, appropriations and donations of money, materials and property of any kind, including loans and grants from the United States, the state, a unit of local government, or any agency, department, district or instrumentality of any of the foregoing, upon any terms and conditions as the United States, the state, a unit of local government, or any agency, department, district or instrumentality shall impose.  The authority may administer trusts.  The authority may sell, lease, transfer, convey, appropriate and pledge any and all of its property and assets;

(q)  To make and enforce, and from time to time, amend and repeal, bylaws, rules, ordinances and regulations for the management of its business and affairs and for the construction, use, maintenance and operation of any of the systems under its management and control;

(r)  To employ and terminate staff and other personnel, including attorneys, auditors, engineers and consultants for

rendering professional or technical services and advice, as may be necessary to the functioning of the authority;

(s)  To establish, fix, charge and enforce the payment of all rates, fees, assessments and any other charges for services furnished by the water system, wastewater system, or both, and other facilities within the control of the authority, as the case may be, and from time to time, to adjust such rates, fees, assessments and any other charges for the purpose of ensuring that the revenues therefrom will be sufficient at all times:

(i)  To pay the expenses of operating and maintaining the systems and other facilities, including all obligations under any contract or bond resolution with respect thereto;

(ii)  For the establishment and maintenance of a bond retirement and interest payment fund sufficient to provide for the payment of the principal of and interest on any bonds or other obligations payable therefrom as the same become due and payable, including reasonable reserves for the payment of such principal and interest;

(iii)  For the establishment and maintenance of a reasonable reserve for future additions, extensions, and improvements to such systems or any combination thereof, as the case may be; and

(iv)  To comply with all covenants of the authority under the terms of any resolution, trust indenture or other security instrument with respect to its bonds.

Except as otherwise permitted by law, such rates, fees, assessments and other charges shall be equal to those levied on similarly situated customers throughout the authority's service area.  For purposes of Section 77-3-33, the rates charged by the authority shall be just and reasonable if they are adequate to provide safe and reliable water and wastewater service to its customers, including providing an adequate amount of capital for the authority to perform such repairs, upgrades and improvements as it deems necessary on an ongoing basis;

(t)  To adopt rules and regulations necessary to accomplish the purposes of the authority and to assure the payment of each participating person or public agency of its proportionate share of the costs for use of any of the systems and facilities of the authority and for the authority's proportionate share of the costs of the board;

(u)  To enter on public or private lands, waters or premises for the purpose of making surveys, borings or soundings, or conducting tests, examinations or inspections for the purposes of the authority, subject to responsibility for any damage done to property entered;

(v)  To accept industrial wastewater from within the boundaries of the authority for treatment and to require the

pretreatment of the same when, in the opinion of the authority, such pretreatment is necessary;

(w)  To control and operate local retail water and wastewater services, and to provide or be responsible for direct servicing of those services to residences, businesses and individuals; however, the authority shall not provide the same services in an area provided by a public utility or person holding a certificate of public convenience and necessity issued by the Mississippi Public Service Commission for the provision of such services in the certificated area;

(x)  To assume control and administer, within the authority's jurisdiction, any water or wastewater system or systems by agreement or contract with any person if the person providing such services requests to be relieved of that responsibility;

(y)  To acquire property designated by plan to sufficiently accommodate the location of water or wastewater systems and such requirements related directly thereto pursuant to the provisions of Chapter 27, Title 11, Mississippi Code of 1972. The authority may acquire property necessary for any system and the exercise of the powers, rights and duties conferred upon the authority by this act.  No person owning the drilling rights or the right to share in production shall be prevented from exploring, developing or producing oil or gas with necessary rights-of-way for ingress and egress, pipelines and other means of

transporting such interests on any lands or interest of the authority held or used for the purposes of this act, but any such activities shall be subject to reasonable regulations by the board that adequately protect the systems or projects of the authority. This provision shall be in accordance with Mississippi Constitution Article 17A and Section 11-27-30;

(z)  To use any legally available funds to acquire, rebuild, operate and maintain any existing water or wastewater systems owned or operated by any person;

(aa)  To refuse to receive water or wastewater from any public agency or person, except with regard to municipalities or other areas within the service territory of the systems as of January 1, 2026;

(bb)  So long as any indebtedness on the systems of the authority remains outstanding, to require a member public agency, or other person, dispose of all water and wastewater, as the case may be, within the boundaries of the authority through the appropriate treatment system to the extent available, but no public agency shall be precluded from constructing, operating and maintaining its own such system unless provision has been made for full payment, by escrow or otherwise, of the public agency's proportionate share of the authority's bonds and other indebtedness outstanding as of the expected date of operation of the public agency's system, pursuant to the terms of the

 

authority's bonds or resolution, trust indenture or other security instrument securing such bonds or indebtedness;

(cc)  To adopt a seal and a symbol, to hold patents, copyrights, trademarks and service marks, and to enforce its rights with respect thereto;

(dd)  To write off revenues deemed uncollectible that were billed to customers prior to November 29, 2022, and, as a regular accounting practice of the authority, to further write off revenues deemed uncollectible after the third year of collection efforts.  Nothing herein permits the provision of services without charging applicable rates in effect at the time services are provided and requiring payment of such services; and

(ee)  To do all things necessary, convenient or desirable to carry out its purposes and for the exercise of the powers granted in this act.

(3)  The authority shall:

(a)  Submit annual reports to the Governor, Lieutenant Governor, Speaker of the House of Representatives, State Auditor, Joint Legislative Committee on Performance Evaluation and Expenditure Review, the mayor and the governing authorities of any municipality whose citizens are within the authority's boundaries regarding the water quality and financial conditions of such system or systems.  Such report shall contain a schedule of currently planned repairs, upgrades or improvements planned by the authority;

(b)   Immediately submit to the Governor, Lieutenant Governor, Speaker of the House of Representatives, the mayor and the governing authorities of any municipality whose citizens are within the authority's boundaries any information received from the Mississippi State Department of Health or Department of Environmental Quality or other state or federal regulatory agencies regarding the condition of a transferred eligible municipal system.  The authority, in addition to abiding by any other federal or state reporting requirements, must also report such information to the public on its website and to individuals residing within the service area as required by federal or state law;

(c)   Publish audited annual financial statements, which shall be made available to the public.  The annual financial statements shall include disposition of all funds expended by the authority for any purpose.  Quarterly financial statements shall be made available to the public by posting on the authority's website;

(d)   Adopt by administrative rules and regulations a system of continuous internal audits;

(e)   Adopt by administrative rules and regulations a code of ethics for officers and employees of the authority to carry out the standards of conduct established by this act;

(f)   Adopt by administrative rules and regulations guidelines for the transfer of property to the city or disposal of property, as the case may be, if the authority is dissolved;

(g)   The authority shall conduct an independent rate study every two (2) years and develop a report with its findings. If such rate study indicates that a rate increase is necessary in two (2) consecutive reports, the authority shall adopt a rate increase if it has not increased the rate in the prior two (2) years; and

(h)   The authority shall develop and implement a process for customers to be able to dispute water and wastewater utility bills.

**SECTION 10.**   (1)   The president, as chief executive officer of the authority, if so appointed by the board, shall direct and supervise all administrative and technical activities in accordance with the provisions of this act, with the administrative rules and regulations adopted by the board, and with prudent industry practice.  The president shall:

(a)   Supervise and administer or contract for the supervision and administration of the water and wastewater systems owned, managed or controlled by the authority;

(b)   Employ and direct such personnel as may be necessary to carry out the purposes of this act and utilize such services, personnel or facilities of the authority as he or she may deem necessary;

(c)   Make available for inspection by the board or any member of the board or the Governor, Lieutenant Governor, Speaker of the House, the mayor or the governing authorities of any municipality whose citizens are served by the authority, upon request, all books, records, files and other information and documents of his or her office and advise the board and recommend such administrative rules and regulations and other matters he or she deems necessary and advisable to improve the operation and administration of the authority;

(d)   Attend meetings of the board or appoint a designee to attend on his or her behalf;

(e)   Not later than thirty (30) days before the beginning of the authority's fiscal year, submit the proposed annual budget of the authority to the board for review and approval.  Such budget shall include a schedule of planned repairs, upgrades or improvements to the systems and the anticipated capital cost of each.  In addition, the proposed annual budget of the authority shall include a personnel table reporting information for each full-time and part-time permanent position, as follows:

(i)   The position title and the salary for each position in the existing operating budget for the current fiscal year, indicating whether each position is filled or vacant as of the reporting date; and

(ii)  The position title and the salary recommended for each position for the following fiscal year;

(f)  Require bond of Fifty Thousand Dollars ($50,000.00) from employees with access to funds or in such an amount as provided in the administrative rules and regulations of the board.

(2)  The president may:

(a)  Require a bond from other employees as he or she deems necessary; and

(b)  Upon specific or general approval of the board, enter into personal service contracts pursuant to administrative rules and regulations adopted by the board and compensate such consultants and technical assistants as may be required to carry out the provisions of this act.

(3)  State agencies, including, but not limited to, the Mississippi Department of Health and the Mississippi Department of Environmental Quality, shall cooperate with the authority to regulate the authority and assure the effective operation of the authority's systems, with the understanding that such agencies act as a regulator and not operator of such systems, provided that the rates, fees, assessments and other charges imposed by the authority shall not be subject to the jurisdiction of the Mississippi Public Service Commission.  All state officers are hereby empowered and required to render such services to the authority within their respective functions as may be requested by the authority.

**SECTION 11.**  Employees of the authority shall serve at the will and pleasure of the president, who shall determine their compensation and benefits in consultation with the board.

**SECTION 12.**  Neither the directors of the authority, the board, its employees, nor any person or persons acting on their behalf, while acting within the scope of their authority, shall be subject to personal liability resulting from carrying out any of the powers granted herein in accordance with his or her good faith belief that he or she is acting in the best interests of the authority.

**SECTION 13.**  (1)  The authority shall enter into its contracts for major procurements after a competitive and open procurement process.  The authority may adopt administrative rules and regulations pursuant to the provisions of this act providing for special procedures whereby the authority may make any class of procurement.  The authority shall endeavor to ensure the transparency and competitiveness of procurements of all sizes.

(2)  In its bidding processes, the authority may do its own bidding and procurement or may utilize the services of other state agencies as appropriate and necessary.  The president may declare an emergency for purchasing purposes which shall be governed by the administrative rules and regulations adopted by the board.

**SECTION 14.**  All monies received by the authority shall be deposited into an operating account.  Such account shall be established in a custodian financial institution domiciled in the

H. B. No. 1677
26/HR43/R1421SG
PAGE 36 (MCL\KP)

~ **OFFICIAL** ~

state, insured by the Federal Deposit Insurance Corporation and collateralized as prescribed by Section 27-105-5.

**SECTION 15.**  All division heads, officers and employees of the authority shall be considered public servants as defined in Section 25-4-103.  All division heads and officers of the authority are subject to Section 25-4-25 and shall be required to file a Statement of Economic Interest with the Mississippi Ethics Commission.

**SECTION 16.**  (1)  Any public agency, pursuant to a duly adopted resolution of its governing body, may enter into contracts with the authority under the terms of which the authority will manage, operate and contract for usage of the agency's systems and facilities, or other services, for such public agency.

(2)  Any public agency may enter into contracts with the authority for the authority to purchase or sell, by installments over such terms as may be deemed desirable, or otherwise, to any person or any systems.  Any public agency may sell, donate, convey or otherwise dispose of water and wastewater facilities or systems, or any equipment, personal property or other things deemed necessary for the construction, operation and maintenance thereof, to the authority without the necessity of appraisal, advertising or bidding.  This section creates an alternative method of disposal of public property.

(3)  Any public agency is authorized to enter into operating agreements with the authority, for such terms and upon such

conditions as may be deemed desirable, for the operation of any of its systems by the authority or by any person contracting with the authority to operate such systems.

(4)  Any public agency may lease any of its systems to or from the authority, for such term and upon such conditions as may be deemed desirable.

(5)  Any municipality or county may donate office space, equipment, supplies and materials to the authority.

(6)  Contracts under this section may contain provisions requiring any public agency to regulate the quality and strength of the material to be handled by the wastewater systems and may also provide that the authority shall have the right to use any streets, alleys and public ways and places within the jurisdiction of a public agency during the term of the contract.  Such contracts may obligate the public agency to make payments to the authority or to a trustee in amounts which shall be sufficient to enable the authority to defray the expenses of administering, operating and maintaining its respective systems, to pay interest and principal (whether at maturity, upon redemption or otherwise) on bonds of the authority issued under this act, and to fund reserves for debt service, for operation and maintenance and for renewals and replacements, to fulfill the requirements of any rate covenant with respect to debt service coverage contained in any resolution, trust indenture or other security instrument relating to the bonds of the authority issued under this act or to fulfill

any other requirement relating to bonds issued pursuant to this act.

(7)  All public agencies shall have the power to enter into contracts with the authority as deemed in the best interest of the public agency, according to the discretion of the governing body of the public agency, would be in the best interest of the public agency.  Such contracts may include a pledge of the full faith and credit of the public agency and/or the avails of any special assessments made by the public agency against property receiving benefits, as now or hereafter provided by law.  Any such contract may:

(a)  Provide for the sale or lease to, or use by, the authority, of the systems or any part thereof, of the public agency;

(b)  Provide that the authority shall operate its systems or any part thereof of the public agency;

(c)  Provide that the public agency shall have the right to continued use and/or priority use of the systems or any part thereof during the useful life thereof upon payment of reasonable charges therefor;

(d)  Contain provisions to assure equitable treatment of public agencies contracting with the authority under this act; and

(e)  Contain such other provisions and requirements as the parties thereto may determine to be appropriate or necessary.  Such contracts may extend over any period of time, notwithstanding

any provisions of law to the contrary, and may extend beyond the life of the respective systems or any part thereof or the term of the bonds sold with respect to such facilities or improvements.

(8)  The obligations of a public agency arising under the terms of any contract referred to in this act, whether or not payable solely from a pledge of revenues, shall not be included within the indebtedness limitations of the public agency for the purpose of any constitutional or statutory limitation or provision.  To the extent provided in such contract and to the extent such obligations of the public agency are payable wholly or in part from the revenues and other monies derived by the public agency from the operation of its systems or of its combined systems, or any part thereof, such obligations shall be treated as expenses of operating such systems.

(9)  Contracts referred to in this section may also provide for payments in the form of contributions to defray the cost of any purpose set forth in such contracts and as advances for the respective systems or any part thereof subject to repayment by the authority.  A public agency may make such contributions or advances from its general fund or surplus fund, from special assessments or from any monies legally available therefor.

(10)  Subject to the terms of a contract or contracts controlled by this act, the authority is hereby authorized to do and perform all acts necessary, convenient or desirable to carry out the purposes of such contracts, including fixing, charging,

collecting, maintaining and revising rates, fees and other charges for the services rendered to a user of any of the systems operated or maintained by the authority, whether or not such systems are owned by the authority.

(11)  No provision of this act shall be construed to prohibit any public agency otherwise permitted by law to issue bonds from issuing bonds in the manner provided by law for the construction, renovation, repair or development of any systems or any part thereof.

**SECTION 17.**  When a public agency executes a contract under this act and the payments thereunder are to be made either wholly or partly from the revenues of the public agency's systems, any part thereof, or a combination of such systems, the public agency shall establish and maintain, and from time to time to adjust, the rate or fees charged by the public agency for the services of such systems, so that the revenues therefrom, together with any taxes and special assessments levied in support thereof, will be sufficient at all times to pay:

(a)  The expense of operating and maintaining such systems, including, but not limited to, all of the public agency's obligations to the authority and the cost required to staff such systems, its successors or assigns under such contract; and

(b)  All of the public agency's obligations under and in connection with bonds theretofore issued, or which may be issued thereafter and secured by the revenues of such systems.  Any such

contract may require the use of consulting engineers and financial experts to advise the public agency whether and when such rates and fees are to be adjusted.

**SECTION 18.** (1)  Notwithstanding the provisions of Sections 77-3-21 and 77-3-23, the certificate of public convenience and necessity held by any municipality, public agency, district, public utility or other entity authorized by law to provide water and wastewater services may be cancelled and its powers, duties and responsibilities transferred to the authority in the manner provided by this section.

(2)  Any entity described in subsection (1) of this section that desires to have its certificate of public convenience and necessity cancelled and its powers, duties and responsibilities transferred to the authority shall make a determination to that effect on its official minutes if a public entity, or by affidavit if not a public entity, and transmit such determination to the authority.

(3)  Upon receipt of the document evidencing such determination from an entity to transfer its powers, duties and responsibilities to the authority, the authority shall, by resolution, declare whether it is willing and able to accept such transfer from the entity.

(4)  Upon completion of the requirements of subsections (2) and (3) of this section and agreement by both parties to the transfer, the holder of the certificate of public convenience and

necessity and the authority shall jointly petition the Public Service Commission to cancel the certificate of public convenience and necessity.  The petition must be accompanied by copies of the official minutes, affidavit or resolution, as the case may be, reflecting the actions of the petitioners.  After review of the petition and any other evidence as the Public Service Commission deems necessary, the commission may issue an order canceling the certificate and transferring to the authority the powers, duties and responsibilities granted by the certificate, including all assets and debts of the transferor petitioner related to such certificated services, real or personal, or both, if it finds that:

(a)  The requirements of subsections (2) and (3) of this section have been met; and

(b)  Such action is in the public interest.

(5)  The authority and providers of water and wastewater services that are not holders of a certificate of a public convenience and necessity from the Public Service Commission may enter into agreements for the provision of such services, including, but not limited to, the transfer to the authority of such provider's powers, duties, responsibilities, assets and debts.

(6)  Nothing in this section shall require an entity whose powers and duties were transferred to the authority to remain under the authority.

**SECTION 19.**   (1)  Any system of a municipality, public agency or other entity that becomes subject to the jurisdiction of the authority and this act shall not impair, invalidate or abrogate any liens, bonds or other certificates of indebtedness related to water or wastewater facilities and systems incurred prior to becoming subject to the jurisdiction of the authority.

(2)  The authority may do and perform any and all acts necessary, convenient or desirable to ensure the payment, redemption or satisfaction of such liens, bonds or other certificates of indebtedness.

**SECTION 20.**   (1)  Sections 19 through 28 of this act shall apply to all bonds issued by the authority on or after July 1, 2026, and such provisions shall not affect, limit or alter the rights and powers of the authority under this act or any law of the State of Mississippi to conduct the activities referred to in this act in any way pertinent to the interests of the bondholders, including, without limitation, the authority's right to charge and collect rates, fees, assessments and charges and to fulfill the terms of any covenants made with the registered owners of any existing system bonds outstanding as of July 1, 2026, or in any other way impair the rights and remedies of the registered owners of any existing system bonds outstanding as of July 1, 2026, unless provision for full payment of such bonds, by escrow or otherwise, has been made pursuant to the terms of the bonds or the

resolution, trust indenture or other security instrument securing the bonds.

(2)  The authority shall have the power and is hereby authorized, from time to time, to borrow money and to issue revenue bonds and interim notes in such principal amounts as the authority may determine to be necessary to provide sufficient funds for achieving one or more of the purposes of this act, including, without limiting the generality of the foregoing, to defray all the costs of a project; the cost of the acquisition, construction, improvement, repair or extension of a system, or any part thereof, whether or not such facilities are owned by the authority; the payment of interest on bonds of the authority issued pursuant to this act; establishment of reserves to secure such bonds and payment of the interest thereon, expenses incident to the issuance of such bonds and to the implementation of the authority's system; and all other expenditures of the authority incident to or necessary or convenient to carry out the purposes of this act.

(3)  Before issuing bonds other than interim notes, bonds issued to refinance the existing system debts as of July 1, 2026, as provided in subsection (12) of this section or refunding bonds as provided in Section 21 of this act, the board of directors of the authority shall adopt a resolution declaring its intention to issue such bonds and stating the maximum principal amount of bonds proposed to be issued, a general generic description of the

proposed improvements, the proposed location thereof and the date, time and place at which the board of directors proposes to take further action with respect to the issuance of such bonds.  The resolution shall be published once a week for at least three (3) consecutive weeks in at least one (1) newspaper having a general circulation within the geographical limits of the service area under this act.

(4)  Bonds of the authority issued pursuant to this act, other than bonds issued to refinance the existing system debts as of July 1, 2026, as provided in subsection (12) of this section, shall be payable from and secured by a pledge of all or any part of the revenues derived from the operation of the systems, or any part or parts thereof, and any other monies legally available and designated therefor, as may be determined by the authority, subject only to an agreement with the purchasers of the bonds. Such bonds may be further secured by a trust indenture between the authority and a corporate trustee, which may be any trust company or bank that has the powers of a trust company without or within the state.

(5)  Bonds of the authority shall be issued pursuant to this act only upon authorization by a resolution or resolutions adopted by a majority affirmative vote of the total membership of the board.  Such bonds may be issued in series, and each series of such bonds shall bear such date or dates, mature at such time or times, bear interest at such rate or rates not exceeding the

maximum rate set out in Section 75-17-103, be in such denomination or denominations, be in such form, carry such conversion privileges, have such rank or priority, be executed in such manner and by such officers, be payable from such sources in such medium of payment at such place or places within or without the state, provided that one (1) such place shall be within the state, and be subject to such terms of redemption prior to maturity, as may be provided by resolution or resolutions of the board.  The term of bonds issued pursuant to this act shall not exceed forty (40) years.

(6)  Bonds of the authority issued pursuant to this act may be sold at such price or prices, at public or private sale, in such manner and at such times as may be determined by the authority to be in the public interest, and the authority may pay all expenses, premiums, fees and commissions which it deems necessary and advantageous in connection with the issuance and sale thereof.

(7)  Any pledge of earnings, revenues or other monies made by the authority for bonds issued pursuant to this act, or made by the city to the authority for such bonds, shall be valid and binding from the time the pledge is made.  The earnings, revenues or other monies so pledged and thereafter received by the authority or the city shall immediately be subject to the lien of such pledge without any physical delivery thereof or further act, and the lien of any such pledge shall be valid and binding as

against all parties having claims of any kind in tort, contract or otherwise against the authority or the city, irrespective of whether such parties have notice thereof.  Neither the resolution nor any other instrument by which a pledge is created need be recorded.  The revenues may also be pledged as security for the payment of obligations due to providers of credit enhancement with respect to any bonds issued.

(8)  Neither the members of the board nor any person executing the bonds shall be personally liable on the bonds or be subject to any personal liability or accountability by reason of their issuance.

(9)  Proceeds from the sale of bonds of the authority may be invested, pending their use, in such securities as may be specified in the resolution authorizing the issuance of the bonds or the trust indenture securing them, and the earnings on such investments may be applied as provided in such resolution or trust indenture.

(10)  When bonds have been signed by an officer who was designated by resolution of the board to sign the bonds and who was in office at the time of such signing, but who has ceased to be such an officer prior to the sale and delivery of such bonds, or who is not in office on the date such bonds bear, the manual or facsimile signatures of the officer upon such bonds shall nevertheless be valid and sufficient for all purposes and have the same effect as if the person who officially executed the bonds had

remained in office until delivery to the purchaser or had been in office on the date such bonds bear.

(11) The authority may advance or borrow funds needed to satisfy any short-term cash flow demands or deficiencies or to cover start-up costs until such time as sufficient bonds, assets and revenues have been secured to satisfy the needs of the authority.

(12) The authority is authorized to issue special revenue bonds for the purpose of refinancing the existing system debts as of July 1, 2026. Bonds issued pursuant to this subsection shall be payable from and secured by a pledge of all or any part of such monies legally available and designated therefor, as determined by the authority, subject only to an agreement with the purchasers of the bonds. Such bonds may be further secured by a trust indenture between the authority and a corporate trustee, which may be any trust company or a bank that has the powers of a trust company without or within the state.

(13) Notwithstanding any provision to the contrary in Section 31-25-21, the authority shall constitute a local governmental unit for the purposes of the Mississippi Development Bank Act.

**SECTION 21.** (1) The authority may, by resolution adopted by its board, issue refunding bonds for the purpose of paying any of its bonds at or prior to maturity, upon acceleration or upon redemption. Refunding bonds may be issued at such time prior to

the maturity or redemption of the refunded bonds as the board deems to be in the public interest. The refunding bonds may be issued in sufficient amounts to pay or provide the principal of the bonds being refunded, together with any redemption premium thereon, any interest accrued or to accrue to the date of payment of such bonds, the expenses of issue of the refunding bonds, the expenses of redeeming the bonds being refunded, and such reserves for debt service or other capital or current expenses from the proceeds of such refunding bonds as may be required by the resolution, trust indenture or other security instrument. The issue of refunding bonds, the maturities and other details thereof, the security therefor, the rights of the holders and the rights, duties and obligations of the authority in respect of the same shall be governed by the provisions of this act relating to the issue of bonds other than refunding bonds, insofar as the same may be applicable. Any such refunding may be effected, whether the obligations to be refunded shall have then matured or shall thereafter mature, either by the exchange of the refunding bonds for the obligations to be refunded thereby with the consent of the holders of the obligations so to be refunded, or by sale of the refunding bonds and the application of the proceeds thereof to the payment of the obligations proposed to be refunded thereby, and regardless of whether the obligations proposed to be refunded shall be payable on the same date or different dates or shall be due serially or otherwise.

(2)   The authority may borrow by the delivery of interim notes to any person or public agency or financial institution by a majority vote of the board of directors.

**SECTION 22.**  All bonds, other than refunding bonds, interim notes and certificates of indebtedness, which may be issued pursuant to this act shall be validated as now provided by law in Sections 31-13-1 through 31-13-11; however, notice of such validation proceedings shall be addressed to the citizens of the respective public agencies which have contracted with the authority pursuant to this act, and whose contracts and the payments to be made by the public agencies thereunder constitute security for the bonds of the authority proposed to be issued, and such notice shall be published at least once in a newspaper or newspapers having a general circulation within the geographical boundaries of each of the contracting public agencies to whose citizens the notice is addressed.  Such validation proceedings shall be instituted in any chancery courts within the boundaries of the authority.

The validity of the bonds so validated and of the contracts and payments to be made by the public agencies thereunder constituting security for the bonds shall be forever conclusive against the authority and the public agencies, which are parties to said contracts, and the validity of said bonds and said contracts and the payments to be made thereunder shall never be called in question in any court in this state.

H. B. No. 1677    |||||||||||||||||||||||||||||||||||||||    **~ OFFICIAL ~**
26/HR43/R1421SG
PAGE 51 (MCL\KP)

**SECTION 23.**  Bonds issued under the provisions of this act shall not be deemed to constitute, within the meaning of any constitutional or statutory limitation, an indebtedness of the authority or the state.  Such bonds shall be payable solely from the revenues or assets of the authority pledged therefor.

Each bond issued under this act shall contain on the face thereof a statement to the effect that neither the authority nor the state shall be obligated to pay the same or the interest thereon except from the revenues or assets pledged therefor.

**SECTION 24.**  The authority shall have power in connection with the issuance of its bonds pursuant to this act to:

(a)  Covenant as to the use of any or all of its property, real or personal;

(b) Redeem the bonds to covenant for their redemption and to provide the terms and conditions thereof;

(c)  Covenant to charge rates, fees and charges sufficient to meet operating and maintenance expenses, renewals and replacements, principal and debt service on bonds, creation and maintenance of any reserves required by a bonds resolution, trust indenture or other security instrument and to provide for any margins or coverages over and above debt service on the bonds deemed desirable for the marketability of the bonds;

(d)  Covenant and prescribe as to events of default and terms and conditions upon which any or all of its bonds shall become or may be declared due before maturity, as to the terms and

conditions upon which such declaration and its consequences may be waived and as to the consequences of default and the remedies of the registered owners of the bonds;

(e)  Covenant as to the mortgage or pledge of or the grant of a security interest in any real or personal property and all or any part of the revenues from any designated system or any part thereof or any revenue-producing contract or contracts made by the authority with any person or entity to secure the payment of bonds, subject to such agreements with the registered owners of bonds as may then exist;

(f)  Covenant as to the custody, collection, securing, investment and payment of any revenues, assets, monies, funds or property with respect to which the authority has any rights or interest;

(g)  Covenant as to the purposes to which the proceeds of the sale of any bonds then or thereafter to be issued may be applied, and the pledge of such proceeds to secure the payment of the bonds;

(h)  Covenant as to the limitations on the issuance of any additional bonds, the terms upon which additional bonds may be issued and secured, and the refunding of outstanding bonds;

(i)  Covenant as to the rank or priority of any bonds with respect to any lien or security;

(j)  Covenant as to the procedure by which the terms of any contract with or for the benefit of the registered owners of

bonds may be amended or abrogated, the amount of bonds the registered owners of which must consent thereto, and the manner in which such consent may be given;

(k)  Covenant as to the custody of any of its properties or investments, the safekeeping thereof, the insurance to be carried thereon, and the use and disposition of insurance proceeds;

(l)  Covenant as to the vesting in a trustee or trustees, within or outside the state, of such properties, rights, powers and duties in trust as the authority may determine;

(m)  Covenant as to the appointing and providing for the duties and obligations of a paying agent or paying agents or other fiduciaries within or outside the state;

(n)  Make all other covenants and do any and all such acts and things as may be necessary, convenient or desirable in order to secure its bonds, including providing a debt service reserve fund, bond insurance and credit enhancement, or in the absolute discretion of the authority, tend to make the bonds more marketable, notwithstanding that such covenants, acts or things may not be enumerated herein, it being the intention hereof to give the authority power to do all things in the issuance of bonds and in the provisions for security thereof which are not inconsistent with the Constitution of the state; and

(o)  Execute all instruments necessary or convenient in the exercise of the powers herein granted or in the performance of

covenants or duties, which may contain such covenants and provisions, as any purchaser of the bonds of the authority may reasonably require.

SECTION 25.  The authority may, in any authorizing resolution of the board, trust indenture or other security instrument relating to its bonds issued pursuant to this act, provide for the appointment of a trustee who shall have such powers as are provided therein to represent the registered owners of any issue of bonds in the enforcement or protection of their rights under any such resolution, trust indenture or security instrument.  The authority may also provide in such resolution, trust indenture or other security instrument that the trustee may petition the court of proper jurisdiction for the appointment of a receiver of the authority's systems, the revenues of which are pledged to the payment of the principal of and interest on the bonds of such registered owners.  In the event that the appointed trustee fails or declines to protect and enforce the registered owners' rights, a percentage of the registered owners as set forth in, and subject to the provisions of, such resolution, trust indenture or other security instrument may petition the court of proper jurisdiction according to this section.  Such receiver may exercise any power granted in any such resolution, trust indenture or security instrument to enter upon and take possession of, acquire, construct, reconstruct or operate and maintain such system, fix charges for services of the system and enforce collection thereof,

receive all revenues derived from such system or facilities, and perform the public duties and carry out the contracts and obligations of the authority in the same manner as the authority itself might do, all under the direction of such court.

**SECTION 26.** (1) The exercise of the powers granted by this act will be in all respects for the benefit of the people of the state, for their well-being and prosperity and for the improvement of their social and economic conditions, and the authority shall not be required to pay any tax or assessment on any property owned by the authority under the provisions of this act or upon the income therefrom, nor shall the authority be required to pay any recording fee or transfer tax of any kind on account of instruments recorded by it or on its behalf.

(2) Any bonds issued by the authority under this act, their transfer and the income therefrom shall at all times be free from taxation by the state or any local unit or political subdivision or other instrumentality of the state, excepting inheritance and gift taxes.

**SECTION 27.** All bonds issued under the provisions of this act shall be legal investments for trustees, other fiduciaries, savings banks, trust companies and insurance companies organized under the laws of the state, and such bonds shall be legal securities which may be deposited with and shall be received by all public officers and bodies of the state and all municipalities

and other political subdivisions thereof for the purpose of securing the deposit of public funds.

**SECTION 28.**  The state hereby covenants with the registered owners of any bonds of the authority that so long as the bonds are outstanding and unpaid, the state will not limit or alter the rights and powers of the authority under this act to fulfill the terms of any covenants made with, or for the benefit of, the registered owners of the bonds, or in any other way impair the rights and remedies of the registered owners of the bonds, unless provision for full payment of such bonds, by escrow or otherwise, has been made pursuant to the terms of the bonds or the resolution, trust indenture or security instrument securing the bonds.  The authority is authorized to include this pledge and agreement of the state in any agreement with bondholders.

**SECTION 29.**  For the purposes of satisfying any temporary cash flow demands and deficiencies, and to maintain a working balance for the authority, the state, county, municipalities or public agencies within the geographic boundaries of the authority, or other persons, subject to their lawful authority to do so, are authorized to advance, at any time, such funds which in their discretion are necessary, or borrow such funds by issuance of notes, for initial capital contribution, and to cover start-up costs until such times as sufficient bonds, assets and revenues have been secured to satisfy the needs of the authority for its management, operation and formation.  To this end, the state,

county, municipality, public agency or person, subject to its lawful authority to do so, shall advance such funds, or borrow such funds by issuance of notes, under such terms and conditions as may be provided by resolution of the governing body, or other persons as defined in this act, subject to their lawful authority to do so, except that each such resolution shall state:

(a) The need for the proceeds advanced or borrowed;

(b) The amount to be advanced or the amount to be borrowed;

(c) The maximum principal amount of any note issued, the interest rate or maximum interest rate to be incurred, and the maturity date of said note;

(d) In addition, the governing body, or other persons as defined in this act, subject to their lawful authority to do so, may arrange for lines of credit with any bank, firm or person for the purpose of providing an additional source of repayment for notes issued pursuant to this section.  Amounts drawn on a line of credit may be evidenced by negotiable or nonnegotiable notes or other evidences of indebtedness and contain such terms and conditions as the governing body, or other persons as defined in this act, subject to their lawful authority to do so, may authorize in the resolution approving the same;

(e) The governing body of the county, municipalities or other persons as defined in this act, subject to their lawful authority to do so, may authorize the repayment of such advances,

notes, lines of credit and other debt incurred under this section, along with all costs associated with the same, including, but not limited to, rating agency fees, printing costs, legal fees, bank or trust company fees, line of credit fees and other charges to be reimbursed by the authority under such terms and conditions as are reasonable and are to be provided for by resolution of the governing body, or terms agreed upon with other persons as defined in this act, subject to their lawful authority to do so; and

(f)  In addition, the governing body of the county, municipality or public agency may lease or donate office space and equipment to the authority under such terms and conditions as are reasonable and are to be provided for by resolution of the governing body, or terms agreed upon by the authority.

**SECTION 30.**  This act, being necessary for the welfare of the state and its inhabitants, shall be liberally construed to effect the purposes thereof.  If any section, provision, paragraph, sentence, phrase or word of this act shall be held invalid by any court of competent jurisdiction, the remainder of this act shall not be affected thereby.

**SECTION 31.**  Section 21-19-1, Mississippi Code of 1972, is amended as follows:

21-19-1.  (1)  The municipal governing authorities of any municipality shall have the power to make regulations to secure the general health of the municipality; to prevent, remove, and abate nuisances; to regulate or prohibit the construction of privy

vaults and cesspools, and to regulate or suppress those already constructed; to compel and regulate the connection of all property with sewers and drains; to suppress hog pens, slaughterhouses and stockyards, or to regulate the same and prescribe and enforce regulations for cleaning and keeping the same in order; to regulate and prescribe and enforce regulations for the cleaning and keeping in order of warehouses, stables, alleys, yards, private ways, outhouses, and other places where offensive matter is kept or permitted to accumulate; and to compel and regulate the removal of garbage and filth beyond the corporate limits.  The municipal governing authorities are further authorized to adopt and enforce regulations governing the disposal of garbage and rubbish in sanitary landfills owned or leased by the municipality, whether located within or outside of the corporate limits of the municipality, to the extent that such regulations are not in conflict with or prohibited by regulations of the Commission on Environmental Quality adopted under Section 17-17-27.

(2)  After December 31, 1992, the governing body of any municipality in the state shall provide for the collection and disposal of garbage and the disposal of rubbish, and for that purpose the governing body shall have the power to:

(a)  Establish, operate and maintain a garbage and/or rubbish collection and disposal system or systems;

(b)  Acquire property, real or personal, by contract, gift or purchase, necessary or proper for the maintenance and operation of such system;

(c)  Make all necessary rules and regulations for the collection and disposal of garbage and/or rubbish not in conflict with or prohibited by rules and regulations of the Commission on Environmental Quality adopted under Section 17-17-27 and, if it so desires, establish, maintain and collect rates, fees and charges for collecting and disposing of such garbage and/or rubbish; and

(d)  In its discretion, enter into contracts, in the manner required by law, with individuals, associations or corporations for the establishment, operation and maintenance of a garbage or rubbish disposal system or systems, and/or enter into contracts on such terms as the municipal governing body thinks proper with any other municipality, county or region enabling the municipality to use jointly with such other municipality, county or region any authorized rubbish landfill or permitted sanitary landfill operated by the other municipality, other county or region.

(3)  Notwithstanding the provisions of any other law, charter or ordinance to the contrary, this subsection (3) shall control.

(a)  The governing authorities of any municipality having a population of one hundred thousand (100,000) or more, are hereby authorized and empowered to dedicate a portion of the

rates, fees and charges for collecting and disposing of garbage and/or rubbish to the payment of principal of and interest on bonds or notes issued by a public authority to which the power and authority to operate, maintain or finance costs associated with the water, sewer and/or drainage systems of any municipality shall have been delegated.  Any such public authority may issue bonds or notes that are secured by a pledge of and lien on, and may be payable from, the rates, fees and charges dedicated pursuant to this subsection (3).  The governing authorities of a municipality may also enter into agreements as may be necessary or desirable in connection with the issuance of bonds or notes by such public authority.  Such agreements may include such reasonable provisions as the governing body of the public authority shall determine to be appropriate to provide security for the holders of bonds or notes issued or to be issued by such public authority and, as applicable, for the payment of obligations due providers of credit enhancement with respect to any bonds or notes issued.  The governing authorities of such municipality shall covenant to maintain and collect rates, fees and charges for collecting and disposing of garbage and/or rubbish in amounts at least equal to the portion dedicated pursuant to this subsection (3) until such time as the bonds or notes issued by such public authority that are secured by and payable from such dedicated amounts shall have been paid in full, and such covenant shall be set forth in the document authorizing the bonds or notes and shall constitute a

covenant of the municipality with the owners and, as applicable, the providers of credit enhancement with respect to such bonds or notes for so long as any such bonds or notes remain outstanding.

(b)  In addition to any contractual lien granted to holders of bonds or notes issued by such public authority, to secure the full and timely payment of all bonds or notes issued by such public authority, in accordance with their respective terms, all such bonds or notes are and shall be secured by a statutory lien on all such rates, fees, charges or other amounts.  The lien shall arise solely by force of this provision specifically upon the issuance of any such bonds or notes, and shall automatically attach without further action or authorization by the municipality or the public authority.  The lien shall be valid and binding from the time any such amounts are paid by any person obligated to pay such amount, and the lien shall immediately attach to such amounts and be effective, binding and enforceable against any such county, municipality or public authority or other designated recipient or depository of such amounts, as applicable, their respective successors, transferees, or creditors, and all others asserting rights therein, irrespective of whether those parties have notice of the lien and without the need for any physical delivery, recordation, filing, or further act.  The municipality is hereby authorized and directed to covenant and agree for the benefit of the holders of the bonds or notes outstanding from time to time that for so long as any bonds or notes remain unpaid, the

municipality shall (i) defend, preserve and protect such statutory lien against all claims and demands of third parties, and (ii) not attempt to revoke, terminate or amend such statutory lien in any way that materially adversely affects the rights of any holder of bonds.

(4)  As a necessary incident to such municipal governing authority's power and authority to establish, maintain and collect such rates, fees and charges for collecting and disposing of such garbage and/or rubbish, and as a necessary incident to such municipal governing authority's power and authority to establish, operate and maintain a garbage and/or rubbish disposal system or systems, the municipal governing authority of such municipality shall have the authority to initiate a civil action to recover any delinquent fees and charges for collecting and disposing of such rubbish, and all administrative and legal costs associated with collecting such fees and charges, in the event any person, firm or corporation, including any municipal corporation, shall fail or refuse to pay such fees and charges for collecting and disposing of garbage and/or rubbish; provided that such municipal governing authority may initiate such a civil action to recover such delinquent fees and charges whether or not such municipality has previously entered into a contract with such individual, firm or corporation, relating to the establishment, operation and maintenance of such garbage and/or rubbish disposal system or systems; provided further, that in a civil action to recover such

delinquent fees and charges for collecting and disposing of such garbage and/or rubbish, and all administrative and legal costs associated with collecting such fees and charges, the municipality shall in all respects be a proper party to such suit as plaintiff and shall have the power to sue for and recover such unpaid fees and charges, and all administrative and legal costs associated with collecting such fees and charges from any person, firm or corporation, as may fail, refuse or default in the payment of such fees and charges.

**SECTION 32.**  Section 21-19-2, Mississippi Code of 1972, is amended as follows:

21-19-2.  (1)  (a)  To defray the cost of establishing, operating and maintaining the system provided for in Section 21-19-1, the governing authority of a municipality may develop a system for the billing and/or collection of any fees or charges imposed on each person furnished garbage and/or rubbish collection and/or disposal service by the municipality or at the expense of the municipality.  The governing authority of the municipality shall provide for the collection of the fees or charges.

(b)  The governing authority of a municipality may enter into a contract upon mutual agreement with a public or private corporation, nonprofit corporation, planning and development district or a public agency, association, utility or utility district within the area receiving garbage and/or rubbish collection and/or disposal services from the municipality for the

purpose of developing, maintaining, operating and administering a system for the billing and/or collection of fees or charges imposed by the municipality for garbage and/or rubbish collection and/or disposal services.  The entity with whom the governing authority of a municipality contracts shall notify the governing authority of the municipality monthly of any unpaid fees or charges assessed under this section.  Any entity that contracts to provide a service to customers, within the area being served by the municipality's garbage and/or rubbish collection and/or disposal system, may provide a list of its customers to the governing authority of the municipality upon the request of the governing authority.

(c)  Notwithstanding the provisions of any other law, charter or ordinance to the contrary, the provisions of this paragraph (c) shall control.  The governing authority of a municipality may enter into a contract upon mutual agreement with any county within the area receiving garbage and/or rubbish collection and/or disposal services from the municipality for the purpose of billing and/or collection of fees or charges imposed by the municipality for garbage and/or rubbish collection and/or disposal services, and any such county is hereby authorized to enter into such a contract.  In its discretion, the municipality may bill and collect the fees or charges imposed by the municipality for garbage and/or rubbish collection and/or disposal services as part of the tax bills for the municipality issued by

the tax collector of the county for those properties subject to such fees or charges.  To the extent included as part of the tax bills, the fees or charges to be collected under this section shall be shown as a separate line item on the notice of ad valorem taxes on taxable property owed by the taxpayer.

(2)  (a)  To defray the cost of establishing and operating the system provided for in Section 21-19-1, the governing body of a municipality may levy an ad valorem tax not to exceed four (4) mills on all taxable property within the area served by the municipality's garbage and/or rubbish collection and/or disposal system.  The service area may be comprised of incorporated and/or unincorporated areas within a county; however, no property shall be subject to this levy unless that property is within an area served by a municipality's garbage and/or rubbish collection and/or disposal system.  The rate of the ad valorem tax levied under this section shall be shown as a line item on the notice of ad valorem taxes on taxable property owed by the taxpayer.

(b)  In addition to or in lieu of any other method authorized to defray the cost of establishing and operating the system provided for in Section 21-19-1, the governing body of a municipality that has established a garbage and/or rubbish collection and/or disposal system may assess and collect fees or charges to defray the costs of such services.  The governing authority may assess and collect the fees or charges from each single family residential generator of garbage and/or rubbish.

The governing authority also may assess and collect such fees or charges from each industrial, commercial and multi-family residential generator of garbage and/or rubbish for any time period that the generator has not otherwise contracted for the collection of garbage and/or rubbish that is ultimately disposed of at a permitted or authorized nonhazardous solid waste management facility.

(c)  Before the adoption of any resolution or ordinance to increase the ad valorem tax assessment or fees or charges authorized by this section, the governing authority of a municipality shall have published a notice advertising their intent to increase the ad valorem tax assessment or fees or charges authorized by this section.  The notice shall specify the purpose of the proposed increase, the proposed percentage increase and the proposed percentage increase in total revenues for garbage and/or rubbish collection and/or disposal services or shall contain a copy of any resolution by the governing authority stating their intent to increase the ad valorem tax assessment or fees or charges authorized by this section.  The notice shall be published in a newspaper having general circulation in the municipality for no less than three (3) consecutive weeks before the adoption of the order.  The notice shall be in print no less than the size of eighteen (18) point and shall be surrounded by a one-fourth (1/4) inch black border.  The notice shall not be placed in the legal section notice of the newspaper.  There shall

be no language in the notice inferring a mandate from the Legislature.

In addition to the requirement for publication of notice, the governing authority of a municipality shall notify each person furnished garbage and/or rubbish collection and/or disposal service of any increase in the ad valorem tax assessment or fees or charges authorized by this section.  In the case of an increase of the ad valorem tax assessment, a notice shall be conspicuously placed on or attached to the first ad valorem tax bill on which the increased assessment is effective.  In the case of an increase in fees or charges, a notice shall be conspicuously placed on or attached to the first bill for fees or charges on which the increased fees or charges are assessed.  There shall be no language in any notice inferring a mandate from the Legislature.

(d)  The governing authority of a municipality may adopt an ordinance authorizing the granting of exemptions from the fees or charges for certain generators of garbage and/or rubbish.  The ordinance shall define clearly those generators that may be exempted and shall be interpreted consistently by the governing authority when determining whether to grant or withhold requested exemptions.

(e)  Subject to the provisions of Section 21-19-1(3), the governing authority may borrow money for the purpose of defraying the expenses of the system in anticipation of:

(i)  The tax levy authorized under this section;

H. B. No. 1677    ~ OFFICIAL ~
26/HR43/R1421SG
PAGE 69 (MCL\KP)

(ii)   Revenues resulting from the assessment of any fees or charges for garbage and/or rubbish collection and/or disposal; or

(iii)   Any combination thereof.

(3)   (a)   Fees or charges for garbage and/or rubbish collection and/or disposal shall be assessed jointly and severally against the generator of the garbage and/or rubbish and against the owner of the property furnished the service.  However, any person who pays, as a part of a rental or lease agreement, an amount for garbage and/or rubbish collection and/or disposal services shall not be held liable upon the failure of the property owner to pay such fees.

(b)   Every generator assessed the fees or charges provided for and limited by this section and the owner of the property occupied by that generator shall be jointly and severally liable for the fees and/or charges so assessed.  The fees or charges shall be a lien upon the real property offered garbage and/or rubbish collection and/or disposal service.

At the discretion of the governing body of the municipality, fees or charges assessed for the service may be assessed annually. If fees or charges are assessed annually, the fees or charges for each calendar year shall be a lien upon the real property offered the service beginning on January 1 of the next immediately succeeding calendar year.  The person or entity owing the fees or

charges, upon signing a form provided by the governing authority, may pay the fees or charges in equal installments.

If fees or charges so assessed are assessed on a basis other than annually, the fees or charges shall become a lien on the real property offered the service on the date that the fees or charges become due and payable.

No real or personal property shall be sold to satisfy any lien imposed under this section.

The municipality shall mail a notice of the lien, including the amount of unpaid fees or charges and a description of the property subject to the lien, to the owner of the property subject to the lien.

(c)   The municipal governing body shall notify the county tax collector of any unpaid fees or charges assessed under this section within ninety (90) days after such fees or charges are due.  Upon receipt of a delinquency notice, the tax collector shall not issue or renew a motor vehicle road and bridge privilege license for any motor vehicle owned by a person who is delinquent in the payment of fees or charges, unless such fees or charges, in addition to any other taxes or fees assessed against the motor vehicle, are paid.

(d)   Liens created under this section may be discharged as follows:

(i)  By filing with the municipal tax collector a receipt or acknowledgement, signed by the municipality, that the lien has been paid or discharged; or

(ii)  By depositing with the municipal tax collector money equal to the amount of the claim, which money shall be held for the benefit of the municipality.

**SECTION 33.**  Section 21-27-57, Mississippi Code of 1972, is amended as follows:

21-27-57.  In the authorizing order or ordinance, the governing authorities of the municipality shall set aside monthly and shall pledge the revenues of the system or combined system, in separate and special funds as follows:  ( **\* \* \***a) operation and maintenance fund; ( **\* \* \***b) depreciation fund; ( **\* \* \***c) bond and interest fund; ( **\* \* \***d) contingent fund.  A sufficient amount shall be set aside each year for the retirement of the bonds and interest.  Any surplus revenue remaining shall be disposed of by the governing authorities of the municipality as they may determine from time to time for the best interest of the municipality.  However, in the segregation into the several funds the governing authorities may prescribe a reasonable excess amount to be placed in the revenue bond and interest fund from time to time during the earlier years of maturity of such bonds so as to thereby provide and produce a cushion fund to meet any possible deficiencies therein in future years.  In the event such excess amounts are provided in the earlier years, the same would be

available for such purposes. Bonds pursuant to the authority granted in Sections 21-27-23 and 21-27-51, shall be payable solely from revenues of said project and out of the bond and interest fund.

**SECTION 34.**  This act shall take effect and be in force from and after its passage.