**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| and the STATE OF MISSISSIPPI, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 3:12-cv-790-HTW-LGI |
| | ) | (Clean Water Act Case) |
| v. | ) | |
| | ) | |
| | ) | |
| THE CITY OF JACKSON, MISSISSIPPI, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:22-cv-00686-HTW-LGI |
| | ) | (Safe Drinking Water Act Case) |
| v. | ) | |
| | ) | |
| | ) | |
| | ) | |
| THE CITY OF JACKSON, MISSISSIPPI, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

**BEFORE THIS COURT** is the Defendant City of Jackson, Mississippi's Motion for

Preliminary Injunction [Docket No. 285 in Case No. 3:12-cv-00790], which seeks to stay the

operational implementation of Mississippi House Bill 1677, styled the Metro Jackson Water

Authority Act. Following a lengthy status conference on April 30, 2026, this court issued an

interim bench ruling to preserve the status quo and directed all interested parties to submit

supplemental briefs.

1

This court specifically ordered the parties to address whether House Bill 1677 encroaches upon either this court's subject-matter jurisdiction over litigation in two cases before this court, Civil Cause Nos. 3:22-cv-00686-HTW-LGI. and 3:12-cv-00790-HTW-LGI; the strict mandates of the existing Interim Stipulated Orders (discussed and attached herein); or this court's ongoing authority over the water, sewer, and sanitation[1] infrastructure of the City of Jackson. This court further requested briefing on its power to act pursuant to the All Writs Act[2].

The parties, along with the Court-appointed Interim Third-Party Manager and Intervenors, submitted their responses on May 11, 2026. Having meticulously scrutinized the statutory text, the supplemental briefs, the existing record, and the governing jurisprudence, this court declines to issue a broad preliminary injunction against the enactment as a whole, but enters a targeted protective order to safeguard the integrity of its ongoing decrees.

---

[1] The City of Jackson historically has operated its public drinking water distribution, sanitary sewer collection, and solid waste sanitation networks as independent functional divisions. For billing purposes, however, the City integrated these distinct utility services into a unified municipal ledger. This centralized accounting system allowed the City to distribute a single, combined monthly utility bill to residential and commercial customers for water consumption, sewer usage, and solid waste sanitation disposal.

The structural deterioration of the municipal water infrastructure and the subsequent collapse of the automated billing platform caused widespread revenue losses across all three billing segments. When the federal receivership commenced, the ITPM and JXN Water, Inc., assumed operational management of the consolidated utility billing platform, which includes sanitation fees. Notably, however, neither the original environmental complaints nor the substantive compliance mandates of the active Stipulated Orders authorize the ITPM to assume direct operational management over municipal landfills, garbage truck routing, or sanitation disposal contractors. The core receivership remains limited to the water and sewer systems. This court still has before it an issue raised by the City on the failure of the ITPM to surrender to the City collected sanitation fees.

[2] 28 U.S.C. § 1651(a) (2018) provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." *Id.* This statutory grant of authority codifies the inherent equitable power of a federal court to protect its jurisdiction and ensure that its lawful mandates are not frustrated by collateral actions. *See United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977); *Newby v. Enron Corp.*, 338 F.3d 467, 473–74 (5th Cir. 2003).

# I.    JURISDICTION

This court anchors its authority over these consolidated matters[3] in the "federal question" jurisdiction provided by Title 28 U.S.C. § 1331[4], as well as Title 28 U.S.C. §§ 1345[5] and 1355[6]. Original subject-matter jurisdiction is explicitly derived from the Clean Water Act, Title 33 U.S.C. § 1319(b)[7], and the Safe Drinking Water Act, Title 42 U.S.C. §§ 300g-3 and 300i[8].

The court maintains supplemental jurisdiction over the attendant state-law claims under the Mississippi Air and Water Pollution Control Law[9] pursuant to Title 28 U.S.C.§ 1367(a)[10]. All principal parties, namely the United States of America; City of Jackson; the State of Mississippi, through its regulatory arms, explicitly consented to this court's continuing jurisdiction. A bedrock principle of federal jurisprudence provides that state legislation cannot contract, expand, nor

---

[3] On August 14, 2023, this court entered a Order of Consolidation [Docket no. 45 in 3:12-cv-790], which administrative action designated the  Clean Water Act matter, Cause No. 3:12-cv-00790-HTW-LGI, as the lead case and transferred the Safe Drinking Water Act matter, Cause No. 3:22-cv-00686-HTW-LGI, into it as a member case.

[4] 28 U.S.C. § 1331 states: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.".

[5] 28 U.S.C. § 1345 provides: "Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."

[6] 28 U.S.C. § 1355 states: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress...".

[7] 33 U.S.C. § 1319(b) provides: "The Administrator is authorized to commence a civil action for appropriate relief, including a permanent or preliminary injunction, for any violation for which he is authorized to issue a compliance order under subsection (a) of this section...".

[8] 42 U.S.C. §§ 300g-3, 300i (Authorizing civil actions and emergency powers by the United States to ensure compliance with safe drinking water standards).

[9] See Miss. Code Ann. §§ 49-17-1 through 49-17-45 (The Mississippi Air and Water Pollution Control Law, creating regulatory enforcement frameworks for state waters).

[10] 28 U.S.C. § 1367(a) states: "Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

3

otherwise alter the scope of a federal court's subject-matter jurisdiction. *See Anthology, Inc. v. Tarrant Cnty. Coll. Dist.*, 136 F.4th 549, 553 (5th Cir. 2025).

## II.    BACKGROUND

### A.  Factual Background

The systemic, structural, and operational failures of the City of Jackson's water distribution and wastewater treatment systems have long plagued the citizens of Jackson. Decades of infrastructure degradation, combined with municipal resource strain and environmental crises, culminated in severe failures that compromised public health and safety. These prolonged failures necessitated direct federal intervention to ensure the stable transmission of safe drinking water and the proper management of municipal sewage.

### B.  Procedural Background

The United States and the State of Mississippi initiated the Clean Water Act litigation in this federal court against the City on November 20, 2012. In cause number 3:12-cv-790, the court entered a Consent Decree on March 1, 2013.

A decade later, following a critical breakdown of the public drinking water system, the United States filed its Safe Drinking Water Act complaint on November 29, 2022. This court immediately entered an Interim Stipulated Order appointing an Interim Third-Party Manager ("ITPM"), Edward "Ted" Henifin, granting him comprehensive operational control over the water system.

On October 5, 2023, after a public comment period, the court entered an Amended Stipulated Order on Sewer System, in the same cause number, 3:12-cv-790, placing the wastewater infrastructure under the identical managership of the ITPM.

4

On April 8, 2026, the Governor of Mississippi signed into law House Bill 1677, creating the Metro Jackson Water Authority ("Water Authority"). This state statute births a regional governance framework to assume control over Jackson's water and sewer assets.

On April 27, 2026, the City moved for an injunction against the implementation of House Bill 1677, asserting, *inter alia*, that the state law constitutes an unconstitutional usurpation of this court's jurisdiction and an impermissible collateral attack on the active federal receivership.

### III.    LEGAL STANDARD

To obtain a preliminary injunction under Federal Rule of Civil Procedure 65[11], the moving party must establish four distinct elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest. *See AbbVie, Inc. v. Fitch*, 152 F.4th 635, 642 (5th Cir. 2025). A preliminary injunction is an extraordinary remedy, and the movant carries a heavy burden of persuasion.

Alternatively, the court's authority to enjoin collateral proceedings under the All Writs Act, Title 28 United States Code Section 1651(a)[12], is an equitable, discretionary power exercised to protect the court's jurisdiction and prevent the frustration of prior orders.

The United States Supreme Court repeatedly has affirmed that federal courts possess the inherent authority under the All Writs Act to issue commands necessary to effectuate their decrees

---

[11] Fed. R. Civ. P. 65 (Governing the procedural mechanics, notice requirements, and form of preliminary injunctions and temporary restraining orders).

[12] 28 U.S.C. § 1651(a) provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

and insulate their judgments from external frustration. *See United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977).

## IV.    CERTAIN SPECIFICS OF THE STIPULATED ORDERS

Pursuant to the Interim Stipulated Orders (interchangeably, "Consent Decrees" ) , this court is obligated to ensure that the contours of the Consent Decrees in the consolidated matters are followed to the letter. As mentioned in this Order's Factual Background, the City of Jackson citizenry have suffered for decades under the failure of its water and sewer utilities, which has resulted in national scrutiny.

Inasmuch as the City's motion attacks H.B. 1677 as an unconstitutional, direct intervention into the active federal litigation and encroaches directly upon this court's authority to enforce the Consent Decrees, this court now submits pertinent portions of those documents.

### A.  Authority Derived under the Safe Drinking Water Act Interim Stipulated Order

The Interim Stipulated Order entered on November 29, 2022, under Cause No. 3:22-cv-00686-HTW-LGI, vests this court with comprehensive, exclusive supervisory control over the municipal drinking water infrastructure. Pursuant to the emergency provisions of Title 42 United States Code Section 300i[13], this court possesses the absolute authority to displace standard municipal governance to protect public health.

The active Safe Drinking Water Act Order grants this court the following explicit powers:

- **The Power of Absolute Operational Receivership**: The court holds the exclusive power to appoint an Interim Third-Party Manager and vest him with total executive control over the water system. This power strips the local governing authority of its standard administrative management.

---

[13] 42 U.S.C. §§ 300g-3, 300i (2018). These provisions of the Safe Drinking Water Act vest the United States with original authority to initiate civil actions and deploy emergency regulatory intervention measures to compel compliance with national safe drinking water standards.

- **The Power of Financial Supervision**: The court exercises exclusive control over all water system revenues, water billing records, and capital improvement budgets. The Order bars any external entity from redirecting or encumbering these funds without express judicial permission.

- **The Power to Direct Personnel Decisions**: The court authorizes the ITPM to hire technicians, execute service contracts, and establish compensation rates completely independent of state civil service laws or municipal personnel restrictions.

- **The Power to Maintain Asset Integrity**: The Order explicitly bars the City of Jackson, its municipal agents, or any collateral public body from transferring, selling, or leasing any portion of the physical water infrastructure without prior notice to the parties and an express modifying Order from this court.

The Safe Drinking Water Act Interim Stipulated Order underwent a formal amendment early in the receivership process. On April 4, 2023, this court entered a formal written amendment to the order.

The specific parameters of that amendment are established as follows:

- **The Incorporation of JXN Water, Inc.**: To implement his extensive operational obligations effectively, the ITPM incorporated JXN Water, Inc., as a non-profit corporate entity on December 7, 2022.

- **The Purpose of the Modification**: The principal parties (the United States and the City of Jackson), along with non-party signatory the Mississippi State Department of Health, executed a joint stipulation to modify Paragraph 4 of the original order. The modification explicitly clarifies that the ITPM may operate through JXN Water, Inc., or a designated successor entity for the purpose of complying with his federal mandates.

- **The Structural Signature Rule**: The amendment incorporates an explicit safeguard, mandating that any official document submitted pursuant to the order through JXN Water, Inc., to the City, the Environmental Protection Agency, or the Department of Health must bear the direct signature of the ITPM. The amendment leaves all other substantive asset preservation terms and public health directives untouched.

### B. Authority Derived under the Clean Water Act Stipulated Order on Sewer System

The parallel Stipulated Order on Sewer System entered on October 5, 2023, under Cause No. 3:12-cv-00790-HTW-LGI, expands this court's equity jurisdiction over the wastewater

collection and treatment networks. Operating under Title 33 United States Code Section 1319(b)[14], this court holds the statutory authority to enforce permanent injunctive remedies to halt ongoing environmental violations.

The active Clean Water Act order grants this court the following explicit powers:

- **The Power of Integrated System Management**: The court places the wastewater system under the identical, unified command of the ITPM to ensure operational harmony across the municipal infrastructure.

- **The Power to Manage the Res**: The court draws to itself exclusive *in rem* jurisdiction over the physical sewer lines, treatment facilities, and effluent drainage systems. Collateral challenges targeting these assets are strictly prohibited.

- **The Power of Structured Remediation**: The order commands the ITPM to execute specific engineering repairs according to rigid, court-enforced compliance schedules.

- **The Power of Dictating Transition Protocols**: Paragraph 5(z) of the Sewer Stipulated Order reserves to this court the sole power to dictate the transition path out of federal management. The Order mandates that the ITPM formulate a comprehensive Transition Plan; subject it to an open vetting process by the principal parties; and present it to this court for independent judicial approval before any transfer of control can materialize.

The Clean Water Act Stipulated Order on Sewer System also underwent a minor amendment at the exact moment of its formal entry. The United States originally lodged the proposed sewer decree on July 26, 2023. Following a public comment period, the United States determined that a minor modification was necessary to address public feedback. On September 29, 2023, the principal parties and the ITPM filed a formal stipulation agreeing to a minor amendment of the lodged order [Docket No. 66 in Case No. 3:12-cv-00790], as follows:

- **The Enhanced Reporting Mandate**: The amendment inserts explicit language requiring additional, comprehensive reporting by the ITPM regarding the sewer system's finances. This modification ensures heightened transparency for public utility budgeting and revenue tracking.

---

[14] 33 U.S.C. § 1319(b) (2018). This section of the Clean Water Act authorizes the Administrator of the Environmental Protection Agency to commence a civil action for appropriate relief, including a permanent or preliminary injunction, for any violation for which he is authorized to issue a compliance order under subsection (a) of this section.

This court approved the minor amendment and formally entered the consolidated Stipulated Order on Sewer System on October 5, 2023.

With these pertinent portions as a backdrop, the reader will be better equipped to place the following party arguments in perspective.

## V.    ARGUMENTS OF THE INTERESTED PARTIES

### A.  Defendant City of Jackson

The City of Jackson contends that House Bill 1677 constitutes an unconstitutional, direct intervention into this active federal litigation. In its supplemental brief, the City argues that the state statute encroaches directly upon this court's subject-matter jurisdiction by legislating the exact operational and managerial realms currently held in federal receivership.

The City highlights that the bill dictates an immediate transfer of municipal property via a forced leasehold. The City also takes major issue with Section 7(1), which inserts a state-selected board president directly into the operational hierarchy as a mandatory deputy to the ITPM.

The City asserts that this dynamic disrupts the unified control of the federal manager and overrides the specific, step-by-step transition protocols set forth under Paragraph 5(z) of the Sewer Stipulated Order. The City invokes the Supremacy Clause of the United States Constitution[15], claiming obstacle preemption invalidates the bill because the state law stands as an insurmountable barrier to the execution of this court's independent remedial path.

---

[15] U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.").

**B. Intervenor-Plaintiffs Mississippi Poor People's Campaign and People's Advocacy Institute**

Intervenors echo the structural concerns of the City, focusing heavily on how House Bill 1677 eviscerates the democratic and participatory rights of Jackson residents. Intervenors contend that the state law is a targeted "run-around" that denies local citizens a majority voice on the regional authority's board, despite those residents providing the overwhelming majority of system revenue.

Legally, Intervenors argue that House Bill 1677 directly conflicts with the explicit terms of the active Orders by replacing the ITPM's independent agency-hiring authority with a state-mandated deputy presidency. Intervenors also emphasize that the bill permits the new entity to issue by July 1, 2026, special revenue bonds secured by system monies. This provision, say the Intervenors, circumvents this court's fiduciary supervision over the water infrastructure's financial lifeblood.

Intervenors support a total permanent injunction or, alternatively, an explicit order clarifying that the new Authority must be added as a formal defendant, completely bound by any future federal consent decree.

**C. Interim Third-Party Manager and JXN Water, Inc.**

The ITPM and JXN Water, Inc. offer a sharply contrasting view, arguing that House Bill 1677 does not conflict with this court's authority but creates a valuable, non-mandatory legal mechanism for post-receivership operations. The ITPM points to the legislative findings in Section 2, which openly acknowledge that the termination of federal management remains a condition precedent under the sole authority of this court.

The ITPM notes that the lease provisions require negotiations rather than a "forced taking". The ITPM also argues that placing the authority's president under the ITPM as a deputy effectively

subjects that individual to the direct supervision, control, and contempt powers of this federal court.

The ITPM counsels the court that the bill delivers unique state-level legislative benefits, including debt refinancing and the ability to write off ancient, uncollectible consumer utility debts. The ITPM asserts that any conflict is entirely speculative and premature, and urges the court to allow the board to convene under the All Writs Act without a broad injunction.

The City and the Intervenors are principally in lockstep in their repulsion for H.B. 1677. The Intervenors' antipathy has a bit more venom, because they see H.B. 1677 as "a clear run around this Court's authority to monitor and enforce the judicially sanctioned receivership, via this litigation, that controls and manages the PWS (Public Water System) and to provide opportunities for Jackson residents, as represented by the Intervenors, to be heard."

### D. Plaintiff United States of America

The United States takes a restrained regulatory position, concluding that House Bill 1677 does not divest this court of jurisdiction. The United States emphasizes that any utility operator—whether it is the City of Jackson. or a regional state authority—remains completely bound by the statutory commands of the Safe Drinking Water Act and the Clean Water Act.

The United States agrees that a state law cannot shrink the statutory or constitutional boundaries of a federal court. The United States reads the state law as a cooperative framework designed to receive a future transition.

The federal brief underscores that the long-term resolution of this water crisis will inevitably require a comprehensive, multi-year consent decree with enforceable deadlines. The United States asserts that if the state Authority assumes operation of the systems, but resists signing

11

a consent decree, the federal government will simply join the Authority as a principal defendant to ensure full judicial enforcement.

### E.  The State of Mississippi

The State of Mississippi defends House Bill 1677 as a valid exercise of its sovereign police and legislative powers, framing the law as an operational safety net for the post-receivership era. The State maintains that the bill creates a "state-law option" for governance that respects, rather than subverts, federal court decrees.

The State argues that the bill is forward-looking and leaves the calendar, structural details, and final approval of any transition plan securely within Judge Wingate's hands. The State underscores that the City has failed to articulate a justiciable, ripe injury because no transfer of assets can happen without a mutually negotiated lease.

The State points out that the City explicitly chose not to assert separate claims or name new parties on the record, which makes a broad preliminary injunction procedurally improper. The State requests that the court dissolve the temporary bench injunction and allow the Authority to execute its internal organizational mechanics.

## VI.    DISCUSSION

This court requested detailed briefings to dissect the intersection between House Bill 1677 and the ongoing federal judicial administration of Jackson's water infrastructure. The responses reveal deep structural and philosophical divisions among the stakeholders.

The City and Intervenors look upon the state law as an aggressive preemption of this court's transition protocols, an unwanted state-appointed deputy in the ITPM's inner workings, and a forced transfer of municipal property.

12

Conversely, the United States, the State of Mississippi, and the ITPM argue that House Bill 1677 represents a permissive, forward-looking legislative option for post-receivership governance that explicitly defers to this court's ultimate authority.

## A. Analysis of Jurisdictional Encroachment and Sovereign Power

The clear text of House Bill 1677 demonstrates that the Mississippi Legislature recognized the primacy of this court's active jurisdiction. Section 2[16] of the Act explicitly acknowledges the existence of the federal litigation, the appointment of the ITPM, and the binding nature of the Interim Stipulated Orders.

Crucially, the statute specifies that the Metro Jackson Water Authority "shall assume management and control... on the date of termination of the interim third-party managership by the court, or... an earlier date as ordered by the court." Miss. Code § ---, Laws 2026, H.B. No. 1677, § 4(4).

The transfer of control is conditioned upon this court's termination of the receivership or the court's approval of a formal Transition Plan.  House Bill 1677 does not challenge this. The parties should all accept that this state statute cannot force this court's hand, nor dictate the calendar of this litigation.

---

[16] Miss. Code Ann. § ---, Laws 2026, H.B. No. 1677, § 2 provides, in pertinent part:
"(1) The Legislature finds that the availability of safe, clean drinking water and the proper management of wastewater and storm water systems are vital to the public health, safety and welfare of the citizens of the State of Mississippi, and specifically those residing in the capital city region.
 (2) The Legislature further finds that the integrated water and wastewater systems of the City of Jackson are currently subject to ongoing federal enforcement actions and are under the temporary management of a Court-appointed Interim Third-Party Manager pursuant to certain Interim Stipulated Orders entered by the United States District Court for the Southern District of Mississippi.
 (3) It is the intent of the Legislature through this act to create a regional governance framework, to be known as the Metro Jackson Water Authority, that is positioned to cooperate with the federal court, to ensure long-term compliance with federal and state environmental mandates, and to assume operational control over these vital infrastructure assets upon the formal termination of the federal receivership or at an earlier date as ordered by the court."

The state law, in this court's eye, simply stands as an unexecuted contingency—a structure waiting in the wings. If this court decides to reject the Authority as a viable successor entity within the final transition framework, the Authority cannot assume control.

Federal court jurisprudence clearly charts the boundaries of a district court's power over ongoing consent decrees face-to-face with state statutory evolution. The Fifth Circuit has consistently held that federal court jurisdiction, once properly invoked under federal question parameters, cannot be impaired by subsequent state legislation. *See, e.g., Newby v. Enron Corp.*, 338 F.3d 467, 473 (5th Cir. 2003).

The United States Supreme Court emphasizes that the power to manage a receivership includes the broad discretion to safeguard the underlying assets from outer interference. *See Sec. & Exch. Comm'n v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019). House Bill 1677 anchors its implementation to the ultimate sign-off of this court; accordingly, the bill avoids direct collision with federal subject-matter authority. *See Miss. Code § ---, Laws 2026, H.B. No. 1677, § 2(2)(a)*.

This court preserves its judicial jurisdiction under long-standing doctrines that insulate federal proceedings from state legislative modification. State law cannot restrict or strip a federal court of its powers to grant complete equitable relief under active federal statutes. *See Anthology, Inc. v. Tarrant Cnty. Coll. Dist.*, 136 F.4th 549, 553 (5th Cir. 2025). The Supreme Court has made clear that state governments may not engage in structural modifications that dismantle the practical execution of a federal decree. *See Washington v. Wash. State Commercial Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 695 (1979).

14

The Fifth Circuit recognizes that a federal district court possess ancillary jurisdiction to manage its ongoing proceedings and insulate its active orders from collateral attack or structural subversion. *See National City Golf Finance v. Scott*, 899 F.3d 412, 416 (5th Cir. 2018).

## B. Dictates of the Stipulated Orders and Asset Management

The Sewer Stipulated Order mandates that the ITPM develop and submit a comprehensive Transition Plan no later than October 5, 2026, which plan must clear a rigorous vetting process by the parties and receive explicit judicial approval. The City argues that House Bill 1677 creates an irreconcilable conflict by dictating a state-centric transition option.

Section 6(1) of the Act merely directs the Authority to "commence negotiations" with the City to transfer assets via a lease under conditions "deemed desirable by the city and the authority." Laws 2026, H.B. No. 1677, § 6(1). The statute contains no language forcing the City to execute a lease on specific, predetermined terms.

Furthermore, both Stipulated Orders explicitly bar the encumbrance or transfer of Jackson's water and sewer assets without an express order from this court. Consequently, any lease negotiated between the City and the newly formed Authority remains completely subject to this court's independent review and approval.

The court has the absolute power to supervise, modify, or block any proposed lease terms to ensure federal compliance and protect the *res* of the receivership.

This court anchors its review of asset manipulation in the ancient principles of *in rem* and quasi *in rem* equity jurisdiction. When a federal court takes control of property through a receivership, it draws to itself the sole power to decide all questions concerning the management and disposition of that property. *See In re Vioxx Prods. Liab. Litig.*, 869 F. Supp. 2d 719, 725 (E.D. La. 2012).

15

Collateral actions by state entities that seek to disturb this control are routinely checked by federal equity arms. *See Newby v. Enron Corp.*, 302 F.3d 295, 301 (5th Cir. 2002).

The Fifth Circuit underscores that a district court retains jurisdiction to enforce its settlement structures and consent boundaries against non-parties who are positioned to frustrate the core layout of a federal decree. *See Wise v. Wilkie*, 955 F.3d 430, 434 (5th Cir. 2020). waThe lease provisions of House Bill 1677 represent a mere proposal, a framework that cannot harden into an enforceable contract without the formal imprimatur of this court.

Federal district courts possess extensive power to defend their oversight of physical assets under active judicial administrative control. *See S.E.C. v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986). This court will not permit a collateral legislative body to disrupt the financial security of the infrastructure. *See Liberte Cap. Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006). The Fifth Circuit strictly forbids external entities from executing financial adjustments or issuing encumbrances against an active receivership's property without prior judicial leave. *See Sec. & Exch. Comm'n v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019).

Both active stipulated orders[17] demand explicit judicial permission before any real asset transfer can occur; therefore, House Bill 1677 cannot operate autonomously to alienate property.

---

[17] The Safe Drinking Water Act (SDWA) Interim Stipulated Order — Entered by this court on November 29, 2022, under Cause No. 3:22-cv-00686-HTW-LGI. This order originally established the federal receivership over the public drinking water system and appointed Ted Henifin as the ITPM.

The Clean Water Act (CWA) Stipulated Order on Sewer System — Entered by this court on October 5, 2023, under Cause No. 3:12-cv-00790-HTW-LGI. This order expanded the active receivership by placing the City's sewer and wastewater treatment systems under the identical management and control of the ITPM.

16

### C. The ITPM Presidency and Interim Actions

This court notes one area of valid concern raised by the City and Intervenors: Section 7(1) of the Act requires the Authority to appoint a president who "shall serve as deputy to the ITPM until the court enters final judgment." Laws 2026, H.B. No. 1677, § 7(1).

While the State characterizes this as an educational, preparatory shadowing role, this court will not permit any state-created entity to infringe upon the ITPM's executive discretion or disrupt daily operations while the systems remain under federal judicial stewardship.

This court possesses the inherent authority to protect its jurisdiction from premature interference. Under the All Writs Act, federal courts may issue narrowly tailored injunctions to insulate their proceedings from external frustration. *See Newby v. Enron Corp.*, 302 F.3d 295, 301 (5th Cir. 2002).

Rather than enjoining the whole of House Bill 1677 based on speculative, unripe harms, the court will allow the Authority to seat its board and engage in preliminary administrative preparation.

This court, however, imposes an explicit interim restriction to guarantee that no measures are prematurely enacted under the statute: the Authority is strictly prohibited from executing operational mandates, finalizing leases, or exercising managerial influence over the systems until this court formally approves a transition remedy.

The standard for checking state legislative actions that create an ongoing obstacle to federal purposes relies upon well-established constitutional benchmarks. Under the doctrine of obstacle preemption, derived from the Supremacy Clause, state enactments are invalid when they stand as an obstacle to the accomplishment and execution of the full purposes and objectives of federal enforcement. *See Arizona v. United States*, 567 U.S. 387, 399 (2012).

17

This court is persuaded that the potential insertion of a state-appointed official into the operational hierarchy of the ITPM risks creating an administrative dichotomy that could fracture the unified command necessary to rehabilitate Jackson's infrastructure.

The court utilizes its authority under the All Writs Act to slice away this potential friction, holding the Authority to purely internal, administrative steps while this litigation progresses. *See United States v. Missouri*, 515 F.2d 1365, 1373 (8th Cir. 1975) (affirming that federal courts possess the power to neutralize state actions that threaten to subvert federal constitutional or statutory remedies).

The exercise of jurisdiction under the All Writs Act extends explicitly to non-parties who attempt to run parallel management tracks that would conflict with a federal decree. *See United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977)(internal citations omitted).

The Fifth Circuit affirms that a district court may issue orders under Section 1651 to protect its procedural flexibility and prevent third parties from seriously impairing the court's authority to resolve a complex public matter. *See Newby v. Enron Corp.*, 338 F.3d 467, 474 (5th Cir. 2003). The court exercises this protection here, recognizing that while the total text of House Bill 1677 is not yet ripe for an absolute facial injunction under Rule 65 parameters, the intermediate operation of the board must be sharply restricted to maintain administrative stability. *See Texas v. Real Parties in Interest*, 259 F.3d 387, 394-95 (5th Cir. 2001).

## VII.    CLOSING OBSERVATIONS

The City's memorandum brief, which ardently seeks to manifest its key displeasures at the dictates of H.B. 1677, nevertheless, carves out some hopeful thought on future, productive cooperation with the State on Jackson's utility dilemmas. This court shares that hope.

Jackson is Mississippi's largest city, and also its Capitol since 1821[18]. Its water/sewer/sanitation systems service some 150,000- 160,000 persons.

Its population is unique since no other capital city in the nation owns an African American population of approximately 88%, which every four years have the opportunity to vote at the polls for a seven-person City Council, of whom five out of seven presently are African Americans.

The current mayor, John Horhn, also is African American. He defeated incumbent Chokwe Antar Lumumba at the polls in June, 2025, and assumed office on July 1, 2025. Mayor Horhn, thus, has occupied his new position as mayor only eight months; before his elevation by the voters to his current position, he served for 32 years in the Mississippi State Senate.

The Mississippi Legislature, when it crafted the Metro Jackson Water Authority, which is the centerpiece of the controversy sub judice, decided not to give Jackson majority control over the Authority's Board. The Board members makeup until the Act is dictated as follows:

- The Mayor of the City of Jackson receives three (3) appointments.

- The Governor of the State of Mississippi receives two (2) appointments..

- The Governor of the State of Mississippi in consultation with the Mayor of Jackson receives (1) appointment.

- The Lieutenant Governor of the State of Mississippi receives one (1) appointment.

- The Mayor of the City of Ridgeland receives one (1) appointment.

- The Mayor of the City of Byram receives one (1) appointment.

Both the memoranda briefs of the City and that of the Plaintiff Intervenors emphasize this surprising development: the City, under the Act, does not have majority Board control, even

---

[18] The General Assembly of the State of Mississippi passed an act on November 28, 1821, that officially authorized the relocation of the permanent seat of state government from Natchez to Jackson. The state legislature convened its first session in the newly established capital on December 23, 1822.

though the Act provides for transfer of various assets of the City to the Board to be comprised of two outside mayors from adjoining cities, while the Board would have the power to create obligations of indebtedness to be borne, in whole, by the City of Jackson, whether the City disagrees with the structure, amount, or purpose of the indebtedness.

This court, of course, was not involved in the Mississippi legislative process which birthed H.B. 1677; accordingly, this court has no first-hand account of how the Mississippi Legislature travelled to this destination. Nor does this court have any legislative history on the subject. The public record vote in the house was 79 Yeas to 41 Nays (2 not voting), in the Mississippi Senate 34 Yeas to 15 Nays (1 not voting).

Neither the City nor the Intervenors offered the court any constitutional objection to this appointment scenario; so this court opines it was not expected to rule on an alleged unconstitutional claim. This court further mentions that neither the City nor the Intervenors ascribe any unconstitutional motivations behind enactment of H.B. 1677. Street rumors abound as such, but in this court's eye, speculative matters[19] are not the grist of evidence and should not trespass in litigation as such. While the bill acknowledges the existence of the federal receivership, specific provisions operate prematurely to alter the management and structure of the utility infrastructure.

This court has identified three distinct areas where House Bill 1677 attempts to encroach upon active federal judicial powers:

- **Encroachment upon Independent Transition Protocols**: Paragraph 5(z) of the Sewer Stipulated Order establishes a strict, judicially managed transition protocol that remains dependent on the professional development of a Transition Plan by October 5, 2026.

---

[19] For instance, some paranoid African Americans have postulated that "take over" of the water/sewer/sanitation systems is but calculated steps for the State of Mississippi to confiscate Jackson's revenue-generating ability; and to move the state capitol to Madison, Mississippi, a whiter, richer adjoining City. These conspiracy-driven persons point to the State's concern with limiting Jackson's control over its airport and control over the newly-created Capitol Police, created by the Mississippi Legislature and the Governor. But these surmises are not evidence nor briefed before this court as constitutional infirmities.

Section 4(4) of House Bill 1677 encroaches upon this procedural flexibility by establishing a pre-determined, state-centric governance model designed  automatically to assume control upon the court's termination of the receivership. The state law attempts to dictate the identity of the successor entity, narrowing the remedial path available to this court.

- **Encroachment upon the Unified Hierarchy through the Deputy Presidency Mandate**: Section 7(1) of House Bill 1677 commands that the newly formed Board of Directors select a president who "shall serve as deputy to the ITPM until the court enters final judgment." This provision constitutes a direct encroachment upon the inner management of the federal receivership. The active Orders grant the ITPM independent agency to select his staff and direct operations. The state legislature injects a mandatory, state-selected official into the operational hierarchy of the court-appointed manager.

- **Encroachment upon Financial Oversight and Asset Preservation**: Both active stipulated Orders place all system assets under the exclusive oversight of this court and bar any unauthorized encumbrances. Section 6 of House Bill 1677 directs the immediate commencement of lease negotiations to transfer municipal assets to the regional authority. Furthermore, the bill permits the new entity to issue special revenue bonds secured by system revenues as early as July 1, 2026. These financial parameters infringe upon this court's ongoing fiduciary supervision over the financial stability of the infrastructure.

As stated above, the state  statute specifies that the Metro Jackson Water Authority "shall assume management and control... on the date of termination of the interim third-party managership by the court, or... an earlier date as ordered by the court." Miss. Code § ---, Laws 2026, H.B. No. 1677, § 4(4).

This court notes that since the transfer of control is conditioned upon this court's termination of the receivership or approval of a formal Transition Plan, House Bill 1677 does not diminish or displace federal subject-matter jurisdiction. The state statute, thus, cannot force this court's hand nor dictate the calendar of this litigation.

## VIII.  CONCLUSION

This court, echoing its previous determination, leaves it entirely to the professional judgment of the City of Jackson to decide whether it wants to file separate claims, name specific respondents thereto, and articulate the exact permanent remedies it seeks.

In the meantime, this court maintains the inherent, absolute power to protect its jurisdiction and ensure the uninterrupted management of the water and sewer systems. The exercise of this jurisdiction under the All-Writs Act extends explicitly to non-parties who attempt to run parallel management tracks that would conflict with a federal decree. *See United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977).

**IT IS, THEREFORE, ORDERED** that the City's Motion for Preliminary Injunction [Docket No. 285 in Case No. 3:12-cv-00790] is **GRANTED IN PART and DENIED IN PART**.

**IT IS FURTHER ORDERED** that the Metro Jackson Water Authority and its Board are **HEREBY ENJOINED** from taking any operational or substantive action other than completing board appointments and seating its members. The Authority may not at this time, select a Board President, unless and until this court gives approval. The Authority shall enact no regulatory measures, finalize no lease agreements, issue no bonds, and assume no managerial influence or deputy control over Jackson's water and sewer systems unless and until this court explicitly alters this decree or determines to relinquish its ongoing authority over the systems.

This court's Order herein is open for modification if any party in the future identifies concrete conflicts between H.B. 1677 and this court's umbrella jurisdictional responsibilities.

**SO ORDERED AND ADJUDGED** this the 1st day of June, 2026.

/s/HENRY T. WINGATE
**UNITED STATES DISTRICT COURT JUDGE**